# EXHIBIT A

## EXHIBIT A – JOINT STATEMENT OF UNCONTESTED FACTS

The following facts are not disputed or have been agreed to or stipulated to by the parties:

### Parties

1.      Abbott Laboratories is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064.

2.      Abbott Respiratory LLC ("Abbott Respiratory") is a limited liability corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064.

3.      Watson is a corporation organized under the laws of the State of Florida having a place of business at 4955 Orange Drive, Davie, Florida 33314.

### SIMCOR® NDA

4.      Abbott Laboratories is listed by the FDA as the holder of New Drug Application ("NDA") No. 22-078.  Abbott manufactures and sells SIMCOR®, an extended-release form of niacin/simvastatin.  SIMCOR® was approved by the FDA on February 15, 2008.  Abbott currently sells 500 mg/20 mg, 500 mg/40 mg, 750 mg/20 mg, 1000 mg/20 mg, and 1000 mg/40 mg dosage strengths of SIMCOR®.

### Watson's ANDA

5.      On December 2, 2009, Watson filed ANDA No. 20-0601 seeking FDA approval to market a 1000 mg/20 mg extended-release niacin/simvastatin product ("the 1000 mg/20 mg Watson Product"), which is a generic version of Abbott's 1000 mg/20 mg SIMCOR® product.

6.      On February 9, 2011, Watson filed an amendment to ANDA No. 20-0601 seeking FDA approval to market a 500 mg/40 mg extended-release niacin/simvastatin product ("the 500

mg/40 mg Watson Product"), which is a generic version of Abbott's 500 mg/40 mg SIMCOR®

product.

7.      The 500 mg/40 mg Watson Product satisfies the FDA's criteria for establishing

bioequivalence of its product to the reference listed drug, the 500 mg/40 mg SIMCOR® product

marketed by Abbott.

8.      The 1000 mg/20 mg Watson Product satisfies the FDA's criteria for establishing

bioequivalence of its product to the reference listed drug, 1000 mg/20 mg SIMCOR® product

marketed by Abbott.

**Procedural History**

9.      The Watson ANDA contains certifications pursuant to 21 U.S.C.

§ 355(j)(2)(A)(vii)(IV), asserting that the patents-in-suit are invalid and/or will not be infringed

by the manufacture, use, offer for sale, or sale of the Watson Products.

10.      On March 25, 2010, pursuant to 21 U.S.C. § 355(j)(2)(B)(iii)-(iv), Watson

provided Abbott notice of its ANDA and certifications under 21 U.S.C. § 355(j)(2)(A)(vii)(IV)

concerning the 1000 mg/20 mg Watson Product for each of the patents-in-suit.

11.      On May 4, 2010, Abbott brought a separate action (C.A. No. 10-373) against

Watson under 35 U.S.C. § 271(e) asserting infringement of the patents-in-suit by the 1000 mg/20

mg Watson Product.

12.      On July 20, 2010, upon the request of the parties, the Court consolidated C.A. No.

10-373 with the lead action (C.A. No. 10-57).

13.      On February 9, 2011, pursuant to 21 U.S.C. § 355(j)(2)(B)(iii)-(iv), Watson

provided Abbott notice of its ANDA amendment and certifications under 21 U.S.C.

§ 355(j)(2)(A)(vii)(IV) concerning the 500 mg/40 mg Watson Product for each of the patents-in-suit.

14.     On March 25, 2011, Abbott brought a separate action (C.A. No. 11-251) against Watson under 35 U.S.C. § 271(e) asserting infringement of the patents-in-suit by the 500 mg/40 mg Watson Product.

15.     On May 24, 2011, upon the request of the parties, the Court consolidated C.A. No. 11-251 with the lead action (C.A. No. 10-57).

## The '428 Patent

16.     The '428 patent is entitled "Nicotinic Acid Compositions for Treating Hyperlipidemia and Related Methods Therefor."  The '428 patent issued on June 27, 2000 and expires on May 27, 2017.  David J. Bova is the named inventor of the '428 patent.

17.     The '428 patent was filed on January 14, 1995 and claims priority as a continuation-in-part to Application No. 08/368,392, filed September 20, 1993.

18.     Abbott owns the '428 patent and has the rights granted under 35 U.S.C. § 154(a) to the extent not conveyed to others, and to the extent the claims of the patent are found not invalid.

19.     The '428 patent is listed for SIMCOR® in the FDA's listing of Approved Drug Products with Therapeutic Equivalence Evaluations ("the Orange Book").

20.     Abbott is asserting infringement of claims 1, 3, 5, 6, and 8 of the '428 patent by the 1000 mg/20 mg Watson Product.  Watson alleges that these claims of the '428 patent are invalid and/or not infringed.

**The '930 Patent**

21.     The '930 patent is entitled "Methods and Sustained Release Nicotinic Acid Compositions for Treating Hyperlipidemia at Night."  The '930 patent issued on October 10, 2000 and expires on September 20, 2013.  David J. Bova is the named inventor of the '930 patent.

22.     The '930 patent was filed on March 6, 1997 and claims priority as a continuation-in-part to Application No. 08/368,392, filed September 20, 1993.  The '930 patent issued from Application No. 08/814,974, which is a continuation-in-part of the application that ultimately issued as the '428 patent.

23.     Abbott owns the '930 patent and has the rights granted under 35 U.S.C. § 154(a) to the extent not conveyed to others, and to the extent the claims of the patent are found not invalid.

24.     The '930 patent is listed for SIMCOR$^{®}$ in the FDA's Orange Book.

25.     Abbott is asserting infringement of claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144 by the 1000 mg/20 mg Watson Product.  Watson alleges these claims of the '930 patent are invalid and/or not infringed.

**The '848 patent**

26.     The '848 patent bears on its face the title "Hydrophobic Component Free Sustained Release Nicotinic Acid Compositions for Treating Hyperlipidemia and Related Methods Therefor."  On June 15, 2004, before the '848 patent issued, an amendment after allowance was filed to correct the title of the '848 patent to read:  "Nicotinic Acid Compositions for Treating Hyperlipidemia and Related Methods Therefor," which the Patent and Trademark

Office entered on December 7, 2004.  The '848 patent issued on March 14, 2006 and expires on

September 20, 2013.  David J. Bova is the named inventor of the '848 patent.

27.     The '848 patent was filed on December 22, 1999 and claims priority as a

continuation-in-part to Application No. 08/368,392, filed September 20, 1993.  The application

resulting in the '848 patent was a continuation of Application No. 08/814,974, which ultimately

issued as the '930 patent.

28.     Abbott owns the '848 patent and has the rights granted under 35 U.S.C. § 154(a)

to the extent not conveyed to others, and to the extent the claims of the patent are found not

invalid.

29.     The '848 patent is listed for SIMCOR® in the FDA's Orange Book.

30.     Abbott is asserting infringement of claims 1, 3, 5, 6, and 8 of the '848 patent by

the 1000 mg/20 mg Watson product.  Watson alleges that these claims of the '848 patent are

invalid and/or not infringed.

## The '715 Patent

31.     The '715 patent is entitled "Intermediate Release Nicotinic Acid Compositions for

Treating Hyperlipidemia Having Unique Urinary Metabolite Profiles."  The '715 patent issued

on June 18, 2002 and expires on September 20, 2013.  David J. Bova and Eugenio A. Cefali are

the named inventors of the '715 patent.

32.     The '715 patent issued from Application No. 08/962,423 ("the '423 application"),

filed October 31, 1997.  The '423 application was a continuation-in-part of Application No.

08/814,974, which subsequently issued as the '930 patent.

33.     Abbott owns the '715 patent and has the rights granted under 35 U.S.C. § 154(a) to the extent not conveyed to others, and to the extent the claims of the patent are found not invalid.

34.     The '715 patent is listed for SIMCOR® in the FDA's Orange Book.

35.     Abbott is asserting infringement of claims 1, 3, and 5 of the '715 patent by the 500 mg/40 mg Watson Product.  Watson alleges that these claims of the '715 patent are invalid and/or not infringed.

36.     Abbott is asserting infringement of claims 9 and 11 of the '715 patent by the 1000 mg/20 mg Watson Product.  Watson alleges that these claims of the '715 patent are invalid and/or not infringed.

## The '229 Patent

37.     The '229 patent is entitled "Intermediate Release Nicotinic Acid Compositions for Treating Hyperlipidemia."  The '229 patent issued on November 16, 2004 and expires on September 20, 2013.  David J. Bova and Eugenio A. Cefali are the named inventors of the '229 patent.

38.     The '229 patent issued from Application No. 08/962,027 ("the '027 application"), filed October 31, 1997.  The '027 application was a continuation-in-part of Application No. 08/814,974, which subsequently issued as the '930 patent.

39.     Abbott owns the '229 patent and has the rights granted under 35 U.S.C. § 154(a) to the extent not conveyed to others, and to the extent the claims of the patent are found not invalid.

40.     The '229 patent is listed for SIMCOR® in the FDA's Orange Book.

41.     Abbott is asserting infringement of claims 9 and 11 of the '229 patent by the 500 mg/40 mg Watson Product.  Watson alleges that these claims are invalid and/or not infringed.

42.     Abbott is asserting infringement of claims 25 and 27 of the '229 patent by the 1000 mg/20 mg Watson Product.  Watson alleges that these claims of the '229 patent are invalid and/or not infringed.

## The '967 Patent

43.     The '967 patent is entitled "Methods for Reducing Flushing in Individuals Being Treated with Nicotinic Acid for Hyperlipidemia."  The '967 patent issued on January 13, 2004 and expires on September 20, 2013.  David J. Bova and Eugenio A. Cefali are the inventors of the '967 patent.

44.     The '967 patent issued from Application No. 08/962,422 ("the '422 application"), filed October 31, 1997.  The '422 application was a continuation-in-part of Application No. 08/814,974, which subsequently issued as the '930 patent.

45.     Abbott owns the '967 patent and has the rights granted under 35 U.S.C. § 154(a) to the extent not conveyed to others, and to the extent the claims of the patent are found not invalid.

46.     The '967 patent is listed for SIMCOR® in the FDA's Orange Book.

47.     Abbott is asserting infringement of claims 16, 18, 25, and 26 of the '967 patent by the 1000 mg/20 mg Watson Products.  Watson alleges that these claims of the '967 patent are invalid and/or not infringed.

## The '691 Patent

48.     The '691 patent is entitled "Intermediate Release Nicotinic Acid Compositions for Treating Hyperlipidemia Having Unique Biopharmaceutical Characteristics."  The '691 patent

issued June 8, 2004 and expires on September 20, 2013.  Eugenio A. Cefali is the inventor of the '691 patent.

49.     The '691 patent issued from Application No. 08/962,424 ("the '424 application"), filed October 31, 1997.  The '424 application was a continuation-in-part of Application No. 08/814,974, which subsequently issued as the '930 patent.

50.     Abbott owns the '691 patent and has the rights granted under 35 U.S.C. § 154(a) to the extent not conveyed to others, and to the extent the claims of the patent are found not invalid.

51.     The '691 patent is listed for SIMCOR® in the FDA's Orange Book.

52.     Abbott is asserting infringement of claims 1 and 3 of the '691 patent by the 500 mg/40 mg Watson Product.  Watson alleges that claims 1 and 3 of the '691 patent are invalid and/or not infringed.

53.     Abbott is asserting infringement of claims 13 and 15 of the '691 patent by the 1000 mg/20 mg Watson Product.  Watson alleges that these claims of the '691 patent are invalid and/or not infringed.

## The '035 Patent

54.     The '035 patent is entitled "Methods of Pretreating Hyperlipidemic Individuals with a Flush Inhibiting Agent Prior to the Start of Single Daily Dose Nicotinic Acid Therapy to Reduce Flushing Provoked by Nicotinic Acid."  The '035 patent issued October 22, 2002 and expires on March 15, 2018.  Eugenio A. Cefali is the inventor of the '035 patent.

55.     The '035 patent issued from Application No. 08/903,755, filed July 31, 1997.

56. Abbott owns the '035 patent and has the rights granted under 35 U.S.C. § 154(a) to the extent not conveyed to others, and to the extent the claims of the patent are found not invalid.

57. The '035 patent is listed for SIMCOR® in the FDA's Orange Book.

58. Abbott is alleging infringement of claims 2-5, 11-13, and 21-30 of the '035 patent by the 1000 mg/20 mg Watson Product.  Watson alleges that these claims of the '035 patent are invalid and/or not infringed.

### 500 mg/40 mg Watson Product

59. The 500 mg/40 mg Watson Product is suitable for oral administration.

60. The 500 mg/40 mg Watson Product is a tablet.

61. Watson's proposed labeling, when approved by the FDA, recommends that the 500 mg/40 mg Watson Product may be taken as directed by a physician, including once daily.

62. The proposed labeling for the 500 mg/40 mg Watson Product instructs that it should be given at bedtime.

63. The 500 mg/40 mg Watson Product contains nicotinic acid.

64. The 500 mg/40 mg Watson Product contains one or more excipients to provide for the sustained release of nicotinic acid.

65. The 500 mg/40 mg Watson Product can be characterized as including, among other things, an intermediate release nicotinic acid formulation.

66. The 500 mg/40 mg Watson Product satisfies the FDA criteria for bioequivalence to Abbott's 500 mg/40 mg SIMCOR® product.

67. The proposed labeling for the 500 mg/40 mg Watson Product recommends against doses greater than 2000 mg/40 mg of nicotinic acid/simvastatin daily.

68.     Abbott does not assert that the 500 mg/40 mg Watson Product infringes the '428, '930, '848, '967 or '035 patents.

**1000 mg/20 mg Watson Product**

69.     The 1000 mg/20 mg Watson Product is suitable for oral administration.

70.     The 1000 mg/20 mg Watson Product is a tablet.

71.     Watson's proposed labeling, when approved by the FDA, recommends that the 1000 mg/20 mg Watson Product may be taken as directed by a physician, including once daily.

72.     The proposed labeling for the 1000 mg/20 mg Watson Product instructs that it should be given at bedtime.

73.     The 1000 mg/20 mg Watson Product contains nicotinic acid.

74.     The 1000 mg/20 mg Watson Product contains one or more excipients to provide for the sustained release of nicotinic acid.

75.     Like NIASPAN®, ADVICOR®, and SIMCOR®, the 1000 mg/20 mg Watson Product can be characterized as including a sustained release nicotinic acid formulation, an intermediate nicotinic acid formulation, and an extended release nicotinic acid formulation.

76.     The HMG-CoA reductase inhibitor in the 1000 mg/20 mg Watson Product is in an immediate release form.

77.     The 1000 mg/20 mg Watson Product includes an inner core containing the extended release nicotinic acid that is coated with a layer containing the immediate release HMG-CoA reductase inhibitor.

78.     The 1000 mg/20 mg Watson Product satisfies the FDA criteria for bioequivalence to Abbott's 1000 mg/20 mg SIMCOR® product.

79.     The proposed labeling for the 1000 mg/20 mg Watson Product recommends against doses greater than 2000 mg/40 mg of nicotinic acid/simvastatin daily.

# EXHIBIT B

## EXHIBIT B – ABBOTT'S BRIEF STATEMENT OF WHAT IT INTENDS TO PROVE IN SUPPORT OF ITS CLAIMS

Abbott hereby submits its brief statement of intended proof to be litigated.  The following statements are not exhaustive, and Abbott reserves the right to prove any matters identified in its pleadings, interrogatory responses, and/or expert reports.  Abbott also intends to offer evidence as to the issues of fact and issues of law identified in this pretrial order.  Abbott further intends to offer evidence to rebut evidence that Watson offers.  Abbott reserves the right to amend and supplement these statements in response to Watson's pretrial activities or any subsequent produced discovery.  Abbott incorporates by reference its expert reports in support of any proof to be presented by expert testimony.

## INFRINGEMENT

Abbott intends to prove at trial that the commercial manufacture, use, offering for sale, or sale of Watson's 500 mg/40 mg Product will infringe claims 1, 3, and 5 of the '715 patent; claims 9 and 11 of the '229 patent; and claims 1 and 3 of the '691 patent.

Abbott further intends to prove at trial that the commercial manufacture, use, offering for sale, or sale of Watson's 1000 mg/20 mg Product will infringe, directly or indirectly through inducement, claims 1, 3, 5, 6, and 8 of the '428 patent; claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144 of the '930 patent; claims 1, 3, 5, 6, and 8 of the '848 patent; claims 9 and 11 of the '715 patent; claims 25 and 27 of the '229 patent; claims 13 and 15 of the '691 patent; claims 16, 18, 25, and 26 of the '967 patent; and claims 2-5, 11-13, and 21-30 of the '035 patent.

## VALIDITY

Watson bears the burden of proof on invalidity.  To the extent Watson is able to establish a *prima facie* case of invalidity, Abbott intends to present evidence rebutting the evidence Watson presents in support of its invalidity defenses and counterclaims.  Abbott reserves its right

to present appropriate rebuttal evidence in response to the invalidity arguments Watson chooses to present at trial.

**(a)    Anticipation**

With respect to Watson's allegations that claims 2-5 and 11-13 of the '035 patent and the asserted claims of the '428, '930, '848, '715, '229, '691, and '967 patents are invalid as anticipated by the prior art, Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence that any individual prior art reference on which they rely discloses, either explicitly or inherently, all of the limitations of the asserted claim that it is alleged to anticipate.

**(b)    Obviousness**

With respect to Watson's allegations that the asserted claims of the '428, '930, '848, '715, '229, '691, '967, and '035 patents are invalid as obvious in light of the prior art (either alone or in combination), Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence that the inventions claimed in the asserted claims would have been obvious to a person of ordinary skill in the art at the time the inventions were made in view of the asserted prior art.

To the extent Watson is able to establish a *prima facie* case of obviousness, Abbott will present evidence of unexpected results and secondary considerations of non-obviousness, including long-felt need, skepticism, third-party praise, failure of others, copying, licensing, and commercial success.

**(c)    Written Description**

With respect to Watson's allegation that claim 3 of the '428 patent is invalid for failure to provide sufficient written description, Abbott will show that Watson has failed to satisfy its

burden of proving by clear and convincing evidence that the patent's specification fails to describe the invention in sufficient detail so that a person of ordinary skill in the art can clearly conclude that the inventor invented what is claimed.

With respect to Watson's allegation that claim 3 of the '848 patent is invalid for failure to provide sufficient written description, Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence that the patent's specification fails to describe the invention in sufficient detail so that a person of ordinary skill in the art can clearly conclude that the inventor invented what is claimed.

With respect to Watson's allegation that claims 2-5, 11-13, 21, and 26-30 of the '035 patent are invalid for failure to provide sufficient written description, Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence that the patent's specification fails to describe the invention in sufficient detail so that a person of ordinary skill in the art can clearly conclude that the inventor invented what is claimed.

With respect to Watson's allegations that the asserted claims of the '930, '715, '229, '691, and '967 patents are invalid for failure to provide sufficient written description, Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence that the patent's specification fails to describe the inventions in sufficient detail so that a person of ordinary skill in the art can clearly conclude that the inventors invented what is claimed.

**(d)    Enablement**

With respect to Watson's allegation that the specification of the '428 patent does not enable the full scope of claim 3, Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence that a person of ordinary skill in the art would be unable to make or use the claimed invention without undue experimentation.

With respect to Watson's allegation that the specification of the '848 patent does not enable the full scope of claim 3, Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence that a person of ordinary skill in the art would be unable to make or use the claimed invention without undue experimentation.

With respect to Watson's allegation that the specification of the '035 patent does not enable to the full scope of claims 2-5, 11-13, 21, and 26-30, Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence that a person of ordinary skill in the art would be unable to make or use the claimed invention without undue experimentation.

With respect to Watson's allegations that the specifications of the '930, '715, '229, '691, and '967 patents do not enable the full scope of the asserted claims, Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence that a person of ordinary skill in the art would be unable to make or use the claimed inventions without undue experimentation.

### (e)  Indefiniteness

With respect to Watson's allegations that a person having ordinary skill in the art would not understand the scope of claim 3 of the '428 patents, Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence that a person of ordinary skill in the art could not discern the boundaries of the claims based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant area.

With respect to Watson's allegations that a person having ordinary skill in the art would not understand the scope of claims 2-5, 11-13, 21, and 26-30 of the '035 patents, Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence

that a person of ordinary skill in the art could not discern the boundaries of the claims based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant area.

With respect to Watson's allegations that a person having ordinary skill in the art would not understand the scope of the asserted claims of the '930, '848, '715, '229, '691, '967 patents, Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence that a person of ordinary skill in the art could not discern the boundaries of the claims based on the claim language, the specifications, and the prosecution histories, as well as her knowledge of the relevant area.

**(f)  Best Mode**

With respect to Watson's allegation that the inventor of the '428 patent failed to disclose the best mode of the invention, Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence that, at the time the patent application was filed, the inventor possessed a best mode of practicing the claimed invention, and, if so, that he concealed the preferred mode from the public.

**(g)  Obviousness-Type Double Patenting**

With respect to Watson's allegation that the asserted claims of the '035 patent are invalid under the doctrine of obviousness-type double patenting in view of the '930, '848, '715, '229, '691, and '967 patents, Abbott will show that Watson has failed to satisfy its burden of proving by clear and convincing evidence that a person of ordinary skill in the art at the time the invention was made would have considered the invention claimed in the '035 patent an obvious variation of the inventions claimed in the '930, '848, '715, '229, '691, and '967 patents.

# EXHIBIT C

## EXHIBIT C – ABBOTT'S STATEMENT OF CONTESTED FACTS

The operative claims in this matter are set forth in the complaints filed by Plaintiffs Abbott Laboratories and Abbott Respiratory LLC (collectively, "Abbott"), which allege infringement of United States Patent Nos. 6,080,428 ("the '428 patent"), 6,129,930 ("the '930 patent"), 7,011,848 ("the '848 patent"), 6,818,229 ("the '229 patent"), 6,406,715 ("the '715 patent"), 6,676,967 ("the '967 patent"), 6,746,691 ("the '691 patent"), and 6,469,035 ("the '035 patent") (collectively, "the patents-in-suit") by Watson Laboratories, Inc. – Florida ("Watson"). In response to the complaints, Watson has asserted various defenses, including non-infringement and invalidity of the patents-in-suit, and has sought a declaratory judgment that the patents-in-suit are not infringed and invalid.

Abbott's identification of the issues of fact that remain to be litigated is based on its current understanding of the arguments Watson is likely to make in attempting to prove non-infringement and invalidity, based upon the pleadings and discovery in the action to date.  To the extent that Watson intends or attempts to introduce different or additional facts to meet its burden of proof, Abbott reserves its rights to contest those facts, and to present any and all rebuttal evidence in response to those facts.

In addition, to the extent that Abbott's Statement of the Issues of Law that Remain to Be Litigated contain issues of fact, those issues are incorporated herein by reference, and to the extent the Court determines that any issue identified in this list as an issue of fact is more properly construed as an issue of law, Abbott incorporates such issue by reference into its Statement of the Issues of Law that Remain to Be Litigated.

Based on Abbott's current understanding of Watson's defenses, Abbott believes the following issues of fact remain to be litigated:

1.      Whether Watson's proposed generic 500 mg/40 mg extended-release niacin/simvastatin product ("the 500 mg/40 mg Watson Product") meets the limitations of claims 1, 3, and 5 of the '715 patent;

2.      Whether the 500 mg/40 mg Watson Product meets the limitations of claims 9 and 11 of the '229 patent;

3.      Whether the 5000 mg/40 mg Watson Product meets the limitations of claims 1 and 3 of the '691 patent;

4.      Whether the use of Watson's proposed generic 1000 mg/20 mg extended-release niacin/simvastatin product ("the 1000 mg/20 mg Watson Product") in accordance with Watson's proposed labeling meets the limitations of claims 1, 3, 5, 6, and 8 of the '428 patent;

5.      Whether the 1000 mg/20 mg Watson Product, or its use in accordance with Watson's proposed labeling, meets the limitations of claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144  of the '930 patent;

6.      Whether the use of the 1000 mg/20 mg Watson Product in accordance with Watson's proposed labeling meets the limitations of claims 1, 3, 5, 6, and 8 of the '848 patent;

7.      Whether the 1000 mg/20 mg Watson Product meets the limitations of claims 9 and 11 of the '715 patent;

8.      Whether the 1000 mg/20 mg Watson Product meets the limitations of claims 25 and 27 of the '229 patent;

9.      Whether the use of the 1000 mg/20 mg Watson Product in accordance with Watson's proposed labeling meets the limitations of claims 16, 18, 25, and 26 of the '967 patent;

10.     Whether the 1000 mg/20 mg Watson Product meets the limitations of claims 13 and 15 of the '691 patent;

11.     Whether the use of the 1000 mg/20 mg Watson Product in accordance with Watson's proposed labeling meets the limitations of claims 2-5, 11-13, and 21-30 of the '035 patent;

12.     Whether the 1000 mg/20 mg Watson Product together with Watson's proposed labeling for the 1000 mg/20 mg Watson Product would induce infringement for the asserted method claims of the '428, '930, '848, '967, and '035 patents;

13.     The scope and content of the prior art;

14.     The level of ordinary skill in the art;

15.     The differences between the inventions claimed in the asserted claims of the patents-in-suit and the prior art;

16.     Whether any one of the asserted prior art references individually discloses each of the elements of the claims 2-5 and 11-13 of the '035 patent and the asserted claims of the '428, '930, '848, '715, '229, '967, and '691 patents;

17.     Whether the inventions claimed in the asserted claims of the patents-in-suit would have been obvious to a person of skill in the art at the time of the claimed inventions in view of the asserted prior art;

18.     Whether the inventions claimed in the asserted claims of the '035 patent would have been an obvious variation of the inventions claimed in the '930, '848, '715, '229, '967, and '691 patents to a person of ordinary skill in the art at the time of invention of the '035 patent;

19.     Whether the inventions claimed in the asserted claims of the patents-in-suit produced unexpected results;

20.     Whether there exist secondary considerations of nonobviousness of the inventions claimed in the asserted claims of the patents-in-suit, including:

- 3 -

a.   Whether there existed at the time of the inventions a long-felt but unmet need satisfied by the inventions claimed in the asserted claims of the patents-in-suit;

b.   Whether the inventions claimed in the asserted claims of the patents-in-suit initially were received with skepticism followed by acceptance;

c.   Whether there has been third-party praise for the inventions claimed in the asserted claims of the patents-in-suit;

d.   Whether others have failed in developing the inventions claimed in the asserted claims of the patents-in-suit;

e.   Whether others have copied the inventions claimed in the asserted claims of the patents-in-suit;

f.   Whether the inventions claimed in the asserted claims of the patents-in-suit have been licensed;

g.   Whether the commercial embodiments of the patents-in-suit are a commercial success; and

h.   Whether the commercial success of the embodiments of the patents-in-suit is attributable to the inventions claimed in the patents-in-suit;

21.   Whether the patents-in-suit provide adequate written description such that a person of ordinary skill in the art at the time of the invention would understand that the inventors were in possession of the inventions claimed in claim 3 of the '428 patent, claim 3 of the '848 patent, claims 2-5, 11-13, 21, and 26-30 of the '035 patent, and the asserted claims of the '930, '715, '229, '691, and '967 patents;

22.   Whether the patents-in-suit enable a person of ordinary skill in the art at the time of the invention to practice the inventions claimed in claim 3 of the '428 patent, claim 3 of the '848 patent, claims 2-5, 11-13, 21, and 26-30 of the '035 patent, and the asserted claims of the '930, '715, '229, '691, and '967 patents without undue experimentation;

23.   Whether the inventor of the '428 patent subjectively possessed a best mode for practicing the invention claimed in the asserted claims of the '428 patent, and if so, whether he concealed that best mode;

24.     Whether claim 3 of the '428 patent, claims 2-5, 11-13, 21, and 26-30 of the '035 patent, and the asserted claims of the '930, '848, '715, '229, '967, and '691 patents would have been insolubly ambiguous to a person of ordinary skill in the art at the time of the invention;

25.     Whether Abbott would suffer irreparable injury through the sale of the 500 mg/40 mg Watson Product or 1000 mg/20 mg Watson Product (collectively, "the Watson Products");

26.     Whether the remedies available at law are inadequate to compensate Abbott for its injuries through the sale of any of the Watson Products;

27.     Whether the balance of hardships favors enjoining the sale of any of the Watson Products; and

28.     Whether the public interest favors enjoining the sale of any of the Watson Products.

# EXHIBIT D

## EXHIBIT D – DEFENDANT'S STATEMENT
## OF INTENDED TRIAL PROOFS

Defendant submits the following statements of intended proof setting forth a description of what Defendant intends to prove at trial to support its defenses and counterclaims.

Because Abbott asserts more than 70 different claims from eight patents against six proposed products, it is difficult to provide a brief overview without omitting significant detail. The following statements are therefore not exhaustive, and Defendant reserves the right to prove any matters identified in its pleadings, interrogatory responses, or expert reports.

Defendant also intends to offer proof as to the issues of fact and issues of law identified in this pretrial order. Defendant further intends to offer proof to rebut evidence offered by Abbott. Defendant reserve the right to amend and supplement its statement (and the proofs it intends to offer at trial) in response to any subsequent discovery or changes to Abbott's contentions and other positions.

Defendant incorporates by reference their discovery responses and experts' reports and deposition testimony as though fully set forth herein.

Abbott has asserted certain claims in this case that Defendant's product does not infringe. And all of Abbott's asserted claims are invalid, including for anticipation, obviousness, indefiniteness, failure to comply with the best mode requirement, lack of enablement, failure to comply with the written description requirement, and obviousness-type double patenting.

## I.      Overview of Non-infringement Proof

Abbott bears the burden of proving infringement. Defendant intends to present evidence rebutting the evidence that Abbott offers in its attempt to prove infringement. Defendant

reserves its right to present appropriate rebuttal evidence in response to the infringement arguments Abbott chooses to present at trial.

This case involves eight patents asserted against two proposed generic tablets. Each accused tablet has a core with 500 mg, 1000 mg of extended release niacin.  An immediate-release coating that contains either 20 mg or 40 mg of simvastatin surrounds the core of each accused tablet.

Of the eight patents in suit, seven are directed only to extended release niacin formulations and methods of administering them.  Three of the patents in suit, U.S. Patent Nos. 6,080, 428 ("the '428 patent); 6,129,930 ("the '930 patent); and the 7,011,848 ("the '848 patent"), define the claimed formulations by reference to the ingredients used in the formulations and/or the once-daily administration of formulations defined by reference to such ingredients. Two of the patents, U.S. Patent Nos. 6,406,715 ("the '715 patent) and 6,818,229 ("the '229 patent"), define the claimed formulations by reference to how the formulations behave when administered to humans. And the last two extended release niacin patents, U.S. Patent Nos. 6,676,967 ("the '967 patent") and 6,746,691 ("the '691 patent), define the claimed formulations and methods by reference to the rate at which the formulations release niacin in laboratory dissolution tests.

The asserted claims of the last patent in suit, U.S. Patent No. 6,469,035 ("the '035 patent"), are directed to methods of reducing flushing involving a "pretreatment" regimen with aspirin.  These claims further require formulations containing both extended release niacin and a HMGCoA reductase inhibitor, more commonly referred to as a "statin."

Watson seeks to introduce its generic 1000 mg / 20 mg and 500 mg / 40 mg Simcor tablets.  All totaled, Abbott asserts various claims against some, but not all, of these two dosage

forms.  The following table summarizes which claims of the eight patents are asserted against

each of the five dosage forms:

| WATSON | 1000 mg / 20 mg | 500 mg / 40 mg |
|---|---|---|
| '428 patent | 1, 3, 5, 6, 8 | None |
| '930 patent | 18–21, 25, 27,-29, 51, 115, 133–136, 140, 142–44 | None |
| '848 patent | 1, 3, 5, 6, 8 | None |
| '691 patent | 13, 15 | 1, 3 |
| '967 patent | 16, 18, 25, 26 | None |
| '229 patent | 25, 27 | 9, 11 |
| '715 patent | 9, 11 | 1, 3, 5 |
| '035 patent | 2–5, 11–13, 21–30 | None |

The Defendant intends to prove the following with respect to each of the above-listed

asserted claims:

1.      The Defendant's proposed labels do not induce infringement of the asserted

claims of the '848 and '930 patents because the labels do not permit the use of Defendant's

products to reduce Lp(a).

2.      Watson's proposed 500 mg / 40 mg product and its corresponding label does not

infringe or induce the infringement of claims 9 and 11 of the '229 Patent.

3.      Watson's proposed 1000 mg / 20 mg product does not infringe claims 9 and 11 of

the '715 patent or claims 25 and 27 of the '229 patent.

4.      Watson's proposed 500 mg / 40 mg product does not infringe claims 1, 3 or 5 of

the '715 patent or claims 9 and 11 of the '229 patent.

5.      Abbott has failed to demonstrate that claims 9, 11, 17, 19, 25, and 26 of the '229

patent are infringed.

3

6.       Watson's proposed 500 mg / 40 mg product labels do not induce infringement of claims 1, 3, and 5 of the '715 Patent.

7.       Abbott has failed to demonstrate that any of defendant's proposed products infringe claims 1, 3, 5, 7, 9, and 11 of the '715 patent.

8.       Watson's proposed labels do not induce infringement of claims 2–5, 11–13, and 21–30 of the '035 Patent.

9.       Watson's products do not infringe the asserted claims because those products do not meet claimed limitations concerning the absence of certain side effects.

10.       Watson's products do not infringe claim 6 of the '428 Patent.

11.       Watson's products do not infringe claim 25 of the '930 Patent.

12.       Watson's products do not infringe claim 28 of the '930 patent.

13.       Watson's' products do not infringe claim 29 of the '930 patent.

14.       Watson's products do not infringe claim 140 of the '930 patent.

15.       Watson's products do not infringe claim 143 of the '930 patent.

16.       Watson's' products do not infringe claim 6 of the '848 patent.

17.       Watson's proposed 500/40mg product does not infringe claims 1 or 3 of the '691 patent.

## II.       Overview of Invalidity Proof

Defendant intends to present evidence at trial that the asserted claims of all of the patents in suit are anticipated by or obvious in view of the prior art, are invalid for failure to comply with Section 112 of the Patent Act, and are invalid for obviousness-type double patenting. Defendant's invalidity charts and experts' reports, setting forth the invalidity defenses asserted as

against each of the patents in suit, are hereby incorporated by reference as though fully set forth herein.

With the exception of claims 20–30 of the '035 patent, each claim asserted by Abbott is invalid as anticipated under 35 U.S.C. § 102.  Specifically, for each of the asserted claims, at least one prior-art reference teaches every claimed limitation. For most claims, in fact, several prior art references independently teach each element.

Defendant intends to prove that, at the time of the purported invention, those of ordinary skill in the art knew that niacin was an effective agent to treat hyperlipidemia because it both lowers bad cholesterol (LDL, TC, Lp(a), and TGs) and increases good cholesterol (HDL).  Those of ordinary skill in the art would have also understood the advantages of administering niacin once a day, which was a well-known method of administration before the priority dates for each of the patents-in-suit.  Similarly, the prior art suggested administering niacin once-daily during the evening or at night.

Those of ordinary skill in the art would have understood the benefits of extended-release formulations of niacin, such as improving patient compliance by reducing the number of doses per day and minimizing the severity of flushing (particularly because the patient would be asleep during periods of flushing when niacin is administered at night).  Further, while the cause of niacin-induced hepatotoxicity was not known, and remains unknown to this day, those of ordinary skill in the art recognized, as confirmed by the prior art literature, that prolonged exposure of niacin to the liver, without an opportunity for the liver to recover, as a potential explanation of why certain extended release niacin products had resulted in hepatotoxicity.

The state of the art concerning extended release formulations of niacin was well developed before the priority date for each of the patents in suit.  Those of ordinary skill in the

art knew, for instance, that different HPMC compounds could be, and were, used to prepare niacin formulations that released niacin over a period of time.  Numerous prior art references and products would have confirmed for those of skill in the art that certain HPMC compounds could be used to make an extended release formulation of niacin.  Those of ordinary skill were also familiar with the use of conventional excipients, such as povidone and stearic acid. The amounts of these ingredients would have been readily determined through the teachings of the aforementioned references, supplemented with the experience possessed by one of ordinary skill in the art, and confirmed with routine experimentation.  There was nothing novel, unique, or surprising about using HPMC, stearic acid, or povidone in the manner claimed in the patents in suit—these were conventional ingredients well known to one of ordinary skill.  One prior art extended-release niacin product, Slo-Niacin, used HPMC, povidone, and stearic acid. Slo-Niacin was on the market long before the critical dates for the patents-in-suit.  Prior art patents and applications further taught the suitability of such excipients for use in extended-release formulations of niacin.  In short, the art of extended release niacin formulations, and methods of administering such formulations, was quite crowded as of the priority dates of the patents in suit.

While some of the patents define the formulations by reference to (alleged) features other than the ingredients used in the formulations, the prior art literature and prior art products included formulations that yielded the same outcomes as the claimed inventions when administered to humans, and had the same drug release profiles of the claimed inventions.  In addition, any differences between one or more of the prior art products and the claimed inventions are arbitrary, and do not offer any benefits or advantages over the prior art products and formulations.

6

The limitations concerning the alleged advantages and benefits of the claimed inventions fail to distinguish the alleged inventions over the prior art.  Extended release niacin formulations known in the prior art, and known methods of administering those products, are as safe and effective as the claimed inventions.  The only benefits of the invention on which Abbott apparently relies are the purported resolution of hepatotoxicity and treatment limiting increases in uric acid and glucose levels.  But these were relatively uncommon problems with prior art products and methods.  Abbott's claimed invention did not eliminate this risk, and Abbott has failed to identify any reliable evidence demonstrating the superiority of the claimed inventions relative to the prior art.  Consequently, the patents-in-suit did not advance the state of the art, and the embodiments of the claimed invention are merely additional members in a long and established line of extended-release niacin products.

Abbott's '035 patent requires pretreating a patient with aspirin to reduce flushing.  It was well known in the prior art that administering aspirin to patients shortly before administering niacin reduces flushing.  This was well known long before the priority date for each of the patents-in-suit. As with the other claimed subject matter, the applicants for the patents in suit did not develop anything new and useful or otherwise advance the state of the art.  The applicants simply followed the teachings in these prior art references when recommending using with aspirin to reduce flushing.

The same holds true for the concomitant administration of niacin and statins, including in a single dosage form containing both drugs.  Physicians had been using combination therapy with niacin and statins for many years before the applicants filed their patent applications, as was reported in a myriad of prior art references.  Again, the applicants claimed methods that were already well known to those of skill in the art.

With respect to the '035 patent, the inventors suggest the alleged inventions claimed in the '035 patent eliminated problems with myopathy and rhabdomyolysis.  Once again, however, the claimed inventions did nothing to reduce these problems relative to the prior art.  Myopathy and rhabdomyolysis are associated with the administration of *all* HMG-CoA reductase inhibitors, and coating an extended-release niacin formulation with a HMG-CoA reductase inhibitor does not reduce the risk that a patient will develop myopathy and rhabdomyolysis.

With respect to Abbott's contentions concerning secondary considerations, Defendant intends to prove that the secondary considerations of non-obviousness alleged by Abbott fail to rebut Defendant's *prima facie* showing of obviousness.

The '035 patent is also invalid due to obviousness-type double patenting.  The inventions claimed in the '035 patent do not introduce anything that was not already known in the prior art, and the claims of the '035 patent are merely obvious modifications of the previously filed patents in suit.  Defendant will show that the elements of the asserted claims of the '035 patent that are not required by the claims of the earlier patents were already well known to those of ordinary skill in the art. Specifically, administering an NSAID, such as aspirin, shortly before niacin administration was known in the prior art for decades, and the concomitant administration of niacin and statins was a common practice, as demonstrated by prior art publications concerning many studies involving the concomitant administration of those products.  The combination of these drugs into a fixed dosage form was already described in the literature, and would have been nothing more than a ministerial exercise driven by common sense.  These steps were nothing more than an obvious modification of the claims of the '428, '930, '848, '691, and '967 patents.

The asserted patents are invalid for failing to meet the requirements of Section 112 of the patent act.  The patents-in-suit are invalid for failing to provide a proper written description and

failing to enable the claims.  Despite providing a very narrow disclosure in the patents-in-suit, the asserted claims are extremely broad.  For example, the described embodiments do not eliminate the side effects that the claims purport to resolve.  The claims requiring such amelioration are therefore not enabled.  Nor does the written description show that the inventors were in possession of technology that reduces those side effects. Similarly, the claims cover many different dosage forms involving many different excipients and dosage strengths.  Yet the applications only describe the Niaspan formulations.  This deficient disclosure is compounded by the variability of the *in vivo* parameters used by the inventors to describe their purported invention.

Many claims asserted against Defendant'' products are also invalid as indefinite. Specifically, many of the claim limitations are insolubly ambiguous.  For example, many claims are directed toward the ability of the claimed methods and formulas to avoid treatment-limiting side effects.  The determination of whether a side effect is treatment limiting, however, is made on a case-by-case basis, subject to a doctor's and patient's individual, subjective judgments. Moreover, limitations directed toward *in vivo* parameters fail to define the claimed formulations because the effects vary from patient to patient or over time for a single patient. Additional terms are indefinite, as set forth in Defendant's invalidity contentions, experts' reports, and the Joint Claim Construction Statement.

# EXHIBIT E

## DEFENDANTS' STATEMENT OF ISSUES
## OF FACT REMAINING TO BE LITIGATED

To the extent that Defendants' statement of issues of law set forth in Exhibit 5 contains issues of fact, those issues are incorporated herein by reference.  Should the Court determine any issue identified by Defendants as an issue of fact to be more appropriately considered an issue of law; Defendants incorporate such issues by reference into their statement of issues of law.  By including a fact herein, Defendants do not assume the burden of proof or production with regard to that fact.  Nor do Defendants take any position that the resolution of any issues identified in this pleading to be one of fact, rather than one of law.

Defendants' identification of issues of fact that remain to be litigated is based in part on Defendants' understanding of Plaintiffs' arguments concerning infringement and invalidity, which is based on Plaintiffs' interrogatory responses and expert reports.

Any claims Plaintiffs did not raise in their expert reports or their responses to Defendants' interrogatories seeking Plaintiffs' allegations regarding infringement and validity have been waived, and Defendants will not address any such claims.

## I.   PRIORITY DATES

The issues of fact remaining with respect to Defendants' allegations that the asserted claims of the patents-in-suit are not entitled to critical dates earlier than one year before the filing of each application are as follows:

1.      Whether the asserted claims of the '428 patent are entitled to a priority date earlier than one year before the filing date of the '428 patent application.

2.      Whether the asserted claims of the '428 patent are entitled to a priority date earlier than the filing date of the '428 patent application under 102(a) and 102(e).

1

3.      Whether the asserted claims of the '930 patent are entitled to a priority date earlier than one year before the filing date of the '930 patent application.

4.      Whether the asserted claims of the '930 patent are entitled to a priority date earlier than the filing date of the '930 patent application under 102(a) and 102(e).

5.      Whether the asserted claims of the '848 patent are entitled to a priority date earlier than one year before the filing date of the '848 patent application.

6.      Whether the asserted claims of the '848 patent are entitled to a priority date earlier than the filing date of the '848 patent application under 102(a) and 102(e).

7.      Whether the asserted claims of the '715 patent are entitled to a priority date earlier than one year before the filing date of the '715 patent application.

8.      Whether the asserted claims of the '715 patent are entitled to a priority date earlier than the filing date of the '715 patent application under 102(a) and 102(e).

9.      Whether the asserted claims of the '229 patent are entitled to a priority date earlier than one year before the filing date of the '229 patent application.

10.      Whether the asserted claims of the '229 patent are entitled to a priority date earlier than the filing date of the '229 patent application under 102(a) and 102(e).

11.      Whether the asserted claims of the '691 patent are entitled to a priority date earlier than one year before the filing date of the '691 patent application.

12.      Whether the asserted claims of the '691 patent are entitled to a priority date earlier than the filing date of the '691 patent application under 102(a) and 102(e).

13.      Whether the asserted claims of the '967 patent are entitled to a priority date earlier than one year before the filing date of the '967 patent application.

14.     Whether the asserted claims of the '967 patent are entitled to a priority date earlier than the filing date of the '967 patent application under 102(a) and 102(e).

15.     Whether the asserted claims of the '035 patent are entitled to a priority date earlier than one year before the filing date of the '035 patent application.

16.     Whether the asserted claims of the '035 patent are entitled to a priority date earlier than the filing date of the '035 patent application under 102(a) and 102(e).

## II. ANTICIPATION

The issues of fact remaining with respect to Defendants' allegations that the asserted claims of the patents-in-suit are anticipated are as follows:

1.     Whether claims 1 and 3 of the '428 patent are anticipated expressly or inherently by one or more of the following:

• *Report of the National Cholesterol Education Program Expert Panel on Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults*, 148(1) Arch. Intern. Med., 36-69 (1988)

• *Issues in Cholesterol Management: Reappraisal of Niacin*, Upsher-Smith Laboratories Newsletter, (Donald B. Hunninghake, MD ed.), 1-8 (1990)

• Keenan, J.M., et al., *A Clinical Trial of Oat Bran and Niacin in the Treatment of Hyperlipidemia*, 34(4) J. Fam. Prac. 313-19 (1992)

• Nicobid product and associated labeling and guidance, *see, e.g.*, Physicians' Desk Reference, Medical Economics Co., Montvale, N.J. (46th ed., 1992);

• Nicobid product and associated labeling and guidance, *see, e.g.*, Aventis Pharmaceutical's Nicobid labels

- Slo-Niacin product and associated labeling and guidance, *see, e.g.*, Upsher-Smith's Slo-Niacin labels

- Time Caps extended-release niacin product and labels

- Endurance Products' extended release niacin product and labels

- Country Farms' extended release niacin

- Walgreen's time-release niacin manufactured by Pharmavite and labels

- Leiner Health Products' extended release niacin product and labels

- Forest Pharmaceuticals' "Niac" product and labels

- Niaplus 1998-1990 Physician's Desk Reference

- U.S. Patent No. 5,268,181

- USP Labeling Guidance Revised July 1992

2.      Whether claims 5-9 of the '428 patent are anticipated expressly or inherently by each of the following:

- U.S. Patent No. 5,268,181

- Slo-Niacin product and associated labeling and guidance, *see, e.g.*, Upsher-Smith's Slo-Niacin labels

- *Issues in Cholesterol Management: Reappraisal of Niacin*, Upsher-Smith Laboratories Newsletter, (Donald B. Hunninghake, MD ed.), 1-8 (1990)

3.      Whether claims 18 and 133 of the '930 patent are anticipated expressly or inherently by the following:

- All anticipatory references listed above at II.1. and II.2.

- U.S. Patent No. 5,126,145

4

- Slo-Niacin, Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., (47th ed., 1993)

- Nicobid, Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., (47th ed., 1993)

- Morgan J.M. & Capuzzi D.M., *Safe and Effective Treatment of Dyslipidemia by Niaspan™, a New Sustained-Release Niacin* 59(2) Clin. Pharm. & Therapeut., 166 (1996)

- EP Patent Application 0643965

4.     Whether claims 51 and 115 of the '930 patent are anticipated expressly or inherently by the following:

- All anticipatory references listed above at II.1. and II.2.

- Slo-Niacin, Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., (47th ed., 1993)

- Nicobid, Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., (47th ed., 1993)

- Morgan J.M. & Capuzzi D.M., *Safe and Effective Treatment of Dyslipidemia by Niaspan™, a New Sustained-Release Niacin* 59(2) Clin. Pharm. & Therapeut., 166 (1996)

- EP Patent Application 0643965

5.     Whether claims 19-21, 24-29, 134-136, 139-144 of the '930 patent are anticipated expressly or inherently by the following:

- All anticipatory references listed above at II.2.

- U.S. Patent No. 5,126,145

- Slo-Niacin, Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., (47th ed., 1993)

5

- Morgan J.M. & Capuzzi D.M., *Safe and Effective Treatment of Dyslipidemia by Niaspan™, a New Sustained-Release Niacin* 59(2) Clin. Pharm. & Therapeut., 166 (1996)

- EP Patent Application 0643965

6.   Whether claims 1 and 3 of the '848 patent are anticipated expressly or inherently by the following:

- All anticipatory references listed above at II.1.

- Slo-Niacin, Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., (47th ed., 1993)

- Nicobid, Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., (47th ed., 1993)

- Morgan, J.M., et al., *Treatment Effect of Niaspan, a Controlled-release Niacin, in Patients With Hypercholesterolemia: A Placebo-controlled Trial*, 1(3) J. Cardiovasc. Pharmacol. Therapeut., 195-202 (1996)

- Morgan J.M. & Capuzzi D.M., *Safe and Effective Treatment of Dyslipidemia by Niaspan™, a New Sustained-Release Niacin* 59(2) Cardiovasc. Pharmacol. Therapeut., 166 (1996)

- EP Patent Application 0643965

7.   Whether claims 5-9 of the '848 patent are anticipated expressly or inherently by the following:

- All anticipatory references listed above at II.2.

- Slo-Niacin, Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., (47th ed., 1993)

- Morgan, J.M., et al., *Treatment Effect of Niaspan, a Controlled-release Niacin, in Patients With Hypercholesterolemia: A Placebo-controlled Trial*, 1(3) J. Cardiovasc. Pharmacol. Therapeut., 195-202 (1996)

- Morgan J.M. & Capuzzi D.M., *Safe and Effective Treatment of Dyslipidemia by Niaspan™, a New Sustained-Release Niacin* 59(2) Clin. Pharm. & Therapeut., 166 (1996)

- EP Patent Application 0643965

8.      Whether claims 1, 3, 5, 7, 9, and 11 of the '715 patent are anticipated expressly or inherently by the following:

- Application Serial No. 08/814,974 (corresponding to the '930 patent)

- Morgan, J.M., et al., *Treatment Effect of Niaspan, a Controlled-release Niacin, in Patients With Hypercholesterolemia: A Placebo-controlled Trial*, 1(3) J. Cardiovasc. Pharmacol. Therapeut., 195-202 (1996)

- Morgan J.M. & Capuzzi D.M., *Safe and Effective Treatment of Dyslipidemia by Niaspan™, a New Sustained-Release Niacin* 59(2) Cardiovasc. Pharmacol. Therapeut., 166 (1996)

- U.S. Patent No. 5,126,145

- U.S. Patent No. 5,268,181

- Slo-Niacin product and associated labeling and guidance, *see, e.g.* Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., 2492 (47th ed., 1993)

- Slo-Niacin product and associated labeling and guidance, *see, e.g.*, Upsher-Smith's Slo-Niacin labels

- Nicobid product and associated labeling and guidance, *see, e.g.*, Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., 2026; (p. 1846, 46th ed., 1992)

- Nicobid product and associated labeling and guidance, *see, e.g.*, Aventis Pharmaceuticals Nicobid labels

9.      Whether claims 9, 11, 17, 19, 25, and 27 of the '229 patent are anticipated expressly or inherently by the following:

- Application Serial No. 08/814,974 (corresponding to the '930 patent)

- Morgan, J.M., et al., *Treatment Effect of Niaspan, a Controlled-release Niacin, in Patients With Hypercholesterolemia: A Placebo-controlled Trial*, 1(3) J. Cardiovasc. Pharmacol. Therapeut., 195-202 (1996)

- Morgan J.M. & Capuzzi D.M., *Safe and Effective Treatment of Dyslipidemia by Niaspan™, a New Sustained-Release Niacin* 59(2) Cardiovasc. Pharmacol. Therapeut., 166 (1996)

- U.S. Patent No. 5,126,145

- U.S. Patent No. 5,268,181

- Slo-Niacin product and associated labeling and guidance, *see, e.g.* Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., 2492 (47th ed., 1993);

- Slo-Niacin product and associated labeling and guidance, *see, e.g.,* Upsher-Smith's Slo-Niacin labels

10.      Whether claims 1, 3, 13, and 15 of the '691 patent are anticipated expressly or inherently by the following:

- Application Serial No. 08/814,974 (corresponding to the '930 patent)

- Morgan, J.M., et al., *Treatment Effect of Niaspan, a Controlled-release Niacin, in Patients With Hypercholesterolemia: A Placebo-controlled Trial*, 1(3) J. Cardiovasc. Pharmacol. Therapeut., 195-202 (1996)

- Morgan J.M. & Capuzzi D.M., *Safe and Effective Treatment of Dyslipidemia by Niaspan™, a New Sustained-Release Niacin* 59(2) Cardiovasc. Pharmacol. Therapeut., 166 (1996)

- U.S. Patent No. 5,126,145

- U.S. Patent No. 5,268,181

- Slo-Niacin product and associated labeling and guidance, *see, e.g.* Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., (47th ed., 1993)

- Slo-Niacin product and associated labeling and guidance, *see, e.g.,* Upsher-Smith's Slo-Niacin labels

- Products listed in Table 5A and 5B of the '691 patent at cols. 11-12, Table 7

11. Whether claims 16, 18, 25, and 26 of the '967 patent are anticipated expressly or inherently by the following:

- Application Serial No. 08/814,974 (corresponding to the '930 patent)

- U.S. Patent No. 5,268,181

- U.S. Patent No. 5,126,145

- Morgan, J.M., et al., *Treatment Effect of Niaspan, a Controlled-release Niacin, in Patients With Hypercholesterolemia: A Placebo-controlled Trial*, 1(3) J. Cardiovasc. Pharmacol. Therapeut., 195-202 (1996)

- Morgan J.M. & Capuzzi D.M., *Safe and Effective Treatment of Dyslipidemia by Niaspan™, a New Sustained-Release Niacin* 59(2) Cardiovasc. Pharmacol. Therapeut., 166 (1996)

12. Whether claims 2-5, 11-13 of the '035 patent are anticipated expressly or inherently by the following:

9

- *Report of the National Cholesterol Education Program Expert Panel on Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults*, 148(1) Arch. Intern. Med., 36-69 (1988).

## III. OBVIOUSNESS

The issues of fact remaining with respect to Defendants' allegations that the asserted claims of the patents-in-suit (claims 1, 3, 5-9 of the '428 patent, claims 18-21, 24-29, 51, 115, 133-136, 139-144 of the '930 patent, claims 1, 3, 5-9 of the '848 patent, claims 1, 3, 5, 7, 9, 11 of the '715 patent, claims 9, 11, 17, 19, 25, 27 of the '229 patent, claims 16, 18, 25, 26 of the '967 patent, claims 1, 3, 13, 15 of the '691 patent, claims 2-5, 11-13, 21-30 of the '035 patent) are obvious are as follows:

1. Whether the subject matter of the asserted claims of the patents-in-suit would have been obvious to a person of ordinary skill in the art under 35 U.S.C. § 103 at the time the alleged invention was made.

### A. Level of Ordinary Skill in the Art

1. What the qualifications and knowledge of a person of ordinary skill in the art pertinent to the asserted claims of the patents-in-suit were at the time of the alleged inventions of the asserted claims of the patents-in-suit.

### B. The Scope and Content of the Prior Art

1. The scope and content of the prior art as of the priority dates[1] for the alleged inventions of the asserted claims of the patents-in-suit.

---

[1] *See* Section I. above.

### C.   The Differences Between the Claimed Invention and the Prior Art[2]

1.     Whether any differences between the subject matter of claims 1, 3, 5-9 of the '428

patent and the prior art are such that the patented subject matter would have been obvious to a

person having ordinary skill in the art as of the priority date for such alleged inventions, and in

view of:

- All anticipatory references cited above at II.1. and II.2.;

- U.S. Patent No. 5,126,145;

- Lavie C.J., et al., *Marked Benefit with Sustained-Release Niacin Therapy in Patients with "Isolated" Very Low Levels of High-Density Lipoprotein Cholesterol and Coronary Artery Disease*, 69 Am. J. Cardiol., 1083-85 (1992);

- Squires R.W., *Low-Dose, Time-Release Nicotinic Acid: Effects in Selected Patients With Low Concentrations of High-Density Lipoprotein Cholesterol*, 67(9) Mayo Clin Proc 855-60 (1992);

- Robert H. Knopp et al., *Contrasting Effects of Unmodified and Time-Release Forms of Niacin on Lipoproteins in Hyperlipidemic Subjects: Clues to Mechanism of Action of Niacin*, 34(7) Metabolism, 642-650 (1985);

- Joseph M. Keenan et al., *Niacin Revisited: A Randomized, Controlled Trial of Wax-Matrix Sustained-Release Niacin in Hypercholesterolemia*, 151(7) Arch. Intern. Med., 1424-1432 (1991);

---

[2] Defendants explicitly incorporate by reference any additional prior art references not specifically cited herein that were reviewed and cited by Dr. Joseph Keenan, Dr. William F. Elmquist, Dr. Michael B. Maurin in either their opening expert reports dated August 19, 2011, supplemental reports dated September 19, 2011, rebuttal reports dated September 19, 2011, and reply expert reports dated October 17, 2011, or provided or disclosed during their depositions on November 10-11, 2011, November 3-4, 2011, or October 27-28, 2011 respectively, in support of their obviousness defenses.

11

- Alderman J.D., et al., *Effect of a Modified, Well-Tolerated Niacin Regimen on Serum Total Cholesterol, High Density Lipoprotein Cholesterol and the Cholesterol to High Density Lipoprotein Ratio*, 64 Am. J. Cardiol., 725-29 (1989);

- Luria M.H., *Effect of Low-Dose Niacin on High-Density Lipoprotein Cholesterol and Total Cholesterol/High-Density Lipoprotein Cholesterol Ratio,* 148(11) Arch. Intern. Med., 2493-95 (1988);

- Nicobid, Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., (47th ed., 1993);

- Slo-Niacin, Physicians' Desk Reference, Medical Economics Co., Montvale, N.J., (47th ed., 1993);

- United States Pharmacopeia Dispensing Information ("USPDI"), 1739-1740 (9th ed., 1989)

- Schlierf, G. & Hess, G., *Inhibition of Carbohydrate-induced Hypertriglyceridemia by Nicotinic Acid*, 3(2) Artery 174-79 (1977);

- Guenter Schlierf and E. Dorow, *Diurnal Patterns of Triglycerides, Free Fatty Acids, Blood Sugar, and Insulin during Carbohydrate-Induction in Man and Their Modification by Nocturnal Suppression of Lipolysis*, 52:3 J. Clin. Invest., 732-740 (1973);

- Miettinen T.A., *Diurnal Variation of Cholesterol Precursors Squalene and Methyl Sterols in Human Plasma Lipoproteins*, 23(3) J. Lipid Res. 466-73 (1982);

- Carlson, et al., Pronounced lowering of serum levels of lipoprotein Lp(a) in hyperlipidemic subjects treated with nicotinic acid, 226 J. Intern. Med., 271-276 (1989);

- Illingworth, et al., Comparative Effects of Lovastatin and Niacin in Primary Hypercholesterolemia, 154 Arch. Intern. Med., 1586-1595 (1994);

- Henkin, Yaakov, et al., *Niacin Revisited: Clinical Observations on an Important but Underutilized Drug,* 91 The Amer. J Med. 239, 242-43 (1991);

- Rader, J, *et al.*, *Hepatic Toxicity of Unmodified and Time-Release Preparations of Niacin*, 92 Amer. J Med., 77-81 (1992);

- 124,392 Patent Application (now abandoned, parent to '428);

- Byrd C. and Mowrey K.A*., Lipid and transaminase concentrations after formulary conversion of Niaspan to Slo-Niacin*, 267(23) Am. J. Health Syst. Pharm., 2038-42 (2010);

- Knopp R.H., *The SLIM study: Slo-Niacin and Atorvastatin Treatment of Lipoproteins and Inflammatory Markers in Combined Hyperlipidemia*, 3 J. Clin. Lipidology, 167-78 (2009);

- Gray D.R., et al., *Efficacy and Safety of Controlled-Release Niacin in Dyslipoproteinemic Veterans*, 121(4) Ann. Intern.Med., 252-58 (1994);

- Davignon J., et al., *Comparative Efficacy and Safety of Pravastatin, Nicotinic Acid and the Two Combined in Patients with Hypercholesterolemia*, 73(5) Am. J. Cardiol., 339-45 (1994);

- Pasternak R.C., et al., *Effect of Combination Therapy with Lipid-Reducing Drugs in Patients with Coronary Heart Disease and "Normal" Cholesterol Levels*, 125(7) Ann. Intern.Med., 529-40 (1996);

- Country Farms' extended release niacin;

- Pharmacy Benefits Management-Medical Advisory Panel-VISN Pharmacist Executives Ez-Minutes, vol. 9, issue 1 (November 2010-January 2011);

- U.S. Patent Nos. 4,369,172;

13

- U.S. Patent Nos. 4,389,393;

- REMINGTON'S PHARMACEUTICAL SCIENCES, 862, 1015-16 (Mack Publishing Co. 17th ed. 1985);

- An Encyclopedia of Chemicals, Drugs, and Biologicals. In: The Merck Index 11 ed., 1461-1462 (1989);

- U.S. Patent No. 5,000,962;

- The Dow Chemical Company, Formulation for Controlled Release with Methocel Cellulose Ethers (1987);

- Aulton M., Pharmaceutics: The Science of Dosage Form Design. Churchill Livingstone; 1994, 1988;

- Patel W.D., Handbook of Pharmaceutical Excipients. 234-239 (1986);

- Han W., Handbook of Pharmaceutical Excipients. (American Pharmaceutical Association) 173-175 (1986);

- Schwartz T., Handbook of Pharmaceutical Excipients. (American Pharmaceutical Association) 298-300 (1986);

- Christenson, N.A., et al., Nicotinic Acid Treatment of Hypercholesterolemia, 177(8) JAMA, 546-550 (1961);

- Dalton and Robert S. Berry, Hepatotoxicity Associated with Sustained-Release Niacin, 93(1) Am. J. Med., 102-104 (1992);

- the general knowledge and common sense of those of ordinary skill in the art regarding methods of administration of extended release niacin;

- the general knowledge and common sense of those of ordinary skill in the art regarding extended release drug formulation development.

14

2.      Whether any differences between the subject matter patented in claims 18-21, 24-29, 51, 115, 133-136, 139-144 of the '930 patent and the prior art are such that the patented subject matter would have been obvious to a person having ordinary skill in the art as of the priority date for such alleged inventions, and in view of:

- All references cited above at III.C.1;

- All references cited above at II.3 through II.5;

- the general knowledge and common sense of those of ordinary skill in the art regarding methods of administration of extended release niacin;

- the general knowledge and common sense of those of ordinary skill in the art regarding extended release drug formulation development.

3.      Whether any differences between the subject matter patented in claims 1, 3, 5-9 of the '848 patent and the prior art are such that the patented subject matter would have been obvious to a person having ordinary skill in the art as of the priority date for such alleged inventions, and in view of:

- All references cited above at III.C.1;

- All references cited above at II.6 through II.7;

- the general knowledge and common sense of those of ordinary skill in the art regarding methods of administration of extended release niacin;

- the general knowledge and common sense of those of ordinary skill in the art regarding extended release drug formulation development.

4.      Whether any differences between the subject matter patented in claims 1, 3, 5, 7, 9, 11 of the '715 patent and the prior art are such that the patented subject matter would have

15

been obvious to a person having ordinary skill in the art as of the priority date for such alleged inventions, and in view of:

- All references cited above at III.C.1;

- All references cited above at II.8;

- EP Patent Application 0643965;

- the general knowledge and common sense of those of ordinary skill in the art regarding methods of administration of extended release niacin;

- the general knowledge and common sense of those of ordinary skill in the art regarding extended release drug formulation development.

5. Whether any differences between the subject matter patented in claims 9, 11, 17, 19, 25, 27 of the '229 patent and the prior art are such that the patented subject matter would have been obvious to a person having ordinary skill in the art as of the priority date for such alleged invention, and in view of:

- All references cited above at III.C.1;

- All references cited above at II.9;

- EP Patent Application 0643965;

- the general knowledge and common sense of those of ordinary skill in the art regarding methods of administration of extended release niacin;

- the general knowledge and common sense of those of ordinary skill in the art regarding extended release drug formulation development.

6. Whether any differences between the subject matter patented in claims 1, 3, 13, 15 of the '691 patent and the prior art are such that the patented subject matter would have been

16

obvious to a person having ordinary skill in the art as of the priority date for such alleged inventions, and in view of:

- All references cited above at III.C.1;

- All references cited above at II.10;

- EP Patent Application 0643965;

- the general knowledge and common sense of those of ordinary skill in the art regarding methods of administration of extended release niacin;

- the general knowledge and common sense of those of ordinary skill in the art regarding extended release drug formulation development.

7.      Whether any differences between the subject matter patented in claims 16, 18, 25 and 26 of the '967 patent and the prior art are such that the patented subject matter would have been obvious to a person having ordinary skill in the art as of the priority date for such alleged inventions, and in view of:

- All references cited above at III.C.1;

- All references cited above at II.11;

- EP Patent Application 0643965;

- the general knowledge and common sense of those of ordinary skill in the art regarding methods of administration of extended release niacin;

- the general knowledge and common sense of those of ordinary skill in the art regarding extended release drug formulation development.

8.      Whether any differences between the subject matter patented in claims 2-5, 11-13, 21-30 of the '035 patent and the prior art are such that the patented subject matter would have

been obvious to a person having ordinary skill in the art as of the priority date for such alleged inventions:

- All references cited above at III.C.1-7;

- All references cited above at II.12;

- Gardner S.F., et al., *Combination Therapy with Low-Dose Lovastatin and Niacin Is as Effective as Higher-Dose Lovastatin*, 16(3) Pharmacotherapy, 419-23 (1996);

- O'Keefe J.H., et al., *Effects of Pravastatin With Niacin or Magnesium on Lipid Levels and Postprandial Lipidemia*, 76 Am. J. Cardiol., 480-84 (1995);

- Stein, E.A., et al., *Efficacy and Tolerability of Low-dose Simvastatin and Niacin, Alone and in Combination, in Patients With Combined Hyperlipidemia: A Prospective Trial* 1(2) J. Cardiovasc. Pharmacol. Therapeut., 107-16 (1996);

- Brown B.G., et al., *Simvastatin and Niacin, Antioxidant Vitamins, or the Combination for the Prevention of Coronary Disease*, 345(22) NEJM,  1583-1592 (2001);

- Brown B.G., et al., *Moderate Dose, Three-Drug Therapy with Niacin, Lovastatin, and Colestipol to Reduce Low-Density Lipoprotein Cholesterol <100 mg/dl in Patients with Hyperlipidemia and Coronary Artery Disease*, 80 Am. J. Cardiol., 111-115 (1997);

- Yasuhi Saito, et al., *Comparison Between Morning and Evening Doses of Simvastatin in Hyperlipidemic Subjects: A Double-Blind Comparative Study*, 11(4) Aterioscler. Thromp., 816-826 (1991);

- U.S. Patent No. 5,260,305;

- December 19, 1991, Lovastatin Package Insert;

- April 27, 2000, Simvastatin Package Insert;

- Lieberman, Compress Tablets by Wet Granulation. In: *Pharmaceutical Dosage Forms*. Vol. 1 (Marcek Dekkar) 179-99 (1989);

- Figge H.L., et al., *Comparison of Excretion of Nicotinuric Acid After Ingestion of Two Controlled Release Nicotinic Acid Preparations in Man*, 28(12) J. Clin. Pharmacol., 1136-1140 at 1137 (1988);

- Whelan A.M., et al., *The Effect of Aspirin on Niacin-Induced Cutaneous Reactions*, 34(2) J. Fam. Prac., 34(2): 165-168 at 165-166 (1992);

- U.S. Patent No. 5,773,453;

- the general knowledge and common sense of those of ordinary skill in the art regarding methods of administration of extended release niacin;

- the general knowledge and common sense of those of ordinary skill in the art regarding extended release drug formulation development.

### D.  Secondary Considerations of Nonobviousness

1.  Whether Plaintiffs have carried their burden of showing the existence of any secondary considerations of non-obviousness with respect to the asserted claims of the patents-in-suit, that such secondary considerations have a nexus to the invention(s) of those claims, and that such secondary considerations are of sufficient weight to override a *prima facie* case of obviousness.

2.  Whether the alleged inventions of the asserted claims of the patents-in-suit are unexpectedly superior to the prior art with respect to the frequency with which those products cause elevations in liver enzymes to an extent that requires discontinuation of therapy, and that any such unexpected superior property is of sufficient weight to override a *prima face* case of obviousness.

19

3.      Whether the alleged inventions of the asserted claims of the patents-in-suit are unexpectedly superior to the prior art with respect to the frequency with which those products cause elevations in glucose levels to an extent that requires discontinuation of therapy, and that any such unexpected superior property is of sufficient weight to override a *prima face* case of obviousness.

4.      Whether the alleged inventions of the asserted claims of the patents-in-suit are unexpectedly superior to the prior art with respect to the frequency with which those products cause elevations in uric acid levels to an extent that requires discontinuation of therapy, and that any such unexpected superior property is of sufficient weight to override a *prima face* case of obviousness.

5.      Whether the alleged inventions of the asserted claims of the patents-in-suit are unexpectedly superior to the prior art with respect to the frequency with which those products cause myopathy or rhabdomyolysis, and that any such unexpected superior property is of sufficient weight to override a *prima face* case of obviousness.

6.      Whether the alleged inventions of the asserted claims of the patents-in-suit are unexpectedly superior to the prior art with respect to the frequency with which those products cause myopathy and/or muscle aching and weakness when administered in combination with a statin, and that any such unexpected superior property is of sufficient weight to override a *prima face* case of obviousness.

7.      Whether Plaintiffs have carried their burden of showing that the alleged inventions of the asserted claims of the patents-in-suit are a commercial success, that any such commercial success has a nexus to the asserted claims of the patents in suit and is not the result of factors such as marketing and advertising efforts or properties or features that were already

known in the prior art, and that any such commercial success is of sufficient weight to override a *prima facie* case of obviousness.

8.        Whether Plaintiffs have carried their burden of showing that the alleged inventions of the asserted claims of the patents-in-suit have met a long-felt but unsolved need for a niacin therapy that provided the therapeutic benefits of immediate release niacin while avoiding the side effects associated with immediate release and sustained release forms of niacin, and that any such long-felt but unsolved need is of sufficient weight to override a *prima facie* case of obviousness.

9.        Whether Plaintiffs have carried their burden of showing that, prior to the invention date of the asserted claims of the patents-in-suit, others tried and failed to produce an extended release niacin product that was as effective as immediate release niacin in treating patients with lipid disorders, but minimized the flushing associated with immediate release niacin without causing increases in liver enzyme levels, glucose levels, and uric acid levels, to an extent that requires discontinuation of treatment, and that any such failure of others is of sufficient weight to override a *prima facie* case of obviousness.

10.        Whether Plaintiffs have carried their burden of showing that, prior to the invention date of the asserted claims of the patents-in-suit, others tried and failed to produce an extended release niacin plus statin product that did not cause hepatotoxicity or cause elevations in glucose and uric acid levels to an extent that required discontinuation of treatment, and that did not cause myopathy and rhabdomyolysis, while matching the efficacy of immediate release niacin, and that any such failure of others is of sufficient weight to override a *prima facie* case of obviousness.

21

11.     Whether Plaintiffs have carried their burden of showing that others expressed skepticism regarding whether the alleged inventions of the asserted claims of the patents-in-suit would serve their intended purpose and that any such skepticism is of sufficient weight to override a *prima facie* case of obviousness.

12.     Whether Plaintiffs have carried their burden of showing that the alleged inventions of the asserted claims of the patents-in-suit have received any acclaim, and that any such acclaim is of sufficient weight to override a *prima facie* case of obviousness.

13.     Whether Plaintiffs have carried their burden of showing that others have copied the alleged inventions of the asserted claims of the patents-in-suit to such a significant degree as to override a *prima facie* case of obviousness, including in light of the unique regulatory framework under which ANDAs for generic drug products are filed.

14.     Whether Niaspan, Advicor, and Simcor are covered by all of the asserted claims of the patents-in-suit.

## IV. BEST MODE

The issues of fact remaining with respect to Defendants' allegations that the asserted claims of the '428 patent are invalid for failure to satisfy the best mode requirement are as follows:

1.     Whether claims 1, 3, and 5-9 of the '428 patent are invalid for failure to meet the best mode requirement under 35 U.S.C. § 112 for failing to disclose the best mode known to the applicant at the time he filed his patent application.

2.     Whether the formulation Mr. Bova finalized and used in the clinical trials in the NDA for Niaspan, which was filed prior to the application that resulted in the '428 patent, was part of his preferred mode of the claimed invention.

## V.  WRITTEN DESCRIPTION/ ENABLEMENT

The issues of fact remaining with respect to Defendants' allegations that the asserted claims of the patents-in-suit are invalid for lack of an adequate written description and/or enablement under 35 U.S.C. § 112, ¶1 are as follows:

1.      Whether a person of ordinary skill in the art would have believed the inventors to have been in possession of the full scope of the asserted claims of the '428, '848, '930, '715, '229, '691, '967, and '035 patents.

2.      Whether a person of ordinary skill in the art would have believed the inventors to have enabled the full scope of the asserted claims of the '428, '848, '930, '715, '229, '691, '967, and '035 patents.

## VI. INDEFINITENESS

The issues of fact remaining with respect to Defendants' allegations that the asserted claims of the patents-in-suit are indefinite and therefore invalid are as follows:

1.      Whether the claims 3, 7, and 11 of the '715 patent are indefinite and thus invalid under 35 U.S.C. § 112, ¶2 for impermissibly reciting both composition and method limitations in the same claim.

2.      Whether claim 3 of the '428 patent, claims 1 and 3 of the '848 patent, claims 18, 51, 115, 133 of the '930 patent, claims 1, 5, and 9 of the '715 patent, claims 9, 17, and 25 of the '229 patent, claims 1 and 13 of the'691 patent, claim 16 of the '967 patent, and claims 1 and 21 of the '035 patent, and any claims depending from those claims, are indefinite and thus invalid under 35 U.S.C. § 112, ¶2 because they are insolubly ambiguous.

## VII.    OBVIOUSNESS TYPE DOUBLE PATENTING

The issues of fact remaining with respect to Defendants' allegations that asserted claims 2-5, 11-13, and 21-30 of the '035 patent are invalid under the doctrine of obviousness type double patenting based upon the '930 patent, '848 patent, '715 patent, '229 patent, '691 patent, and '967 patent are as follows:

1.    Whether claims 2-5, 11-13, and 21-30 of the '035 patent are invalid under the doctrine of obviousness type double patenting based upon 35 U.S.C. § 101 because the asserted claims of the '035 patent are mere obvious modifications of the claims of the '930, '848, '715, '229, '691, and '967 patents.

## VIII.   NONINFRINGEMENT

The issues of fact remaining with respect to Defendants' allegations that asserted claims of the patents-in-suit are not infringed are as follows:

1.    Whether the Plaintiffs satisfied their burden of proving Defendants' proposed products and methods of administering the same set forth in the associated product labels would infringe the asserted claims of the patents-in-suit.

# EXHIBIT F

## EXHIBIT F – ABBOTT'S STATEMENT OF THE
## ISSUES OF LAW THAT REMAIN TO BE LITIGATED

I.     **Short Summary of Issues of Law**

    A.     Claim Construction

        1.     The meaning of certain disputed claim terms in the patents-in-suit.

    B.     Infringement

        1.     Whether Watson's submission of ANDA No. 20-0601 and proposed 500 mg/40 mg extended release niacin/simvastatin product infringe claims 1, 3, and 5 of the '715 patent; claims 9 and 11 of the '229 patent; claims 1 and 3 of the '691 patent; and

        2.     Whether Watson's submission of ANDA No. 20-0601 and proposed 1000 mg/20 mg extended release niacin/simvastatin product infringe, or would induce others to infringe, claims 1, 3, 5, 6, and 8 of the '428 patent; claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144 of the '930 patent; claims 1, 3, 5, 6, and 8 of the '848 patent; claims 9 and 11 of the '715 patent; claims 25 and 27 of the '229 patent; claims 13 and 15 of the '691 patent; claims 16, 18, 25, and 26 of the '967 patent; and claims 2-5, 11-13, and 21-30 of the '035 patent.

    C.     Invalidity

        1.     Anticipation

            a)     Whether claims 1, 3, 5, 6, and 8 of the '428 patent are anticipated under 35 U.S.C. § 102;

            b)     Whether claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144 of the '930 patent are anticipated under 35 U.S.C. § 102;

- 1 -

    c)      Whether claims 1, 3, 5, 6, and 8 of the '848 patent are anticipated under 35 U.S.C. § 102;

    d)      Whether claims 1, 3, 5, 9, and 11 of the '715 patent are anticipated under 35 U.S.C. § 102;

    e)      Whether claims 9, 11, 25, and 27 of the '229 patent are anticipated under 35 U.S.C. § 102;

    f)      Whether claims 1, 3, 13, and 15 of the '691 patent are anticipated under 35 U.S.C. § 102;

    g)      Whether claims 16, 18, 25, and 26 of the '967 patent are anticipated under 35 U.S.C. § 102; and

    h)      Whether claims 2-5 and 11-13 of the '035 patent are anticipated under 35 U.S.C. § 102.

2.    <u>Obviousness</u>

    a)      Whether claims 1, 3, 5, 6, and 8 of the '428 patent are obvious under 35 U.S.C. § 103;

    b)      Whether claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144 of the '930 patent are obvious under 35 U.S.C. § 103;

    c)      Whether claims 1, 3, 5, 6, and 8 of the '848 patent are obvious under 35 U.S.C. § 103;

    d)      Whether claims 1, 3, 5, 9, and 11 of the '715 patent are obvious under 35 U.S.C. § 103;

    e)      Whether claims 9, 11, 25, and 27 of the '229 patent are obvious under 35 U.S.C. § 103;

f)      Whether claims 1, 3, 13, and 15 of the '691 patent are obvious under 35 U.S.C. § 103;

g)      Whether claims 16, 18, 25, and 26 of the '967 patent are obvious under 35 U.S.C. § 103; and

h)      Whether claims 2-5, 11-13, and 21-30 of the '035 patent are obvious under 35 U.S.C. § 103.

3.      <u>Indefiniteness</u>

a)      Whether claim 3 of the '428 patent is invalid as indefinite under 35 U.S.C. § 112;

b)      Whether claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144 of the '930 patent are invalid as indefinite under 35 U.S.C. § 112;

c)      Whether claims 1, 3, 5, 6, and 8 of the '848 patent are invalid as indefinite under 35 U.S.C. § 112;

d)      Whether claims 1, 3, 5, 9, and 11 of the '715 patent are invalid as indefinite under 35 U.S.C. § 112;

e)      Whether claims 9, 11, 25, and 27 of the '229 patent are invalid as indefinite under 35 U.S.C. § 112;

f)      Whether claims 1, 3, 13, and 15 of the '691 patent are invalid as indefinite under 35 U.S.C. § 112;

g)      Whether claims 16, 18, 25, and 26 of the '967 patent are invalid as indefinite under 35 U.S.C. § 112; and

h)      Whether claims 2-5, 11-13, 21, and 26-30 of the '035 patent are

invalid as indefinite under 35 U.S.C. § 112.

4.      <u>Enablement</u>

a)      Whether claim 3 of the '428 patent is enabled under 35 U.S.C.

§ 112;

b)      Whether claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-

144 of the '930 patent are enabled under 35 U.S.C. § 112;

c)      Whether claim 3 of the '848 patent is enabled under 35 U.S.C.

§ 112;

d)      Whether claims 1, 3, 5, 9, and 11 of the '715 patent are enabled

under 35 U.S.C. § 112;

e)      Whether claims 9, 11, 25, and 27 of the '229 patent are enabled

under 35 U.S.C. § 112;

f)      Whether claims 1, 3, 13, and 15 of the '691 patent are enabled

under 35 U.S.C. § 112;

g)      Whether claims 16, 18, 25, and 26 of the '967 patent are enabled

under 35 U.S.C. § 112; and

h)      Whether claims 2-5, 11-13, 21, and 26-30 of the '035 patent are

enabled under 35 U.S.C. § 112.

5.      <u>Written Description</u>

a)      Whether claim 3 of the '428 patent is invalid for failure to satisfy

the written description requirement under 35 U.S.C. § 112;

b)      Whether claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144 of the '930 patent are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112;

c)      Whether claim 3 of the '848 patent is invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112;

d)      Whether claims 1, 3, 5, 9, and 11 of the '715 patent are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112;

e)      Whether claims 9, 11, 25, and 27 of the '229 patent are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112;

f)      Whether claims 1, 3, 13, and 15 of the '691 patent are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112;

g)      Whether claims 16, 18, 25, and 26 of the '967 patent are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112; and

h)      Whether claims 2-5, 11-13, 21, and 26-30 of the '035 patent are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112.

6.  Best Mode

    a)  Whether claims 1, 3, 5, 6, and 8 of the '428 patent are invalid for failure to disclose the best mode of invention under 35 U.S.C. § 112.

7.  Obviousness-Type Double Patenting

    a)  Whether claims 2-5, 11-13, and 21-30 of the '035 patent are invalid for obviousness-type double patenting in view of the claims of the '930, '848, '715, '229, '967, and '691 patents.

## II. The Legal Standards Pertaining To The Issues of Law To Be Tried

### A. Claim Construction

The construction of claim terms is a matter of law, and a threshold issue that must be addressed prior to an analysis of infringement and validity. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc). As a threshold legal issue that informs the Court's analysis of the issues for trial, the parties will address the construction of certain disputed claim terms during the pretrial conference on January 3, 2012.

To construe a patent claim term, the Court should consider the claim language, specification, and prosecution history. *Id.* This "intrinsic record" is the most important source of evidence in claim construction. *See e.g.*, *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997).

The claims of a patent define the invention, and it is "an evasion of the law[] to construe [claims] in a manner different from the plain import of [their] terms. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation omitted). Claim terms are

generally given their "ordinary and customary meaning," defined as "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312-13.  "The asserted claims can be assigned a narrower scope only if there is some indication in the patent or prosecution history that the term [at issue] was meant to have a more restrictive meaning . . . ." *Saunders Group, Inc. v. Comfortrac, Inc.*, 492 F.3d 1326, 1331 (Fed. Cir. 2007) (citing *Phillips*, 415 F.3d at 1316).

Although claim construction begins with the words of the claims, the claims do not stand alone, but rather are part of "a fully integrated written instrument." *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 978).  Accordingly, the claims must be read in view of the patent specification for appropriate context. *Id.*; *Markman*, 52 F.3d at 979 (the specification "may act as a sort of dictionary, which explains the invention and may define terms used in the claims").   The claim construction that "stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316 (internal quotation omitted).

Claims ordinarily should be read so that they include the embodiments described in the patent.  A "construction that excludes all of the embodiments of an invention is 'rarely, if ever, correct.'" *Nellcor Puritan Bennett, Inc. v. Masimo Corp.*, 402 F.3d 1364, 1368 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)); *see also Oatery Co. v. IPS Corp.*, 514 F.3d 1271, 1277 (Fed. Cir. 2008) (same).  A construction that excludes the preferred embodiment is disfavored and requires highly persuasive evidentiary support. *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005); *Vitronics*, 90 F.3d at 1583.

However, it is equally fundamental that it is improper to limit a patent claim to the examples or embodiments described in the specification. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904, 906 (Fed. Cir. 2004); *see also Fuji Photo Film, Co. v. ITC*, 386 F.3d 1095, 1106 (Fed. Cir. 2004) (claim terms are not limited to particular examples provided in the specification unless the specification contains a "clear indication" of such limitation). The Federal Circuit has "repeatedly warned" that, even when the specification "describes very specific embodiments," it is error to "confin[e] the claims to those embodiments." *Phillips*, 415 F.3d at 1323.

Likewise, the Federal Circuit has regularly cautioned that courts, should not "import limitations" into claims from the specification by "confining claims to [particular] embodiments." *Phillips*, 415 F.3d at 1323; *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1370 (Fed. Cir. 2008) ("[T]his court will not at any time import limitations from the specification into the claims . . .." (quotation marks and citation omitted)); *Conoco, Inc. v. Energy & Environmental Int'l, L.C.*, 460 F.3d 1349, 1358 (Fed. Cir. 2006) (stating that "when a claim term is expressed in general descriptive words, we will not ordinarily limit the term to a numerical range that may appear in the written description or in other claims") (internal quotation omitted).

At the same time, however, a patentee may act as his or her own lexicographer – *i.e.*, specifically define his or her own terms. If the intrinsic evidence reveals a "special definition," then "the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316.

The prosecution history can further inform the meaning of claim terms by understanding how the inventors understood the claimed invention. *Id.* at 1317. However, given its potential ambiguity, the prosecution history is less important than other intrinsic evidence. *Id.*

Courts also may consider "extrinsic" evidence, such as expert testimony, dictionaries, and learned treatises, to ascertain how a skilled artisan would have understood claim terms.  *See Phillips*, 415 F.3d at 1317; *Markman*, 52 F.3d at 980.  Although extrinsic evidence carries less weight than intrinsic evidence, it may be useful "because extrinsic evidence can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, it is permissible for the district court in its sound discretion to admit and use such evidence."  *Phillips*, 415 F.3d at 1319.

B.    <u>Infringement</u>

Infringement is an issue on which Abbott bears the burden of proof by a preponderance of the evidence.  To prove infringement under 35 U.S.C. § 271(e)(2)(A), Abbott must prove that Watson filed "an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent."  35 U.S.C. § 271(e)(2)(A); *see also In re Omeprazole Patent Litigation*, 536 F.3d 1361, 1367 (Fed. Cir. 2008).  "To prove direct infringement, the plaintiff must establish by a preponderance of the evidence that one or more claims of the patent read on the accused device literally or under the doctrine of equivalents."  *Medtronic, Inc. v. Boston Scientific Corp.*, 2011 WL 1193381, at *8 (D. Del., Mar. 30, 2011) (citing *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001)).  A party may also indirectly infringe a patent under 35 U.S.C. § 271(b) by inducing another party to make, use, offer to sell, or sell a patented invention in the United States.  Inducement requires the alleged infringer knowingly to induce infringement and possess specific intent to encourage direct infringement by another.  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc* in relevant part).  Where an alleged infringer includes instructions in its proposed drug label that

- 9 -

will cause some users to infringe asserted method claims, it meets the requisite specific intent for

induced infringement. *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1060 (Fed. Cir. 2010).

Abbott will seek to prove at trial infringement of the asserted claims by Watson's accused

products or by the use of those products in accordance with Watson's proposed product labels,

either literally or under the doctrine of equivalents.  "To establish literal infringement, 'every

limitation set forth in a claim must be found in an accused product, exactly.'"  *Medtronic*, 2011

WL 1193381 at *8 (quoting *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed.

Cir. 1995)).

A product infringes an asserted patent claim under the doctrine of equivalents if it

includes parts or steps that are identical or equivalent to the requirements of the claim.  *Warner-*

*Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 38-40 (1997).  An accused product

is equivalent to a requirement of an asserted claim if the differences between them are

insubstantial.  *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co*., 339 U.S. 605, 607 (1950)

(the doctrine of equivalents prevents an infringer from making "unimportant and insubstantial

changes and substitutions in the patent which, though adding nothing, would be enough to take

the copied matter outside the claim, and hence outside the reach of law."); *TIP Sys., LLC v.*

*Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1377 (Fed. Cir. 2008) ("Infringement under the

doctrine of equivalents may be found when the accused device contains an insubstantial change

from the claimed invention.") (internal quotation marks omitted).  One way to determine

equivalency is to look at whether or not the accused product performs substantially the same

function, in substantially the same way, to achieve substantially the same result as the claimed

invention.  *See, e.g., TIP Sys.*, 529 F.3d at 1376; *Abraxis Bioscience, Inc. v. Mayne Pharma*

*(USA) Inc.*, 467 F.3d 1370, 1379 (Fed. Cir. 2006); *see also Graver Tank,* 339 U.S. at 608.

Equivalency is determined by what was known at the time of the activities accused of infringement, and not by what was known at the time the patent application was filed or when the patent issued.  *Warner-Jenkinson,* 520 U.S. at 37.

Abbott has the burden to prove by a preponderance of the evidence that every limitation of the asserted claims of the patents-in-suit reads on Watson's proposed extended-release niacin products or the use of Watson's products, either literally or under the doctrine of equivalents.

C.     Invalidity

Invalidity is an issue on which Watson bears the burden of proof by clear and convincing evidence.  *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1353 (Fed. Cir. 2003); 35 U.S.C. § 282.  An issued patent is presumed valid and the presumption of validity "exists at every stage of the litigation."  *Canon Computer Sys., Inc. v. Nu-Kate Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).  Given this presumption, an alleged infringer "has the ultimate burden of persuasion to prove invalidity by clear and convincing evidence, as well as the initial burden of going forward with evidence to support its invalidity allegation."  *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009).  Where the Patent and Trademark Office ("PTO") has considered particular evidence or arguments during patent prosecution, the alleged infringer bears "the added burden of overcoming the deference due to the PTO" to prevail on those issues at trial.  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008); *Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1360 (Fed. Cir. 1984) ("When an attacker simply goes over the same ground travelled by the PTO, part of the *burden* is to show that the PTO was wrong in its decision to grant the patent." (emphasis in original)).  A party may challenge the validity of a patent, for example, on the grounds of anticipation, obviousness, or indefiniteness.

- 11 -

Only if Watson meets its burden of establishing a *prima facie* case of anticipation or obviousness will Abbott have a burden of production of evidence to rebut the *prima facie* case in support of non-anticipation or non-obviousness of the patent. *Id.* at 1376-77. If Watson is unable to meet its burden of first proving a *prima facie* case of anticipation or obviousness, Abbott would have no need to present rebuttal evidence of validity. Even if Watson were to establish a *prima facie* case of anticipation or obviousness, and regardless of what rebuttal evidence Abbott presents, the burden of proof of invalidity is unshifting and remains with Watson at all times. *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1580 (Fed. Cir. 1991) (noting that the burden of proof of invalidity is "heavy and unshifting").

      1.     <u>Anticipation under 35 U.S.C. § 102</u>

A party seeking to invalidate a patent claim by anticipation must show by clear and convincing evidence that a single allegedly invalidating prior art reference contains each and every element, either expressly or inherently, of the claimed invention. *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 89, 994-95 (Fed. Cir. 2000). If a single element from a claim is not shown in the reference, then it does not anticipate. *Structrual Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 716 (Fed. Cir. 1984).

A prior art reference may anticipate without expressly disclosing a feature of the claimed invention only if "that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003); *see also King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1274 (Fed. Cir. 2010) ("[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must ***necessarily*** include the unstated limitation." (quoting *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002)) (emphasis and alteration in original)). Where

the claimed invention would not necessarily result from practicing the prior art, the prior art does not inherently anticipate. *See, e.g., Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047-48 (Fed. Cir. 1995); *see also Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348-49 (Fed. Cir. 2004); *Albany Molecular Research, Inc. v. Dr. Reddy's Labs., Ltd.*, No. 09-4638, 2010 WL 2516465, at *5 (D.N.J. June 14, 2010) ("'The mere fact that a certain thing may result from a given set of circumstances is not sufficient' to establish inherency." (quoting *In re Oelrich*, 666 F.2d 578, 581 (C.C.P.A. 1981))).

Inherent anticipation—like express anticipation—requires that the reference be enabling. That is, the reference must disclose enough information such that a person of ordinary skill in the art could practice the invention without undue experimentation. *Schering*, 339 F.3d at 1381; *see also Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1346 (Fed. Cir. 2008).

A prior art reference does not anticipate if it does not enable a person of ordinary skill in the art to carry out the invention without undue experimentation. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1306 (Fed. Cir. 2006). Factors the court considers when determining whether a disclosure would require undue experimentation include: (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, and (4) the predictability or unpredictability of the art. *Elan Pharms., Inc. v. Mayo Found.*, 346 F.3d 1051, 1054-55 (Fed. Cir. 2003).

An earlier filed patent is not prior art to a later filed patent under 35 U.S.C. § 102(e) if the invention claimed in the later filed patent was conceived and reduced to practice prior to the filing date of the earlier filed patent, or conceived prior to the filing date of the earlier filed patent with diligence through reduction to practice. *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-79 (Fed. Cir. 1996); *Power Integrations, Inc. v. Fairchild Semiconductor Intern.,*

- 13 -

*Inc.*, 585 F. Supp. 2d 568, 574-576 (D. Del. 2008).  An invention is reduced to practice if it has been demonstrated to be suitable for its intended purpose.  *Mahurkar*, 79 F.3d at 1578.

It is well settled that when a prior art reference and a claim recite overlapping ranges, the prior art does not anticipate unless it describes with "specificity" the claimed range.  *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006) (holding that a prior art range of 150°C and 350°C did not anticipate a claimed range of 330°C to 450°C, and that a prior art range of 0.001% to 1.0% did not anticipate a claimed range of 0.1% to 5.0%).  Moreover, a generalized disclosure in the prior art does not anticipate if it does not provide guidance on how to make the claimed invention to achieve its beneficial properties.  *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1572 (Fed. Cir. 1992).

2.      Obviousness under 35 U.S.C. § 103

A party seeking to challenge the validity of a patent claim based on obviousness must demonstrate by clear and convincing evidence that the invention described in the patent would have been obvious to a person of ordinary skill in the art at the time the invention was made.  *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359-60 (Fed. Cir. 2007).  This determination turns on factual inquiries involving: (1) the scope and content of prior art, (2) differences between claims and prior art, (3) the level of ordinary skill in pertinent art, and (4) objective indicia of non-obviousness.  *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 (1966); *Procter & Gamble Co. v. Teva Pharmas. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009).  In determining what would have been obvious to one of ordinary skill in the art at the time of the invention, the use of hindsight is not permitted.  *KSR Intern. Co. v. Teleflex, Inc.*, 550 U.S. 398, 421 (2007).  In fact, the Federal Circuit has cautioned against "the distortion caused by hindsight bias" in an obviousness analysis.  *Id.*

A patent challenger must identify with specificity the combination of prior art references that allegedly render the claimed invention obvious. *See, e.g.*, *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1361 (Fed. Cir. 2011); *z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1355 (Fed. Cir. 2007). Thus, a vague notion that the prior art renders the claimed invention obvious is insufficient to meet the challenger's burden demonstrating obviousness with specific evidence.

When a patent challenger contends that a patent is obvious in light of a combination of prior art references, the challenger must show by clear and convincing evidence that a person of ordinary skill in the art would have had "reason to attempt to make the composition or device, or carry out the claimed process, and would have had a reasonable expectation of success in doing so." *PharmaStem Therapeutics, Inc. v. ViaCell Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007). When combining references to establish a *prima facie* case of obviousness, the alleged infringer must "'identify a reason that would have prompted a person of ordinary skill in the art to combine the elements as the new invention does.'" *See TransOcean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1303 (Fed. Cir. 2010) (quoting *KSR*, 550 U.S. at 401). Thus, the initial test for obviousness in light of a combination of prior art references has two requirements: (1) a reason to carry out the claimed invention, and (2) a reasonable expectation of success.

"If a patent challenger makes a *prima facie* showing of obviousness, the owner may rebut that showing with 'unexpected results' demonstrating 'that the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected.'" *Procter & Gamble*, 566 F.3d at 994 (quoting *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995)); *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358,

1365 (Fed. Cir. 2008) ("As this court has repeatedly explained, this evidence [of unexpected results] is not just a cumulative or confirmatory part of the obviousness calculus but constitutes independent evidence of non-obviousness.").  Secondary considerations of non-obviousness, such as the invention's satisfaction of a long-felt, unmet need, skepticism followed by acceptance, third-party praise for the invention, failure of others to achieve the invention, copying of the invention, licensing of the invention, and commercial success of the invention may also rebut a *prima facie* case of obviousness and are often the most probative evidence of non-obviousness.  *Id.* at 998; *Graham*, 383 U.S. at 17-18; *Pressure Prods. Med. Supplies v. Greatbatch Ltd.*, 599 F.3d 1308, 1319 (Fed. Cir. 2010).  In regard to the consideration of long-felt, unmet need, the need is properly measured at the time of the invention.  *Id.* at 998; *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 884 (Fed. Cir. 1998).

3. <u>Indefiniteness Under 35 U.S.C. § 112</u>

A party seeking to invalidate a patent claim based on indefiniteness under 35 U.S.C. § 112 must prove by clear and convincing evidence that "a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant area."  *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008).  Claims are indefinite "only where a person of ordinary skill in the art could not determine the bounds of the claims, *i.e.*, the claims were insolubly ambiguous" and "only if reasonable efforts at claim construction prove futile."  *Id.* at 1249; *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).  "The test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention."  *Star Scientific, Inc. v. R.J. Reynolds*

*Tobacco Co.*, 537 F.3d 1357, 1373 (Fed. Cir. 2008) (internal quotation omitted).  In particular, terms of degree are not indefinite, so long as a person of ordinary skill in the art could ascertain the bounds of the invention without undue experimentation.  *E.g.*, *Geneva Pharm., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1383-84 (Fed. Cir. 2003) ("'[E]ffective amount' is a common and generally acceptable term for pharmaceutical claims and is not ambiguous or indefinite, provided that a person of ordinary skill in the art could determine the specific amounts without undue experimentation.").

4.      Enablement Under 35 U.S.C. § 112

A party seeking to invalidate a patent for lack of enablement under 35 U.S.C. § 112 bears the burden of demonstrating by clear and convincing evidence "that ***one of ordinary skill in the art*** would be unable to make the claimed invention without undue experimentation."  *Johns Hopkins Univ. v. CellPro Inc.*, 152 F.3d 1342, 1360 (Fed. Cir. 1998) (emphasis in original).  Accordingly, the patent specification need not disclose what would already be known to a person of ordinary skill in the art at the time of the invention.  *See Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999); *see also Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1254 (Fed. Cir. 2004) ("[A] patent disclosure need not enable information within the knowledge of an ordinarily skilled artisan.  Thus, a patentee preferably omits from the disclosure any routine technology that is well known at the time of application.").  Moreover, "the fact that *some* experimentation may be necessary to produce the invention does not render the [asserted patent] invalid for lack of enablement."  *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1338 (Fed. Cir. 2006) (emphasis in original); *see also Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1143, 1155 (Fed. Cir. 2004) (rejecting enablement defense even where "trial and error [was] required to practice the claimed invention").  Rather, the challenger must demonstrate that the

- 17 -

experimentation required to practice the invention "would be unduly laborious or beyond the reach of one of ordinary skill in the art." *Koito Mfg.*, 381 F.3d at 1155.

### 5.   Written Description Under 35 U.S.C. § 112

A party seeking to invalidate a patent for failure to satisfy the written description requirement must show by clear and convincing evidence that the patent's specification fails to describe the invention "in sufficient detail that one skilled in the art can clearly conclude that the inventor invented what is claimed." *Cordis Corp. v. Medtronic Ave, Inc.*, 339 F.3d 1352, 1364 (Fed. Cir. 2003); *see also Boston Scientific Scimed, Inc. v. Cordis Corp.*, 392 F. Supp. 2d 676, 683 (D. Del. 2005) ("A challenger must provide clear and convincing evidence that persons skilled in the art would not recognize in the disclosure a description of the claimed invention."). Like the enablement requirement, "the level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).

### 6.   Best Mode Under 35 U.S.C. § 112

As an initial matter, a party seeking to invalidate a patent for failure to disclose the best mode of the invention must prove by clear and convincing evidence that "at the time the patent application was filed, the inventor possessed a best mode of practicing the claimed invention." *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1296 (Fed. Cir. 2010).  If the inventor subjectively had a best mode for the invention at the time of filing, the party challenging the patent must also show that "the inventor 'concealed' the preferred mode from the public." *Id.*

No violation of the best mode requirement results if the inventor did not possess a best mode for the claimed invention at the time of filing. *Bruning v. Hirose*, 161 F.3d 681, 687 (Fed. Cir. 1998). Moreover, the inventor need not disclose a best mode if he develops it subsequent to filing the application. *Id.* When other evidence suggests that the inventor did not have a best mode at the time of filing, later commercialization of a particular embodiment does not demonstrate a violation of the best mode requirement. *See, e.g.*, *Tex. Instrs. Inc. v. U.S. Int'l Trade Comm'n*, 871 F.2d 1054 (Fed. Cir. 1989) ("The fact that Texas Instruments may have manufactured a DRAM containing a different or better form of boosting means is not pertinent to whether the specification disclosed 'the best mode contemplated by the inventor in carrying out his invention.'"); *Atlas Powder Co. v. E.I. du Pont de Nemours & Co.*, 588 F. Supp. 1455, 1467 (N.D. Tex. 1983) ("[The inventor] had not decided on a single preferred formulation at the time the patent was filed . . . . Failure to cite the marketed version of the . . . product did not violate the best mode requirement.").

The best mode requirement relates only to the claimed invention. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1379 (Fed. Cir. 2004) ("The obligation to disclose the best mode relates to the invention that is described and claimed."). "Subject matter that is not part of the invention that is claimed need not be included in the specification, and thus is not subject to the best mode requirement." *Id.*; *see also Randomex, Inc. v. Scopus Corp.*, 849 F.2d 585, 890 (Fed. Cir. 1988).

Congress recently abolished the failure to disclose the best mode of the invention as a defense to patent infringement in newly filed infringement suits. *See* Leahy-Smith America Invents Act, Pub. L. 112-29, 125 Stat. 284, 328 (2011).

### 7.   Obviousness-Type Double Patenting

Obviousness-type double patenting is a judicially-created doctrine designed "to prevent an inventor from effectively extending the term of exclusivity by the subsequent patenting of variations that are not patentably distinct from the first-patented invention." *Applied Materials, Inc. v. Advanced Semiconductor Materials, Inc.*, 98 F.3d 1563, 1568 (1996); *see also Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009).   The obviousness-type double patenting inquiry compares the claims of an earlier patent to the claims of the asserted patent without taking into account a motivation to combine references or secondary considerations of non-obviousness. *Procter & Gamble*, 566 F.3d at 999.

## III.   **Issues Of Law That Remain To Be Litigated**

Abbott's identification of the issues of law in this case is informed by the applicable legal standards recited above.   Abbott's identification of the issues that remain to be litigated is also based on the pleadings and discovery to date and Abbott's current understanding of the corresponding arguments Watson is likely to make in attempting to establish a *prima facie* case of anticipation, obviousness, lack of written description, lack of enablement, indefiniteness, failure to disclose the best mode, and obviousness-type double patenting.   To the extent that Watson intends or attempts to introduce different or additional legal arguments, Abbott reserves its rights to contest those legal arguments, and to present any and all rebuttal evidence in response to those arguments, and will not be bound by the summary of remaining legal issues presented herein.

Based on Abbott's current understanding of Watson's properly asserted defenses, Abbott believes that the following issues of law remain to be litigated:

1.      The meaning of certain disputed claim terms in the patents-in-suit based upon the language of the claims themselves, the patents' specifications, prosecution histories, and extrinsic evidence concerning how a person of ordinary skill in the art would have understood these disputed claim terms at the time of the invention of the patents-in-suit;

2.      Whether Abbott has demonstrated by a preponderance of the evidence that Watson's generic 500 mg/40 mg extended release niacin/simvastatin product infringes claims 1, 3, and 5 of the '715 patent; claims 9 and 11 of the '229 patent; claims 1 and 3 of the '691 patent under 35 U.S.C. § 271;

3.      Whether Abbott has demonstrated by a preponderance of the evidence that Watson's generic 1000 mg/20 mg extended release niacin/simvastatin product, or its use in accordance with Watson's proposed labeling, infringes or would induce others to infringe claims 1, 3, 5, 6, and 8 of the '428 patent; claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144 of the '930 patent; claims 1, 3, 5, 6, and 8 of the '848 patent; claims 9 and 11 of the '715 patent; claims 25 and 27 of the '229 patent; claims 13 and 15 of the '691 patent; claims 16, 18, 25, and 26 of the '967 patent; and claims 2-5, 11-13, and 21-30 of the '035 patent under 35 U.S.C. § 271;

4.      Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 5, 6, and 8 of the '428 patent are anticipated under 35 U.S.C. § 102 by the asserted prior art;

5.      Whether Watson has met its burden of proving by clear and convincing evidence that claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144 of the '930 patent are anticipated under 35 U.S.C. § 102 by the asserted prior art;

6.      Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 5, 6, and 8 of the '848 patent are anticipated under 35 U.S.C. § 102 by the asserted prior art;

7.      Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 5, 9, and 11 of the '715 patent are anticipated under 35 U.S.C. § 102 by the asserted prior art;

8.      Whether Watson has met its burden of proving by clear and convincing evidence that claims 9, 11, 25, and 27 of the '229 patent are anticipated under 35 U.S.C. § 102 by the asserted prior art;

9.      Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 13, and 15 of the '691 patent are anticipated under 35 U.S.C. § 102 by the asserted prior art;

10.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 16, 18, 25, and 26 of the '967 patent are anticipated under 35 U.S.C. § 102 by the asserted prior art;

11.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 2-5 and 11-13 of the '035 patent are anticipated under 35 U.S.C. § 102 by the asserted prior art;

12.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 5, 6, and 8 of the '428 patent are obvious under 35 U.S.C. § 103 in view of the asserted prior art, either alone or in combination, including:

     a.     Whether Watson has met its burden of proving a *prima facie* case of obviousness by demonstrating by clear and convincing evidence that a person of ordinary skill in the art at the time of the inventions would have had (1) a reasoned basis to attempt to carry out the claimed methods and (2) a reasonable expectation that the claimed methods would successfully fulfill their intended purposes; and

     b.     Whether unexpected results and/or secondary indicia of non-obviousness of the inventions of the '428 patent rebut any *prima facie* case of obviousness set forth by Watson, including a long-felt need, skepticism followed by acceptance, third-party praise, failure of others, copying, licensing, and commercial success;

13.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144 of the '930 patent are obvious under 35 U.S.C. § 103 in view of the asserted prior art, either alone or in combination, including:

     a.     Whether Watson has met its burden of proving a *prima facie* case of obviousness by demonstrating by clear and convincing evidence that a person of ordinary skill in the art at the time of the inventions would have had (1) a reasoned basis to attempt to make the claimed compositions or carry out the claimed methods and (2) a reasonable expectation that the

- 23 -

claimed compositions or methods would successfully fulfill their intended

purposes; and

b.      Whether unexpected results and/or secondary indicia of non-obviousness

of the inventions of the '930 patent rebut any *prima facie* case of

obviousness set forth by Watson, including a long-felt need, skepticism

followed by acceptance, third-party praise, failure of others, copying,

licensing, and commercial success;

14.     Whether Watson has met its burden of proving by clear and convincing evidence

that claims 1, 3, 5, 6, and 8 of the '848 patent are obvious under 35 U.S.C. § 103

in view of the asserted prior art, either alone or in combination, including:

a.      Whether Watson has met its burden of proving a *prima facie* case of

obviousness by demonstrating by clear and convincing evidence that a

person of ordinary skill in the art at the time of the inventions would have

had (1) a reasoned basis to attempt to carry out the claimed methods and

(2) a reasonable expectation that the claimed methods would successfully

fulfill their intended purposes; and

b.      Whether unexpected results and/or secondary indicia of non-obviousness

of the inventions of the '848 patent rebut any *prima facie* case of

obviousness set forth by Watson, including a long-felt need, skepticism

followed by acceptance, third-party praise, failure of others, copying,

licensing, and commercial success;

15.     Whether Watson has met its burden of proving by clear and convincing evidence
that claims 1, 3, 5, 9, and 11 of the '715 patent are obvious under 35 U.S.C. § 103
in view of the asserted prior art, either alone or in combination, including:

a.      Whether Watson has met its burden of proving a *prima facie* case of
obviousness by demonstrating by clear and convincing evidence that a
person of ordinary skill in the art at the time of the inventions would have
had (1) a reasoned basis to attempt to make the claimed compositions and
(2) a reasonable expectation that the claimed compositions would
successfully fulfill their intended purposes; and

b.      Whether unexpected results and/or secondary indicia of non-obviousness
of the inventions of the '715 patent rebut any *prima facie* case of
obviousness set forth by Watson, including a long-felt need, skepticism
followed by acceptance, third-party praise, failure of others, copying,
licensing, and commercial success;

16.     Whether Watson has met its burden of proving by clear and convincing evidence
that claims 9, 11, 25, and 27 of the '229 patent are obvious under 35 U.S.C. § 103
in view of the asserted prior art, either alone or in combination, including:

a.      Whether Watson has met its burden of proving a *prima facie* case of
obviousness by demonstrating by clear and convincing evidence that a
person of ordinary skill in the art at the time of the inventions would have
had (1) a reasoned basis to attempt to make the claimed compositions and
(2) a reasonable expectation that the claimed compositions would
successfully fulfill their intended purposes; and

      b.      Whether unexpected results and/or secondary indicia of non-obviousness of the inventions of the '229 patent rebut any *prima facie* case of obviousness set forth by Watson, including a long-felt need, skepticism followed by acceptance, third-party praise, failure of others, copying, licensing, and commercial success;

17.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 13, and 15 of the '691 patent are obvious under 35 U.S.C. § 103 in view of the asserted prior art, either alone or in combination;

      a.      Whether Watson has met its burden of proving a *prima facie* case of obviousness by demonstrating by clear and convincing evidence that a person of ordinary skill in the art at the time of the inventions would have had (1) a reasoned basis to attempt to make the claimed compositions and (2) a reasonable expectation that the claimed compositions would successfully fulfill their intended purposes; and

      b.      Whether unexpected results and/or secondary indicia of non-obviousness of the inventions of the '691 patent rebut any *prima facie* case of obviousness set forth by Watson, including a long-felt need, skepticism followed by acceptance, third-party praise, failure of others, copying, licensing, and commercial success;

18.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 16, 18, 25, and 26 of the '967 patent are obvious under 35 U.S.C. § 103 in view of the asserted prior art, either alone or in combination;

a.    Whether Watson has met its burden of proving a *prima facie* case of obviousness by demonstrating by clear and convincing evidence that a person of ordinary skill in the art at the time of the inventions would have had (1) a reasoned basis to attempt to carry out the claimed methods and (2) a reasonable expectation that the claimed methods would successfully fulfill their intended purposes; and

b.    Whether unexpected results and/or secondary indicia of non-obviousness of the inventions of the '967 patent rebut any *prima facie* case of obviousness set forth by Watson, including a long-felt need, skepticism followed by acceptance, third-party praise, failure of others, copying, licensing, and commercial success;

19.    Whether Watson has met its burden of proving by clear and convincing evidence that claims 2-5, 11-13, and 21-30 of the '035 patent are obvious under 35 U.S.C. § 103 in view of the asserted prior art, either alone or in combination;

a.    Whether Watson has met its burden of proving a *prima facie* case of obviousness by demonstrating by clear and convincing evidence that a person of ordinary skill in the art at the time of the inventions would have had (1) a reasoned basis to attempt to carry out the claimed methods and (2) a reasonable expectation that the claimed methods would successfully fulfill their intended purposes; and

b.    Whether unexpected results and/or secondary indicia of non-obviousness of the inventions of the '035 patent rebut any *prima facie* case of obviousness set forth by Watson, including a long-felt need, skepticism

followed by acceptance, third-party praise, failure of others, copying, licensing, and commercial success;

20. Whether Watson has met its burden of proving by clear and convincing evidence that claims 3 of the '428 patent is indefinite under 35 U.S.C. § 112;

21. Whether Watson has met its burden of proving by clear and convincing evidence that claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144 of the '930 patent are indefinite under 35 U.S.C. § 112;

22. Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 5, 6, and 8 of the '848 patent are indefinite under 35 U.S.C. § 112;

23. Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 5, 9, and 11 of the '715 patent are indefinite under 35 U.S.C. § 112;

24. Whether Watson has met its burden of proving by clear and convincing evidence that claims 9, 11, 25, and 27 of the '229 patent are indefinite under 35 U.S.C. § 112;

25. Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 13, and 15 of the '691 patent are indefinite under 35 U.S.C. § 112;

26. Whether Watson has met its burden of proving by clear and convincing evidence that claims 16, 18, 25, and 26 of the '967 patent are indefinite under 35 U.S.C. § 112;

27.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 2-5, 11-13, 21, and 26-30 of the '035 patent are indefinite under 35 U.S.C. § 112;

28.     Whether Watson has met its burden of proving by clear and convincing evidence that claim 3 of the '428 patent is not enabled under 35 U.S.C. § 112;

29.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144 of the '930 patent are not enabled under 35 U.S.C. § 112;

30.     Whether Watson has met its burden of proving by clear and convincing evidence that claim 3 of the '848 patent is not enabled under 35 U.S.C. § 112;

31.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 5, 9, and 11 of the '715 patent are not enabled under 35 U.S.C. § 112;

32.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 9, 11, 25, and 27 of the '229 patent are not enabled under 35 U.S.C. § 112;

33.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 13, and 15 of the '691 patent are not enabled under 35 U.S.C. § 112;

34.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 16, 18, 25, and 26 of the '967 patent are not enabled under 35 U.S.C. § 112;

35.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 2-5, 11-13, 21, and 26-30 of the '035 patent are not enabled under 35 U.S.C. § 112;

36.     Whether Watson has met its burden of proving by clear and convincing evidence that claim 3 of the '428 patent is invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112;

37.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 18-21, 25, 27-29, 51, 115, 133-136, 140, and 142-144 of the '930 patent are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112;

38.     Whether Watson has met its burden of proving by clear and convincing evidence that claim 3 of the '848 patent is invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112;

39.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 5, 9, and 11 of the '715 patent are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112;

40.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 9, 11, 25, and 27 of the '229 are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112;

41.     Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 13, and 15 of the '691 patent are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112;

42. Whether Watson has met its burden of proving by clear and convincing evidence that claims 16, 18, 25, and 26 of the '967 patent are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112;

43. Whether Watson has met its burden of proving by clear and convincing evidence that claims 2-5, 11-13, 21, and 26-30 of the '035 patent are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112;

44. Whether Watson has met its burden of proving by clear and convincing evidence that claims 1, 3, 5, 6, and 8 of the '428 patent are invalid for failure to disclose the best mode of the invention under 35 U.S.C. § 112;

45. Whether Watson has met its burden of proving by clear and convincing evidence that claims 2-5, 11-13, and 21-30 of the '035 patent are invalid for obviousness-type double patenting in view of the '930, '848, '715, '229, '967, and '691 patents;

46. Whether Abbott is entitled under 35 U.S.C. § 271(e)(4)(B) to injunctive relief precluding Watson from engaging in the manufacture, use, sale, offering for sale, or importation within the United States of the proposed products of Watson's ANDA No. 20-0601 before the expiration date of last patent in this lawsuit to expire that has been infringed and not declared invalid; and

47. Any evidentiary issues raised by the parties' objections to the evidence.

# EXHIBIT G

## DEFENDANTS' STATEMENT OF
## ISSUES OF LAW REMAINING TO BE LITIGATED

Defendants submit their Statement of Issues of Law that remain to be litigated without waiving their prior positions.  Defendants reserve the right to litigate legal issues raised by Plaintiffs even if not specifically set forth herein.  To the extent that Defendants' statement of issues of fact set forth in Exhibit __ contain issues of law, those issues are incorporated herein by reference.  Should the Court determine that any issue identified in this Exhibit as an issue of law is more appropriately considered an issue of fact, Defendants incorporate such issues by reference into its statement of issues of fact.  Defendants also incorporate by reference any portion of Defendants' Brief Statement of Intended Proofs to the extent it raises additional legal issues.

The legal issues remaining to be litigated include:

1.      Whether Teva's 1000 mg / 20 mg strength accused product infringes the asserted claims of the '428, '930, '848, '715, '229, '691, '967, and '035 patents.

2.      Whether Teva's 750 mg / 20 mg strength accused product infringes the asserted claims of the '428, '930, '848, '715, '229, '691, '967, and '035 patents.

3.      Whether Teva's 1000 mg / 40 mg strength accused product infringes the asserted claims of the '428, '930, '848, '715, '229, '691, '967, and '035 patents.

4.      Whether Watson's 1000 mg / 20 mg strength accused product infringes the asserted claims of the '428, '930, '848, '715, '229, '691, '967, and '035 patents.

5.      Whether Watson 500 mg / 40 mg strength product infringes the asserted claims of the '715, '229, and '691 patents.[1]

---

[1] Plaintiffs are no longer asserting that Watson's 500 mg / 40 mg strength product infringes the '428, '930, '848, '967 or '035 patents.

6.      Whether claims 1, 3, and 5–9 of the '428 patent are anticipated under 35 U.S.C. § 102.

7.      Whether claims 1, 3, and 5–9 of the '428 patent are obvious under 35 U.S.C. § 103.Whether claim 3 of the '428 patent is indefinite under 35 U.S.C. § 112.

8.      Whether claim 3 of the '428 patent is invalid for lack of written description under 35 U.S.C. § 112.

9.      Whether claim 3 of the '428 patent is invalid for lack of enablement under 35 U.S.C. § 112.

10.     Whether claims 1, 3, and 5–9 of the '428 patent are invalid for failure to disclose the best mode under 35 U.S.C. § 112.

11.     The priority date of the '428 patent.

12.     Whether claims 18–21, 24–29, 51, 115, 133–136, and 139–144 of the '930 patent are anticipated under 35 U.S.C. § 102.

13.     Whether claims 18–21, 24–30, 51, 115, 133–36, and 139–44 of the '930 patent are obvious under 35 U.S.C. § 103.

14.     Whether claims 18–21, 24–30, 51, 115, 133–36, and 139–44 of the '930 patent are indefinite under 35 U.S.C. § 112.

15.     Whether claims 18–21, 24–30, 51, 115, 133–36, and 139–44 of the '930 patent are invalid for lack of written description under 35 U.S.C. § 112.

16.     The priority date of the '930 patent.

17.     Whether claims 1, 3, and 5–9 of the '848 patent are anticipated under 35 U.S.C. § 102.

18.     Whether claims 1, 3, and 5–9 of the '848 patent are obvious under 35 U.S.C. § 103.

19.     Whether claim 3 of the '848 patent is indefinite under 35 U.S.C. § 112

20.     Whether claim 3 of the '848 patent is invalid for lack of enablement under 35 U.S.C. § 112.

21.     Whether claim 3 of the '848 patent is invalid for lack of written description under 35 U.S.C. § 112.

22.     The priority date of the '848 patent.

23.     Whether claims 1, 3, 5, 7, 9, and 11 of the '715 patent are anticipated under 35 U.S.C. § 102.

24.     Whether claims 1, 3, 5, 7, 9, and 11 of the '715 patent are obvious under 35 U.S.C. § 103.

25.     Whether claims 1, 3, 5, 7, 9, and 11 of the '715 patent are indefinite under 35 U.S.C. § 112.

26.     Whether claims 1, 3, 5, 7, 9, and 11 of the '715 patent are invalid for lack of enablement under 35 U.S.C. § 112.

27.     Whether claims 1, 3, 5, 7, 9, and 11 of the '715 patent are invalid for lack of written description under 35 U.S.C. § 112.

28.     The priority date of the '715 patent.

29.     Whether claims 9, 11, 15, 17, 19, and 27 of the '229 patent are anticipated under 35 U.S.C. § 102.

30.     Whether claims 9, 11, 15, 17, 19, and 27 of the '229 patent are obvious under 35 U.S.C. § 103.

31.     Whether claims 9, 11, 15, 17, 19, and 27 of the '229 patent are indefinite under 35 U.S.C. § 112.

32.     Whether claims 9, 11, 15, 17, 19, 25, and 27 of the '229 patent are invalid for lack of enablement under 35 U.S.C. § 112.

33.     Whether claims 9, 11, 15, and 27 of the '229 patent are invalid for lack of written description under 35 U.S.C. § 112.

34.     The priority date of the '229 patent.

35.     Whether claims 1, 3, 13, and 15 of the '691 patent were obvious under 35 U.S.C. § 103.

36.     Whether claims 1, 3, 13, and 15 of the '691 patent are indefinite under 35 U.S.C. § 112.

37.     Whether claims 1, 3, 13, and 15 of the '691 patent are invalid for lack of enablement under 35 U.S.C. § 112.

38.     Whether claims 1, 3, 13, and 15 of the '691 patent are invalid for lack of written description under 35 U.S.C. § 112.

39.     The priority date of the '691 patent.

40.     Whether claims 1, 3, 13, 14, 16, 18, 25, and 26 of the '967 patent are obvious under 35 U.S.C. § 103.

41.     Whether claims 1, 3, 13, 14, 16, 18, 25, and 26 of the '967 patent are indefinite under 35 U.S.C. § 112.

42.     Whether claims 1, 3, 13, 14, 16, 18, 25, and 26 of the '967 patent are invalid for lack of enablement under 35 U.S.C. § 112.

43.      Whether claims 1, 3, 13, 14, 16, 18, 25, and 26 of the '967 patent are invalid for lack of written description under 35 U.S.C. § 112.

44.      The priority date of the '967 patent.

45.      Whether claims 2–5 and 11–13 of the '035 patent are anticipated under 35 U.S.C. § 102 by the NCEP report.

46.      Whether claims 2–5, 11–13, and 21–30 of the '035 patent are obvious under 35 U.S.C. § 103.

47.      Whether claims 2–5, 11–13, and 21–30 of the '035 patent are indefinite under 35 U.S.C. § 112.

48.      Whether claims 2–5, 11–13, 21, and 26–30 of the '035 patent are invalid for lack of enablement under 35 U.S.C. § 112.

49.      Whether claims 2–5, 11–13, 21, and 26–30 of the '035 patent are invalid for lack of written description under 35 U.S.C. § 112.

50.      Whether claims 2–5, 11–13, and 21–30 of the '035 patent are invalid for obviousness-type double patenting.

51.      The priority date of the '035 patent.

## LEGAL STANDARDS FOR ISSUES OF LAW

### I.  Noninfringement

1.      The determination of infringement is a two-step process.  First, the claim must be properly construed to determine its scope and meaning.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).

2.      After the claim is interpreted, it must be compared to the accused device or process to determine whether the claim's scope encompasses the accused device or process. *North Am.Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1574 (Fed. Cir. 1993).

3.      Literal infringement is established only if the properly interpreted terms of the claim read on the accused device or process.  *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468 (Fed. Cir. 1993).

4.      Plaintiffs have the burden of proving infringement by a preponderance of the evidence.  *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999).

5.      Because each element of a claim is material and essential, Plaintiffs must show the presence of each and every element in the accused device to establish literal infringement. *CharlesGreiner & Co. v. Mari-Med Mfg., Inc.*, 962 F.2d 1031, 1034 (Fed. Cir. 1992).

6.      Dependent claims contain all of the limitations of the independent claim on which they depend.  35 U.S.C. § 112, para. 4.  Thus, if an independent claim is not infringed, then each of the corresponding dependent claims cannot be infringed.  *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 798 (Fed. Cir. 1990).

7.      To establish induced infringement, Plaintiffs must prove that

   a.      Defendants knowingly induced a third party to infringe,

   b.      Defendants possessed specific intent to encourage the third party to infringement, and

      c.    the third party actually infringed.

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305–05 (Fed. Cir. 2006).  The mere knowledge of possible infringement by a third party does not amount to inducement.  *Id.*

    8.    That an accused product is bioequivalent to a marketed pharmaceutical product allegedly covered by the patent or patents at issue is irrelevant to the issue of infringement.  *See Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1349 n.3 (Fed. Cir. 2008) ("FDA equivalence is irrelevant to patent law because it involves fundamentally different inquiries"); *Abbott Labs. v. Sandoz, Inc.*, 486 F. Supp. 2d 767, 776 (N.D. Ill. 2007) ("An admission of bioequivalence is not an admission of infringement . . . .  If bioequivalency meant per se infringement, no alternative to a patented medicine could ever be offered to the public during the life of a patent.").

## II.    Invalidity

### A.    Standard of Proof

    9.    Defendants bear the burden of proving invalidity by clear and convincing evidence.  *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1036 (Fed. Cir. 2001).  When prior art or other evidence not considered in the PTO is used to establish invalidity "there is . . . no reason to defer to the PTO so far as its effect on validity is concerned."  *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984).  "Indeed, prior art not before the PTO may so clearly invalidate a patent that the burden is fully sustained merely by proving its existence and applying the proper law . . . ."  *Id.* at 1359–60.  As the Supreme Court recognized, when prior art is not disclosed to the PTO, "the rationale underlying the presumption—that the PTO, in its expertise, has approved the claim—seems much diminished."  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426 (2007).  When "the PTO did not have all material facts before it, its considered judgment may lose significant force."  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.

Ct. 2238, 2251 (2011).  "And, concomitantly, the challenger's burden to persuade the jury of its

invalidity defense by clear and convincing evidence may be easier to sustain."  *Id.*

### B.    Anticipation

10.    Under 35 U.S.C. § 102(a), a claimed invention is anticipated when the invention

known or used by others in this country or described in a printed publication in this or a foreign

country before  the claimed invention was invented.

11.    Under 35 U.S.C. § 102(b), a claimed invention is anticipated when the invention

was disclosed in a printed publication in this or a foreign country more than one year prior to the

date of the application for patent in the United States.

12.    Under 35 U.S.C. § 102(e), a claimed invention is anticipated when the inventions

was described in a published patent applications in the United States before the claimed

invention was invented or when the invention was described in a patent granted on an application

for patent by another in the United Stated before the claimed invention was invented.

13.    Anticipation is determined from the perspective of a person of ordinary skill in

the field of the invention.  *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565,

1576 (Fed. Cir. 1991), *overruled in part on other grounds*, *Abbott Labs. v. Sandoz, Inc.* 566 F.3d

1282 (Fed. Cir. 2009); *In re Graves*, 69 F.3d 1147, 1152 (Fed. Cir. 1995).

14.    A single prior art reference is invalidating if the reference discloses, either

expressly or inherently, each and every element of the asserted claim.  *Perricone v. Medicis

Pharm. Corp.*, 432 F.3d 1368, 1375 (Fed. Cir. 2005); *Scripps Clinic*, 927 F.2d at 1576.

15.    "[T]he question whether a claim limitation is inherent in a prior art reference is a

factual issue on which evidence may be introduced . . . ."  *In re Schreiber*, 128 F.3d 1473, 1477

(Fed. Cir. 1997) (citing *Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed.

Cir. 1991)).  Such evidence is viewed through the lens of persons of ordinary skill in the art.

*Continental Can Co.*, 948 F.2d at 1268.  "[I]nherency operates to anticipate entire inventions as well as single limitations within an invention."  *Matsushita Elec. Indus. Co. Ltd. v. Cinram Int'l, Inc.*, 299 F. Supp. 2d 348, 362 (D. Del. 2004) (quoting *Schering Corp. v. Geneva Pharms. Inc.*, 339 F.3d 1373, 1380 (Fed. Cir. 2003)).  "Recognition of the inherent limitation by a person of ordinary skill in the art before the critical date is not required to establish inherent anticipation."  *Id.*  Therefore, where a reference does not expressly disclose a claim element, the reference still anticipates where a person of ordinary skill in the art would understand the reference as disclosing that element, and such element was within the knowledge of that person.  *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1347 (Fed. Cir. 2000).

16.     Likewise, it is well settled that a prior art publication anticipates a claimed invention "if one of ordinary skill in the art could have combined the publication's description of the invention with his own knowledge to make the claimed invention."  *In re Donohue*, 766 F.2d 531 (Fed. Cir. 1985).  Indeed, as this Court has held:

> [A]nticipation may be established if a missing claim element is within the knowledge of one of ordinary skill in the art. This gap in the reference may be filled with recourse to extrinsic evidence. Such evidence must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill.  Thus, extrinsic evidence of the knowledge of one of ordinary skill in the art is relevant in situations where the common knowledge of technologists is not recorded in the reference; that is, where technological facts are known to those in the field of the invention, albeit not known to judges.

*DiscoVision Assocs. v. Disc. Mfg., Inc.*, 25 F. Supp. 2d 301, 344 (D. Del. 1998) (citations and quotations omitted).

17.     Proper extrinsic evidence to consider in conducting an anticipation analysis includes not only the knowledge of those persons of ordinary skill in the art, but also the

specification and prosecution history of the patent, as well as the prior art.  *See Glaverbel SocieteAnonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1554 (Fed. Cir. 1995).

18.     The Federal Circuit has explained "anticipation does not require actual performance of suggestions in a disclosure."  *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 468 F.3d 1366, 1382 (Fed. Cir. 2006) (quoting *Novo Nordisk Pharm., Inc. v. Bio-Technology Gen. Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005)).  The relevant inquiry is whether the prior art disclosure allows one of ordinary skill in the art to "reasonably understand and infer" that it discloses every element of the claim at issue.  *In re Baxter Travenol Labs*, 952 F.2d 388, 390 (Fed. Cir. 1991).

19.     The same holds true for method claims.  As the Federal Circuit explained, "in the context of a claimed method for treating a disease, a prior art reference need not disclose 'proof of efficacy' to anticipate the claim."  *Gleave*, 560 F.3d at 1335 (citing *Impax Labs., Inc. v. AventisPharms., Inc.*, 468 F.3d 1366, 1381 (Fed. Cir. 2006); *Rasmusson*, 413 F.3d at 1326).  For this reason, one cannot patent an old method by simply confirming that the method works.  *See Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1376 (Fed. Cir. 2001) (explaining that newly discovered results of known processes are not patentable because those results are inherent in the known processes).

### C.     Obviousness

20.     A patent is invalid for obviousness if the differences between the subject matter sought to be patented and the prior art would have been obvious to a person having ordinary skill in the art at the time of the claimed invention.  35 U.S.C. § 103 (2006); *Graham v. John Deere Co.*, 383 U.S. 1, 15 (1966).

21.     Obviousness *is a ques*tion of law based on underlying findings of fact.  *McNeil-PPC, Inc. v. L. Perrigo Co.,* 337 F.3d 1362, 1368 (Fed. Cir. 2003). The underlying factual inquiries are:

     a.     the level of ordinary skill in the pertinent art at the time of the invention;

     b.     the scope and content of the prior art;

     c.     the differences, if any, between the claimed invention and the prior art; and

     d.     secondary considerations, if any, of non-obviousness.

*Graham*, 383 U.S. at 17–18; *McNeil-PPC*, 337 F.3d at 1368.

22.     "[T]he results of ordinary innovation are not the subject of exclusive rights under the patent laws." *KSR*, 550 U.S. at 427.

**1.     Level of Ordinary Skill in the Art**

23.     Section 103 requires that a claim be declared invalid when the invention set forth in the claim is obvious to one of ordinary skill in the art to which the patent pertains.  *In re GPAC, Inc.*, 57 F.3d 1573, 1579, 1583–84 (Fed. Cir. 1995).  In determining the level of ordinary skill in the art, a court should consider the following factors: "(1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field." *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696 (Fed. Cir. 1983).  "Not all such factors may be present in every case, and one or more of these or other factors may predominate in a particular case." *Id.* at 696–97.  The hypothetical person of ordinary skill in the art is presumed to know all of the teachings of the prior art references in the field of the invention at the time the invention was made. *See Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1576 (Fed. Cir. 1984).

## 2.    The Scope and Content of the Prior Art

24.    In determining whether the claimed invention falls within the scope of the relevant prior art, a court first examines "the field of the inventor's endeavor" and "the particular problem with which the inventor was involved at the time the invention was made." *Monarch Knitting Mach.Corp. v. Sulzer Morat GmbH,* 139 F.3d 877, 881 (Fed. Cir. 1998) (citations and quotations omitted). Prior art references which are not within the field of the inventor's endeavor may still fall within the scope of the relevant prior art if the field of the reference is reasonably pertinent to the problem the inventor is trying to solve. *See, e.g., GPAC*, 57 F.3d at 1577–78. Furthermore, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill." *KSR*, 550 U.S. at 401.

## 3.    The Differences Between the Claimed Invention and the Prior Art

25.    In ascertaining the differences between the claims at issue and the prior art, a court must consider both the claimed invention and the prior art as a whole in light of the court's construction of the claims at issue. *See Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1479–80 (Fed. Cir. 1998). A conclusion of obviousness may be made based on a single reference or a combination of prior art references if the references, taken as a whole, would have suggested the claimed invention to one of ordinary skill in the art. *In re Merck & Co., Inc.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986).

26.    Obviousness is judged under "an expansive and flexible approach" driven by "common sense," and thus, patentability requires "more than the predictable use of prior art elements according to their established functions." *KSR*, 550 U.S. at 401–02. In *KSR*, the Supreme Court rejected the rigid application of the "teaching, suggestion and motivation" test

previously employed by the Federal Circuit, in favor of a more flexible obviousness standard. *Id.* at 419.

27.     The Court held that the obviousness analysis "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ," and it extends beyond just "published articles and the explicit content of issued patents." *Id.* at 418–19.

28.     A claim to a method of using a compound for a particular function (i.e., treating a disease) is obvious when the prior art teaches the use of a structurally similar prior art compound to provide the same function. *See Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1259 (Fed. Cir. 2007).  Likewise, a claim to a method of using a compound for a particular function (i.e., treating a disease) is obvious when the prior art discloses that compound and describes that compound's use for such function. *See, e.g.*, *Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1389 (Fed. Cir. 2010) (holding based on obviousness-type double patenting).

29.     A patent claim can be proved obvious merely by showing that the combination of elements was obvious to try because, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp." *KSR*, 550 U.S. at 402.  A combination of prior art elements is obvious when "the prior art would have suggested to one of ordinary skill in the art that [the claimed invention] should be carried out and would have a reasonable likelihood of success." *Pfizer,* 480 F.3d at 1369; *see Pharmastem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007); *In re Dow Chem. Co.,* 837 F.2d 469, 473 (Fed. Cir. 1988); *see also Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000) (noting that "[t]he ultimate

determination of obviousness does not require absolute predictability of success"). "[O]nly a reasonable expectation of success, not a guarantee, is needed." *Pfizer*, 480 F.3d 1364 (citing *In re O'Farrell*, 853 F.2d 894, 903 (Fed. Cir. 1988); *Brown & Williamson*, 229 F.3d at 1125).

### 4.    Secondary Considerations of Nonobviousness

30.    When a court reaches the conclusion that an asserted claim is *prima facie* obvious, the patentee may attempt to rebut that conclusion by presenting secondary considerations of nonobviousness. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999).

31.    Secondary considerations of nonobviousness may be considered "to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *Graham*, 383 U.S. at 17–18. But even when supported by substantial evidence, secondary considerations are often insufficient to overcome a *prima facie* case of obviousness. *KSR*, 550 U.S. at 427 ("Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate."); *see also Leapfrog Enters.*, 485 F.3d at 1162 (affirming this Court's finding of obviousness based on the strong *prima facie* obviousness showing despite "substantial evidence" of secondary considerations). Such evidence will not save a patent where there is "strong evidence of obviousness." *Brown &Williamson,* 229 F.3d at 1131. "The rationale for giving weight to the so-called 'secondary considerations' is that they provide objective evidence of how the patented device is viewed in the marketplace, by those directly interested in the product." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988) (citing *Graham,* 383 U.S. at 35–36).

32.    Proffered secondary considerations may or may not be relevant to a determination of non-obviousness in a particular case. *Graham*, 383 U.S. at 18 ("As indicia of obviousness or

nonobviousness, these inquiries *may* have relevancy." (emphasis added)).  "[T]he weight to be accorded evidence on secondary considerations is to be carefully appraised in relation to the facts of the actual case in which it is offered."  *Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1026 (Fed. Cir. 1985), *overruled in part on other grounds*, *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999).

33.   To establish secondary considerations of nonobviousness, mere " 'argument' and 'conjecture' are insufficient."  *Demaco Corp.,* 851 F.2d at 1393 (citing *Rosemount, Inc. v. Beckman Instruments, Inc.,* 727 F.2d 1540, 1546 (Fed. Cir. 1984)).  A patentee must establish a nexus between the evidence presented and the merits of the claimed invention, i.e., the patentee bears the burden of demonstrating "a legally and factually sufficient connection" between the evidence and the patented invention to demonstrate that the evidence offered does, in fact, corroborate the invention's nonobviousness.  *In re Paulsen,* 30 F.3d 1475, 1482 (Fed. Cir. 1994); *see also GPAC,* 57 F.3d at 1580; *Ormco Corp. v. Align Tech., Inc.,* 463 F.3d 1299, 1311–12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success.").

34.   Secondary considerations "must be commensurate in scope with the claims which the evidence is offered to support."  *In re Peterson*, 315 F.3d 1325, 1331 (Fed. Cir. 2003).

35.   Secondary considerations are legally irrelevant to the extent they relate only to unclaimed features of a commercial embodiment.  *In re Vamco Mach. & Tool, Inc.*, 752 F.2d 1564, 1577 (Fed. Cir. 1985).

36.   Secondary considerations do not control the obviousness determination.  Even in situations where secondary considerations of nonobviousness and the required nexus is established, the evidence must be of sufficient weight to override a *prima facie* determination of

obviousness. *Ryko Mfg. Co. v. NuStar, Inc.*, 950 F.2d 714, 719 (Fed. Cir. 1991). Especially in light of *KSR*, courts have been reluctant to allow secondary factors to override a strong determination of obviousness based on primary considerations, even when all evidence relating to secondary factors is resolved in favor of the patentee. *See Apple Computer, Inc. v. Burst.com, Inc.*, No. C 06-0019, 2007 WL 3342829, at *5 n.1 (N.D. Cal. Nov. 8, 2007); *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 532 F. Supp. 2d 666 (D.N.J. 2007); *AdvanceMe Inc. v. RapidPay, LLC*, 509 F. Supp. 2d 593, 625 (E.D. Tex. 2007); *Asyst Techs., Inc. v. Empak, Inc.*, No. 98-20451, 2007 WL 2255220, at *8–9 (N.D. Cal. Aug. 3, 2007); *Friskit, Inc. v. RealNetworks, Inc.*, 499 F. Supp. 2d 1145, 1154 (N.D. Cal. 2007).

37.    Even substantial secondary indicia of nonobviousness will not save an obvious invention. *See Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) (finding that substantial evidence of secondary considerations did not overcome finding of obviousness); *Pfizer*, 480 F.3d at 1372 (holding that unexpectedly superior results did "not overcome the strong showing of obviousness in this case").

### a.    Unexpected Results

38.    When a patentee attempts to rely on unexpected results of a claimed invention, the patentee must "show that the claimed invention exhibits some *superior property or advantage* that a person of ordinary skill in the art would have found surprising or unexpected" compared to the prior art. *Geisler*, 116 F.3d at 1469 (internal quotation marks omitted) (emphasis added); *see also Santarus, Inc. v. Par Pharm., Inc.*, 720 F. Supp. 2d 427, 457–58 (D. Del. 2010) ("[A] party must produce evidence demonstrating 'substantially improved' results that are unexpected in light of the prior art."). Hence, the allegedly unexpected property of the claimed invention must prove to be a *significant* benefit in comparison to the prior art. *In re Eli Lilly &Co.*, 902 F.2d 943, 948 (Fed. Cir. 1990) (finding applicant "has not shown unexpected superiority" by failure to

show "a significant aspect of his claimed invention is unexpected in light of the prior art."); *In re Nolan*, 553 F.2d 1261, 1267 (C.C.P.A. 1977) (finding the assertion of unexpected properties that were not shown to be of great significance to the claimed invention could not overcome evidence of obviousness).

39.     In order to establish this secondary consideration, a party must produce evidence demonstrating "substantially improved" results that are unexpected in light of the prior art. *In re Soni,* 54 F.3d 746, 751 (Fed. Cir. 1995). "Mere argument or conclusory statements . . . does not suffice." *Geisler,* 116 F.3d at 1470 (citation omitted), nor do "bare statements without objective evidentiary support," *CFMT, Inc. v. YieldUp Int'l Corp.,* 349 F.3d 1333, 1342 (Fed. Cir. 2003). "It is well settled that unexpected results must be established by factual evidence." *In re DeBlauwe,* 736 F.2d 699, 705 (Fed. Cir. 1984).

40.     The Federal Circuit has made it clear that, to demonstrate unexpected properties, the patentee must compare the claimed invention with the closest prior art, and not with more distant art. *See Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 970 (Fed. Cir. 2006) (stating "when unexpected results are used as evidence of nonobviousness, the results must be shown to be unexpected compared with the closest prior art" (quoting *In re BaxterTravenol Labs.*, 952 F.2d 388, 392 (Fed. Cir. 1991)); *see also Abbott Labs. v. Andrx Pharms.,Inc.*, 452 F.3d 1331, 1345 (Fed. Cir. 2006) (same); *In re De Blauwe*, 736 F.2d 699, 705 (Fed. Cir. 1984) ("[A]n applicant relying on comparative tests to rebut a prima facie case of obviousness must compare his claimed invention to the closest prior art."); *In re Wright*, 569, F.2d 1124, 1128 (C.C.P.A. 1977) (appellant's evidence "did not rebut the evidence of obviousness because it failed to compare appellant's invention with what the board considered to be the 'nearest prior art' ").

41.     When a patentee asserts a difference in properties between the claimed invention and the prior art, the difference must be in kind rather than merely degree. *Merck*, 800 F.2d at 1099. Even if a "modification results in great improvement and utility over the prior art, it may still not be patentable if the modification was within the capabilities of one skilled in the art, unless the claimed ranges 'produce a new and unexpected result which is different in kind and not merely in degree from the results of the prior art.' " *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1322 (Fed. Cir. 2004) (quoting *In re Huang*, 100 F.3d 135, 139 (Fed. Cir. 1996)). To rebut a *prima facie* case of obviousness, the evidence must "show that the properties of the [products] differed in such an appreciable degree that the difference was really unexpected." *Merck*, 800 F.2d at 1099; *see also Abbott Labs.*, 452 F.3d at 1345 (holding that it was understood in the art that side effects were linked to drug concentration in the blood and therefore it would be obvious to one of skill in the art that an extended release formulation would reduce side effects); *Huang*, 100 F.3d at 139 (holding that it was understood in the art that shock absorbing qualities of polyurethane were derived from its compressible nature and it would be obvious that increasing thickness would increase shock absorption).

### b.     Commercial Success

42.     A patentee offering evidence of "commercial success" to support its nonobviousness contention bears the burden of showing both that (i) there was, in fact, commercial success, and (ii) that any such success is attributable to the claimed invention rather than to other, unrelated factors such as advertising, aggressive marketing, pricing differentials, or unclaimed features of the product. *See Paulsen*, 30 F.3d at 1482; *see also In re DBC*, 545 F.3d 1373, 1384 (Fed. Cir. 2005).

43.     "Commercial success" does not support the nonobviousness of the claimed invention if the commercial success is due to features known in the prior art. *Tokia Corp. v.*

*Easton Enters., Inc.*, 632 F.3d 1358, 1369 (Fed. Cir. 2011); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006).

44.    Whether a product is a commercial success must be determined in the context of such product's relevant market. *Santarus,* 720 F. Supp. at 453–54. The weight given to commercial success in an obviousness determination depends on both the extent of the commercial success and the strength of the nexus between the commercial success and the merits of the claimed invention. *See Ashland Oil, Inc.*, 776 F.2d 281, 306 (Fed. Cir. 1985) ("The objective evidence of secondary considerations may in any given case be entitled to more or less weight, depending on its nature and its relationship to the merits of the invention.").

45.    Factors that may be relevant to a commercial success inquiry include the profitability of the product, displacement of other products in the marketplace, and whether the product has met internal performance goals. *See Cable Elec.*, 770 F.2d at 1026–27 (reversed on other grounds) ("Without further economic evidence . . . it would be improper to infer that the reported sales represent a substantial share of any definable market or whether the profitability per unit is anything out of the ordinary in the industry involved."); *Huang*, 100 F.3d at 140; *Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed. Cir. 1983) ("There was no evidence of market share, of growth in market share, of replacing earlier units sold by others or of dollar amounts, and no evidence of nexus between sales and the merits of the invention."); *Emerson Elec. Co. v. SpartanTool, LLC*, 223 F. Supp. 2d 856, 914 (N.D. Ohio 2002) (considering evidence that original sales expectations were exceeded).

46.    Even a strong showing of commercial success, without more, however, is insufficient by itself to counter strong evidence of obviousness. *See Richardson-Vicks Inc. v. Upjohn Co.,* 122 F.3d 1476, 1484 (Fed. Cir. 1997); *Newell Cos., v. Kenney Mfg. Co.,* 864 F.2d

757, 769 (Fed. Cir. 1988).  Regardless of the strength of the evidence of commercial success, such success still must bear a nexus to the claimed features of the product.  *See Sjolund*, 847 F.2d at 1582 ("Nor could the [fact-finder], from the bare evidence of units sold and gross receipts, draw the inference that the popularity of the [sold units] was due to the merits of the invention.").

47.    When there is a first patent that would have prevented competitors from developing and selling the technology claimed in a second patent (i.e., a blocking patent) any asserted commercial success evidence is of very limited probative value to determining obviousness of the subsequent patent.  *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1377 (Fed. Cir. 2005); *see also Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 998 n.2 (Fed. Cir. 2009) (stating that a district court "rightly gave little weight" to commercial success where the prior art was itself the subject of a pending patent application); *Senju Pharm. Co. v. Apotex Inc. et al.*, Civ No. 07-779 (SLR), 2010 U.S. Dist. LEXIS 58338, at *54 (D. Del. June 14, 2010).

### c.    Long-Felt but Unsolved Need

48.    A patentee may attempt to rely on evidence of a "long-felt *but unsolved need*" in the industry for the solution offered by a patented invention in attempting to overcome *a prima facie* finding that the invention is obvious.  *Monarch Knitting,* 139 F.3d at 884.  "[L]ong-felt need is analyzed as of the date of an articulated identified problem and evidence of efforts to solve that problem."  *Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1178 (Fed. Cir. 1993).  In the context of drugs for use in human therapy, a "long-felt" need is not present where there are already other drugs of the same class in the marketplace.  *See Aventis PharmaDeutschland GmbH v. Lupin, Ltd.,* 2006 WL 2008962, at *45 (E.D. Va. July 17, 2006) (finding that there "was simply no 'long felt need'" for a drug when "several effective" drugs of the same class were already on the market).

### d.      Skepticism and Praise

49.     In order for a patentee to rely on skepticism and later praise as secondary

considerations of nonobviousness, there must be skepticism directed to whether the claimed

invention would work in general, not to whether the invention was better suited to solve the

problem addressed than other inventions already in existence.  *Ruiz v. A.B. Chance Co.*, 357 F.3d

1270, 1274–75 (Fed. Cir. 2004).   Furthermore, there must be skepticism by *skilled artisans* prior

to the time of invention.  *Santarus*, 720 F. Supp. 2d at 453; s*ee also In re Dow Chem. Co.*, 837

F.2d 469, 473 (Fed. Cir. 1988) (explaining that it is "[t]he skepticism of an expert, expressed

before these inventors proved him wrong, [which] is entitled to fair evidentiary weight").

50.     In order for a patentee to rely on any industry praise, the patentee must prove any

such praise is attributable to material differences between the prior art and the patented invention

as opposed to features held in common between the prior art and claimed invention.  *Asyst*

*Techs.,Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008).

### e.      Copying

51.     A patentee in general may consider copying by others in the industry as a

secondary consideration of nonobviousness.  *Ecolochem, Inc. v. S. Cal. Edison Co.,* 227 F.3d

1361, 1380 (Fed. Cir. 2000).   In generic drug litigation, evidence copying is of minimal—if

any—relevance because copying "is what generic drug companies do." *Aventis Pharma*

*Deutschland GmbH*, 2006 WL 2008962, at *45 (citing Moy's Walker on Patents 9:60 (4th ed.

2005)); *see also Aventis Pharma Deutschland GmbH. v. Lupin Ltd.*, 403 F. Supp. 2d 484, 486

(E.D. Va. 2005); *Eli Lilly & Co. v. Teva Pharms. USA, Inc.*, No. IP 02-0512-C-B/S, 2004 WL

1724632, at *38 n.21 (S.D. Ind. July 29, 2004).   In the ANDA context, "given that there is a

statute in place that encourages generic drug companies to challenge patents . . . [a] copying

argument is weak." *Aventis Pharma Deutschland GmbH*, 2006 WL 2008962, at *45.   As the

Court has said, an ANDA filing "is not persuasive objective evidence of non-obviousness." *Santarus*, 720 F. Supp. 2d at 458.

**f.      Failure of Others**

52.      The failure of others who have tried but failed to develop the claimed invention can be objective evidence of nonobviousness.  *See, e.g.*, *KSR*, 550 U.S. at 406 (secondary factors are "utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented").

To establish the secondary consideration of failure of others, Plaintiffs bear the burden of producing evidence of "an articulated identified problem and *evidence of efforts* to solve that problem."  *Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1178 (Fed. Cir. 1993) (emphasis added).  Even if a plaintiff can meet its burden of proving that others have tried to solve the same problem but failed, the failure of others is probative only where the evidence shows that the prior failure occurred because "the devices lacked the claimed features.'"  *Ormco*, 463 F.3d at 1313; *see also GPAC*, 57 F.3d at 1580 ("GPAC offers no evidence that this inability or unwillingness of competitors to respond to [the] invention in the marketplace is rooted in the subject matter claimed in the [patent].  Accordingly, this secondary consideration can be accorded only little weight as evidence of nonobviousness.").

**D.      Obviousness-Type Double Patenting**

53.      A basic premise of double patenting is that the same invention cannot be patented twice.  *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1377 (Fed. Cir. 2003); *see also Perricone Corp.*, 432 F.3d 1368, 1372.  Patent law restricts a person to only one patent per invention, 35 U.S.C. § 101; and also limits the terms of the patent monopoly on such invention, 35 U.S.C. § 154(A)(2). There are two recognized types of double-patenting:  (1)

22

statutory double patenting; and (2) obviousness-type double patenting. *Perricone Corp.*, 432 F.3d at 1372.

54.     Double patenting applies when the two patents at issue have at least one common inventor or are commonly assigned or owned. *Eli Lilly Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001).

55.     The judicially created doctrine of obviousness-type double patenting is designed to prevent a patentee from obtaining a second patent on substantially the same invention. *Geneva*, 349 F.3d at 1377–78.  Obviousness-type double patenting prohibits obtaining a subsequent patent where the claims in the subsequent patent are not "patentably distinct" from the claims in the first patent.  *Id.*  A two-step test is employed to determine if obviousness-type double patenting exists.  *See Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1326 (Fed. Cir. 1999).  First, the court construes the claims in both the earlier and later patents and then overlays the later claim on the earlier claim to determine whether the later claim encompasses subject matter that was previously claimed.  *Id.*  The two claims are then analyzed to determine if they are patentably distinct.  *Id.* at 1327.  If the earlier claim anticipates the later claim or if the earlier claim renders the later claim obvious, the later claim is not patentably distinct and is invalid for obviousness-type double patenting.  *Eli Lilly Co.,* 251 F.3d at 968 ("A later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim.").

56.     In determining the distinctness of method claims, a later claimed use that is inherent or encompassed by the use of an earlier claim is not distinct. *Perricone*, 432 F.3d at 1375; *Eli Lilly*, 251 F.3d at 969.  For example, the Federal Circuit recently made it clear that a claimed method of using a composition is not patentably distinct from an earlier claimed

composition where the earlier patent's specification disclosed the later-claimed use among other possible uses. *Sun Pharm.*, 611 F.3d at 1387. In carrying out the obviousness determination, prior art may be combined with the claims of the prior issued patent to establish obviousness-type double patenting. *In re Longi*, 759 F.2d 887 (Fed. Cir. 1985).

57. Secondary considerations do not need to be considered when a defense is based on double patenting. *See Procter & Gamble*, 566 F.3d at 999; *Geneva Pharms., Inc. v.GlaxoSmithKline PLC*, 349 F.3d 1373, 1377 n.1 (Fed. Cir. 2003); *see also Astellas Pharma, Inc.v. Ranbaxy, Inc.*, No. 05-2563, 2007 WL 576341, at *4 (D.N.J. Feb. 21, 2007) (stating that "the proper inquiry for obviousness-type double patenting 'does not . . . involve an inquiry into objective criteria suggesting non-obviousness.'" (quoting *Applera Corp. v. MJ Research Inc.*, 363 F. Supp. 2d 261, 264 (D. Conn. 2005))); *Pfizer, Inc. v. Mylan Labs., Inc.*, No. 02:02CV1628, 2005 WL 2874997, at *3 (W.D. Pa. Nov. 2, 2005) (explaining that in an obviousness-type double patenting inquiry, "only the claims are to be compared, and the Court neither examines motivation to combine prior art references nor objective standards of non-obviousness" (citing *Geneva Pharms.*, 349 F.3d at 1378)).

## E.  Indefiniteness

58. Paragraph 2 of Section 112 requires that the claims of a patent "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."

59. "Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent. Otherwise, competitors cannot avoid infringement, defeating the public notice function of patent claims." *Haliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008).

24

60.     Claims are indefinite where a claim "includes a numeric limitation without disclosing which of multiple methods of measuring that number should be used, *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1340 (Fed. Cir. 2003), [or when the claim] contains a term that is 'completely dependent on a person  subjective opinion,' *Datamize LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005)." *Haliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

61.     "Even if a claim terms definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." *Haliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008).

62.     "A claim is considered indefinite if it does not reasonably apprise those skilled in the art of the its scope." *Microprocessor Enhancement Corp. v. Texas Instruments, Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008) (quoting *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383–84 (Fed. Cir. 2005)).

63.     When a claim impermissibly mixes two or more classes of patentable subject matter, the claim is indefinite. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383–84 (Fed. Cir. 2005); *Aventis Pharma S.A. v. Hospira, Inc.*, Case No. 08-496-GMS, slip op. at 21–22 (D. Del. Sept. 22, 2010) (holding composition claim invalid for reciting the method step "is used to form" or "form or is used").

## F.    Enablement

64.     For purposes of patentability, the specification of a patent must contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use it.  35 U.S.C. § 112, para. 1.  To be enabling, the specification of a patent must teach those skilled in

the art how to make and use the full scope of the claimed invention without undue experimentation. *ALZA Corp. v. Andrx Parms., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010). A court may consider the following factors when determining if a disclosure requires undue experimentation: (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims. *Id.*

65.     The Federal Circuit has held that an enabled claim must "teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *Id.* at 940. For instance, a claim that enables only one of two claimed embodiments is invalid for lack of enablement. *Id.* at 938–39.

## G.     Written Description

66.     To meet the written description requirement of 35 U.S.C. § 112, the patent specification must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (citations omitted). "The specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed. *Id.*

67.     The written description inquiry "is a question of fact. Thus, we have recognized that determining whether a patent complies with the written description requirement will necessarily vary depending on the context. Specifically, the level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on

the complexity and predictability of the relevant technology.  For generic claims, we have set forth a number of factors for evaluating the adequacy of the disclosure, including 'the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, [and] the predictability of the aspect at issue.' "  *Ariad*, 598 F.3d at 1351.

68.    As with enablement, the written description requirement is satisfied only if those "of ordinary skill in the art at the time the application was filed would recognize from the application that the inventor actually invented the full scope of the invention as finally claimed in the patent."  *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. 2004).

## H.    Best Mode

To meet the best mode requirement of 35 U.S.C. § 112, the patent specification must "set forth the best mode contemplated by the inventor of carrying out his invention."  The best mode requirement has two parts.  "The first is whether, at the time" the patent was filed, the inventor "knew of a mode of practicing [the] claimed invention that [the inventor] considered to be better than any other."  *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 927–28 (Fed. Cir. 1990).  Then, the "second part of the analysis compares what [the inventor] knew with what [the inventor] disclosed."  *Id.* at 928.  Specifically, this asks, in "largely an objective inquiry," if "the disclosure [is] adequate to enable one skilled in the art to practice the best mode or, in other words, has the inventor 'concealed' [the] preferred mode."  *Id.*

# EXHIBIT H

## EXHIBIT H – ABBOTT'S LIST OF WITNESSES TO BE CALLED LIVE OR BY DEPOSITION

1.      Plaintiffs Abbott Laboratories and Abbott Respiratory LLC (collectively, "Abbott") expect to call the witnesses identified below to testify at trial either live or by deposition.

2.      Abbott reserves the right to call substitute witnesses to the extent that a witness becomes unavailable for trial.  Abbott further reserves the right to call additional witnesses for impeachment purposes.

3.      Abbott reserves the right to call at trial any witness who appears on Watson's witness list (*see* Exhibit I).  If any of Watson's witnesses fail to appear at trial, Abbott reserves the right to use their deposition testimony.

4.      The following is a list of witnesses whom Abbott expects to call live at trial:

**Fact witnesses:**

(a)      David Bova

(b)      Eugenio Cefali

**Expert witnesses:**

(a)      Frank Sacks

(b)      Michael Bottorff

(c)      Robert Williams

(d)      Daniel Smith

5.      The following is a list of witnesses whom Abbott may call live at trial:

**Fact witnesses:**

(a)      Marianne Sutcliffe

(b)      Medgar Williams

(c)     Robert Padley

6.     The following is a list of witnesses whom Abbott may call at trial, either live or by deposition:

**Fact witnesses:**

(a)     George Toth

(b)     Mark McGovern

7.     Abbott may call in rebuttal any of the witnesses listed above.  Abbott further reserves the right to designate or counter-designate portions of deposition transcripts in rebuttal and/or to render complete any deposition designations made by Watson.

8.     Abbott reserves the right to call any witness called by Watson, including seeking testimony beyond the scope of the direct testimony of Watson's witnesses who testify at trial.

# EXHIBIT I

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Abbott Laboratories and Abbott Respiratory LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd., | ) | |
| | ) | |
| Defendants. | ) | Case No.   10-cv-00057-SLR-MPT |
| | ) | (Consolidated) |
| Abbott Laboratories and Abbott Respiratory LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Watson Laboratories, Inc.–Florida, | ) | |
| | ) | |
| Defendant. | ) | |

## Defendants' First Amended Witness List

Pursuant to Paragraph 10 of the Court's Scheduling Order dated July 29, 2010

(D.I. 29), Defendants Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries

Ltd. and Watson Laboratories, Inc.–Florida (jointly, "Defendants") identify each fact

witness they intend to call at trial.  Defendants reserve the right to:

(1) call anyone appearing on Plaintiffs' witness list;

(2) call additional witnesses in rebuttal to those witnesses called by Plaintiffs;

(3) call additional witnesses to the extent necessary to provide foundational testimony if Plaintiffs contest the authenticity or admissibility of any materials to be offered at trial;

(4) call additional witnesses to respond to issues raised after the submission of this list, such as witnesses who have not yet been deposed;

(5)     call any witness for purposes of impeachment;

(6)     substitute witnesses on this list, should any of the listed witnesses become unavailable for trial;

(7)     call any witness designated by Plaintiffs;

(8)     call for live testimony any witness previously identified to provide testimony by deposition; and

(9)     provide testimony by deposition for any witness previously identified to be called for live testimony.

Defendants intend to call the following fact witness to testify live:

1.  Vickie O'Neill.

Defendants intend to call the following fact witnesses live, or by deposition if Abbott

does not call them to testify live at trial:

1.  David Bova;

2.  Eugenio Cefali;

3.  Mark McGovern;

4.  Robert Padley;

5.  Marianne Sutcliffe;

6.  George Toth; and

7.  Medgar Williams.

Defendants intend to call the following fact witnesses by deposition:

1.  Daniel Bell;

2.  Joseph Errigo;

3.  Thomas Ferder;

4.  Keith Greathouse;

5.  Christopher Kiritsy;

      6.   David Kropp;

      7.   Kevin Lanigan; and

      8.   Kuldip Raj Malhotra.

Defendants intend to call the following expert witnesses to testify live:

      1.   Philip A. Beutel, Ph.D.;

      2.   William F. Elmquist, Ph.D.;

      3.   Joseph M. Keenan, M.D.;

      4.   Michael B. Maurin, R.Ph., Ph.D.; and

      5.   Stephen W. Schondelmeyer, Ph.D.

     In addition to the reservations above, Defendants reserve the right to add or change its witnesses in response to changes made by Plaintiffs to their arguments, witness lists, or other positions.  Defendants also reserve the right to modify the list of witnesses from whom they intend to offer testimony by deposition within four days of receiving notice from Abbott that it does not intend to call such witness to testify live at trial.

Dated:  November 21, 2011

YOUNG CONAWAY STARGATT            PHILLIPS, GOLDMAN & SPENCE, P.A.
   TAYLOR

By: s/ Christopher J. Sorenson             By: s/ James R. Hietala
John W. Shaw (#3362)                   John C. Phillips, Jr. (No. 110)
Karen E. Keller (#4489)                Megan C. Haney (No. 5016)
The Brandywine Building               1200 North Broom Street
1000 West Street, 17th Floor          Wilmington, DE 19806
P.O. Box 391                          (302) 655-4200
Wilmington , DE 19899-0391         jcp@pgslaw.com
(302) 571-6600
kkeller@ycst.com

and                                       and

Christopher J. Sorenson (admitted pro hac vice)
MERCHANT & GOULD PC
3200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
(612) 332-5300

Shane A. Brunner (admitted pro hac vice)
MERCHANT & GOULD PC
10 East Doty Street
Suite 600
Madison, Wisconsin
(608) 280-6750
*Counsel for Watson Laboratories, Inc.–Florida*

Mark D. Schuman (admitted pro hac vice)
Jeffer Ali (admitted pro hac vice)
Thomas R. Johnson (admitted pro hac vice)
Todd S. Werner (admitted pro hac vice)
Sarah M. Stensland (admitted pro hac vice)
James R. Hietala (admitted pro hac vice)
Jennell Bilek (admitted pro hac vice)
CARLSON, CASPERS, VANDENBURGH & LINDQUIST PA
225 South Sixth Street, Suite 3200
Minneapolis, Minnesota 55402
612-436-9600
twerner@ccvl.com

*Counsel for Teva Pharmaceutical Industries Ltd. and Teva Pharmaceuticals USA, Inc.*

# EXHIBIT J

## EXHIBIT J

### Abbott's Deposition Designations, Watson's Counter Designations, and the Parties' Respective Objections

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---------|------|-------------------------------|------------------------|----------------------------------|------------------------|
| Boyer, Andrew | July 27, 2011 | 8:11-13 | | | |
| | | 14:20-24 | | | |
| | | 15:4-20 | | | |
| | | 18:21-19:20 | | | |
| | | 22:6-23:7 | | | |
| | | 26:22-27:5 | | | |
| | | 27:21-28:2 | | | |
| | | 29:11-23 | | | |
| | | 31:1-10 | | | |
| | | 32:5-12 | | | |
| | | 36:3-10 | Foundation | | |
| | | 36:12-18 | | | |
| | | 36:21-37:6 | Foundation | | |
| | | 37:9-14 | | | |
| | | 49:11-53:2 | | | |
| | | 53:13 | Incomplete | | |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---|---|---|---|---|---|
| | | 67:10-68:5 | | 70:16-71:11 | H, B |
| | | 72:4-10 | | | |
| | | 72:12-25 | | 73:3-18 | H, B, K |
| | | 73:23-74:10 | | 74:11-15 | H |
| | | 81:15-23 | Foundation | 81:24-82:14 82:25-83:25 | H, K (81:24-82:14), B (81:24-82:14) H |
| | | 96:7-17 | | 96:18-97:3 | H, K (96:21-97:3) |
| | | 104:23-105:1 | Typographical error in question on line 24, "862,138,000" should be "$862,138" | 104:23 105:13-22 | NT (104:23), H (105:13-22); K (105:13-22) H |
| | | 110:6-9 | | 110:10-15 | H, S (110:15), NT (110:13-14) |
| | | 111:22-112:6 | | | |
| | | 114:20-115:10 | Foundation | | |
| | | 115:13-116:8 | | 128:18-130:10 | H |
| | | 130:11-131:1 | | | |
| Joshi, Mayank | June 30, 2011 | 5:5-7 | | | |
| | | 25:16-18 | | | |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---|---|---|---|---|---|
| | | 27:24-28:3 | | | |
| | | 46:7-14 | | | |
| | | 46:24-50:14 | | | |
| | | 54:7-15 | | 87:9-88:7 | H, LF, I, B, Improper Counter-Designation (87:14-88:7) |
| | | | | 109:14-110:17 | H, LF, I, B, Improper Counter-Designation (110:14-17) |
| | | 112:2-113:3 | | 113:4-119:12 | H, LF, B, R, Improper Counter-Designation (114:12-115:11, 116:19-117:12; 117:22-118:3, 118:6-10) |
| | | | | 141:13-142:13 | H, LF, Improper Counter-Designation (141:17-142:13) |
| | | | | 178:8-10 | H, R, I, LF, K, Improper Counter-Designation |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---|---|---|---|---|---|
| | | | | 189:11-21 | H, LF, R, Improper Counter-Designation (189:18-21) |
| | | | | 196:20-25 | H, LF, O, K, R |
| | | 197:1-8 | | | |
| Manso, Peter | Dec. 12, 2003 | 4:17-19 | | | |
| | | 10:22-11:6 | | | |
| | | 11:21-12:11 | | | |
| | | 35:7-13 | H, R, C | 35:24-25 | I, R, NT |
| | | 35:18-23 | H, R, C | 35:2-9 | |
| | | 151:22-152:6 | H, R, C, P, I, O, E | 152:12-14 152:16-24 153:20-21 154:2-3 155:19-21 | S (155:19-21), L (155:19-21), LF (155:19-21), K (155:19-21), R (155:19-21) |
| | | 154:5-155:18 | H, R, C, P, I, O, E | 155:23-25 156:2-23 | S (155:23-25), L, LF (155:23-25; 156:13-23), K (155:23-25), R (155:23-25), S (156:13-23) |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---|---|---|---|---|---|
| McGovern, Mark | Aug. 27, 2003 | 5:14-16 | H | | |
| | | 70:24-71:4 | H | | |
| | | 71:11-17 | H | | |
| | | 143:10-144:9 | C, E, F, H, P | 25:12-19 172:11-13 177:14-16, 19-21, 23 178:24-179:5 | LF (177:14-16, 19), O (177:14-16, 19) |
| | | 147:12-21 | C, E, F, H, P | 25:12-19 150:16-151:3 | I (150:16-151:3) |
| | | 155:9-12 | C, E, F, H, P | 25:12-19 | |
| | | 155:21-156:18 | C, E, F, H, P, I | 25:12-19 | |
| | | 157:16-19 | H | 25:12-19 | |
| | | 158:3-7 | C, E, F, H, P | 25:12-19 | |
| | | 174:19-21 | H | 25:12-19 174:22-24 178:24-179:5 | |
| | | 174:25 | C, E, F, H, P | 175:11-14 | K |
| | | 175:3-10 | C, E, F, H, P | 175:11-14 | K |
| | | 175:15-22 | C, E, F, H, P | 175:11-14 | K |
| | | 186:25-187:16 | C, E, F, H, P | 25:12-19 188:2-10, 18 | I (188:2-10, 18) |
| | | 188:19-21 | C, E, F, H, P | 25:12-19 188:2-10, 18 | I (188:2-10, 18) |
| | | 189:5-10 | C, E, F, H, P | 25:12-19 188:2-10, 18 172:11-13 | I (188:2-10, 18) |
| | | 189:18-24 | C, E, F, H, P | 25:12-19 188:2-10, 18 172:11-13 | I (188:2-10, 18) |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---------|------|---------------------------------|------------------------|----------------------------------|------------------------|
|  |  | 190:5-10 | C, E, F, H, P, I | 25:12-19 188:2-10, 18 190:11-14 172:11-13 | I (188:2-10, 18) |
|  |  | 190:18-191:4 | C, E, F, H, P | 25:12-19 188:2-10, 18 172:11-13 | I (188:2-10, 18) |
|  |  | 192:7-193:13 | C, E, F, H, P | 25:12-19 188:2-10, 18 193:23-25 194:8-12 172:11-13 | I (188:2-10, 18), B (193:23-25, 194:8-12) |
|  |  | 194:13-195:7 | C, E, F, H, P | 25:12-19 188:2-10, 18 195:8-18 172:11-13 | I (188:2-10, 18), B (195:8-18) |
|  |  | 199:7-13 | C, H, I | 25:12-19 |  |
|  |  | 199:21-200:2 | C, E, F, H, I, P | 25:12-19 201:11-23 |  |
|  |  | 200:21-201:10 | C, E, F, H, I, P | 25:12-19 150:16-151:3 201:11-23 172:11-13 | I (150:16-151:3) |
|  |  | 202:23-204:3 | C, E, F, H, I, P | 25:12-19 204:8-12 205:13-22 172:11-13 | I (204:8-12), B (205:13-22) |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---|---|---|---|---|---|
| | | 208:2-210:24 | C, E, F, H, P | 25:12-19<br>150:16-151:3<br>172:11-13<br>177:14-16, 19-21, 23<br>178:24-179:5<br>213:6-11<br>213:19-22<br>213:24 -214:7<br>214:10 -17<br>214:20<br>218:3-5<br>218:15-17<br>218:20-219:6<br>222:17-20 | LF (177:14-16, 19; 214:4-7, 14-17), O (177:14-16, 19), Mischaracterizes Prior Testimony (214:4-7; 218:15-17); S (213:19-22; 214:14-17, 20) S (213:6-11, 218:3-5, 222:17-20) |
| | | 211:9-24 | C, E, F, H, I, P | 25:12-19<br>150:16-151:3<br>172:11-173:2<br>213:6-11<br>213:19-22<br>213:24 -214:7<br>214:10 -17<br>214:20<br>218:3-5<br>218:15-17<br>218:20-219:6<br>222:17-20 | LF (177:14-16, 19; 214:4-7, 14-17), O (177:14-16, 19), Mischaracterizes Prior Testimony (214:4-7; 218:15-17); S (213:19-22; 214:14-17, 20) S (213:6-11, 218:3-5, 222:17-20) |
| | | 224:10-15 | C, E, F, H, P | 227:13-14<br>227:17-19<br>227:22 | |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---|---|---|---|---|---|
| | | 226:19-227:12 | C, E, F, H, P | 227:13-14 227:17-19 227:22 | 30(b)(6) (227:13-14; 227:17-19, 22), K (227:13-14; 227:17-19, 22), S (227:17-19, 22) |
| | | 242:12-17 | C, E, F, H, P | 25:12-19 | |
| | | 242:22-244:9 | C, E, F, H, P | | |
| | | 244:22-23 | C, E, F, H, P | | |
| | | 244:25-245:4 | C, E, F, H, P | | |
| | | 245:10-21 | C, E, F, H, P | | |
| | | 245:24-246:4 | C, E, F, H, P | | |
| | | 246:8-19 | C, E, F, H, P | | |
| | | 253:17-23 | C, E, F, H, I, P | | |
| | | 254:2-16 | C, E, F, H, I, P | 254:17-20 | R |
| | | 254:21-22 | C, E, F, H, I, P | 254:17-20 | R |
| | | 255:3-4 | C, E, F, H, I, P | | |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---|---|---|---|---|---|
| McGovern, Mark | Dec. 3, 2003 | 266:11-15 | E, F, H | 264:12-23 | |
| | | 266:20-269:1 | C, E, F, H, P | 264:12-23 273:22-23 274:2-8 274:12-18 274:21-275:10 | 30(b)(6) (273:22-23; 274:2-8, 12-8; 274:21-275:10), LF (273:22-23, 274:8), K (273:22-23, 274:2-8), L (274:4-8, 12-18; 274:21-275:10); Mischaracterizes Prior Testimony (274:4-8, 12-18) |
| | | 269:17-23 | C, E, F, H | 264:12-23 269:3-16 273:22-23 274:2-8 274:12-18 274:21-275:10 | 30(b)(6) (273:22-23; 274:2-8, 12-8; 274:21-275:10), LF (273:22-23, 274:8), K (273:22-23, 274:2-8), L (274:4-8, 12-18; 274:21-22); Mischaracterizes Prior Testimony (274:4-8, 12-18) |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---|---|---|---|---|---|
| | | 273:10-21 | C, E, F, H, P | 264:12-23 273:22-23 274:2-8 274:12-28 274:21-275:10 | 30(b)(6) (273:22-23; 274:2-8, 12-8; 274:21-275:10), LF (273:22-23, 274:8), K (273:22-23, 274:2-8), L (274:4-8, 12-18; 274:21-22); Mischaracterizes Prior Testimony (274:4-8, 12-18) |
| Vaughn, Janet | June 21, 2011 | 5:5-16 | | | |
| | | 23:6-9 | | | |
| | | 25:20-26:9 | | | |
| | | 29:8-23 | | | |
| | | 59:19-60:14 | | | |
| | | 61:21-62:3 | | | |
| | | 62:15-63:2 | | | |
| | | 63:21-25 | | | |
| | | 64:4-17 | | | |
| | | 64:22-65:16 | | | |
| | | 65:20-66:1 | | | |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---|---|---|---|---|---|
| | | 66:6-8 | Foundation | | |
| | | 89:23-90:20 | | 66:9-15 | NT (66:9-12), H, R |
| | | 90:25-91:2 | | 89:7-22 | H |
| | | 91:23-92:14 | | | |
| Vaughn, Janet | June 21, 2011 | 114:10-15 | | | |
| | | 115:7-116:10 | | | |
| | | 117:9-118:13 | | | |
| | | 118:25-119:3 | | | |
| | | 119:6-8 | | | |
| | | 119:10-120:1 | Foundation | | |
| | | 120:4-5 | | | |
| | | 120:7-121:1 | | | |
| | | 121:4-5 | Foundation | | |
| | | 121:7-14 | | | |
| | | 121:21-22 | | | |
| | | 121:24-122:11 | | | |
| | | 122:23-123:2 | Foundation | 123:3-10 | H, NT (123:7-8) |
| | | 123:21-124:1 | Compound question | | |
| | | 124:9-23 | Foundation | | |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---|---|---|---|---|---|
| | | 125:1-3 | | | |
| | | 128:2-129:8 | | 127:14-25 | H, NT (127:20-21) |
| | | 129:11 | Foundation; outside scope of 30(b)(6) | | |
| | | 129:21-130:7 | Foundation; outside scope of 30(b)(6) | | |
| | | 130:10 | | 129:13-19 | H, NT (129:17-18) |
| | | 131:16-25 | Foundation | | |
| | | 132:1-6 | Foundation | | |
| | | 132:12-18 | | 130:12-18 | H, NT (130:16) |
| | | 132:21-22 | | 131:7-14 | H, NT (131:11) |
| | | 134:6-9 | | | |
| | | 134:11-13 | | | |
| | | 134:15-17 | | 132:7-11 | NT (132:10-11) |
| | | 134:22-23 | Foundation | | |
| | | 134:25-135:2 | Foundation | | |
| | | 135:4-5 | | 132:24-133:3 | H |
| | | 136:25-137:14 | Foundation; outside scope of 30(b)(6); calls for legal conclusion to the extent it relates to claims of patents-in-suit | 133:18-25 | NT (133:22-25) |
| | | 137:17-18 | | 134:3-5 | NT, R |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---|---|---|---|---|---|
| | | 137:20-22 | Foundation; outside scope of 30(b)(6); calls for legal conclusion to the extent it relates to claims of patents-in-suit | | |
| | | 138:1-18 | | | |
| | | 138:21-22 | Foundation; calls for legal conclusion; outside scope of 30(b)(6) | | |
| | | 139:4-6 | Foundation; calls for legal conclusion; outside scope of 30(b)(6) | | |
| | | 139:8-10 | Foundation; calls for legal conclusion; outside scope of 30(b)(6) | | |
| | | 139:12-140:13 | Foundation; calls for legal conclusion; outside scope of 30(b)(6) | | |
| | | 140:17-20 | | 136:8-23 | H, NT (136:11-14, 22) |
| | | 141:4-17 | Foundation | | |
| | | 141:20-22 | | | |
| | | 141:24-142:3 | | | |
| | | 142:5-6 | | 137:23-25 | H |
| | | 142:17-143:1 | Foundation | | |
| | | 144:1-15 | Foundation | | |
| | | 144:19 | | | |
| | | 144:21-22 | | | |
| | | 144:25-145:4 | Foundation | | |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---|---|---|---|---|---|
| | | 145:6-8 | | | |
| | | 145:10-11 | | 140:21-141:2 | H, NT (140:23) |
| | | 145:13-22 | Foundation | | |
| | | 146:4 | | | |
| | | 146:7 | Foundation | | |
| | | 146:9-10 | Foundation | | |
| | | 146:13-14 | | 142:8-16 | H, NT (142:13) |
| | | 146:16-147:25 | | | |
| | | 148:3-4 | Outside scope of 30(b)(6); foundation | | |
| | | 148:12-20 | Outside scope of 30(b)(6); foundation | | |
| | | 149:10-11 | Outside scope of 30(b)(6); foundation | | |
| | | 149:25-150:17 | | | |
| | | 151:20-23 | Outside scope of 30(b)(6); foundation | | |
| | | 151:25-152:14 | | | |
| | | 153:23-155:2 | | | |
| | | 155:11 | Foundation | | |
| | | 155:13-156:1 | | | |
| | | 157:6-158:7 | Foundation; outside scope of 30(b)(6) | | |
| | | 158:18-159:23 | | | |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---|---|---|---|---|---|
| | | 159:25-160:5 | Foundation | | |
| | | 160:13-161:18 | Foundation | | |
| | | 163:9-16 | | | |
| | | 163:19-22 | Foundation; outside scope of 30(b)(6) | 148:21-149:9 | NT (148:21-149:1, 5, 9) |
| | | 163:24-164:1 | | | |
| | | 164:4-7 | | | |
| | | 164:9-165:11 | Foundation | | |
| | | 167:14-15 | Foundation | | |
| | | 167:17-168:1 | | | |
| | | 168:7-18 | | | |
| | | 168:25-169:5 | | | |
| | | 169:12-170:2 | | | |
| | | 170:5-6 | Foundation | | |
| | | 170:8-17 | | | |
| | | 170:23-171:19 | | | |
| | | 172:3-18 | Foundation | | |
| | | 172:21-22 | | | |
| | | 173:3-174:6 | Foundation; asked and answered | | |
| | | 174:9-11 | | | |

| Witness | Date | Plaintiffs' Direct Designations | Defendants' Objections | Defendants' Counter-Designations | Plaintiffs' Objections |
|---------|------|-------------------------------|------------------------|--------------------------------|------------------------|
| | | 174:24-175:2 | | | |
| | | 176:7-22 | | 167:10-15 | NT (167:12-13) |
| | | 177:9-178:2 | | | |
| | | 178:12-13 | | | |
| | | 178:15-16 | | | |
| | | 179:7-21 | | | |
| | | 179:25-180:9 | | | |
| | | 180:19-181:4 | | | |
| | | 182:3-25 | | | |

## Key Of Watson's Objections to Abbott's Designations

| Key | Objection |
|---|---|
| A | The exhibit has not been properly authenticated under rules 901, 902, or 903. |
| B | This is not the best evidence of the document it purports to be. |
| C | This document's or testimony's probative value is substantially outweighed by a danger of confusion of issues, undue delay, waste of time, or presentation of needlessly cumulative evidence under Rule 403. |
| E | This testimony seeks to offer an expert opinion on topics beyond the scope for which the expert was qualified under Rule 702. |
| F | No foundation has been laid to admit this document either because as no sponsoring witness has testified about it, for example, under Rule 803 or because a sponsoring witness lacks personal knowledge under Rule 611. |
| H | This document or testimony contains or embodies an out-of-court statement. It is inadmissible as hearsay if offered to prove the truth of that statement unless the proponent can qualify it as nonhearsay or an exception to hearsay under Rule 801 et seq. To the extent that it is offered for another purpose, it is confusing and prejudicial. |
| I | One or more other documents or other testimony ought to, in fairness, be considered along with this document or testimony. |
| ID | This document is an improper demonstrative exhibit that is not evidence under Rules 901 through 903 and 1002. |
| NP | This document was not properly produced during discovery or was not timely identified by Abbott and therefore it should be excluded. |
| O | This testimony or line of questioning offers or seeks to elicit opinion testimony from a lay witness beyond that permitted in Rule 701. |
| OS | This testimony is beyond the parties' agreed-upon 30(b)(6) scope and is therefore improper. |
| P | This document's or testimony's probative value is substantially outweighed by a danger of unfair prejudice under Rule 403. |
| R | This document or testimony is not relevant any issue in this case under Rules 401 and 402. |
| RM | This document or testimony is not relevant unless offered as proof of issue that is relevant to this case. |

| S | This document is an improper summary under Rule 1006 and either summarizes material that can be conveniently examined in court or is an inaccurate, incomplete, or misleading summary. |
| V&A | This question is vague and ambiguous because it is either indefinite and uncertain or susceptible to multiple interpretations. |

## Key of Abbott's Objections to Watson's Counter-Designations

| Abbreviation | Objection |
|---|---|
| B | Not Best Evidence (FRE 1002, 1003 and/or 1004) |
| C | Cumulative, Duplicative, Wasteful or Undue Delay (FRE 403) |
| H | Hearsay/Improper Use of Deposition (FRE 802 and/or FRCP 32) |
| K | Lack of Personal Knowledge/Incompetent (FRE 602) |
| L | Calls for Legal Conclusion |
| NR | Nonresponsive |
| LF | Lack of Foundation (FRE 103, 104 and/or 105) |
| O | Improper Lay or Expert Opinion (FRE 701-703) |
| R | Relevance (FRE 402) |
| S | Calls for Speculation |
| I | Incomplete (FRE 106) |
| NT | Not Testimony |
| 30(b)(6) | Beyond the Scope of the Rule 30(b)(6) Deposition Topic |

# EXHIBIT K

## EXHIBIT K

**Watson's Deposition Designations, Abbott's Counter-Designations,
Watson's Counter-Counter Designations, and the Parties' Respective Objections**

| Witness | Deposition Designations | | Plaintiffs' Objections | Plaintiffs' Counter-Designations | DEF Obj to PLF Counters | DEF Counters to PLF Counters |
|---|---|---|---|---|---|---|
| | **FROM** | **TO** | | | | |
| Thomas Ferder October 28, 2003 | | | | | | |
| | 7:13 | 8:3 | | | | |
| | 19:3 | 19:5 | | | | |
| | 19:7 | 19:9 | | | | |
| | 19:11 | 25:12 | B (24:18-20) LF; S (24:21-25:12) | 62:5; 65:3-25; 66:6-9; 66:18-67:8; 68:17-69:13; 69:24-70:8 | I, NT, R R, NT R, OD R, OD R, OD R, OD | |
| | 25:22 | 26:4 | LF; S | 62:8-19 | | |
| | 26:13 | 26:15 | | | | |
| | 26:21 | 30:5 | B (29:5-24) | | | |
| | 30:25 | 32:22 | | | | |
| | 33:3 | 33:5 | | | | |
| | 33:7 | 33:13 | | | | |
| | 35:9 | 35:17 | I (35:17) | | | |
| | 36:10 | 36:13 | LF | | | |
| | 37:12 | 37:15 | LF | | | |
| | 38:10 | 38:13 | LF | | | |

| Witness | Deposition Designations | | Plaintiffs' Objections | Plaintiffs' Counter-Designations | DEF Obj to PLF Counters | DEF Counters to PLF Counters |
|---|---|---|---|---|---|---|
| | FROM | TO | | | | |
| | 41:7 | 41:11 | LF | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Christopher Kiritsy September 18, 2003 | | | | | | |
| | 6:13 | 6:22 | | 5:6-9 | | |
| | 7:8 | 8:6 | | | | |
| | 13:18 | 14:15 | | | | |
| | 15:22 | 16:6 | | | | |
| | 74:9 | 74:10 | | | | |
| | 77:8 | 77:19 | | | | |
| | 79:10 | 79:24 | | | | |
| | 80:2 | 80:10 | | | | 170:7-8; 170:11-15; 170:19-23; 171:2-3; 171:19-24 |
| | 249:18 | 250:6 | I | 249:12-15; 250; 7-17 | R, LF, H R, LF, H | |
| | 250:23 | 252:3 | | 169:17-20; 169:23-170:6; 248:4-249:11 | R, LF, L, K, H, O R, LF, L, K, H, O R, LF | |
| | 252:23 | 253:6 | LF (253:3-6) | | | |
| | 253:9 | 253:24 | LF | | | |
| | 254:2 | 254:20 | | 254:21-255:16 | R, LF, K | |

| Witness | Deposition Designations | | Plaintiffs' Objections | Plaintiffs' Counter-Designations | DEF Obj to PLF Counters | DEF Counters to PLF Counters |
|---|---|---|---|---|---|---|
| | **FROM** | **TO** | | | | |
| | 255:17 | 256:3 | | | | |
| | 256:16 | 257:9 | LF | | | |
| | 257:15 | 258:4 | LF | 257:10-14 | | |
| | 258:7 | 258:12 | LF, K, O | 258:13-259:2 | | |
| | 259:3 | 259:14 | LF | | | |
| | | | | | | |
| | | | | | | |
| David Kropp October 30, 2003 | | | | | | |
| | 5:15 | 6:4 | | | | |
| | 7:15 | 7:19 | | | | |
| | 7:24 | 8:12 | | | | |
| | 8:23 | 9:14 | | | | |
| | 10:11 | 10:20 | | | | |
| | 15:6 | 15:7 | I | | | |
| | 15:9 | 15:14 | | | | |
| | 15:16 | 16:13 | | | | |
| | 16:17 | 16:24 | | | | |
| | 17:19 | 19:15 | | 19:16-18 | | |
| | 19:19 | 20:8 | | 20:9-16 | | |
| | 20:17 | 21:24 | | | | |
| | 22:19 | 24:19 | | | | |
| | 25:11 | 25:24 | | 25:8-9 | | |
| | 26:2 | 26:8 | | | | |
| | 26:12 | 26:20 | LF (29:12-17) | | | |
| | 26:22 | 27:15 | | | | |

| Witness | Deposition Designations | | Plaintiffs' Objections | Plaintiffs' Counter-Designations | DEF Obj to PLF Counters | DEF Counters to PLF Counters |
| --- | --- | --- | --- | --- | --- | --- |
| | FROM | TO | | | | |
| | 27:25 | 29:6 | | | | |
| | 29:17 | 31:5 | B (29:17-30:4) | 42:12-14; 42:19-20; 43:2-6 | R, OD R, OD R, OD | |
| | 32:1 | 32:10 | | 31:6-18 | | |
| | 32:17 | 34:25 | B (33:2-10) | 42:12-14; 42:19-20; 43:2-6 | | |
| | 35:4 | 38:3 | B (36:1-8; 37:1-10) | 42:12-14; 42:19-20; 43:2-6 | | |
| | 38:5 | 40:4 | B (39:1-8) | | | |
| | 43:22 | 44:5 | | | | |
| | | | | | | |
| | | | | | | |
| Joseph Errigo | | | | | | |
| | 8:10 | 8:16 | | | | |
| | 11:8 | 11:10 | | | | |
| | 11:23 | 12:3 | | | | |
| | 13:20 | 14:3 | | | | |
| | 18:17 | 18:19 | I | | | |
| | 19:2 | 19:4 | | | | |
| | 20:8 | 20:21 | | | | |
| | 21:7 | 21:10 | | | | |
| | 23:1 | 23:5 | | | | |
| | 23:17 | 24:2 | | | | |
| | 24:4 | 24:14 | | | | |
| | 24:22 | 25:9 | | | | |

| Witness | Deposition Designations | | Plaintiffs' Objections | Plaintiffs' Counter-Designations | DEF Obj to PLF Counters | DEF Counters to PLF Counters |
|---|---|---|---|---|---|---|
| | FROM | TO | | | | |
| | 25:17 | 25:24 | | | | |
| | 26:8 | 26:15 | | | | |
| | 26:19 | 26:21 | | | | |
| | 27:8 | 27:21 | B (27:15-17; 27:19-20); I (27:21) | 104:15-105:14 | R, OD | |
| | 28:12 | 28:18 | | | | |
| | 28:22 | 28:24 | NT | | | |
| | 32:19 | 32:25 | Mischaracterizes prior testimony; LF; S | 33:5-13 | R | |
| | 46:10 | 46:12 | | | | |
| | 46:14 | 47:6 | | | | |
| | 47:13 | 47:16 | | | | |
| | 47:18 | 48:6 | B (47:19-22) | 104:2-8; 104:15-105:2 | R, OD | |
| | 58:15 | 59:2 | | | | |
| | 59:9 | 59:12 | | 59:3-6; 59:13-15; 59:17-21 | | |
| | 64:11 | 65:14 | B (65:7-10); I (65:14) | 104:15-105:14 | R, OD | |
| | 65:24 | 66:3 | | | | |
| | 66:10 | 66:23 | | | | |
| | 67:3 | 67:9 | B (67:3-6) | 104:9-105:14 | R, OD | |
| | 67:11 | 67:11 | | | | |
| | 67:14 | 67:16 | | | | |
| | 67:18 | 68:3 | | | | |
| | 68:19 | 68:24 | | | | |
| | 69:1 | 69:7 | B (69:4-7) | 104:15-105:14 | R, OD | |

| Witness | Deposition Designations | | Plaintiffs' Objections | Plaintiffs' Counter-Designations | DEF Obj to PLF Counters | DEF Counters to PLF Counters |
| | FROM | TO | | | | |
|---|---|---|---|---|---|---|
| | 69:25 | 70:3 | | 69:13-24; 70:4-13 | R | |
| | 70:14 | 70:18 | | | | |
| | 72:16 | 73:3 | | | | |
| | 75:12 | 75:15 | Mischaracterizes prior testimony; LF | 73:4-14 | I | |
| | 83:22 | 83:25 | Mischaracterizes prior testimony; LF | 80:11-15; 80:19-24; 82:14-20; 106:13-18; 109:23-110:15 | | |
| | 100:6 | 100:22 | | | | |
| | 101:13 | 101:17 | | | | |
| | | | | | | |
| Keith Greathouse | | | | | | |
| | 7:12 | 7:15 | | 7:2-4 | R, I, C | |
| | 9:15 | 9:22 | | | | |
| | 10:3 | 10:5 | | | | |
| | 10:16 | 10:22 | | 10:13-15 | R, C | |
| | 11:10 | 11:13 | | | | |
| | 11:16 | 12:8 | | 40:17-41:11 | | |
| | 13:5 | 13:15 | LF, K, B | 12:21-13:2 | R, C | |
| | 15:21 | 16:6 | LF, K, B | 14:18-15:3 | R, C | |
| | 16:8 | 16:8 | LF, K, B | | | |
| | 17:4 | 17:8 | LF, K, B | | | |
| | 18:14 | 18:18 | LF, K | | | |
| | 18:21 | 18:22 | LF, K | | | |
| | 30:14 | 30:18 | LF, K, B | 29:7-16, 18-22 | R, C | |

| Witness | Deposition Designations | | Plaintiffs' Objections | Plaintiffs' Counter-Designations | DEF Obj to PLF Counters | DEF Counters to PLF Counters |
|---|---|---|---|---|---|---|
| | FROM | TO | | | | |
| | 30:20 | 30:20 | LF, K, B | | | |
| | 30:22 | 31:4 | LF | | | |
| | | | | | | |
| | | | | | | |
| Kevin Lanigan | | | | | | |
| | 4:16 | 4:18 | | | | |
| | 5:19 | 5:21 | | | | |
| | 7:15 | 7:17 | | | | |
| | 12:11 | 13:3 | | | | |
| | 14:10 | 14:22 | | | | |
| | 16:6 | 16:10 | I (16:6) | | | |
| | 16:16 | 17:21 | | | | |
| | 18:4 | 18:15 | | | | |
| | 20:2 | 20:5 | | | | |
| | 20:8 | 20:10 | I | | | |
| | 20:16 | 20:20 | | | | |
| | 20:22 | 21:16 | | | | |
| | 22:21 | 22:25 | | | | |
| | 23:4 | 23:8 | | | | |
| | 23:25 | 24:19 | | | | |
| | 24:22 | 25:1 | | | | |
| | 27:7 | 27:10 | | | | |
| | 27:17 | 27:19 | R | 26:20-25 | R, C, I | |
| | 28:1 | 28:6 | | | | |
| | 28:9 | 28:11 | | | | |
| | 28:13 | 28:16 | I (28:16) | | | |

| Witness | Deposition Designations | | Plaintiffs' Objections | Plaintiffs' Counter-Designations | DEF Obj to PLF Counters | DEF Counters to PLF Counters |
| | FROM | TO | | | | |
|---|---|---|---|---|---|---|
| | 28:23 | 29:1 | | | | |
| | 29:5 | 29:23 | B (29:19-23) | | | |
| | 30:2 | 30:11 | B | | | |
| | 30:14 | 30:17 | S | | | |
| | 30:21 | 31:3 | S | | | |
| | 31:6 | 31:8 | S | | | |
| | 31:11 | 31:21 | | | | |
| | 31:25 | 32:19 | | 33:1-4; 33:10-14; 33:18-25; 34:3-4 | R, O | |
| | 37:5 | 39:20 | | | | |
| | 39:25 | 40:2 | | | | |
| | 40:8 | 40:13 | | | | |
| | 41:19 | 43:18 | B (42:5-43:5) | | | |
| | 43:21 | 44:10 | | | | |
| | 44:12 | 46:4 | | | | |
| | 46:19 | 46:24 | | | | |
| | 49:3 | 49:5 | | | | |
| | 49:13 | 50:2 | | | | |
| | 60:21 | 60:24 | | | | |
| | 61:2 | 61:10 | | | | |
| | 61:13 | 61:15 | | 61:16-18; 61:21-22 | | |
| | 65:17 | 67:2 | I (65:17); B (66:6-9) | 54:1-8; 54:10-13; 54:16; 57:7-12; 57:16; 58:2-4; 58:8-11; 58:15; 61:23-62:1; 62:21-23; 63:2 | R | |

| Witness | Deposition Designations | | Plaintiffs' Objections | Plaintiffs' Counter-Designations | DEF Obj to PLF Counters | DEF Counters to PLF Counters |
|---|---|---|---|---|---|---|
| | FROM | TO | | | | |
| | 67:5 | 67:9 | | | | |
| | | | | | | |
| | | | | | | |
| Kuldip Malhotra October 29, 2003 | | | | | | |
| | 4:8 | 4:9 | | 4:2-5 | | |
| | 5:12 | 5:25 | | | | |
| | 6:8 | 6:19 | | | | |
| | 6:24 | 7:16 | | | | |
| | 13:6 | 13:9 | | | | |
| | 13:17 | 14:4 | | | | |
| | 16:10 | 16:18 | | | | |
| | 17:2 | 18:13 | | | | |
| | 18:24 | 19:9 | | | | |
| | 31:15 | 31:19 | | 31:20-23; 35:9-11; 35:20-23; 37:2-5 | I | 33:4-11, 33:12-13, 16-19 |
| | 32:5 | 32:13 | | 32:17-21 | I | 33:4-11, 33:12-13, 16-19 |
| | 61:9 | 62:12 | S, LF, K (61:21-62:12) | | | 62:13-21 |
| | 74:19 | 74:23 | S, LF, K | | | |
| | 76:10 | 76:15 | | 76:16-19 | | |
| | 128:17 | 129:8 | | 130:9-11, 14-22; 130:23-131:11; 132:9-12 | | |
| | 133:13 | 134:14 | LF, K, S | | | |
| | 142:21 | 142:23 | LF | 143:19-21; 143:24-144:5; 144:7-9; | LF, K, O, S | |

| Witness | Deposition Designations | | Plaintiffs' Objections | Plaintiffs' Counter-Designations | DEF Obj to PLF Counters | DEF Counters to PLF Counters |
|---|---|---|---|---|---|---|
| | FROM | TO | | | | |
| | | | | 147:6-23 | | |
| | 143:2 | 143:9 | LF, K | | | |
| | 143:12 | 143:18 | | | | |
| | 154:21 | 154:24 | | | | |
| | 156:23 | 157:2 | LF, K | 156:15-22; 157:3-8 | I | 157:9-158:2 |
| | 157:9 | 158:2 | LF, K | | | |
| | 204:23 | 205:3 | I, LF, B | | | |
| | | | | | | |
| | | | | | | |

**Key of Abbott's Objections to Watson's Designations**

| Abbreviation | Objection |
|---|---|
| B | Not Best Evidence (FRE 1002, 1003 and/or 1004) |
| C | Cumulative, Duplicative, Wasteful or Undue Delay (FRE 403) |
| H | Hearsay/Improper Use of Deposition (FRE 802 and/or FRCP 32) |
| K | Lack of Personal Knowledge/Incompetent (FRE 602) |
| L | Calls for Legal Conclusion |
| NR | Nonresponsive |
| LF | Lack of Foundation (FRE 103, 104 and/or 105) |
| O | Improper Lay or Expert Opinion (FRE 701-703) |
| R | Relevance (FRE 402) |
| S | Calls for Speculation |
| I | Incomplete (FRE 106) |
| NT | Not Testimony |
| 30(b)(6) | Beyond the Scope of the Rule 30(b)(6) Deposition Topic |

**Key Of Watson's Objections to Abbott's Counter-Designations**

| Key | Objection |
|---|---|
| A | The exhibit has not been properly authenticated under rules 901, 902, or 903. |
| B | This is not the best evidence of the document it purports to be. |
| C | This document's or testimony's probative value is substantially outweighed by a danger of confusion of issues, undue delay, waste of time, or presentation of needlessly cumulative evidence under Rule 403. |
| E | This testimony seeks to offer an expert opinion on topics beyond the scope for which the expert was qualified under Rule 702. |
| F | No foundation has been laid to admit this document either because as no sponsoring witness has testified about it, for example, under Rule 803 or because a sponsoring witness lacks personal knowledge under Rule 611. |
| H | This document or testimony contains or embodies an out-of-court statement. It is inadmissible as hearsay if offered to prove the truth of that statement unless the proponent can qualify it as nonhearsay or an exception to hearsay under Rule 801 et seq. To the extent that it is offered for another purpose, it is confusing and prejudicial. |
| I | One or more other documents or other testimony ought to, in fairness, be considered along with this document or testimony. |
| ID | This document is an improper demonstrative exhibit that is not evidence under Rules 901 through 903 and 1002. |
| NP | This document was not properly produced during discovery or was not timely identified by Abbott and therefore it should be excluded. |
| O | This testimony or line of questioning offers or seeks to elicit opinion testimony from a lay witness beyond that permitted in Rule 701. |
| OS | This testimony is beyond the parties' agreed-upon 30(b)(6) scope and is therefore improper. |

| P | This document's or testimony's probative value is substantially outweighed by a danger of unfair prejudice under Rule 403. |
|---|---|
| R | This document or testimony is not relevant any issue in this case under Rules 401 and 402. |
| RM | This document or testimony is not relevant unless offered as proof of issue that is relevant to this case. |
| S | This document is an improper summary under Rule 1006 and either summarizes material that can be conveniently examined in court or is an inaccurate, incomplete, or misleading summary. |
| V&A | This question is vague and ambiguous because it is either indefinite and uncertain or susceptible to multiple interpretations. |

# EXHIBIT L

UNITED STATES DISTRICT COURT

_____ DISTRICT OF _____DELAWARE_____

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | **EXHIBIT L** | | | | |
| | | | | | **JOINT EXHIBIT LIST** | | | | |
| PRESIDING JUDGE | | | PLAINTIFFS' ATTORNEY | | | | DEFENDANTS' ATTORNEY | | |
| TRIAL DATE(S) | | | COURT REPORTER | | | | COURTROOM DEPUTY | | |
| Abbott Laboratories, et al. v. Teva Pharmaceutical Industries, et al. | | | | | | | Case Number: 10-57 (SLR)(MPT) Consolidated | | |
| PTX. NO | DTX.NO | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | | OBJECTIONS |
| | | | | | | **PATENTS/FILE HISTORIES** | | | |
| | | JTX-1 | | | | U.S. Patent No. 6,080,428 | TV0005540 - TV0005553 | | |
| | | JTX-2 | | | | U.S. Patent No. 6,129,930 | TV0009844 - TV0009861 | | |
| | | JTX-3 | | | | U.S. Patent No. 7,011,848 | TV0022336 - TV0022348 | | |
| | | JTX-4 | | | | U.S. Patent No. 6,406,715 | TV0013706 - TV0013731 | | |
| | | JTX-5 | | | | U.S. Patent No. 6,818,229 | TV0019817 - TV0019847 | | |
| | | JTX-6 | | | | U.S. Patent No. 6,676,967 | TV0014693 - TV0014722 | | |
| | | JTX-7 | | | | U.S. Patent No. 6,746,691 | TV0015184 - TV0015211 | | |
| | | JTX-8 | | | | U.S. Patent No. 6,469,035 | TV0014328 - TV0014350 | | |
| | | JTX-9 | | | | File History for U.S. Patent No. 6,080,428 | ABB_SIM 00895092 - ABB_SIM 00895618 | | |
| | | JTX-10 | | | | File History for U.S. Patent No. 6,129,930 | ABB_SIM 00896818 - ABB_SIM 00897620 | | |
| | | JTX-11 | | | | File History for U.S. Patent No. 7,011,848 | ABB_SIM 00898223 - ABB_SIM 00898489 | | |
| | | JTX-12 | | | | File History for U.S. Patent No. 6,406,715 | ABB_SIM 00897621 - ABB_SIM 00898222 | | |
| | | JTX-13 | | | | File History for U.S. Patent No. 6,818,229 | ABB_SIM 00002488 - ABB_SIM 00002856 | | |
| | | JTX-14 | | | | File History for U.S. Patent No. 6,676,967 | ABB_SIM 00895619 - ABB_SIM 00896080 | | |
| | | JTX-15 | | | | File History for U.S. Patent No. 6,746,691 | ABB_SIM 00896081 - ABB_SIM 00896669 | | |
| | | JTX-16 | | | | File History for U.S. Patent No. 6,469,035 | TV0014351 - TV0014692 | | |
| | | JTX-17 | | | | Declaration of David J. Bova Under 37 CFR § 1.131, submitted in 08/368,378, March 27, 1996 | ABB_SIM 00000231 - ABB_SIM 00000234 | | |
| | | JTX-18 | | | | File History for U.S. Serial No. 08/124,392 | ABB_SIM 00884511 - ABB_SIM 00884580 | | |
| | | | | | | **PUBLICATIONS** | | | |
| | | JTX-19 | | | | "Report of the National Cholesterol Education Program Expert Panel on Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults," Arch Intern Med., Vol. 148, No. 1, 1988 | | | |
| | | JTX-20 | | | | "Expert Panel on Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults (Adult Treatment Panel II), Second Report of the Expert Panel on Detection Evaluation, and Treatment of High Blood Cholesterol in Adults (Adult Treatment Panel II)." | ABB_SIM 00566005 - ABB_SIM 00566187 | | |
| | | JTX-21 | | | | "Third Report of the National Cholesterol Education Program (NCEP) Expert Panel on Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults (Adult Treatment Panel III)," September 2002 | ABB_SIM 00566188 - ABB_SIM 00566450 | | |

UNITED STATES DISTRICT COURT

_____ DISTRICT OF ____DELAWARE____

| PTX. NO | DTX.NO | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---------|--------|---------|--------------|--------|----------|-------------------------|--------------|------------|
| | | JTX-22 | | | | Birjmohum, et al., "Increasing HDL cholesterol with extended-release nicotinic acid: from promise to practice," The Netherlands Journal of Medicine. 2004; 62(7/8):229-233 | ABB_SIM 00566456 - ABB_SIM 00566460 | |
| | | JTX-23 | | | | Carlson, "Pronounced lowering of serum levels of lipoprotein Lp(a) in hyperlipidaemic subjects treated with nicotinic acid," Journal of Internal Medicine 1989: 226: 271-76 | TV0145081 - TV0145087 | |
| | | JTX-24 | | | | Dalton et al., "Hepatotoxicity Associated With Sustained-Release Niacin," Am. J. Med. 93, 102-104 (1992) | ABB_SIM 01233743 - ABB_SIM 01233751 | |
| | | JTX-25 | | | | Elam et al., "Effects of Niacin on Lipid and Lipoprotein Levels and Glycemic control in Patients With Diabetes and Peripheral Arterial Disease," JAMA. 2000; 284:1263-1270. | ABB_SIM 00531306 - ABB_SIM 00531317 | |
| | | JTX-26 | | | | Etchason et al., "Niacin-Induced Hepatitis: A Potential Side Effect With Low-Dose Time-Release Niacin," Mayo Clin Proc 66, 23-28 (1991) | ABB_SIM 00883470 - ABB_SIM 00883475 | |
| | | JTX-27 | | | | Garg, et al., "Nicotinic Acid as Therapy for Dyslipidemia in Non-Insulin-Dependent Diabetes Mellitus," JAMA, August 5, 1990, Vol. 254, No. 6 | ABB_S2_00106170 - ABB_S2_00106173 | |
| | | JTX-28 | | | | Gray et al., "Efficacy and Safety of Controlled-Release Niacin in Dyslipoproteinemic Veterans", Ann Intern Med. 1994;121:252-258 | TV0044177 - TV0044184 | |
| | | JTX-29 | | | | Grundy, et al., "Efficacy, Safety, and Tolerability of Once-Daily Niacin for the Treatment of Dyslipidemia Associated With Type 2 Diabetes," Arch Intern Med. 2002;162:1568-1576 | ABB_SIM 00566527 - ABB_SIM 00566535 | |
| | | JTX-30 | | | | Henkin, et al., "Rechallenge With Crystalline Niacin After Drug-Induced Hepatitis From Sustained-Release Niacin", JAMA, July 11, 1990, Vol. 264, No. 2 | ABB_SIM 00566550 - ABB_SIM 00566552 | |
| | | JTX-31 | | | | Henkin, et al., "Niacin Revisited: Clinical Observations on an Important but Underutilized Drug," AM J MED Vol. 91, No. 102, 239-46 (1991) | ABB_SIM 00566553 - ABB_SIM 00566560 | |
| | | JTX-32 | | | | Kane, et al., Cholesterol and Glycemic Effects of Niaspan® in Patients with Type 2 Diabetes, Pharmacotherapy 2001;21(12):1473-1478 | ABB_SIM 00566568 - ABB_SIM 00566573 | |
| | | JTX-33 | | | | Knopp et al., Equivalent Efficacy of a Time-Release Form of Niacin (Niaspan) Given Once-a-Night Versus Plain Niacin in the Management of Hyperlipidemia, Metabolism 1998 Sep:47(9):1097-1104 | ABB_SIM 00566582 - ABB_SIM 00566589 | |
| | | JTX-34 | | | | Knopp, "Evaluating Niacin in its Various Forms," Am J Cardiol. 2000: 86(12A):51L-56L (2000) | ABB_SIM 00566590 - ABB_SIM 00566595 | |

UNITED STATES DISTRICT COURT

_____ DISTRICT OF _____DELAWARE_____

| PTX. NO | DTX.NO | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| | | JTX-35 | | | | Knopp, et al., "Contrasting Effects of Unmodified and Time-Release Forms of Niacin on Lipoproteins in Hyperlipidemic Subjects: Clues to Mechanism of Action of Niacin," Metabolism, Vol. 34, No. 7 (July 1985) | ABB_SIM 00539229 - ABB_SIM 00539237 | |
| | | JTX-36 | | | | Mullangi, et al., "Niacin and its metabolites:  role of LC-MS/MS bioanalytical methods and update on clinical pharmacology.  An overview," Biomed Chromatogr. (Jan. 2011), 218, 218-220. | ABB_SIM 01263130 - ABB_SIM 01263149 | |
| | | JTX-37 | | | | Mullin et al., "Fulminant Hepatic Failure After Ingestion of Sustained-Release Nicotinic Acid," Ann. Intern. Med., Vol. 111, 1989 | ABB_S2_00154772 - ABB_S2_00154774 | |
| | | JTX-38 | | | | Piepho, The Pharmacokinetics and Pharmacodynamics of Agents Proven to Raise High-Density Lipoprotein Cholesterol, 86 THE AMERICAN JOURNAL OF CARDIOLOGY 35L, 40L . | ABB_SIM 01154524 – ABB_SIM01154529 | |
| | | JTX-39 | | | | Rader et al., "Hepatic Toxicity of Unmodified and Time-Release Preparations of Niacin," 92 Amer J Med. 1992;92:77-81 | ABB_S2_00083263 - ABB_S200083267 | |
| | | | | | | **CORRESPONDENCE** | | |
| | | JTX-40 | | | | Letter dated March 15, 1989 from D. Bova to E. Schaefer | ABB_S2_00044516 | |
| | | JTX-41 | | | | Memorandum of Meeting dated December 3, 1991 re: Meeting at sponsor's request to review preliminary trials and proposed clinical development program | ABB_SIM 00682106 - ABB_SIM 00682108 | |
| | | JTX-42 | | | | Memorandum dated October 14, 1994 from D. Bell to Dave, et al. | ABB_SIM 00529306 - ABB_SIM 00529310 | |
| | | JTX-43 | | | | Letter dated August 18, 1995 from D. Raineri to S. Trostle | ABB_SIM 00534652 - ABB_SIM 00534664 | |
| | | JTX-44 | | | | Memorandum dated September 13, 1995 from M. Myers, et al. to D. Bell, et al. re: Niaspan Stability Data | ABB_SIM 00682267 - ABB_SIM 00682270 | |
| | | JTX-45 | | | | Memorandum dated March 21, 1996 from E. Cefali to D. Bell, et al. re Hypotheses containing the relationship of niacin pharmacokinetics and clinical safety and efficacy | ABB_SIM 00552464 - ABB_SIM 00552470 | |
| | | JTX-46 | | | | Memorandum dated November 14, 1996 from C. Kiritsy to D. Bell re Indirect Comparison of Niaspan, Slo-Niacin, and Enduracin, Ex. 79; Kos Pharms. v. Barr Labs. (Case No. 02 CV 1683) | ABB_SIM 00528395 | |
| | | JTX-47 | | | | Memorandum dated March 21, 1997 from S. Jenkins to D. Bova re: Report from meeting with Dr. Peter Guengerich | ABB_SIM 00530902 - ABB_SIM 00530903 | |
| | | JTX-48 | | | | Memorandum dated April 7, 1997 from S. Jenkins to D. Bova re: Report from meeting with Dr. David Jollow | ABB_SIM 00530904 - ABB_SIM 00530905 | |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF ____DELAWARE____

| PTX. NO | DTX.NO | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| | | JTX-49 | | | | Memorandum dated May 30, 1997 from E. Cefali to J. Kalimtzis, et al., re Why is Niaspan a better product than the sustained-release niacin products on the market? | ABB_S2_00069736 - ABB_S2_00069737 | |
| | | JTX-50 | | | | Memorandum dated July 7, 1997 from S. Jenkins and E. Cefali to M. Blanford re: In Vitro - In Vivo Correlation of Niaspan Using F2 Criteria in Lieu of Bioequivalence Studies Following Minor Changes in Formulation or Changes in Manufacturing Site | ABB_SIM 00534632 - ABB_SIM 00534640 | |
| | | JTX-51 | | | | Memorandum dated July 14, 1997 from S. Jenkins and G. Cefali to M. Blanford re: F2 Criteria of the Production Lots | ABB_SIM 00551705 - ABB_SIM 00551708 | |
| | | JTX-52 | | | | Letter dated December 7, 1998 from D. Bova to Dr. Schaefer | ABB_S2_00192028 - ABB_S2_00192029 | |
| | | JTX-53 | | | | Letter dated May 26, 1999 from M. McGovern to A. Gotto | ABB_SIM 00684831 | |
| | | JTX-54 | | | | Letter dated May 27, 1999 from A. Gotto to M. McGovern | ABB_SIM 00684832 | |
| | | JTX-55 | | | | Facsimile dated November 20, 2007 from K. DiStefano to M. Fossler re: F2 Values and Rationale for Waiver of BE for Niaspan Site Change | ABB_SIM 00534718- ABB_SIM 00534731 | |
| | | JTX-56 | | | | Letter from M. Parks to D. Ross re NDA 22-078 Approval (Simcor) | ABB_S2_01960446 - ABB_S2_01960480 | |
| | | JTX-57 | | | | Letter dated January 19, 1989 from D. Bova to Dr. Schaefer | ABB_S2_00044517 - ABB_S2_00044518 | |
| | | JTX-58 | | | | Facsimile dated November 11, 1997 from Karen DiStefano regarding F2 Values and Rationale for Waiver of BE for Niaspan Site Change | ABB_SIM 00534718 - ABB_SIM 00534731 | |
| | | | | | | **NDA/CLINCIAL DOCUMENTS** | | |
| | | JTX-59 | | | | A Pilot Efficacy Study of a Once-A-Day Sustained Release Niacin Formulation (Niaspan) In the Treatment of Primary Type IIa Hyperlipidemia, Protocol No. 91/02, January 31, 1991 | ABB_SIM 00529701 - ABB_SIM 00529750 | |
| | | JTX-60 | | | | NIASPAN IND, March 9, 1990 | ABB_SIM 00527732 - ABB_SIM 00527759 | |
| | | JTX-61 | | | | Study 89/04 A Single-Blind Placebo Controlled Pilot Study Comparing the Effect of Once-A-Day Versus Twice-a-Day Dosing of Niaspan on Serum Lipids, Final report, Kos Pharmaceuticals, Inc., August 1991 | ABB_S2_00024983 - ABB_S2_00025573 | |
| | | JTX-62 | | | | NDA 20-381, Volume Number 2.41 | ABB_S2_00043357 - ABB_S2_00043802 | |
| | | JTX-63 | | | | Investigation of the Effect of Sustained-Release Niacin on Serum Transaminases and Phosphorus, Protocol Number 94/07 Draft Report (July 6, 1995) | ABB_S2_00182024 - ABB_S2_00182095 | |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF ____DELAWARE____

| PTX. NO | DTX.NO | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---------|--------|---------|--------------|--------|----------|-------------------------|--------------|------------|
| | | JTX-64 | | | | A Double-Blind Multi-Center Study of the Safety and Efficacy of Niaspan (Controlled-Release Niacin) Versus Gemfibrozil in Patients With Low Levels of High-Density Lipoprotein (HDL) Cholesterol, Protocol 96/05 Phase 4, Final Report, May 15, 2001 | ABB_S2_00221432 - ABB_S2_00221626 | |
| | | JTX-65 | | | | Final Study Reports for Clinical Studies 96/08 | ABB_SIM 00530912 - ABB_SIM 00530939 | |
| | | JTX-66 | | | | Clinical Study Report 91/18; NDA 20-381 Vol. 3.8 | ABB_SIM 00004694 – ABB_SIM 00005044 | |
| | | JTX-67 | | | | Study 91/19, Kos Pharmaceuticals, NDA 20-381, Niaspan Controlled-Release Tablets, Human Pharmacokinetics and Bioavailability, Vol. 3.23 | ABB_SIM 00009066 - ABB_SIM 00009400 | |
| | | JTX-68 | | | | Clinical Study Report 91/04; NDA 20-381, Volume 3.33 | ABB_SIM 00011788 - ABB_SIM 00012142 | |
| | | JTX-69 | | | | Clinical Study Report 91/05; NDA 20-381, Volume 3.40 | ABB_SIM 00014202 - ABB_SIM 00014349 | |
| | | JTX-70 | | | | Clinical Study Report 91/05; NDA 20-381, Volume 3.41 | ABB_SIM 00014350 - ABB_SIM 00014695 | |
| | | JTX-71 | | | | Clinical Study Report 91/05; NDA 20-381, Volume 3.43 | ABB_SIM 00015144 - ABB_SIM 00015417 | |
| | | JTX-72 | | | | NDA 20-381, Vol. 3.50, Summary Tables and Graphs for 91/15 | ABB_SIM 00016860 - ABB_SIM 00017348 | |
| | | JTX-73 | | | | NDA 20-381, Vol. 3.51 Appendices for 91/15 | ABB_SIM 00017349 - ABB_SIM 00017629 | |
| | | JTX-74 | | | | NDA 20-381, Vol. 3.52, Data Listings - Appendix G for 91/15 (0 Series - 5.0 Series) | ABB_SIM 00017630 - ABB_SIM 00018096 | |
| | | JTX-75 | | | | NDA 20-381, Vol. 3.56, Data Listings - Appendix G for 91/09 (11.0 Series - 14.0 Series) | ABB_SIM 00019161 - ABB_SIM 00019636 | |
| | | JTX-76 | | | | A Multi-Center, Open-Label Trial Of The Long-Term Safety And Efficacy Of Niaspan In Patients With Primary Hyperlipoproteinemia, Protocol Number 91/09 | ABB_SIM 00020228 - ABB_SIM 00020287 | |
| | | JTX-77 | | | | Clinical Study Report 89/04; NDA 20-381, Volume 3.72 | ABB_SIM 00024891 - ABB_SIM 00025286 | |
| | | JTX-78 | | | | Clinical Study Report 91/02; NDA 20-381, Volume 3.73 | ABB_SIM 00025287 - ABB_SIM 00025705 | |
| | | JTX-79 | | | | NDA 20-381, Volume Listing for Report 91/04, A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan in Patients with Primary Hyperlipoproteinemia, Protocol No. 91/04 Final Report, Revised April 24, 1996 | ABB_SIM 00026769 - ABB_SIM 00026935 | |
| | | JTX-80 | | | | Clinical Study Report 89/04; NDA 20-381Volume Number 2.14 | ABB_SIM 00041948 - ABB_SIM 00042170 | |
| | | JTX-81 | | | | Clinical Study Report 91/02; NDA 20-381, Volume Number 2.16 | ABB_SIM 00042548 - ABB_SIM 00042709 | |
| | | JTX-82 | | | | Clinical Study Report 91/04; NDA 20-381, Volume Number 2.23 | ABB_SIM 00044757 - ABB_SIM 00045110 | |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF_____DELAWARE_____

| PTX. NO | DTX.NO | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---------|--------|---------|--------------|--------|----------|-------------------------|--------------|------------|
| | | JTX-83 | | | | Clinical Study Report 91/05; NDA 20-381, Volume Number 2.30 | ABB_SIM 00046704 - ABB_SIM 00046985 | |
| | | JTX-84 | | | | Niacin ER/Simvastatin Tablets, Kos Life Sciences, Inc., 2.7.1 Summary of Biopharmaceutic Studies and Associated Analytical Methods, Table of Contents | ABB_SIM 00077051 - ABB_SIM 00077077 | |
| | | JTX-85 | | | | Clinical Study Report: 019-03-04-CP, November 14, 2006 | ABB_SIM 00081555 - ABB_SIM 00081613 | |
| | | JTX-86 | | | | Kos Pharmaceutical, Inc., November 30, 1995, Protocol #91/19, Final Report Addendum | ABB_SIM 00255097 - ABB_SIM 00255529 | |
| | | JTX-87 | | | | Niacin extended-release/simvastatin, 2.7.1 Summary of Biopharmaceutic Studies and Associated Analytical Methods, R&D/09/652 | ABB_SIM 00296265 - ABB_SIM 00296339 | |
| | | JTX-88 | | | | Letter dated March 26, 1990 from D. Bova to Food and Drug Administration | ABB_SIM 00526840 - ABB_SIM 00527171 | |
| | | JTX-89 | | | | Food and Drug Administration, Application to Market A New Drug for Human Use or an Antibiotic Drug for Human use, Niaspan Sustained-Release Tablets | ABB_SIM 00527187 - ABB_SIM 00527396 | |
| | | JTX-90 | | | | Department of Health and Human Services Application To Market A New Drug, Biologic, Or An Antibiotic Drug For Human Use | ABB_SIM 00527557 - ABB_SIM 00527561 | |
| | | JTX-91 | | | | A Three-Way Crossover Study of the Bioavailability of Niacin From a Sustained Release Formulation When Dosed in the Fed Versus Fasted States in Reference to an Immediate Release Formulation, Protocol No. 91/01, March 3, 1991 | ABB_SIM 00529185 - ABB_SIM 00529250 | |
| | | JTX-92 | | | | Clinical Study Outline for Nicotinic Acid/Aspirin Study, Hyperlipidemic men and women | ABB_SIM 00529329 - ABB_SIM 00529336 | |
| | | JTX-93 | | | | A Three-Way Crossover Study of the Bioavailability of Niacin From a Sustained-Release Formulation When Dosed in the Fed Versus Fasted States in Reference To An Immediate-Release Formulation, Protocol No. 91/01, Final Report | ABB_SIM 00529364 - ABB_SIM 00529537 | |
| | | JTX-94 | | | | Final Study Report for Protocol 91/02, Vol. 1 | ABB_SIM 00529538 - ABB_SIM 00529700 | |
| | | JTX-95 | | | | Final Report, Protocol 91/04, Rev. 1 | ABB_SIM 00529751 - ABB_SIM 00529790 | |
| | | JTX-96 | | | | A Double-Blind Placebo Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan in Patients With Primary Hyperlipoproteinemia, Final Report, April 24, 1996 | ABB_SIM 00529869 - ABB_SIM 00530027 | |
| | | JTX-97 | | | | A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan in Patents with Primary Hyperlipoproteinemia, Protocol Number 91/04, Final Report | ABB_SIM 00529869 - ABB_SIM 00530027 | |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF ____DELAWARE____

| PTX. NO | DTX.NO | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---------|--------|---------|--------------|--------|----------|-------------------------|--------------|------------|
| | | JTX-98 | | | | Food and Drug Administration, Investigational New Drug Application (IND) for Niacin, March 26, 1990 | ABB_SIM 00530041 - ABB_SIM 00530217 | |
| | | JTX-99 | | | | A Double-Blind Placebo-Controlled Multi-Center Trail of the Safety and Efficacy of Niaspan-A Dose-Escalation Study, Protocol Number 91/15, Final Report, Revised April 29, 1996 | ABB_SIM 00530316 - ABB_SIM 00530468 | |
| | | JTX-100 | | | | The Pharmacokinetics of Niacin and its Three Major Metabolites Following Multiple-Dose Administration of Niaspan at 1000 mg, 1500mg, 2000mg and 3000 mg Doses, Protocol Number 94/10, Final Report, October 11, 1995 | ABB_SIM 00530469 - ABB_SIM 00530774 | |
| | | JTX-101 | | | | Kos Niaspan Study 94/10 - Urine % Dose Recovered Analysis | ABB_SIM 00530875 - ABB_SIM 00530880 | |
| | | JTX-102 | | | | National Sales Meeting for Niaspan Delivery System, August 6, 1997 | ABB_SIM 00530906 - ABB_SIM 00530911 | |
| | | JTX-103 | | | | Protocol 94/08 Final Report Abstract and Tables, October 19, 1995 | ABB_SIM 00532842 - ABB_SIM 00532846 | |
| | | JTX-104 | | | | Protocol 94/09 Final Report Abstract and Tables, November 22, 1995 | ABB_SIM 00532847 - ABB_SIM 00532855 | |
| | | JTX-105 | | | | Protocol 95/01 Final Report Abstract and Tables, November 7, 1995 | ABB_SIM 00532856 - ABB_SIM 00532860 | |
| | | JTX-106 | | | | Invention Disclosure for "Hypotheses concerning possible niacin metabolites responsible for the toxicity observed with oral niacin formulations", April 18, 1996 | ABB_SIM 00566755 - ABB_SIM 00566760 | |
| | | | | | | **LABELS** | | |
| | | JTX-107 | | | | Niaspan Tablets Label | | |
| | | JTX-108 | | | | Zocor (simvastatin) Tablet Label | | |
| | | JTX-109 | | | | Advicor Label, October 20, 2010 | | |
| | | JTX-110 | | | | Teva's Simcor Label, Version 2.0 | TV0212076 - TV0212107 | |
| | | JTX-111 | | | | Lovastatin Package Insert, Dec. 19, 1991 | | |
| | | JTX-112 | | | | Simvastatin Package Insert, April 19, 1995 | | |
| | | | | | | **DEFENDANTS' DOCUMENTS** | | |
| | | JTX-113 | | | | Watson ANDA No. 20-0601 Amendment (500/40 mg) | OCA000024 - OCA0003648 | |
| | | JTX-114 | | | | Watson ANDA No. 20-0601 (1000/20 mg) | WT0000001 - WT0016158 | |
| | | JTX-115 | | | | Watson ANDA No. 20-061 Amendment (Withdrawal of 500/20 mg and 750/20 mg dosage strengths) | WT0017165 - WT0017167 | |
| | | JTX-116 | | | | Withdrawn (Teva document) | | |
| | | JTX-117 | | | | Withdrawn (Teva document) | | |
| | | JTX-118 | | | | Withdrawn (Teva document) | | |
| | | JTX-119 | | | | Withdrawn (Teva document) | | |
| | | JTX-120 | | | | Watson's 1.14.1.3 Draft Labeling Tex for Niacin Extended-release and Simvastatin Tablets | OCA000146 - OCA000186 | |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF ____DELAWARE____

| PTX. NO | DTX.NO | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| | | JTX-121 | | | | Protocol 96/01 Final Report, "The Comparative Bioavailability of Two Sustained Release Niacin Products Relative to Niaspan," January 15, 1997 | ABB_SIM00530785 - ABB_SIM00530825 | |
| | | JTX-122 | | | | Protocol 96/01 Final Report, "The Comparative Bioavailability of Two Sustained Release Niacin Products Relative to Niaspan," January 15, 1997 | ABB_S2_00789385 - ABB_S2_00789460 | |
| | | | | | | **SALES/MARKETING/LICENSING** | | |
| | | JTX-123 | | | | License Agreement dated February 7, 1997 between Upsher-Smith and Kos | ABB_S2_00149169 - ABB_S2_00149188 | |
| | | JTX-124 | | | | Distribution, Patent & Trademark License, Marketing and Supply Agreement dated October 23, 2002 between Kos and Merck | ABB_S2_00213119 - ABB_S2_00213188 | |
| | | JTX-125 | | | | Co-Promotion Agreement dated October 29, 2003 between Kos and Takeda | ABB_SIM 00531450 - ABB_SIM 00531490 | |
| | | JTX-126 | | | | Settlement and License Agreement dated April 12, 2005 between Kos and Barr | ABB_S2_01113798 - ABB_S2_01113820 | |
| | | JTX-127 | | | | Niaspan Annotated Sales Aid | ABB_S2_00246872 - ABB_S2_00246890 | |
| | | JTX-128 | | | | Think Higher, Think Niaspan | ABB_S2_00566646 - ABB_S2_00566650 | |
| | | JTX-129 | | | | Think Higher HDL-C, Think Niaspan | ABB_S2_00660641 - ABB_S2_00660648 | |
| | | JTX-130 | | | | Low HDL-C is Like an Accident Waiting to Happen | ABB_S2_00662817 - ABB_S2_00662824 | |
| | | JTX-131 | | | | Powerful Dual-Lipid Management | ABB_SIM 00577606 - ABB_SIM 00577623 | |
| | | JTX-132 | | | | In Simvastatin Patients Drive HDL-C Higher | ABB_SIM 00577642 - ABB_SIM 00577655 | |
| | | JTX-133 | | | | Simcor-Aggressive Targets Demand Comprehensive Lipid Management | ABB_SIM 00577656 - ABB_SIM 00577676 | |
| | | JTX-134 | | | | One Treatment, Two Targets… Simcor Powerful Dual-Lipid Management | ABB_SIM 00577705 - ABB_SIM 00577720 | |
| | | JTX-135 | | | | Simcor-Aggressive Targets Demand Comprehensive Lipid Management | ABB_SIM 00577721 - ABB_SIM 00577746 | |
| | | JTX-136 | | | | In Simvastatin Patients Drive HDL-C Higher | ABB_SIM 00579092 - ABB_SIM 00579112 | |
| | | JTX-137 | | | | Presentation "Dyslipidemia Q1 2008 Attitudes, Awareness, and Usage Report: Niaspan and Simcor, May 28, 2008, March Major AAU and April Awareness Tracker Results" | ABB_S2_00269771 - ABB_S2_00269988 | |
| | | JTX-138 | | | | Kos Pharmaceuticals, Inc. Advicor/Niaspan Awareness, Attitude, Usage, and Positioning Study, October 2003 | ABB_SIM 00683448 - ABB_SIM 00683624 | |
| | | JTX-139 | | | | Kos Pharmaceuticals, Inc. Advicor/Niaspan Phase II Awareness, Attitude, and Usage Study, May 2004 | ABB_SIM 00572395 - ABB_SIM 00572527 | |
| | | JTX-140 | | | | Presentation "2009 Niaspan Strategic Plan, Niaspan - Niacin Extended-Release Tablets" | ABB_S2_00948605 - ABB_S2_00948613 | |
| | | JTX-141 | | | | NIASPAN net sales, sales history, and TRx.  (Exhibit 95 to 06/11/2010 Deposition of Marianne Sutcliffe) | ABB_SIM 00689224 - ABB_SIM 00689233 | |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF _____DELAWARE_____

| PTX. NO. | DTX.NO | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| | | JTX-142 | | | | Pharmaceutical Products Division, 2008 Plan -- Key Product P&L, Dyslipidemia Franchise $MM | ABB_SIM 00577568 - ABB_SIM 00577573 | |
| | | JTX-143 | | | | Proprietary Pharmaceuticals Division, US, 2011 Update Reference Package, Niaspan Dashboard Summary (SMM), Financial Sales Overview | ABB_SIM 00949882 - ABB_SIM 00949904 | |
| | | JTX-144 | | | | Niaspan 2007-2011 P&L | ABB_SIM 00949892 - ABB_SIM 00949897 | |
| | | JTX-145 | | | | Spreadsheet - Total Prescriptions, Source: IMS NPA | ABB_SIM 00949898 - ABB_SIM 00949904 | |
| | | JTX-146 | | | | IMS Summary Data - 2005 - 11/2010 | ABB_SIM 01159779 - ABB_SIM 01159782 | |
| | | JTX-147 | | | | Kos Pharmaceuticals Form S-1 (December 17, 1996), available at http://sec.gov | ABB_SIM 00527797- ABB_SIM 00528167 | |
| | | JTX-148 | | | | Kos Pharmaceuticals Form 10-K (1997) | | |
| | | JTX-149 | | | | Kos Pharmaceuticals Form 10-K (1998) | ABB_SIM 00945245 - ABB_SIM 00945284 | |
| | | JTX-150 | | | | Kos Pharmaceuticals Form 10-K (1999) | ABB_SIM 00945285 - ABB_SIM 00945373 | |
| | | JTX-151 | | | | Kos Pharmaceuticals Form 10-K (2001) | | |
| | | JTX-152 | | | | Kos Pharmaceuticals Form 10-K (2004) | ABB_SIM 00938596 - ABB_SIM 00938725 | |
| | | JTX-153 | | | | Kos Pharmaceuticals Form 10-K (2005) | | |
| | | JTX-154 | | | | Abbott Laboratories Form 10-K (2006) | ABB_SIM 01217174 - ABB_SIM 01217287 | |
| | | JTX-155 | | | | Schondelmeyer Ex. 366, "Why Your Doctor Has Prescribed Niapan" | ABB_S2_02385790 - ABB_S2_02385797 | |
| | | | | | | **KOS DOCUMENTS** | | |
| | | JTX-156 | | | | Kos Pharmaceuticals, Inc. Draft, November 20, 1997 | ABB_SIM 00037509 - ABB_SIM 00037522 | |
| | | JTX-157 | | | | Timetable for Niaspan Development | ABB_SIM 00523468 | |
| | | JTX-158 | | | | Hollywood Production Lots 12 Summary | ABB_SIM 00534611 - ABB_SIM 00534613 | |
| | | JTX-159 | | | | Niaspan Tablets Clinical Lots / Production Lots | ABB_SIM 00534626 - ABB_SIM 00534631 | |
| | | JTX-160 | | | | Invention Disclosure for "A Controlled-Release Inpurt Which Manifests Selectd Characteristics of Immediate-Release and Sustained-Release Niacin", April 18, 1996 | ABB_SIM 00566750 - ABB_SIM 00566754 | |

# EXHIBIT M

# EXHIBIT M

## ABBOTT'S EXHIBIT LIST WITH DEFENDANTS' OBJECTIONS

Abbott hereby submits its exhibit list and Defendants' objections thereto.  Defendants used the following abbreviations for objections to proposed exhibits:

| | |
|---|---|
| A | The exhibit has not been properly authenticated under rules 901, 902, or 903. |
| BE | This is not the best evidence of the document it purports to be. |
| C | This document's or testimony's probative value is substantially outweighed by a danger of confusion of issues, undue delay, waste of time, or presentation of needlessly cumulative evidence under Rule 403. |
| E | This testimony seeks to offer an expert opinion on topics beyond the scope for which the expert was qualified under Rule 702. |
| F | No foundation has been laid to admit this document either because as no sponsoring witness has testified about it, for example, under Rule 803 or because a sponsoring witness lacks personal knowledge under Rule 611. |
| H | This document or testimony contains or embodies an out-of-court statement. It is inadmissible as hearsay if offered to prove the truth of that statement unless the proponent can qualify it as nonhearsay or an exception to hearsay under Rule 801 et seq. To the extent that it is offered for another purpose, it is confusing and prejudicial. |
| I | One or more other documents or other testimony ought to, in fairness, be considered along with this document or testimony. |
| ID | This document is an improper demonstrative exhibit that is not evidence under Rules 901 through 903 and 1002. |
| NP | This document was not properly produced during discovery or was not timely identified by Abbott and therefore it should be excluded. |

| O | This testimony or line of questioning offers or seeks to elicit opinion testimony from a lay witness beyond that permitted in Rule 701. |
|---|---|
| OS | This testimony is beyond the parties' agreed-upon 30(b)(6) scope and is therefore improper. |
| P | This document's or testimony's probative value is substantially outweighed by a danger of unfair prejudice under Rule 403. |
| R | This document or testimony is not relevant any issue in this case under Rules 401 and 402. |
| RM | This document or testimony is not relevant unless offered as proof of issue that is relevant to this case. |
| S | This document is an improper summary under Rule 1006 and either summarizes material that can be conveniently examined in court or is an inaccurate, incomplete, or misleading summary. |
| V&A | This question is vague and ambiguous because it is either indefinite and uncertain or susceptible to multiple interpretations. |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF <u>DELAWARE</u>

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  | **EXHIBIT M** | |
|  | **ABBOTT'S TRIAL EXHIBIT LIST** | |
| colspan="3" | PRESIDING JUDGE |  | PLAINTIFFS' ATTORNEY |  | DEFENDANTS' ATTORNEY | |
| colspan="3" | TRIAL DATE(S) |  | COURT REPORTER |  | COURTROOM DEPUTY | |
| colspan="6" | **Abbott Laboratories, et al. v. Teva Pharmaceutical Industries, et al.** |  | **Case Number: 10-57 (SLR)(MPT) Consolidated** | |
| **PTX NO.** | **DTX NO.** | **JTX NO.** | **DATE OFFERED** | **MARKED** | **ADMITTED** | **DESCRIPTION OF EXHIBITS** | **BATES NUMBER** | **OBJECTIONS** |
|  | | **PATENTS/FILE HISTORIES** | | |
| PTX-0017 | | | | | | Declaration of David Bova for U.S. Serial No. 08/368,378, August 17, 1995 | ABB_SIM 00000198 - ABB_SIM 00000204 | A, F, I, H, BE, C, P, R |
| PTX-0019 | | | | | | Declaration of David J. Bova Under 37 CFR § 1.131, submitted in 08/814,974, August 29, 1998 | ABB_SIM 00000949 - ABB_SIM 00000954 | A, F, I, H, BE, C, P, R |
| PTX-0020 | | | | | | Declaration of George M. Toth Under 37 CFR § 1.608(b), submitted in 08/363,378, February 26, 1999 | ABB_SIM 00000434 - ABB_SIM 00000438 | A, F, I, H, BE, C, P, R |
|  | | **PUBLICATIONS** | | |
| PTX-0025 | | | | | | Ahrens, "Dietary Fast and Coronary Heart Disease: Unfinished Business", The Lancet, December 22/29, 1979 | ABB_SIM 01168801 - ABB_SIM 01168804 | A, F, R, C, P, H, B |
| PTX-0026 | | | | | | Ahrens, "Dietary Fast and Coronary Heart Disease: Unfinished Business," The Lancet, December 22/29, 1979 | ABB_SIM 00898680 - ABB_SIM 00898683 | A, F, R, C, P, H, B |
| PTX-0027 | | | | | | Alsheikh-Ali et al., "The Safety of Niacin in the U.S. Food and Drug Administration Adverse Event Reporting Database," Am J Cardiol, 2008 | ABB_S2_00262204 - ABB_S2_00262208 | A, F, R, C, P, H, B |
| PTX-0028 | | | | | | American Diabetes Association, "American Diabetes Association Position Statement:  Management of Dyslipidemia in Adults With Diabetes," Diabetes Care Jan. 2002; 25(Supp. 1):S74-S77 | ABB_SIM 00573087 - ABB_SIM 00573090 | A, F, R, C, P, H, B |
| PTX-0029 | | | | | | American Diabetes Association, "Complications" | ABB_SIM 00695119 - ABB_SIM 00695121 | A, F, R, C, P, H, B |
| PTX-0030 | | | | | | American Diabetes Association, American "Diabetes Association Position Statement:  Dyslipidemia Management in Adults With Diabetes," Diabetes Care Jan. 2004; 27(Supp. 1):S68-S71 | ABB_SIM 00573091 - ABB_SIM 00573094 | A, F, R, C, P, H, B |
| PTX-0031 | | | | | | American Heart Association, "Heart Disease & Stroke Statistics 2010" | ABB_SIM 01167679 - ABB_SIM 01167698 | A, F, R, C, P, H, B |
| PTX-0032 | | | | | | Aronson, "Correction Factor for Dissolution Profile Calculations," Journal of Pharmaceutical Sciences Vol. 82, No. 11 , (Nov. 1993) | | A, F, R, C, P, H, B, I, NP |

UNITED STATES DISTRICT COURT

_____ DISTRICT OF <u>DELAWARE</u>

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0033 | | | | | | Ballantyne, et al., "Comparison of the efficacy and safety of a combination tablet of niacin extended-release and simvastatin with simvastatin 80 mg monotherapy: the SEACOAST II (high dose) study," Journal of Clinical Lipidology (2008) 2, 79-90 | ABB_SIM 00270013 - ABB_SIM 00270024 | A, F, R, C, P, H, B |
| PTX-0034 | | | | | | Ballantyne, et al., "Comparison of the Safety and Efficacy of a Combination Tablet of Niacin Extended Release and Simvastatin vs Simvastatin Monotherapy in Patients with Increased Non-HDL Cholesterol (from the SEACOAST I Study), 2008 | ABB_SIM 00270025 - ABB_SIM 00270033 | A, F, R, C, P, H, B |
| PTX-0035 | | | | | | Barboriak, et al., "Nicotinic Acid and Alcohol-Induced Lipemia," Atherosclerosis (1971) | ABB_SIM 01168998 - ABB_SIM 01169003 | A, F, R, C, P, H, B |
| PTX-0036 | | | | | | Bays, "Safety of Niacin and Simvastatin Combination Therapy" (2008) | ABB_SIM 00270034 - ABB_SIM 00270039 | A, F, R, C, P, H, B |
| PTX-0038 | | | | | | Blum, et al., "High density lipoprotein metabolism in man," J Clin Invest 60:795-807 (1977) | ABB_SIM 01182030 - ABB_SIM 01182042 | A, F, R, C, P, H, B |
| PTX-0039 | | | | | | Budavari, Susan, "The Merck Index" (11th ed. 1989) | ABB_SIM 00535264 - ABB_SIM 00535266 | A, F, R, C, P, H, B |
| PTX-0040 | | | | | | Buhler, Polyvinylpyrrolidone Excipients for Pharmaceuticals: Povidone, Crospovidone and Copovidone, p. 113 (2005) | | A, F, R, C, P, H, NP |
| PTX-0041 | | | | | | Campbell, et al., "Consumers' Use of Persuasion Knowledge:  The Effects of Accessibility and Cognitive Capacity on Perceptions of an Influence Agent," Journal of Consumer Research, 27: 69-83 (June 2000) | ABB_SIM 01197094 - ABB_SIM 01197109 | A, F, R, C, P, H, B, I |
| PTX-0042 | | | | | | Canner, et al., "Fifteen Year Mortality in Coronary Drug Project Patients: Long-Term Benefit With Niacin," JACC, Vol. 8, No. 6, 1986 | ABB_SIM 00684400 - ABB_SIM 00684410 | A, F, R, C, P, H, B |
| PTX-0043 | | | | | | Capuzzi et al., "Efficacy and Safety of An Extended-Release Niacin (Niaspan): A Long-Term Study," Am J Cardiol. 1998; 82(12A):74U-81U | ABB_SIM 00566466 - ABB_SIM 00566473 | A, F, R, C, P, H, B |
| PTX-0044 | | | | | | Carlson, "Niaspan, the prolonged release preparation of nicotinic acid (niacin), the broad-spectrum lipid drug," Int J Clin Pract. 2004; 58(7):706-713 | ABB_SIM 00566474 - ABB_SIM 00566481 | A, F, R, C, P, H, B, I |

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE _____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0046 | | | | | | Carlson, et al., "Effect of a Single Dose of Nicotinic Acid on Plasma Lipids in Patients With Hyperlipoproteinemia," Acta Med. Scand. Vol. 183, pp. 457-462 (1968) | ABB_SIM 01169004 - ABB_SIM 01169013 | A, F, R, C, P, H, NP |
| PTX-0047 | | | | | | Castelli, et al., "Incidence of coronary heart disease and lipoprotein cholesterol levels:  The Framingham Study," JAMA 256(20):2835-8 (Nov. 1986) | ABB_S2_00200853 - ABB_S2_00200856 | A, F, R, C, P, H, B |
| PTX-0048 | | | | | | Chen et al., "Niaspan Increases Angiogenesis and Improves Functional Recovery after Stroke," Annals of Neurology. 2007; 62(1):49-58 | ABB_SIM 00566482 - ABB_SIM 00566491 | A, F, R, C, P, H, B |
| PTX-0049 | | | | | | Chen et al., "Niaspan treatment increases tumor necrosis factor-α-converting enzyme and promotes arteriogenesis after stroke," Journal of Cerebral Blood Flow & Metabolism. 2009; 29:911-920 | ABB_SIM 00566492 - ABB_SIM 00566501 | A, F, R, C, P, H, B |
| PTX-0050 | | | | | | Cheung, et al., "Clinical utility of extended-release niacin: update and summary," Future Cardiol. 2005; 1(5):571-578 | ABB_SIM 00566502 - ABB_SIM 00566509 | A, F, R, C, P, H, B |
| PTX-0051 | | | | | | Cooper, Winning at New Products (3d ed. 2001) | ABB_SIM 00898830 - ABB_SIM 00898835 | A, F, R, C, P, H |
| PTX-0052 | | | | | | Coppola, et al. "Niacin-Induced Hepatotoxicity: Unusual Presentations," Southern Medical Journal 1994; 87(1):30-32 | ABB_SIM 00566870 - ABB_SIM 00566872 | A, F, R, C, P, H, B |
| PTX-0053 | | | | | | Creavin, "Niaspan: new hope for heart patients," DDT. 2005; 10(1):4-5 | ABB_SIM 00566510 - ABB_SIM 00566511 | A, F, R, C, P, H, B |
| PTX-0055 | | | | | | DiMasi et al., "The price of innovation: new estimates of drug development costs," J. Health Econ. 22:151-185 (2003) | ABB_SIM 00898844 - ABB_SIM 00898879 | RM , H |
| PTX-0056 | | | | | | DiMasi et. al., Tufts Center for the Study of Drug Development, Impact Report, "Post-approval R&D raises total drug development costs to $897 million," Vol. 5, No. 3 (May/June 2003) | ABB_SIM 00696032 - ABB_SIM 00696035 | A, F, R, C, P, H, B |
| PTX-0057 | | | | | | Drugs@FDA Glossary of Terms, available at www.fda.gov/Drugs/informationondrugs/ucm079436 | | A, F, R, C, P, H, B, I, NP |
| PTX-0058 | | | | | | Dube, et al. "Safety and efficacy of extended-release niacin for the treatment of dyslipidaemia in patients with HIV infection: AIDS Clinical Trials Group Study A5148," Antiviral Therapy. 2006; 11:1081-1089 | ABB_SIM 00566512 - ABB_SIM 00566520 | A, F, R, C, P, H, B |
| PTX-0061 | | | | | | FDA Guidance for Industry: Statistical Approaches to Establishing Bioequivalence (January 2011) | ABB_SIM 00695964 - ABB_SIM 00696011 | A, F, R, C, P, H, B, I, NP |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF <u>DELAWARE</u>

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0062 | | | | | | FDA Guidance for Industry: SUPAC-MR: Modified Release Solid Oral Dosage Forms | ABB_SIM 00944555 - ABB_SIM 00944606 | A, F, R, C, P, H |
| PTX-0063 | | | | | | Food & Drug Administration, ANDA Labeling Review, available at www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/ucm072891.pdf | | A, F, R, C, P, H, B, I, NP |
| PTX-0064 | | | | | | Food & Drug Administration, ANDA, available at http://www.fda.gov/Drugs/DevelopmentApprovalProcess/HowDrugsareDevelopedandApproved/ApprovalApplications/AbbreviatedNewDrugApplicationANDAGenerics/default.htm | | A, F, R, C, P, H, B, I, NP |
| PTX-0065 | | | | | | Food & Drug Administration, CDER Data Standards Manual, available at http://www.fda.gov/AboutFDA/CentersOffices/CDER/ManualofPoliciesProcedures/default.htm | | A, F, R, C, P, H, B, I, NP |
| PTX-0066 | | | | | | Food & Drug Administration, Center for Drug Evaluation & Research, "Guidance for Industry Bioavailability and Bioequivalence Studies for Orally Administered Drug Products - General Considerations." March 2003 | ABB_SIM 00573340 - ABB_SIM 00573365 | RM , H |
| PTX-0067 | | | | | | Food & Drug Administration, Center for Drug Evaluation & Research, Guidance for Industry: Bioavailability and Bioequivalence Studies for Orally Administered Drug Products - General Considerations, at 10-11 (March 2003); available at http://fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/usm070124.pdf | | A, F, R, C, P, H, B, I, NP |
| PTX-0068 | | | | | | Food & Drug Administration, Center for Drug Evaluation & Research, Guidance for Industry: Food-Effect Bioavailability and Fed Bioequivalence Studies (Dec. 2002), available at http://www.fda.gov/downloads/RegulatoryInformation/Guidances/UCM126833.pdf | | A, F, R, C, P, H, B, I, NP |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE _____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0069 | | | | | | Food & Drug Administration, Center for Drug Evaluation & Research, Guidance for Industry: Statistical Approaches for Establishing Bioequivalence (Jan. 2001), available at http://www.fda.gov/downloads/Drugs/GuidanceComplia nceRegulatoryInformation/Guidances/ucm070244.pdf | | A, F, R, C, P, H, B, I, NP |
| PTX-0070 | | | | | | Food & Drug Administration, New Drug Application (NDA) Process, available at http://www.fda.gov/Drugs/DevelopmentApprovalProces s/HowDrugsareDevelopedandApproved/ApprovalApplic ations/NewDrugApplicationNDA/default.htm | | A, F, R, C, P, H, B, I, NP |
| PTX-0071 | | | | | | Food & Drug Administration, Revising ANDA Labeling Following Revision of the RLD Labeling (May 2000), available at www.fda.gov/downloads/Drugs/GuidanceComplianceRe gulatoryInformation/Guidances/ucm072891.pdf | ABB_SIM 00696016 - ABB_SIM 00696021 | A, F, R, C, P, H, B |
| PTX-0072 | | | | | | Food & Drug Administration, The CDER Handbook: Labeling Review Acceptable? | ABB_SIM 00695122 - ABB_SIM 00695205 | A, F, R, C, P, H, B |
| PTX-0073 | | | | | | Frick, et al., "Helsinki Heart Study:  Primary-prevention trial with gemfibrozil middle-aged men with dyslipidemia: Safety of treatment, changes in risk factors, and incidence of coronary heart disease," N ENGL J MED 1987:317:1237-1245 | ABB_S2_00159796 - ABB_S2_00159804 | A, F, R, C, P, H, B |
| PTX-0075 | | | | | | Garrison, "Cigarette smoking and HDL cholesterol: The Framingham Offspring Study," ATHEROSCLEROSIS, Vol. 30, Issue 1: 17-25 (May 1978) | ABB_S2_00158266 - ABB_S2_00158274 | A, F, R, C, P, H, B |
| PTX-0076 | | | | | | Goldberg, et al. "Multiple-Dose Efficacy and Safety of an Extended-Release Form of Niacin in the Management of Hyperlipidemia," Am J Cardiol. 2000; 85:1100-1105 | ABB_SIM 00566521 - ABB_SIM 00566526 | A, F, R, C, P, H, B |
| PTX-0077 | | | | | | Gordon, et al., "High Density Lipoprotein As a Protective Factor Against Coronary Heart Disease", The American Journal of Medicine, Volume 62, May 1977 | ABB_SIM 00414956 - ABB_SIM 00414963 | A, F, R, C, P, H, B |
| PTX-0078 | | | | | | Gordon, et al., "High-density lipoprotein cholesterol and coronary heart disease in hypercholesterolemic men: The Lipid Research Clinics Coronary Primary Prevention Trial," CIRCULATION, 1986:74:1217-1225 | ABB_SIM 00573124 - ABB_SIM 00573133 | A, F, R, C, P, H, B |

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE _____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0081 | | | | | | Guyton, "Extended-release niacin for modifying the lipoprotein profile," Expert Opin. Pharmacother. 2004; 5(6):1385-1398 | ABB_SIM 00566536 - ABB_SIM 00566549 | A, F, R, C, P, H, B |
| PTX-0082 | | | | | | Guyton, et al. "A Symposium: New Advances in Dyslipidemia," The American Journal of Cardiology, December 17, 1988 | ABB_S2_00161505 - ABB_S2_00161599 | A, F, R, C, P, H, B |
| PTX-0083 | | | | | | Handbook of Pharmaceutical Excipients, Second Edition, pp. 229-32, 280-82, 392-99, 494-97 (1994) | | RM , H |
| PTX-0086 | | | | | | Heron, et al., "National Vital Statistics Report: Deaths: Final Data for 2006", 57:14 (Apr. 17, 2009) | ABB_SIM 00695249 - ABB_SIM 00695383 | A, F, R, C, P, H, B |
| PTX-0087 | | | | | | Huskamp et al.,  "The New Medicare Drug Benefit: Formularies and Their Potential Effects on Access to Medications" HEALTH POLICY PERSPECTIVES, 2005 | | A, F, R, C, P, H, B, I, NP |
| PTX-0088 | | | | | | J.B.D.L. Corp., d/b/a Beckett Apothecary, et al. v. Wyeth-Ayerst Laboratories, Inc., et al., No. 1:01-cv-704, 1:03-cv-781, June 13, 2005 | | A, F, R, C, P, H, NP |
| PTX-0089 | | | | | | Jianqiu Pan et al. Extended-Release Niacin Treatment of the Atherogenic Lipid Profile and Lipoprotein(a) in Diabetes, Metabolism. 2002; 51(9):1120-1127 | ABB_SIM 00566662 - ABB_SIM 00566669 | A, F, R, C, P, H, B |
| PTX-0090 | | | | | | Kaiser Family Foundation report, June 2003, Impact of Direct-to-Consumer Advertising on Prescription Drug Spending (http://www.kff.org/rxdrugs/6084-index.cfm) | ABB_SIM 01197166 - ABB_SIM 01197176 | A, F, R, C, P, H, B |
| PTX-0091 | | | | | | Kane et al. , "Treatment of Hypercholesterolemia," Medical Clinics of North America - Vol. 66, No. 2, March 1982 | | A, F, R, C, P, H, B, NP |
| PTX-0093 | | | | | | Karas, et al., "Incidence of Flushing Decreases Over Time During Long-Term Therapy with a Novel Combination of Niacin Extended-Release with Simvastatin," Journal of Clinical Lipidology, Vol. 2, No. 3, June 2008 | | A, F, R, C, P, H, B, S, I |
| PTX-0094 | | | | | | Karas, et al., "Long-Term Safety and Efficacy of a Combination of Niacin Extended Release and Simvastatin in Patients with Dyslipidemia,", Am J Cardiovasc Drugs, 2008; 8 (2): 69-81 | ABB_SIM 00270061 - ABB_SIM 00270073 | A, F, R, C, P, H, B |

UNITED STATES DISTRICT COURT

_____ DISTRICT OF _DELAWARE_____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0095 | | | | | | Kaushik et al., "Extended-release niacin decreases serum fetuin-A concentrations in individuals with metabolic syndrome," Diabetes Metab Res Rev. 2009; 25:427-434 | ABB_SIM 00566574 - ABB_SIM 00566581 | A, F, R, C, P, H, B |
| PTX-0096 | | | | | | Keenan, "A Physicians Guide to Niacin Therapy" | ABB_SIM 01263150 - ABB_SIM 01263154 | A, F, R, C, P, H, B, I |
| PTX-0097 | | | | | | Kesala, et al., "Niacin (N) vs. Niaspan (NS) Treatment of the Atherogenic Lipid Profile (ALP; Small, Dense LDL, HDL2, HDLc and Triglycerides) and Lp(a) in Diabetic Patients (DP)," Abstract | ABB_S2_00152370 | A, F, R, C, P, H, B, I, S |
| PTX-0099 | | | | | | Knopp, "Clinical Profiles of Plain Versus Sustained-Release Niacin (Niaspan) and the Physiologic Rationale for Nighttime Dosing," Am J Cardiol. 1998; 82(12A):24U-28U. | ABB_SIM 00566740 - ABB_SIM 00566744 | A, F, R, C, P, H, B |
| PTX-0101 | | | | | | Knopp, "Niacin and Hepatic Failure" Annals of Internal Medicine 1989; 111(9):764-769. | ABB_SIM 00566734 - ABB_SIM 00566739 | A, F, R, C, P, H, B |
| PTX-0103 | | | | | | Kolter, "Binding Properties of the New Polymer Kollicoat IR," Development Pharma Ingredients, BASF Aktiengesellschaft, available at http://www.aapsj.org/abstracts/AM_2002/AA{2002-000995.pdf | | A, F, R, C, P, H, B, NP, I, S |
| PTX-0104 | | | | | | Lachman, "Chapter 14, Sustained Action Dosage Forms," The Theory and Practice of Industrial Pharmacy, Second Edition | ABB_SIM 01099911 - ABB_SIM 0109939 | A, F, R, C, P, H, B |
| PTX-0105 | | | | | | Lachman, "The Theory and Practice of Industrial Pharmacy," pp. 320-21 (3d ed. 1986) | | A, F, R, C, P, H, B, NP, I |
| PTX-0106 | | | | | | Lamon-Fava et al., Extended-Release Niacin Alters the Metabolism of Plasma Apolipoprotein (Apo) A-I and ApoB-Containing Lipoproteins, Arterioscler Thromb Vasc Biol. 2008; 28:1672-1678. | ABB_SIM 00566596 - ABB_SIM 00566604 | A, F, R, C, P, H, B |
| PTX-0107 | | | | | | Lawrence, "Transient Focal Hepatic Defects Related to Sustained-Release Niacin," J Clin Gastroenterol. 1993; 16(3):234-236 | ABB_SIM 00566866 - ABB_SIM 00566869 | A, F, R, C, P, H |
| PTX-0108 | | | | | | Mahley, et al., "Drug Therapy For Hypercholesterolemia and Dyslipidemia," Goodman & Gilman's The Pharmacological Basis of Therapeutics, Eleventh Edition | ABB_SIM 00696151 - ABB_SIM 00696186 | A, F, R, C, P, H, B |

UNITED STATES DISTRICT COURT

_____ DISTRICT OF <u>DELAWARE</u>

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0109 | | | | | | Mann, "Medical Intelligence Current Concepts - Diet-Heart: End of an Era", The New England Journal of Medicine September 22, 1977 | ABB_SIM 01167515 - ABB_SIM 01167521 | A, F, R, C, P, H, B |
| PTX-0110 | | | | | | Manninen, et al., "Gemfibrozil in the Treatment of Dyslipidemia A 5 year follow-up study", Acta Med Scand (Supp) (1982) | ABB_SIM 01167345 - ABB_SIM 01167351 | A, F, R, C, P, H |
| PTX-0111 | | | | | | Manninen, et al., "Joint Effects of Serum Triglyceride and LDL Cholesterol and HDL Cholesterol Concentrations on Coronary Heart Disease Risk in the Helsinki Heart Study:  Implications for Treatment," CIRCULATION, Vol. 85, No. 1 (Jan. 1992) | ABB_SIM 00033229 - ABB_SIM 00033237 | A, F, R, C, P, H, B |
| PTX-0112 | | | | | | Manninen, et al., "Lipid alterations and decline in the incidence of coronary heart disease in the Helsinki Heart Study," JAMA 1988:260:641-51 | ABB_SIM 00033218 - ABB_SIM 00033228 | A, F, R, C, P, H, B |
| PTX-0113 | | | | | | Manttari, et al, "The Helsinki Heart Study: Basic design and randomization procedure," EUR HEALTH J, 1987:8 (suppl 1):1-29 | ABB_SIM 00573134 - ABB_SIM 00573164 | A, F, R, C, P, H, B |
| PTX-0114 | | | | | | Marshall, et al., "Development of a Compendial Taxaonomy and Glossary for Pharmaceutical Dosage Forms", 29 Pharmacopeial Forum 1749 (September-October 2003) | ABB_SIM 00696187 - ABB_SIM 00696199 | A, F, R, C, P, H, B |
| PTX-0115 | | | | | | McCormack, et al., "Prolonged-Release Nicotinic Acid: A Review of its Use in the Treatment of Dyslipidaemia," Drugs 2005; 65(18):2719-2740 | ABB_SIM 00566605 - ABB_SIM 00566626 | A, F, R, C, P, H, B |
| PTX-0116 | | | | | | McGovern, "Use of nicotinic acid in patients with elevated fasting glucose, diabetes, or metabolic syndrome," Br. J. Diabetes (2004) | ABB_S2_00567305 - ABB_S2_00567312 | A, F, R, C, H, B, I |
| PTX-0117 | | | | | | McKenney et al., "A Comparison of the Efficacy and Toxic Effects of Sustained- vs. Immediate-Release Niacin in Hypercholesterolemic Patients, JAMA, Vol. 271, No. 9, March 2, 1994, O'Neill Ex 113 | TV0047178 - TV0047184 | A, F, R, H |
| PTX-0118 | | | | | | McMichael, "Fats and Atheroma: An Inquest", British Medical Journal, 1979 | ABB_SIM 01170346 - ABB_SIM 01170348 | A, F, R, H, B |
| PTX-0119 | | | | | | Menon, et al. "Effect of the Rate of Niacin Administration on the Plasma and Urine Pharmacokinetics of Niacin and Its Metabolites," J Clin Pharmacol 2007; 47:681-688 | ABB_SIM 00566627 - ABB_SIM 00566635 | A, F, R, H, B |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF <u>DELAWARE</u>

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0120 | | | | | | Menon, et al., "Plasma and urine pharmacokinetics of niacin and its metabolites from an extended-release niacin formulation," International Journal of Clinical Pharmacology and Therapeutics 2007; 45(8):448-454 | ABB_SIM 00566875 - ABB_SIM 00566881 | A, F, R, H, B |
| PTX-0121 | | | | | | Merck & Co, "Merck to Launch TREDAPTIVE (ER niacin/laropiprant) in international Markets Later This Year," May 19, 2009 | ABB_SIM 00573297 - ABB_SIM 00573298 | A, F, R, C, P, H, B |
| PTX-0122 | | | | | | Meyers, et al., "Varying Cost and Free Nicotinic Acid Content in Over-the-Counter Niacin Preparations for Dyslipidemia," Ann Intern Med. 2003, 139.966-1002 | ABB_S2_00868397 - ABB_S2_00868405 | A, F, R, H, B |
| PTX-0123 | | | | | | Michael E. Winter, Basic Clinical Pharmacokinetics (5th ed. 2010) | | A, F, R, H, C |
| PTX-0124 | | | | | | Miller, "Association of high-density lipoprotein subclasses and apolipoproteins with ischemic heart disease and coronary artheroclerosis," AM HEART J, 1987:113:589-597 | ABB_SIM 00573169 - ABB_SIM 00573178 | A, F, R, H |
| PTX-0125 | | | | | | Miller, et al., "Triglycerides and Cardiovascular Disease," American Heart Association Scientific Statement 123, 2292-2333 (2011) | ABB_SIM 01262901 - ABB_SIM 01262943 | A, F, R, H |
| PTX-0126 | | | | | | Mizik, et al., "Are Physicians 'Easy Marks?': Quantifying the Effects of Detailing and Sampling on New Prescriptions," Management Science 50(12): 1704-15 (2004) | ABB_SIM 01197607 - ABB_SIM 01197620 | A, F, R, H, B |
| PTX-0127 | | | | | | Moore, et al., "Mathematical Comparison of Dissolution Profiles", Pharmaceutical Technology, June 1996 | ABB_SIM 00540411 - ABB_SIM 00540416 | A, F, R, H, B, C, P |
| PTX-0128 | | | | | | Morgan et al. A New Extended-Release Niacin (Niaspan): Efficacy, Tolerability, and Safety in Hypercholesterolemic Patients, Am J Cardiol. 1998; 82(12A):29U-34U | ABB_SIM 00566645 - ABB_SIM 00566650 | A, F, R, H, B |
| PTX-0129 | | | | | | Morgan et al. Effects of Extended-Release Niacin on Lipoprotein Subclass Distribution, Am J Cardiol. 2003; 91:1432-1436 | ABB_SIM 00566651 - ABB_SIM 00566655 | A, F, R, H, B |
| PTX-0131 | | | | | | Muller et al., Niacin Lowers Serum Phosphate and Increases HDL Cholesterol in Dialysis Patients, Clin J Am Soc Nephrol. 2007; 2:1249-1254 | ABB_SIM 00566656 - ABB_SIM 00566661 | A, F, R, H, B |

UNITED STATES DISTRICT COURT

_____ DISTRICT OF <u>DELAWARE</u>

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0133 | | | | | | National Heart Lung and Blood Institute's Lipid Research Clinics Program:  The Lipid Research Clinics Coronary Primary Prevention Trial Results: I.  Reduction in incidence of coronary heart disease, JAMA 1984; Vol. 251, No. 3, 351-64 | ABB_SIM 00041747 - ABB_SIM 00041760 | A, F, R, H, B |
| PTX-0134 | | | | | | National Heart Lung and Blood Institute's Lipid Research Clinics Program: The Lipid Research Clinics Coronary Primary Prevention Trial Results: II.  The Relationship of Reduction in Incidence of Coronary Heart Disease to Cholesterol Lowering, JAMA 1984, Vol. 251, No. 3, 365-74 | ABB_SIM 00033453 - ABB_SIM 00033462 | A, F, R, H, B |
| PTX-0135 | | | | | | Oliver, "Serum Cholesterol - The Knave of Hearts and the Joker", The Lancet, November 14, 1981 | ABB_SIM 01167522 - ABB_SIM 01167527 | A, F, R, H, B |
| PTX-0136 | | | | | | Orange Book Preface, available at http://www.fda.gov/drugs/developmentapprovalprocess/ucm079068.htm | | A, F, R, H, C, P |
| PTX-0137 | | | | | | Padley, et al., "History of Asprin Use Prior to Initiation of Combination Niacin Extended-Release & Simvastatin Therapy Reduces Flushing-Related Discontinuation Rates" | ABB_SIM 00270084 | A, F, R, H, C, P, B, S |
| PTX-0138 | | | | | | Palumbo, "Rediscovery of Crystalline Niacin," Mayo Clin Proc. 1991; 66:112-113 | ABB_SIM 00566873 - ABB_SIM 00566874 | A, F, R, H, C, P, B, ID |
| PTX-0139 | | | | | | Pan, et al., "Extended-Release Niacin Treatment of the Atherogenic Lipid Profile and Lipoprotein(a) in Diabetes", Diabetes Research Center (2001) | ABB_S2_00229540 - ABB_S2_00229547 | A, F, R, H, B |
| PTX-0140 | | | | | | Pan, et al., "Niacin treatment of the atherogenic lipid profile and Lp(a) in diabetes,", Diabetes, Obesity and Metabolism, 4, 2002, 255-261 | ABB_S2_00229533 - ABB_S2_00229539 | A, F, R, H, B |
| PTX-0141 | | | | | | Perry, "ADIS Drug Profile: Extended-Release Niacin (Nicotinic Acid)/Laropiprant," Drugs 2009:69(12)1665-1679 | ABB_SIM 00944204 - ABB_SIM 00944220 | A, F, R, H |
| PTX-0142 | | | | | | Peters, et al., Quantitative Clinical Chemistry, 2nd ed., The Williams & Wilkins Co., Baltimore (1946) | ABB_SIM 01168756 - ABB_SIM 01168759 | A, F, R, H |
| PTX-0143 | | | | | | Khankari et al., "Binders and Solvents," Handbook of Pharmaceutical Granulation Technology, 1st ed., p. 60 (1997) | | A, F, R, H, NP |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE _____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0144 | | | | | | Kotler and Armstrong, Principles of Marketing, (10th ed. 2004) | ABB_SIM 00899266 - ABB_SIM 00899270 | A, F, R, H, I |
| PTX-0145 | | | | | | Physicians' Desk Reference (44th Ed. 1990) | ABB_SIM 01262899 - ABB_SIM 01262900 | A, F, R, H, I, C, P |
| PTX-0147 | | | | | | Pipeline Insight: Dyslipidemia, April 2007 | ABB_S2_02202801 - ABB_S2_02202950 | A, F, R, H, C, P |
| PTX-0148 | | | | | | Poldermans et al., Prolonged-Release Nicotinic Acid in Patients with Atherosclerotic Disease in The Netherlands, Eur Surg Res. 2008; 41:313-318 | ABB_SIM 00566670 - ABB_SIM 00566675 | A, F, R, H |
| PTX-0149 | | | | | | Public Citizen Health Research v. National Institutes of Health, No. Civ.A. 00-1847(CKK), March 12, 2002 | | A, F, R, C, H, NP |
| PTX-0151 | | | | | | Remington's Pharmaceutical Sciences (1985) at 1605-06 | | A, F, R, H |
| PTX-0152 | | | | | | Robinson et al., "The Antilipidemic Effects of Plain and Extended-Release Niacin," Prev. Cardiol. 2000; 3:131-136. | ABB_SIM 00566908 - ABB_SIM 00566913 | A, F, R, H |
| PTX-0153 | | | | | | Robinson, "Changing the Face of Detailing by Motivating Physicians to See Pharmaceutical Sales Reps," Product Management Today, Nov. 2003 | ABB_SIM 01197621 - ABB_SIM 01197628 | A, F, R, H, I |
| PTX-0154 | | | | | | Rowland, et al., "Clinical Pharmacokinetics: Concepts and Applications," pg. 111 (1980) | ABB_S2_00225286 - ABB_S2_00225288 | A, F, R, H, I |
| PTX-0155 | | | | | | Rubin, P. H., "The Economics and Impact of Pharmaceutical Promotion," Economic Realities of Healthcare Policy, 3(1): 6-19 (2003) | ABB_SIM 00696204 - ABB_SIM 00696219 | A, F, R, H, C |
| PTX-0156 | | | | | | Rubins, et al., "Gemfibrozil for the secondary prevention of coronary heart disease in men with low levels of HDL cholesterol," N Eng J Med 1999;341:410-8 | ABB_S2_00071774 - ABB_S2_00071783 | A, F, R, H |
| PTX-0157 | | | | | | Rubins, et al., "Rationale and design of the Dept. of Veterans Affairs High-density lipoprotein cholesterol Intervention Trial (HIT) for secondary prevention of coronary artery disease in men with low HDL and desirable LDL," Am J Cardiol 1993;71:45-52 | ABB_S2_00077614 - ABB_S2_00077621 | A, F, R, H |
| PTX-0158 | | | | | | Rubins, et al., "Veterans Affairs High-Density Lipoprotein Cholesterol Intervention Trial (HIT) for Secondary Prevention of Coronary Artery Disease in Men with Low High-Density Lipoprotein Cholesterol and Desirable Low-Density Lipoprotein Cholesterol," Jan. 1, 1993 | ABB_SIM 00573299 - ABB_SIM 00573307 | A, F, R, H |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE _____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0159 | | | | | | Ryan, et al., Dept of Health, Education, and Welfare "The Belmont Report," available at: http://www.hhs.gov/ohrp/humansubjects/guidance/Belmont.html | ABB_SIM 00696027 - ABB_SIM 00696031 | A, F, R, H, I, C, P |
| PTX-0160 | | | | | | Sacks, "The Role of High-Density Lipoprotein (HDL) Cholesterol in the Prevention and Treatment of Coronary Heart Disease:  Expert Group Recommendations," 90 Am. J. Cardiol. 2002;90:139-143. | ABB_SIM 00573254 - ABB_SIM 00573258 | A, F, R, H, B |
| PTX-0161 | | | | | | Sacks, et al., "Effect on coronary artherosclerosis of decrease in plasma cholesterol concentrations in normocholesterolaemic patients,"  THE LANCET, Vol. 344, 1182-86 (Oct. 29, 1994) | ABB_SIM 00573249 - ABB_SIM 00573253 | A, F, R, H, B |
| PTX-0162 | | | | | | Shah, et al., "In Vitro Dissolution Profile Comparison - Statistics and Analysis of the Similarity Factor, f2", Pharmaceutical Research, Vol. 15, No. 6, 1998 | ABB_SIM 00551692 - ABB_SIM 00551699 | A, F, R, H, B |
| PTX-0163 | | | | | | Shargel, et al., "Applied Biopharmaceutics and Pharmacokinetics," Third Edition | ABB_SIM 00944282 - ABB_SIM 00944376 | A, F, R, H, B, C |
| PTX-0164 | | | | | | Shaw, "Direct-to-Consumer Advertising (DTC) of Pharmaceuticals, ProQuest Discovery Guides," (March 2008) www.csa.com/discoveryguides/discoveryguides-main.php | | A, F, R, H, B, I, C |
| PTX-0165 | | | | | | Stedman's Medical Dictionary, Fifth Unabridged Lawyers' Edition, (1982) | ABB_SIM 00535267 - ABB_SIM 00535270 | A, F, R, H, B |
| PTX-0166 | | | | | | Superko et al., "Differential Effect of Two Nicotinic Acid Preparations on Low-Density Lipoprotein Subclass Distribution in Patients Classified as Low-Density Lipoprotein Pattern A, B, or I.," Am. J. Cardiol. (2004) | ABB_S2_01107914 - ABB_S2_01107920 | A, F, R, H, B |
| PTX-0167 | | | | | | Tavintharan, et al., "The Benefits of Niacin in Atherosclerosis," Current Atherosclerosis Reports 2001; 3:74-82 | ABB_SIM 00566683 - ABB_SIM 00566691 | A, F, R, H, B |
| PTX-0168 | | | | | | The Coronary Drug Project Research Group, Clofibrate and Niacin in Coronary Heart Disease, JAMA. 1975;231:360-381 | ABB_S2_00169356 - ABB_S2_00169377 | A, F, R, H, B |
| PTX-0169 | | | | | | USP XXII The United States Pharmacopeia, January 1, 1990 | | RM , H |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE _____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0170 | | | | | | Venkataraman & Stremersch, "The Debate on Influencing Doctors' Decisions: Are Drug Characteristics the Missing Link?," Management Science, 53(11) 1688-1701 (2007) | ABB_SIM 01197660 - ABB_SIM 01197674 | A, F, R, H, B, I |
| PTX-0171 | | | | | | Vogt et al. "Evaluation of the safety and tolerability of prolonged-release nicotinic acid in a usual care setting: the NAUTILUS study," Curr Med Res Opin. 2006; 22(2):417-425 | ABB_SIM 00566692 - ABB_SIM 00566700 | A, F, R, H, B |
| PTX-0172 | | | | | | Vogt et al., "Prolonged-release nicotinic acid for the management of dyslipidemia: an update including results from the NAUTILUS study," Vascular Health and Risk Management 2007; 3(4):467-479. | ABB_SIM 00566709 - ABB_SIM 00566721 | A, F, R, H, B |
| PTX-0173 | | | | | | Vogt, et al., "Correction of low HDL cholesterol to reduce cardiovascular risk: practical considerations relating to the therapeutic use of prolonged-release nicotinic acid (Niaspan)," Int J Clin Pract. 2007; 61(11):1914-1921 | ABB_SIM 00566701 - ABB_SIM 00566708 | A, F, R, H, B |
| PTX-0174 | | | | | | Wilson, et al., "Factors associated with lipoprotein cholesterol levels: The Framingham Study," ARTERIOSCLEROSIS, Vol. 3, 273-281 (1983) | ABB_SIM 00573308 - ABB_SIM 00573317 | A, F, R, H, B |
| PTX-0175 | | | | | | Wolfe, et al.. "Safety and Effectiveness of Niaspan When Added Sequentially to a Statin for Treatment of Dyslipidemia," Am J Cardiol. 2001; 87:476-479. | ABB_SIM 00566722 - ABB_SIM 00566725 | A, F, R, H, B |
| PTX-0555 | | | | | | UNITED STATES PHARMACOPIEA - DRUG INFORMATION, VOL. I, Drug Information for the Healthcare Professional (U.S. Pharmacopeia Convention, Inc., 1993) pp. 2021-2025 | | |
| CORRESPONDENCE | | | | | | | | |
| PTX-0176 | | | | | | Letter dated January 19, 2011 from Berg to Evenstad re Warning Letter | ABB_SIM 01259614 - ABB_SIM 01259615 | A, F, R, H, B |
| PTX-0183 | | | | | | Facsimile cover sheet dated August 21, 1996 from E. Cefali to P. Jones re Niaspan Dissolution F2 Analysis | ABB_SIM 00566761 - ABB_SIM 00566767 | A, F, R, H, B |
| PTX-0190 | | | | | | Memorandum dated August 20, 1997 from S. Jenkins to M. Blanford, et al. re: Dissolution Profile Differences for Edison Niaspan Tablets | ABB_S2_00076762 | A, F, R, H, B |
| PTX-0194 | | | | | | Email dated November 23, 1999 from M. McGovern to J. Phillips re: Harvard Health Letter | ABB_S2_00155529 | A, F, R, H, B |

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE_____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0195 | | | | | | Letter dated August 24, 2001 from D. Warnock to D. Orloff re Advicor IND 56,027, Annual Report 2000-2001 | ABB_SIM 00742884 - ABB_SIM 00743177 | A, F, R, H, B |
| PTX-0196 | | | | | | Letter dated April 17, 2007 from J. Fox to M. Parks re: Original New Drug Application: NDA 22-078 (Simcor) | ABB_SIM 00076428 - ABB_SIM 00076434 | A, F, R, H, B |
| PTX-0198 | | | | | | Letter dated November 20, 2009 from T. Verciglio to Dr. M. Parks re: Niacin Extended-Release/Simvastatin (Simcor) Tablets NDA 22-078 eCTD Sequence 0027 | ABB_SIM 00295989 - ABB_SIM 00295998 | A, F, R, H, B |
| PTX-0199 | | | | | | Letter from E. Colman to T. Verciglio re NDA 22-078/S-006, S-007 Supplement Approval | ABB_SIM 00734349 - ABB_SIM 00734401 | A, F, R, H, B |
| | | | | | | **NDA/CLINCIAL DOCUMENTS** | | |
| PTX-0202 | | | | | | Final Report, Protocol 016-06-05-CP, December 5, 2005 | ABB_S2_00721724 - ABB_S2_00722912 | A, F, R, H, I |
| PTX-0203 | | | | | | 3.2.P.2.2 Nicotinic acid 375 mg, 500 mg, 750 mg and 1000 mg prolonged release tablet drug development | ABB_S2_01065962 - 1ABB_S2_0065987 | A, F, R, H, I |
| PTX-0204 | | | | | | Final Report, Protocol 016-02-04-CP | ABB_S2_02922855 - ABB_S2_02923235 | A, F, R, H, I |
| PTX-0205 | | | | | | NDA 20-381, Niaspan Controlled-Release Tablets, Chemistry, Manufacturing, Controls | ABB_SIM 00003295 - ABB_SIM 00003589 | A, F, R, H, I |
| PTX-0206 | | | | | | Letter dated May 16, 1996 from E. Galliers to D. Bova | ABB_S2_00000032 | A, F, R, H, I |
| PTX-0207 | | | | | | Letter dated May 3, 1996 from D. Bova to the Food and Drug Administration Center for Drugs and Biologics | ABB_S2_00000033 - ABB_S2_00000034 | A, F, R, H, I |
| PTX-0208 | | | | | | Application to Market a New Drug for Human Use or an Antibiotic Drug for Human Use for Niacin Sustained-Release Tablets (Niaspan) dated May 3, 1996 | ABB_S2_00000037 - ABB_S2_00000245 | A, F, R, H, I |
| PTX-0209 | | | | | | Clinical Study Report 91/19; NDA 20-381, Volume 3.23 | ABB_S2_00006017 - ABB_S2_00006351 | A, F, R, H, I |
| PTX-0210 | | | | | | Reference Volume - Articles from Literature; NDA 20-381, Volume 3.27 | ABB_S2_00007296 - ABB_S2_00007514 | A, F, R, H, I |
| PTX-0211 | | | | | | A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan in Patients with Primary Hyperlipoproteinemia - A Dose-Ranging Study, Protocol No. 91/05, January 13, 1992 | ABB_S2_00012106 - ABB_S2_00012152 | A, F, R, H, I |
| PTX-0212 | | | | | | Clinical Study 91/09 Appendices; NDA- 20-381, Volume 3.65 | ABB_S2_00019500 - ABB_S2_00019867 | A, F, R, H, I |
| PTX-0214 | | | | | | NDA 20-381, Volume 3.76 | ABB_S2_00023217 - ABB_S2_00023395 | A, F, R, H, I |
| PTX-0215 | | | | | | NDA 20-381, Vol. 3.77 | ABB_S2_00023396 - ABB_S2_00023719 | A, F, R, H, I |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE _____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0218 | | | | | | Protocol Number 91/02, A Pilot Efficacy Study of a Once-A-Day Sustained Release Niacin Formulation (Niaspan) in the Treatment of Primary Type IIa Hyperlipidemia, January 31, 1991 | ABB_S2_00025574 - ABB_S2_00025596 | A, F, R, H, I |
| PTX-0219 | | | | | | Preliminary Results From Study 91/02 Dosing 1500 MGS of Niaspan Once-a-Day | ABB_S2_00025647 - ABB_S2_00025648 | A, F, R, H, I |
| PTX-0220 | | | | | | Study Protocol 91/04 | ABB_S2_00025668 - ABB_S2_00025727 | A, F, R, H, I |
| PTX-0221 | | | | | | A Double-Blind Placebo Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan (sustained released niacin) in Patients with Primary Hyperlipoproteinemia, Protocol Number 91/05, Aug. 23, 1991 | ABB_S2_00025728 - ABB_S2_00025781 | A, F, R, H, I |
| PTX-0222 | | | | | | Summary of Data Obtained From Patients Receiving 1500 mg of Niaspan Once-A-Day At Night (Studies 89/04 and 91/02) | ABB_S2_00026126 - ABB_S2_00026140 | A, F, R, H, I, S |
| PTX-0223 | | | | | | Application To Market a New Drug, Biologic, or An Antibiotic Drug for Human Use for Niacin Extended-Release Tablets, September 29, 1998 | ABB_S2_00035730 - ABB_S2_00036258 | A, F, R, H, I |
| PTX-0224 | | | | | | NDA 20-381, September 2000, Annual Report, Appendix 3, Study 91/09 | ABB_S2_00043357 - ABB_S2_00043802 | H |
| PTX-0225 | | | | | | A Three-Way Crossover Study of the Bioavailability of Niacin From a Sustained release Formulation When Dosed in the Fed Versus Fasted States in Reference to an Immediate Release Formulation, Protocol No. 91/01, June 3, 1991 | ABB_S2_00076940 - ABB_S2_00077040 | A, F, R, H, I |
| PTX-0226 | | | | | | NDA 20-381, Volume Number 2.24 | ABB_S2_00089340 - ABB_S2_00089676 | A, F, R, H, I |
| PTX-0227 | | | | | | NDA 20-381, Volume Number 2.34 | ABB_S2_00091844 - ABB_S2_00092213 | A, F, R, H, I |
| PTX-0228 | | | | | | NDA 20-381, Volume Number 2.35 | ABB_S2_00092214 - ABB_S2_00092546 | A, F, R, H, I |
| PTX-0229 | | | | | | NDA 20-381, Volume Number 2.36 | ABB_S2_00092547 - ABB_S2_00092711 | A, F, R, H, I |
| PTX-0230 | | | | | | NDA 20-381, Volume Number 2.37 | ABB_S2_00092712 - ABB_S2_00093156 | A, F, R, H, I |
| PTX-0231 | | | | | | NDA 20-381, Volume Number 2.38 | ABB_S2_00093157 - ABB_S2_00093436 | A, F, R, H, I |
| PTX-0232 | | | | | | NDA 20-381, Volume Number 2.39 | ABB_S2_00093437 - ABB_S2_00093852 | A, F, R, H, I |
| PTX-0233 | | | | | | Appendices to Final Study Report 91/04, NDA 20-381, Volume Number 2.40 | ABB_S2_00093853 - ABB_S2_00094291 | A, F, R, H, I |
| PTX-0235 | | | | | | NDA 20-381, Volume Number 2.42 | ABB_S2_00094785 - ABB_S2_00095165 | A, F, R, H, I |
| PTX-0236 | | | | | | NDA 20-381, Volume Number 2.43 | ABB_S2_00095166 - ABB_S2_00095314 | A, F, R, H, I |
| PTX-0237 | | | | | | NDA 20-381, Volume Number 2.44 | ABB_S2_00095315 - ABB_S2_00095659 | A, F, R, H, I |
| PTX-0238 | | | | | | NDA 20-381, Volume Number 2.45 | ABB_S2_00095660 - AABB_S2_00096091 | A, F, R, H, I |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE_____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0239 | | | | | | Niaspan Sustained-Release Tablets, NDA 20-381, Volume Number 2.48 | ABB_S2_00096648 - ABB_S2_00097147 | A, F, R, H, I |
| PTX-0240 | | | | | | Niaspan Sustained-Release Tablets, NDA 20-381, Volume Number 2.49 | ABB_S2_00097148 - ABB_S2_00097594 | A, F, R, H, I |
| PTX-0241 | | | | | | Niaspan Sustained-Release Tablets, NDA 20-381, Volume Number 2.50 | ABB_S2_00097595 - ABB_S2_00098184 | A, F, R, H, I |
| PTX-0242 | | | | | | Final Report for 91/02, A Pilot Efficacy Study of Once-a-Day Sustained-Release Niacin Formulation (Niaspan) in the Treatment of Primary Type IIa Hyperlipidemia | ABB_S2_00118698 - ABB_S2_00118707 | A, F, R, H, I |
| PTX-0243 | | | | | | Protocol 94/07 Comparison of the Effects of Two Sustained-Release Niacin Formulations on Serum Phosphorus (May 24, 1994) | ABB_S2_00181987 - ABB_S2_00182015 | A, F, R, H, I |
| PTX-0245 | | | | | | A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan in Patients with Primary Hyperlipoproteinemia, Protocol 91/04 | ABB_S2_00187914 - ABB_S2_00187991 | A, F, R, H, I |
| PTX-0246 | | | | | | A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan in Patients with Primary Hyperlipoproteinemia, Jan. 13, 1992 | ABB_S2_00187917 - ABB_S2_00187967 | A, F, R, H, I |
| PTX-0247 | | | | | | Proposed Clinical Studies to be Submitted in Support of a New Drug Application for Once-a-Day Niaspan in the Treatment of Primary Hyperlipoproteinemia, Clinical Development Plan, July 22, 1991 | ABB_S2_00191444 - ABB_S2_00191452 | A, F, R, H, I |
| PTX-0249 | | | | | | Kos Pharmaceuticals, Niaspan F2 Report prepared by Arthur Straughn | ABB_S2_00233927 - ABB_S2_00233971 | A, F, R, H, I |
| PTX-0250 | | | | | | Niacin Dissolution Report for Niaspan 1000mg DC Core Tab. Diss. | ABB_S2_00748463 | A, F, R, H, I |
| PTX-0251 | | | | | | Dissolution Niacin ER 1000mg Ave. of 6 Tabs | ABB_S2_00748673 | A, F, R, H, I |
| PTX-0252 | | | | | | Niacin Dissolution Report for Niaspan 1000mg ER Core Tab. Diss. | ABB_S2_00748675 | A, F, R, H, I |
| PTX-0253 | | | | | | Testing data Niaspan 1000 mg DC Dissolution | ABB_S2_00749198 | A, F, R, H, I |
| PTX-0254 | | | | | | Dissolution Niacin ER 1000mg Ave. of 6 Tabs | ABB_S2_00749199 | A, F, R, H, I |
| PTX-0255 | | | | | | Niacin Dissolution Report for Niaspan 1000mg DC Core Tab. Diss. | ABB_S2_00749206 | A, F, R, H, I |
| PTX-0257 | | | | | | Final Report for The Comparative Bioequivalence of Reformulated 1000 mg Extended - Release Niacin Tablets versus 1000 mg Niaspan Tablets Administered as a Single 2000 mg Dose to Healthy Volunteers, March 31, 2006 | ABB_S2_02920439 - ABB_S2_02921637 | A, F, R, H, I |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE _____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0258 | | | | | | M10-414 Clinical Study Report "Comparison of Bioavailability of 1000 mg Niacin Extended Release Tablet Manufactured at Abbott Puerto Rico Plan Relative to the Manufactured at Abbott New Jersey Plant, December 16, 2008 | ABB_S2_03450295 - ABB_S2_02452016 | A, F, R, H, I |
| PTX-0259 | | | | | | Food and Drug Administration Application to Market A New Drug For Human Use or an Antibiotic Drug for Human Use, Niaspan Sustained-Release Tablets | ABB_SIM 00003086 - ABB_SIM 00003294 | A, F, R, H, I |
| PTX-0260 | | | | | | NDA 20-381, Vol. 3.7, Final Report 89/03 | ABB_SIM 00004605 - ABB_SIM 00004693 | A, F, R, H, I |
| PTX-0262 | | | | | | Final Study Reports for Clinical Studies 94/09 | ABB_SIM 00005055 - ABB_SIM 00005108 | A, F, R, H, I |
| PTX-0263 | | | | | | Kos Pharmaceuticals, Inc., NDA 20-381, Niaspan Controlled-Release Tablets, Human Pharmacokinetics and Bioavailability, Volume Contents - Volume 3.10 | ABB_SIM 00005421 - ABB_SIM 00005751 | A, F, R, H, I |
| PTX-0264 | | | | | | Kos Pharmaceuticals, Inc., NDA 20-381, Niaspan Controlled-Release Tablets, Human Pharmacokinetics and Bioavailability, Volume Contents - Volume 3.11 | ABB_SIM 00005752 - ABB_SIM 00006133 | A, F, R, H, I |
| PTX-0265 | | | | | | Final Study Reports for Clinical Studies 95/01 | ABB_SIM 00005754 - ABB_SIM 00005791 | A, F, R, H, I |
| PTX-0266 | | | | | | Kos Pharmaceuticals, Inc., November 7, 1995, Protocol # 95/01, Final Report | ABB_SIM 00006135 - ABB_SIM 00006285 | A, F, R, H, I |
| PTX-0267 | | | | | | NDA 20-381, Vol. 3.15, The Effect of Manufacturing Variables on the Bioavailability of Niaspan 1000mg Tablets, Protocol 95/05 Interim Report, Feb. 16, 1996 | ABB_SIM 00006792 - ABB_SIM 00007029 | A, F, R, H, I |
| PTX-0268 | | | | | | Final Study Reports for Clinical Studies 95/05 | ABB_SIM 00006794 - ABB_SIM 00006818 | A, F, R, H, I |
| PTX-0269 | | | | | | Final Study Reports for Clinical Studies 95/06 | ABB_SIM 00007032 - ABB_SIM 00007083 | A, F, R, H, I |
| PTX-0270 | | | | | | Human Pharmacokinetics and Bioavailability; NDA 20-381, Volume 3.17, 95/06 | ABB_SIM 00007414 - ABB_SIM 00007715 | A, F, R, H, I |
| PTX-0271 | | | | | | Clinical Study Report 95/07 Human Pharmacokinetics and Bioavailability; NDA 20-381 Volume 3.18 | ABB_SIM 00007716 - ABB_SIM 00008034 | A, F, R, H, I |
| PTX-0272 | | | | | | Clinical Study Report 95/07; NDA 20-381 Vol. 3.19 | ABB_SIM 00008035 – ABB_SIM 00008276 | A, F, R, H, I |
| PTX-0273 | | | | | | Kos Pharmaceuticals, Inc., NDA 20-381, Niaspan Controlled-Release Tablets, Human Pharmacokinetics and Bioavailability, Volume 3.20 | ABB_SIM 00008277 - ABB_SIM 00008488 | A, F, R, H, I |
| PTX-0274 | | | | | | Kos Pharmaceuticals, Inc., NDA 20-381, Niaspan Controlled-Release Tablets, Human Pharmacokinetics and Bioavailability, Volume 3.22 | ABB_SIM 00008815 - ABB_SIM 00009065 | A, F, R, H, I |
| PTX-0276 | | | | | | Kos Pharmaceuticals, Inc., NDA 20-381, Niaspan Controlled-Release Tablets, Human Pharmacokinetics and Bioavailability, Volume 3.26 | ABB_SIM 00010044 - ABB_SIM 00010344 | A, F, R, H, I |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE _____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---------|---------|---------|--------------|--------|----------|-------------------------|--------------|------------|
| PTX-0277 | | | | | | NDA 20-381 Clinical Section | ABB_SIM 00010564 - ABB_SIM 00010782 | A, F, R, H, I |
| PTX-0278 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume 3.30 | ABB_SIM 00010783 - ABB_SIM 00011242 | A, F, R, H, I |
| PTX-0279 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume 3.31 | ABB_SIM 00011243 - ABB_SIM 00011651 | A, F, R, H, I |
| PTX-0280 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume 3.32 | ABB_SIM 00011652 - ABB_SIM 00011787 | A, F, R, H, I |
| PTX-0282 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume 3.34 | ABB_SIM 00012143 - ABB_SIM 00012614 | A, F, R, H, I |
| PTX-0283 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume 3.35 | ABB_SIM 00012615 - ABB_SIM 00012997 | A, F, R, H, I |
| PTX-0284 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume 3.36 | ABB_SIM 00012998 - ABB_SIM 00013399 | A, F, R, H, I |
| PTX-0285 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume 3.37 | ABB_SIM 00013400 - ABB_SIM 00013817 | A, F, R, H, I |
| PTX-0286 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume 3.38 | ABB_SIM 00013818 - ABB_SIM 00014063 | A, F, R, H, I |
| PTX-0287 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume 3.39 | ABB_SIM 00014064 - ABB_SIM 00014201 | A, F, R, H, I |
| PTX-0290 | | | | | | Clinical Study Report 91/05; NDA 20-381, Volume 3.42 | ABB_SIM 00014696 - ABB_SIM 00015143 | A, F, R, H, I |
| PTX-0292 | | | | | | Clinical Study Report 91/05; NDA 20-381, Volume 3.44 | ABB_SIM 00015418 - ABB_SIM 00015632 | A, F, R, H, I |
| PTX-0293 | | | | | | Clinical Study Report 91/05; NDA 20-381, Volume 3.45 | ABB_SIM 00015633 - ABB_SIM 00015945 | A, F, R, H, I |
| PTX-0294 | | | | | | Clinical Study Report 91/05; NDA 20-381, Volume 3.46 | ABB_SIM 00015946 - ABB_SIM 00016191 | A, F, R, H, I |
| PTX-0295 | | | | | | Clinical Study Report 91/05; NDA 20-381, Volume 3.47 | ABB_SIM 00016192 - ABB_SIM 00016462 | A, F, R, H, I |
| PTX-0296 | | | | | | Clinical Study Report 91/05; NDA 20-381, Volume 3.48 | ABB_SIM 00016463 - ABB_SIM 00016703 | A, F, R, H, I |
| PTX-0297 | | | | | | Clinical Study Report 91/15; NDA 20-381, Volume 3.49 | ABB_SIM 00016704 - ABB_SIM 00016859 | A, F, R, H, I |
| PTX-0301 | | | | | | NDA 20-381, Vol. 3.53, Data Listings - Appendix G for 91/15 (5.1 Series - 5.2 Series) | ABB_SIM 00018097 - ABB_SIM 00018475 | A, F, R, H, I |
| PTX-0302 | | | | | | NDA 20-381, Vol. 3.54, Data Listings - Appendix G for 91/15 (5.3 Series - 10.1 Series) | ABB_SIM 00018476 - ABB_SIM 00018893 | A, F, R, H, I |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE _____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0303 | | | | | | NDA 20-381, Vol. 3.55, Data Listings - Appendix G for 91/15 (11.0 Series - 14.0 Series) | ABB_SIM 00018894 - ABB_SIM 00019160 | A, F, R, H, I |
| PTX-0305 | | | | | | NDA 20-381, Vol. 3.57 | ABB_SIM 00019637 - ABB_SIM 00019994 | A, F, R, H, I |
| PTX-0306 | | | | | | NDA 20-381, Vol. 3.58 | ABB_SIM 00019995 - ABB_SIM 00020340 | A, F, R, H, I |
| PTX-0308 | | | | | | Clinical Study Report 91/09; NDA 20-381, Volume 3.59 | ABB_SIM 00020341 - ABB_SIM 00020683 | A, F, R, H, I |
| PTX-0309 | | | | | | Clinical Study Report 91/09; NDA 20-381, Volume 3.60 | ABB_SIM 00020684 - ABB_SIM 00021142 | A, F, R, H, I |
| PTX-0310 | | | | | | Clinical Study Report 91/09; NDA 20-381, Volume 3.61 | ABB_SIM 00021143 - ABB_SIM 00021465 | A, F, R, H, I |
| PTX-0311 | | | | | | Clinical Study Report 91/09; NDA 20-381, Volume 3.62 | ABB_SIM 00021466 - ABB_SIM 00021825 | A, F, R, H, I |
| PTX-0312 | | | | | | Clinical Study Report 91/09; NDA 20-381, Volume 3.63 | ABB_SIM 00021826 - ABB_SIM 00022233 | A, F, R, H, I |
| PTX-0313 | | | | | | Clinical Study Report 91/09; NDA 20-381, Volume 3.64 | ABB_SIM 00022234 - ABB_SIM 00022548 | A, F, R, H, I |
| PTX-0314 | | | | | | Clinical Study Report 91/09; NDA 20-381, Volume 3.65 | ABB_SIM 00022549 - ABB_SIM 00022916 | A, F, R, H, I |
| PTX-0315 | | | | | | Clinical Study Report 91/09; NDA 20-381, Volume 3.66 | ABB_SIM 00022917 - ABB_SIM 00023142 | A, F, R, H, I |
| PTX-0316 | | | | | | Clinical Study Report 91/09; NDA 20-381, Volume 3.67 | ABB_SIM 00023143 - ABB_SIM 00023448 | A, F, R, H, I |
| PTX-0317 | | | | | | Clinical Study Report 91/09; NDA 20-381, Volume 3.68 | ABB_SIM 00023449 - ABB_SIM 00023960 | A, F, R, H, I |
| PTX-0318 | | | | | | Clinical Study Report 91/09; NDA 20-381, Volume 3.69 | ABB_SIM 00023961 - ABB_SIM 00024353 | A, F, R, H, I |
| PTX-0319 | | | | | | Clinical Study Report 91/09; NDA 20-381, Volume 3.70 | ABB_SIM 00024354 - ABB_SIM 00024793 | A, F, R, H, I |
| PTX-0320 | | | | | | Clinical Study Report 91/03; NDA 20-381, Volume 3.71 | ABB_SIM 00024794 - ABB_SIM 00024890 | A, F, R, H, I |
| PTX-0323 | | | | | | Kos Pharmaceuticals, Inc. NDA 30-281, Volume 3.74 | ABB_SIM 00025706 - ABB_SIM 00026095 | A, F, R, H, I |
| PTX-0325 | | | | | | From IND Annual Report, Product Name: Niaspan 1000 mg Tablet, 11/22/93 | ABB_SIM 00037758 - ABB_SIM 00037768 | A, F, R, H, I |
| PTX-0326 | | | | | | Niaspan (Sustained-Release Niacin Tablets) Amendment to Pending NDA 20-381 | ABB_SIM 00038478 | A, F, R, H, I |
| PTX-0327 | | | | | | Department of Health and Human Services Application To Market A New Drug for Human Use Or An Antibiotic Drug For Human Use | ABB_SIM 00038495 - ABB_SIM 00038678 | A, F, R, H, I |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF <u>DELAWARE</u>

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0328 | | | | | | Niaspan Sustained-Release Tablets NDA 20-381 Volume 2.3 | ABB_SIM 00039069 - ABB_SIM 00039388 | A, F, R, H, I |
| PTX-0330 | | | | | | Clinical Study Report 89/04 Appendices; NDA 20-381, Volume Number 2.15 | ABB_SIM 00042171 - ABB_SIM 00042547 | A, F, R, H, I |
| PTX-0332 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume Number 2.17 | ABB_SIM 00042746 - ABB_SIM 00043147 | A, F, R, H, I |
| PTX-0333 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume Number 2.18 | ABB_SIM 00043148 - ABB_SIM 00043605 | A, F, R, H, I |
| PTX-0334 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume Number 2.19 | ABB_SIM 00043606 - ABB_SIM 00043879 | A, F, R, H, I |
| PTX-0335 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume Number 2.20 | ABB_SIM 00043880 - ABB_SIM 00044278 | A, F, R, H, I |
| PTX-0336 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume Number 2.21 | ABB_SIM 00044279 - ABB_SIM 00044695 | A, F, R, H, I |
| PTX-0337 | | | | | | Clinical Study Report 91/04; NDA 20-381, Volume Number 2.22 | ABB_SIM 00044696 - ABB_SIM 00044756 | A, F, R, H, I |
| PTX-0339 | | | | | | Clinical Study Report 91/05; NDA 20-381, Volume Number 2.24 | ABB_SIM 00045137 - ABB_SIM 00045473 | A, F, R, H, I |
| PTX-0340 | | | | | | Clinical Study Report 91/05; NDA 20-381, Volume Number 2.25 | ABB_SIM 00045474 - ABB_SIM 00045493 | A, F, R, H, I |
| PTX-0341 | | | | | | Clinical Study Report 91/05; NDA 20-381, Volume Number 2.26 | ABB_SIM 00045769 - ABB_SIM 00046647 | A, F, R, H, I |
| PTX-0342 | | | | | | Clinical Study Report 91/05; NDA 20-381, Volume Number 2.29 | ABB_SIM 00046648 - ABB_SIM 00046703 | A, F, R, H, I |
| PTX-0344 | | | | | | The Comparative Bioavailability of 500mg and 750mg Tablet Strengths of Niaspan, Protocol No. 94/09 Final Report, dated 11/22/1995 | ABB_SIM 00065294 - ABB_SIM 00065393 | A, F, R, H, I |
| PTX-0345 | | | | | | Kos Clinical Study 94/09 Synopsis, March 31, 1995 | ABB_SIM 00065394 - ABB_SIM 00065446 | A, F, R, H, I |
| PTX-0346 | | | | | | Protocol Number 95/05 Final Report, August 23, 1996 | ABB_SIM 00065569 - ABB_SIM 00065625 | A, F, R, H, I |
| PTX-0347 | | | | | | The Comparative Bioavailability of Niaspan Tablets from Three Manufacturing Lots, Protocol No. 95/06, Final Report, March 11, 1996 | ABB_SIM 00065626 - ABB_SIM 00065695 | A, F, R, H, I |
| PTX-0348 | | | | | | The Comparative Bioavailability of Three Niaspan Batches Manufactured at Two Different Sites, Protocol No. 95/07, Final Report, March 20, 1996 | ABB_SIM 00065696 - ABB_SIM 00065762 | A, F, R, H, I |
| PTX-0349 | | | | | | Niaspan Sustained-Release Tablets Final Report, Protocol 91/05, Revision 1 | ABB_SIM 00071699 - ABB_SIM 00071729 | A, F, R, H, I |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE _____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0350 | | | | | | Study 89/04, A Single-Blind Placebo Controlled Pilot Study Comparing the Effect of Once-A-Day Versus Twice-A-Day Dosing of Niaspan™ on Serum Lipids, Final Report, Kos Pharmaceuticals, Inc., August 1991 | ABB_SIM 00072801 - ABB_SIM 00073005 | A, F, R, H, I |
| PTX-0351 | | | | | | Niacin ER/Simvastatin Tablets, Kos Life Sciences, Inc., 2.3.P.2 Pharmaceutical Development | ABB_SIM 00076631 - ABB_SIM 00076639 | A, F, R, H, I |
| PTX-0352 | | | | | | Kos 2.5 Clinical Overview, CTD Clinical Summary | ABB_SIM 00076775 - ABB_SIM 00076830 | A, F, R, H, I, S |
| PTX-0354 | | | | | | Niacin ER/Simvastatin Tablets, Kos Life Sciences, Inc., Clinical Study Report: 019-03-04 CP, 12.1 Study Information | ABB_SIM 00081395 - ABB_SIM 00081491 | A, F, R, H, I |
| PTX-0357 | | | | | | The Comparative Bioequivalence of Two Niaspan 1000 mg Batches Manufactured at Two Different Sites Representing Two Different Batches Sizes, Study Number 97/05, Final Report, May 15, 1998 | ABB_SIM 00255955 - ABB_SIM 00256361 | A, F, R, H, I |
| PTX-0358 | | | | | | Niacin extended-release/simvastatin, 2.5 Clinical Overview, R&D/09/1034 | ABB_SIM 00296250 - ABB_SIM 00296263 | A, F, R, H, I |
| PTX-0359 | | | | | | 2.7.1 Summary of Biopharmaceutic Studies and Associated Analytical Methods | ABB_SIM 00296265 - ABB_SIM 00296339 | H |
| PTX-0362 | | | | | | Protocol for Kos Study No. 89/04 | ABB_SIM 00526932 - ABB_SIM 00526956 | A, F, R, H, I |
| PTX-0369 | | | | | | A Pilot Efficacy Study of a Once-A-Day Sustained-Release Niacin Formulation (Niaspan) in the Treatment of Primary Type IIa Hyperlipidemia, Protocol No. 91/02, Jan. 31, 1991 | ABB_SIM 00529701- ABB_SIM 00529750 | H |
| PTX-0371 | | | | | | A Double-Blind Placebo Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan (sustained release niacin) in Patients with Primary Hyperlipoproteinemia, Protocol No. 91/04 | ABB_SIM 00529791 - ABB_SIM 00529850 | H |
| PTX-0382 | | | | | | Kos Pharmaceuticals Protocol # 96/02 Final Report, May 6, 1997 | ABB_SIM 00542158 - ABB_SIM 00542171 | A, F, R, H, I |
| PTX-0383 | | | | | | Kos Pharmaceuticals Protocol # 96/02 Final Report, May 6, 1997 | ABB_SIM 00562153 - ABB_SIM 00564782 | A, F, R, H, I |
| PTX-0385 | | | | | | Center for Drug Evaluation and Research Summary Review for Application No. NDA 22-078 (Feb. 17, 2008), at 3-4, available at http://www.accessdata.fda.gov/drugsatfda_docs/nda/2008/022078s000_SumR.pdf. | | A, F, R, H, I, S |
| PTX-0386 | | | | | | Final Study Reports for Clinical Studies 96/02, May 6, 1997 | ABB_S2_00230786 - ABB_S2_00230823 | A, F, R, H, I |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF _DELAWARE_____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| | | | | | | **LABELS** | | |
| PTX-0387 | | | | | | Keenan Rep. Ex 76, Highlights of Prescribing Information for Simcor | | H |
| PTX-0388 | | | | | | Keenan Rep. Ex 78, Advicor - niacin and lovastatin tablet, extended release | | H, I |
| PTX-0389 | | | | | | SIMCOR - simvastatin and niacin tablet, film coated, extended release, Abbott Laboratories | ABB_SIM 00733732 - ABB_SIM 00733762 | A, F, R, H, I |
| PTX-0390 | | | | | | Lipitor Label, Warnings and Precautions | ABB_SIM 01262681 - ABB_SIM 01262703 | A, F, R, H, I |
| PTX-0394 | | | | | | Mevacor Label | | A, F, R, H, I |
| PTX-0395 | | | | | | Zocor (simvastatin) Tablet Label | | A, F, R, H, I |
| PTX-0396 | | | | | | Lipitor Label | | A, F, R, H, I |
| | | | | | | **DEFENDANTS' DOCUMENTS** | | |
| PTX-0399 | | | | | | Specification and Analytical Report Summary, Purified Water USP Results - STM RM-2014 - Microbiology, August 16, 2010 | OCA021868 - OCA021879 | F |
| PTX-0400 | | | | | | 3.2.P.5.2 Analytical Procedures for Niacin Extended-release and Simvastatin Tablets, ANDA No. 20-0601 | OCA021887 - OCA021888 | F |
| PTX-0401 | | | | | | Watson ANDA, Module 1.12.15 Request for In Vivo Bioequivalence Waiver | WT0016178 - WT0016181 | F |
| PTX-0407 | | | | | | Withdrawn (Teva document) | | |
| PTX-0408 | | | | | | Withdrawn (Teva document) | | |
| PTX-0409 | | | | | | Withdrawn (Teva document) | | |
| PTX-0410 | | | | | | Withdrawn (Teva document) | | |
| PTX-0411 | | | | | | Withdrawn (Teva document) | | |
| PTX-0412 | | | | | | Withdrawn (Teva document) | | |
| PTX-0413 | | | | | | Withdrawn (Teva document) | | |
| PTX-0414 | | | | | | Withdrawn (Teva document) | | |
| PTX-0415 | | | | | | Withdrawn (Teva document) | | |
| PTX-0416 | | | | | | Email dated May 19, 2008 from N. Clark to A. Boyer re: Fw: Generic - May 2008 Final Forecast File | WT0017176 - WT017361 | F, R, H, C, P |
| PTX-0417 | | | | | | Email dated February 19, 2008 from F. Adadevoh re: Healthcare News 2/19/08 | WT0024971 - WT0024978 | F, R, H, C, P |
| PTX-0418 | | | | | | Email dated March 25, 2008 from N. Clark to T. McLean re: Revised Forecast | WT0024986 - WT0025048 | F, R, H, C, P |
| PTX-0419 | | | | | | Email dated September 25, 2007 from A. Tagger to S. Goodman re Marketing Action Item Meeting | WT0025366 - WT0025373 | F, R, H, C, P |
| PTX-0420 | | | | | | Email dated June 9, 2009 from T. McLean, et al. to M. Udan, et al. re 3yr forecast for new products | WT0025631 - WT0025743 | F, R, H, C, P |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE _____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0421 | | | | | | Email dated May 5, 2010 from Corporate Communications re: Watson Issues Press Release - Confirms SIMCOR® Patent Challenge; Paragraph IV Litigation Underway | WT0026578 | F, R, H, C, P |
| PTX-0422 | | | | | | Email dated December 7, 2009 from C. Miller to A. Power et al. re: Portfolio Material | WT0026617 - WT0026623 | F, R, H, C, P |
| PTX-0423 | | | | | | Email dated March 3, 2010 from K. Gallicano to J. Vaughn et al. re Niacin ER / Simvastatin follow-up | WT0061424 - WT0061427 | F, R, H, C, P |
| PTX-0424 | | | | | | Email dated August 5, 2010 from M. Joshi to L. Borges, et al. re: 500/40 mg simvsatin assay 3932R0005 - Support | WT0173927 - WT0173929 | F, R, H, C, P |
| PTX-0425 | | | | | | Watson Pharmaceuticals Inc. 10-K Annual Report pursuant to section 13 and 15(d) filed on February 22, 2011 for Period December 31, 2010 | | F, R, H, C, P |
| PTX-0426 | | | | | | Spreadsheet, Boyer Ex. P-95 | WT0024960 - WT0024963 | F, R, H, C, P |
| PTX-0427 | | | | | | R&D Project Approval Form (RPAF) for Niacin ER/Simvastatin 500/20, 750/20, 1000/20mg | WT0026951 - WT0026952 | F, R, H, C, P |
| PTX-0428 | | | | | | R&D Project Approval Form (RPAF) for Niacin ER/Simvastatin 500/20, 750/20, 1000/20mg | WT0179536 - WT0179539 | F, R, H, C, P |
| PTX-0429 | | | | | | R&D Project Approval Form (RPAF) for Niacin | WT0179540 - WT0179543 | F, R, H, C, P |
| PTX-0430 | | | | | | Spreadsheet for API Test Chemicals | WT0179544 - WT0179559 | F, R, H, C, P |
| PTX-0431 | | | | | | R&D Project Approval Form (RPAF) for Niacin ER/Simvastatin 500/20, 750/20, 1000/20mg, 500/40mg, 1000/40mg | WT0179560 - WT0179565 | F, R, H, C, P |
| PTX-0432 | | | | | | R&D Project Approval Form (RPAF) for Niacin ER/Simvastatin 500/20, 750/20, 1000/20mg, 500/40mg, 1000/40mg | WT0179566 - WT0179571 | F, R, H, C, P |
| PTX-0433 | | | | | | R&D Project Approval Form (RPAF) for Niacin ER/Simvastatin 500/20, 750/20, 1000/20mg | WT0179572 - WT0179575 | F, R, H, C, P |
| PTX-0434 | | | | | | Spreadsheet for API Test Chemicals | WT0179576 - WT0179591 | F, R, H, C, P |
| PTX-0435 | | | | | | Spreadsheet for API Test Chemicals | WT0179592 - WT0179602 | F, R, H, C, P |
| PTX-0436 | | | | | | R&D Project Approval Form (RPAF) for Niacin ER/Simvastatin 500/20, 750/20, 1000/20mg | WT0179603 - WT0179608 | F, R, H, C, P |
| PTX-0437 | | | | | | Spreadsheet for API Test Chemicals | WT0179609 - WT0179624 | F, R, H, C, P |
| PTX-0438 | | | | | | Spreadsheet for API Test Chemicals | WT0179625 - WT0179635 | F, R, H, C, P |
| PTX-0439 | | | | | | R&D Project Approval Form (RPAF) for Niacin ER/Simvastatin 500/20, 750/20, 1000/20mg | WT0179636 - WT0179641 | F, R, H, C, P |
| PTX-0440 | | | | | | Spreadsheet for API Test Chemicals | WT0179642 - WT0179657 | F, R, H, C, P |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE_____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0441 | | | | | | Spreadsheet for API Test Chemicals | WT0179658 - WT0179668 | F, R, H, C, P |
| PTX-0442 | | | | | | Withdrawn (Teva document) | | |
| | | | | | | **SALES/MARKETING/LICENSING** | | |
| PTX-0448 | | | | | | Withdrawn | | |
| PTX-0449 | | | | | | Withdrawn | | |
| PTX-0450 | | | | | | Roth Capital Partners Company Report/Equity Research for Kos Pharmaceuticals, October 19, 2006 | ABB_S2_00348778 - ABB_S2_00348810 | A, F, R, H, I |
| PTX-0452 | | | | | | Offer to Purchase For Cash All Outstanding Shares of Common Stock of Kos Pharmaceuticals, Inc. by Abbott Laboratories, November 14, 2006 | ABB_SIM 00571685 - ABB_SIM 00571786 | A, F, R, H, I |
| PTX-0453 | | | | | | Press release dated July 18, 2008, "Teva to Acquire Barr" | ABB_SIM 00875409 - ABB_SIM00875413 | A, F, R, H, I |
| PTX-0454 | | | | | | Amendment to License Agreement between Kos Pharms., Inc. and Oryx Pharms., Inc., September 29, 2004 | ABB_SIM 00937440 - ABB_SIM 00937442 | A, F, R, H, I |
| PTX-0455 | | | | | | Patent Purchase and Assignment Agreement dated January 9, 2002 between Upsher-Smith and Kos | ABB_S2_00149236 - ABB_S2_0001492661 | A, F, R, H, I |
| PTX-0456 | | | | | | United States Patent Assignment dated January 9, 2002 between Upsher-Smith and Kos | ABB_S2_00149327 - ABB_S2_00149329 | |
| PTX-0457 | | | | | | Withdrawn | | |
| PTX-0458 | | | | | | Withdrawn | | |
| PTX-0461 | | | | | | Think Higher HDL-C Think Niaspan | ABB_S2_00568267 | A, F, R, H |
| PTX-0462 | | | | | | Withdrawn | | |
| PTX-0465 | | | | | | Development and License Agreement dated August 18, 2003 between Kos and Oryx | ABB_S2_00855638 - ABB_S2_00855673 | A, F, R, H, I |
| PTX-0466 | | | | | | Withdrawn | | |
| PTX-0467 | | | | | | Withdrawn | | |
| PTX-0469 | | | | | | Aggressive Targets Demand Comprehensive Lipid Management | ABB_SIM 00577624 - ABB_SIM 00577641 | A, F, R, H |
| PTX-0478 | | | | | | http://www.drugs.com/top200.html | ABB_SIM 01262674 - ABB_SIM 01262680 | A, F, R, H |
| PTX-0479 | | | | | | http://www.drugs.com/top200_units.html | ABB_SIM 01262667 - ABB_SIM 01262673 | A, F, R, H |
| PTX-0480 | | | | | | 2008 Update Net Sales - Full Year | ABB_S2_00891956 | A, F, R, H |
| PTX-0483 | | | | | | Dyslipidemia TRx and Market Share (Exhibit 110 to 06/17/2010 Deposition of Medgar Williams) | ABB_SIM 00569519 - ABB_SIM 00569530 | A, F, R, H, I |
| PTX-0484 | | | | | | IMS Summary Data - Total Prescription Information for 7/2004 - 6/1/2010 | ABB_SIM 00573336 - ABB_SIM 00573339 | A, F, R, H, I |
| PTX-0486 | | | | | | Spreadsheet re: 2007 LRP Dyslipidemia Franchise, Revised Kos LRP vs. Deal Model Reconciliation | ABB_SIM 00687296 - ABB_SIM 00687352 | A, F, R, H, I |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF <u>DELAWARE</u>

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---------|---------|---------|--------------|--------|----------|-------------------------|--------------|------------|
| PTX-0499 | | | | | | Slo-Niacin Ad | | A, F, R, H, NP, I |
| PTX-0500 | | | | | | Endur-Acin 500mg | | A, F, R, H, NP, I |
| | | | | | | **COURT DOCUMENTS** | | |
| PTX-0502 | | | | | | Report and Recommendation Regarding Claim Construction, June 18, 2010. Abbott Labs. et al. v. Lupin Limited et al., Civ. No. 09-152-JJF-LPS (D. Del.) | | R, H, C, P |
| PTX-0503 | | | | | | Order Correcting U.S. Patent No. 7,011,848, May 31, 2011. Abbott Labs. et al. v. Lupin Limited et al., Civ. No. 09-152-JJF-LPS (D. Del.) | | R, H, C, P |
| | | | | | | **EXPERT MATERIALS** | | |
| PTX-0504 | | | | | | Curriculum Vitae of Dr. Michael Bottorff | | A, F, R, H |
| PTX-0505 | | | | | | Curriculum Vitae of Dr. Frank Sacks | | A, F, R, H |
| PTX-0506 | | | | | | Curriculum Vitae of Daniel C. Smith, Ph.D., September 19, 2011 | | A, F, R, H |
| PTX-0507 | | | | | | Curriculum Vitae of Robert O. Williams III | | A, F, R, H |
| PTX-0508 | | | | | | Exhibit C (Total Prescriptions Chart) to Expert Report of Daniel C. Smith, Ph.D., September 19, 2011 | | A, F, R, H |
| PTX-0509 | | | | | | Exhibit D (Sales Dollars Chart) to Expert Report of Daniel C. Smith, Ph.D., September 19, 2011 | | A, F, R, H |
| PTX-0510 | | | | | | List of Materials Considered by Robert O. Williams III for Opening Expert Report to Teva, August 19, 2011 | | A, F, R, H |
| PTX-0511 | | | | | | List of Materials Considered by Robert O. Williams III for Opening Expert Report to Watson, August 19, 2011 | | A, F, R, H |
| PTX-0512 | | | | | | List of Materials Considered by Robert O. Williams III for Rebuttal Expert Report to Teva, September 19, 2011 | | A, F, R, H |
| PTX-0513 | | | | | | List of Materials Considered by Robert O. Williams III for Rebuttal Expert Report to Watson, September 19, 2011 | | A, F, R, H |
| PTX-0514 | | | | | | List of Materials Considered by Daniel C. Smith, Ph.D. for Expert Report, September 19, 2011 | | A, F, R, H |
| PTX-0515 | | | | | | List of Materials Considered by Dr. Frank Sacks for Rebuttal Expert Report, September 19, 2011 | | A, F, R, H |
| PTX-0516 | | | | | | List of Materials Considered by Dr. Frank Sacks for Supplemental Rebuttal Expert Report, October 14, 2011 | | A, F, R, H |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE_____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0517 | | | | | | List of Materials Considered by Michael B. Bottorff, Pharm.D. for Opening Expert Report to Teva, August 19, 2011 | | A, F, R, H |
| PTX-0518 | | | | | | List of Materials Considered by Michael B. Bottorff, Pharm.D. for Opening Expert Report to Watson, August 19, 2011 | | A, F, R, H |
| PTX-0519 | | | | | | Amended List of Materials Considered by Michael B. Bottorff, Pharm.D. for Opening Expert Report to Teva, August 19, 2011 | | A, F, R, H |
| PTX-0520 | | | | | | Amended List of Materials Considered by Michael B. Bottorff, Pharm.D. for Opening Expert Report to Watson, August 19, 2011 | | A, F, R, H |
| PTX-0521 | | | | | | List of Materials Considered by Michael B. Bottorff, Pharm.D. for Rebuttal Expert Report, September 19, 2011 | | A, F, R, H |
| PTX-0522 | | | | | | List of Materials Considered by Michael B. Bottorff, Pharm.D. for Supplemental Rebuttal Expert Report, October 14, 2011 | | A, F, R, H |
| PTX-0523 | | | | | | Exhibit 2 to Michael B. Bottorff, Pharm.D. Opening Expert Report to Teva, August 19, 2011 | | A, F, R, H |
| PTX-0524 | | | | | | Exhibit 3 to Michael B. Bottorff, Pharm.D. Opening Expert Report to Teva, August 19, 2011 | | A, F, R, H |
| PTX-0525 | | | | | | Exhibit 4 to Michael B. Bottorff, Pharm.D. Opening Expert Report to Teva, August 19, 2011 | | A, F, R, H |
| PTX-0526 | | | | | | Exhibit 5 to Michael B. Bottorff, Pharm.D. Opening Expert Report to Teva, August 19, 2011 | | A, F, R, H |
| PTX-0527 | | | | | | Exhibit 6 to Michael B. Bottorff, Pharm.D. Opening Expert Report to Teva, August 19, 2011 | | A, F, R, H |
| PTX-0528 | | | | | | Exhibit 7 to Michael B. Bottorff, Pharm.D. Opening Expert Report to Teva, August 19, 2011 | | A, F, R, H |
| PTX-0529 | | | | | | Exhibit 2 to Michael B. Bottorff, Pharm.D. Opening Expert Report to Watson, August 19, 2011 | | A, F, R, H |
| PTX-0530 | | | | | | Exhibit 3 to Michael B. Bottorff, Pharm.D. Opening Expert Report to Watson, August 19, 2011 | | A, F, R, H |
| PTX-0531 | | | | | | Exhibit 4 to Michael B. Bottorff, Pharm.D. Opening Expert Report to Watson, August 19, 2011 | | A, F, R, H |
| PTX-0532 | | | | | | Exhibit 5 to Michael B. Bottorff, Pharm.D. Opening Expert Report to Watson, August 19, 2011 | | A, F, R, H |

AO 187 (Rev. 07/87) Exhibit and Witness List

UNITED STATES DISTRICT COURT

_____ DISTRICT OF DELAWARE_____

| PTX NO. | DTX NO. | JTX NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS | BATES NUMBER | OBJECTIONS |
|---|---|---|---|---|---|---|---|---|
| PTX-0533 | | | | | | Exhibit 6 to Michael B. Bottorff, Pharm.D. Opening Expert Report to Watson, August 19, 2011 | | A, F, R, H |
| PTX-0534 | | | | | | Exhibit 7 to Michael B. Bottorff, Pharm.D. Opening Expert Report to Watson, August 19, 2011 | | A, F, R, H |
| PTX-0535 | | | | | | Exhibit 3 to Robert O. Williams III Opening Expert Report to Teva, August 19, 2011 | | A, F, R, H |
| PTX-0536 | | | | | | Exhibit 4 to Robert O. Williams III Opening Expert Report to Teva, August 19, 2011 | | A, F, R, H |
| PTX-0537 | | | | | | Exhibit 3 to Robert O. Williams III Opening Expert Report to Watson, August 19, 2011 | | A, F, R, H |
| PTX-0538 | | | | | | Exhibit 4 to Robert O. Williams III Opening Expert Report to Watson, August 19, 2011 | | A, F, R, H |
| | | | | | | **KOS DOCUMENTS** | | |
| PTX-0539 | | | | | | Development Activities Overview | ABB_S2_00044657 - ABB_S2_00044659 | A, F, R, H, C, S |
| PTX-0540 | | | | | | Niaspan Production vs. Plan Finished Bulk Tablets as of October 4, 1999 | ABB_S2_00076033 | A, F, R, H, C, S |
| PTX-0541 | | | | | | Efforts to establish an IVIVC for Niaspan | ABB_S2_00076768 - ABB_S2_00076772 | A, F, R, H, C, S |
| PTX-0542 | | | | | | Graph 6.12.1A HDL2 Cholesterol to HDL3 Cholesterol Ratio Mean Percent Change From Baseline Efficacy-Analyzable Population 1 | ABB_S2_00121452 - ABB_S2_00121453 | A, F, R, H, C, S, I, ID |
| PTX-0543 | | | | | | Withdrawn | | |
| PTX-0548 | | | | | | Medline Search on Niacin 1987 - 1989 | ABB_SIM 00558800 - ABB_SIM 00559396 | A, F, R, H, C, S, I |
| PTX-0549 | | | | | | Invention Disclosure by E. Cefali and M. Adams, April 22, 1996 | ABB_SIM 00566745 - ABB_SIM 00566749 | A, F, R, H, C, I |
| PTX-0551 | | | | | | Kos Pharmaceuticals Form 10-K (2001) | ABB_SIM 00945482 - ABB_SIM 00945536 | A, F, R, H |
| | | | | | | **ASSIGNMENT DOCUMENTS** | | |
| PTX-0552 | | | | | | Patent Assignment History, August 22, 1989 | | A, F, R, H, C, S, I |
| PTX-0553 | | | | | | Licensing Agreement between Abbott Respiratory and Abbott Laboratories, March 5, 2009 | ABB_SIM 00571787 - ABB_SIM 00571791 | A, F, R, H, I |
| PTX-0554 | | | | | | Amendment to Licensing Agreement between Abbott Respiratory and Abbott Laboratories, January 22, 2010 | ABB_SIM 00571792 | A, F, R, H, I |

# EXHIBIT N

# EXHIBIT N

## DEFENDANTS' EXHIBIT LIST WITH PLAINTIFFS' OBJECTIONS

Defendants hereby submit their exhibit list and Plaintiffs' objections thereto.  Plaintiffs used the following abbreviations for objections to proposed exhibits:

| Abbreviation | Objection |
|---|---|
| 106 | Incomplete Document (FRE 106) |
| 402 | Irrelevant and/or Immaterial (FRE 402) |
| 403 | Cumulative, Duplicative, Wasteful or Undue Delay (FRE 403) |
| 408 | Compromise or Offer to Compromise (FRE 408) |
| 802 | Hearsay (FRE 802) |
| 901 | Authenticity (FRE 901) |
| 1002 | Best Evidence Rule Prohibits Introduction (FRE 1002) |
| D | Demonstrative/Should Not Be Admitted Into Evidence |

EXHIBIT N                                                                                    .

| | | | | | | | |
|---|---|---|---|---|---|---|---|
|  | **Defendants' Joint Trial Exhibit List and Plaintiffs' Objections\*\*** |
|  | ***Abbott Laboratories, et al. v. Teva Pharmaceuticals USA, Inc., et al.,*** <br> **Civil Action No. 10-cv-0057-SLR-MPT (Consolidated) (D.DE.)** |
|  | \*\* Plaintiffs offer the following objections subject to the key and general objections contained in the December 7, 2011 and December 12, 2011 letters from Mr. Stern to Messrs. Werner and Sorenson |
| **DTX No.** | **PTX No.** | **JTX No.** | **Depo Exh No(s).** | **Production Range** | **Date** | **Description** | **Objection(s)** |
| 1 | | | SIM-028 (Bova); SIM-334 (Williams) | TV0005540 - TV0005553 | 06/27/2000 | U.S. Patent No. 6,080,428 (Certified) | Lack of foundation for date description |
| 2 | | | | TV0005554 - TV0005735 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 1 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 3 | | | | TV0005736 - TV0005904 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 2 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 4 | | | | TV0005905 - TV0006076 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 3 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 5 | | | | TV0006077 - TV0006242 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 4 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 6 | | | | TV0006243 - TV0006414 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 5 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 7 | | | | TV0006415 - TV0006559 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 6 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 8 | | | | TV0006560 - TV0006718 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 7 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 9 | | | | TV0006719 - TV0006874 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 8 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 10 | | | | TV0006875 - TV0007045 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 9 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 11 | | | | TV0007046 - TV0007203 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 10 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 12 | | | | TV0007204 - TV0007398 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 11 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |

EXHIBIT N

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 13 | | | | TV0007399 - TV0007577 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 12 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 14 | | | | TV0007578 - TV0007733 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 13 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 15 | | | | TV0007734 - TV0007911 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 14 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 16 | | | | TV0007912 - TV0008077 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 15 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 17 | | | | TV0008078 - TV0008246 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 16 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 18 | | | | TV0008247 - TV0008431 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 17 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 19 | | | | TV0008432 - TV0008613 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 18 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 20 | | | | TV0008614 - TV0008780 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 19 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 21 | | | | TV0008781 - TV0008935 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 20 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 22 | | | | TV0008936 - TV0009117 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 21 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 23 | | | | TV0009118 - TV0009323 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 22 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 24 | | | | TV0009324 - TV0009509 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 23 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 25 | | | | TV0009510 - TV0009661 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 24 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 26 | | | | TV0009662 - TV0009843 | 01/14/1995 | File History for U.S. Patent Number 6,080,428 (Part 25 of 25) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |

**EXHIBIT N**

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 27 | | | SIM-013 (Bova); SIM-340 (Williams) | TV0009844 - TV0009861 | 10/10/2000 | U.S. Patent No. 6,129,930 (Certified) | Lack of foundation for date description |
| 28 | | | | TV0009862 - TV0010333 | 03/06/1997 | File History for U.S. Patent Number 6,129,930 (Part 1 of 8) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 29 | | | | TV0010334 - TV0010848 | 03/06/1997 | File History for U.S. Patent Number 6,129,930 (Part 2 of 8) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 30 | | | | TV0010849 - TV0011302 | 03/06/1997 | File History for U.S. Patent Number 6,129,930 (Part 3 of 8) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 31 | | | | TV0011303 - TV0011805 | 03/06/1997 | File History for U.S. Patent Number 6,129,930 (Part 4 of 8) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 32 | | | | TV0011806 - TV0012266 | 03/06/1997 | File History for U.S. Patent Number 6,129,930 (Part 5 of 8) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 33 | | | | TV0012267 - TV0012765 | 03/06/1997 | File History for U.S. Patent Number 6,129,930 (Part 6 of 8) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 34 | | | | TV0012766 - TV0013280 | 03/06/1997 | File History for U.S. Patent Number 6,129,930 (Part 7 of 8) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 35 | | | | TV0013281 - TV0013705 | 03/06/1997 | File History for U.S. Patent Number 6,129,930 (Part 8 of 8) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 36 | | | SIM-014 (Bova) | TV0013706 - TV0013731 | 06/18/2002 | U.S. Patent No. 6,406,715 (Certified) | Lack of foundation for date description |
| 37 | | | | TV0013732 - TV0014040 | 10/31/1997 | File History for U.S. Patent Number 6,406,715 (Part 1 of 2) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 38 | | | | TV0014041 - TV0014327 | 10/31/1997 | File History for U.S. Patent Number 6,406,715 (Part 1 of 2) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 39 | | | SIM-027 (Bova) | TV0014328 - TV0014350 | 10/22/2002 | U.S. Patent No. 6,469,035 (Certified) | Lack of foundation for date description |
| 40 | | | | TV0014351 - TV0014692 | 07/31/1997 | File History for U.S. Patent Number 6,469,035  (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 41 | | | SIM-007 (Bova); SIM-343 (Williams) | TV0014693 - TV0014722 | 01/13/2004 | U.S. Patent No. 6,676,967 (Certified) | Lack of foundation for date description |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 42 | | | | TV0014723 - TV0014955 | 10/31/1997 | File History for U.S. Patent Number 6,676,967 (Part 1 of 2) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 43 | | | | TV0014956 - TV0015183 | 10/31/1997 | File History for U.S. Patent Number 6,676,967 (Part 1 of 2) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 44 | | | SIM-008 (Bova); SIM-342 (Williams) | TV0015184 - TV0015211 | 06/08/2004 | U.S. Patent No. 6,746,691 (Certified) | Lack of foundation for date description |
| 45 | | | | TV0015212 - TV0015481 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 1 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 46 | | | | TV0015482 - TV0015769 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 2 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 47 | | | | TV0015770 - TV0016042 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 3 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 48 | | | | TV0016043 - TV0016357 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 4 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 49 | | | | TV0016358 - TV0016673 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 5 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 50 | | | | TV0016674 - TV0016987 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 6 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 51 | | | | TV0016988 - TV0017290 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 7 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 52 | | | | TV0017291 - TV0017583 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 8 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 53 | | | | TV0017584 - TV0017918 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 9 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 54 | | | | TV0017919 - TV0018234 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 10 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 55 | | | | TV0018235 - TV0018569 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 11 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |

EXHIBIT N

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 56 | | | | TV0018570 - TV0018894 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 12 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 57 | | | | TV0018895 - TV0019218 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 13 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 58 | | | | TV0019219 - TV0019520 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 14 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 59 | | | | TV0019521 - TV0019816 | 10/31/1997 | File History for U.S. Patent Number 6,746,691 (Part 15 of 15) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 60 | | | SIM-015 (Bova) | TV0019817 - TV0019847 | 11/16/2004 | U.S. Patent No. 6,818,229 (Certified) | Lack of foundation for date description |
| 61 | | | | TV0019848 - TV0019849 | 10/31/1997 | File History for U.S. Patent Number 6,818,229 (Certification page with image of USPTO certified CD-Rom) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 62 | | | | TV0019850 - TV0022335 | 10/31/1997 | File History for U.S. Patent Number 6,818,229 (Contents of USPTO certified CD-Rom) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 63 | | | SIM-016 (Bova) | TV0022336 - TV0022348 | 03/14/2006 | U.S. Patent No. 7,011,848 (Certified) | Lack of foundation for date description |
| 64 | | | | TV0022349 - TV0022350 | 12/22/1999 | File History for U.S. Patent Number 7,011,848 (Certification page with image of USPTO certified CD-Rom) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 65 | | | | TV0022351 - TV0022614 | 12/22/1999 | File History for U.S. Patent Number 7,011,848 (Contents of USPTO certified CD-Rom) (Certified) | 106, Lack of foundation for date description, 403 (cumulative) |
| 66 | | | DDX-001 (Blanford) | ABB_SIM00526824 - ABB_SIM00526826 | 06/26/2003 | Kos v. Barr: Notice of Depositions | 402 |
| 67 | | | DDX-002 (Blanford) | ABB_SIM00526827 - ABB_SIM00526833 | 06/02/2003 | Kos v. Barr: Barr Laboratories, Inc.'s Notice of Deposition Pursuant to Rule 30(b)(6) | 402 |
| 68 | | | DDX-003 (Blanford) | ABB_SIM00526834 - ABB_SIM00526835 | | Kos Pharmaceuticals Inc., Organizational Charts (Officers and Direct Management Reports and Sales & Marketing) | |
| 69 | | | DDX-004 (Blanford) | ABB_SIM00526836 | | Kos Pharmaceuticals Inc., Organizational Chart (Officers) | |
| 70 | | | DDX-005 (Blanford) | ABB_SIM00526837 - ABB_SIM00526838 | | Kos Pharmaceuticals Inc., Senior Management | |
| 71 | | | DDX-006 (Blanford) | ABB_SIM00526840 - ABB_SIM00527171 | 03/26/1990 | Letter from David J. Bova, Vice President, Kos Pharmaceuticals, Inc., to the Food and Drug Administration with Investigational New Drug Applications (IND's) | 403 (cumulative) |
| 72 | | | DDX-007 (Blanford) | ABB_SIM00527172 - ABB_SIM00527176 | 01/27/1992 | Letter from David J. Bova, Vice President, Kos Pharmaceuticals, Inc., to the Food and Drug Administration regarding Investigational New Drug (IND) 34,613 | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 73 | | | DDX-008 (Blanford) | ABB_SIM00527177 - ABB_SIM00527181 | 07/25/1994 | Facsimile from Donald Raineri, Pharm.D. to Daniel Bell (with enclosure) | |
| 74 | | | DDX-009 (Blanford) | ABB_SIM00527182 - ABB_SIM00527186 | 08/28/2002 | Regulatory Affairs, Niaspan NDA Correspondence List from 1993 - Present | |
| 75 | | | DDX-010 (Blanford) | ABB_SIM00527187 - ABB_SIM00527396 | 05/03/1996 | Kos Pharmaceuticals, Inc.'s Application to Market a new Drug for Human Use or an Antibiotic Drug for Human Use regarding NDA 20-381 | |
| 76 | | | DDX-011 (Blanford) | ABB_SIM00527397 - ABB_SIM00527451 | 04/23/1996 | Kos Pharmaceuticals, Inc., Niaspan™ Controlled-Release Tablets, Clinical Section regarding NDA 20-381 | |
| 77 | | | DDX-012 (Blanford) | ABB_SIM00527452 - ABB_SIM00527463 | | Kos Pharmaceuticals, Inc., Niaspan™ Controlled-Release Tablets, Chemistry, Manufacturing, Controls regarding NDA 20-381 | |
| 78 | | | DDX-013 (Blanford) | ABB_SIM00527464 - ABB_SIM00527470 | 04/09/1996 | Internal Memorandum regarding Minutes of Niaspan™ Project Meeting | |
| 79 | | | DDX-014 (Blanford) | ABB_SIM00527471 - ABB_SIM00527472 | 08/06/1996 | Internal Memorandum regarding Nicobid® Contents | |
| 80 | | | DDX-015 (Blanford) | ABB_SIM00527473 - ABB_SIM00527475 | 05/22/1996 | Internal Memorandum regarding The Competitive SR niacin dissolution project | |
| 81 | | | DDX-016 (Blanford) | ABB_SIM00527476 - ABB_SIM00527485 | 10/11/1996 | Kos Pharmaceuticals, Inc., A 500 mg Niacin Comparative Dissolution Study, Report/Study No: PESR960007 | |
| 82 | | | DDX-017 (Blanford) | ABB_SIM00527486 - ABB_SIM00527487 | 06/25/1996 | Internal Memorandum regarding NDA 20-381: Questions from Eric Colman, M.D. | |
| 83 | | | DDX-023 (Blanford) | ABB_SIM00527552 - ABB_SIM00527556 | 11/02/2000 | Kos Pharmaceuticals, Inc., Submission of Patent Information Niaspan® (extended-release tablets), Volume 1 of 1 | 402 |
| 84 | | | DDX-024 (Blanford) | ABB_SIM00527557 - ABB_SIM00527561 | 07/17/2002 | Kos Pharmaceuticals, Inc., Application to Market a New Drug, Biologic, or an Antibiotic Drug for Human Use regarding NDA 20-381, Patient Information Submission Form | 402 |
| 85 | | | DDX-025 (Blanford) | ABB_SIM00527562 - ABB_SIM00527566 | 08/06/2002 | Letter from Marvin F. Blanford, Vice President of Compliance, Kos Pharmaceuticals, Inc., to the Food and Drug Administration regarding Niaspan™ NDA 20-381, Submission of Corrected Information Regarding Newly Issued Patent (with enclosure) | 402 |
| 86 | | | DDX-026 (Blanford) | ABB_SIM00527567 - ABB_SIM00527575 | 09/06/1996 | Internal Memorandum regarding Development and Rational for Once-A-Day at Bedtime Dosing for Niaspan® | 403 (cumulative) |
| 87 | | | DDX-027 (McGovern) | ABB_SIM00527576 - ABB_SIM00527582 | 08/21/2003 | Kos v. Barr: Barr Laboratories, Inc.'s First Amended Notice of Deposition Pursuant to Rule 30(b)(6) | 402 |
| 88 | | | DDX-028 (McGovern) | ABB_SIM00527583 - ABB_SIM00527585 | 08/21/2003 | Kos v. Barr: Barr's First Amended Notice of Deposition for Mark McGovern | 402 |
| 89 | | | DDX-029 (McGovern) | ABB_SIM00527586 - ABB_SIM00527600 | 03/07/2003 | Kos v. Barr: Barr Laboratories, Inc.'s First Set of Document Requests (Nos. 1-81) in Kos III to Plaintiff | 402 |
| 90 | | | DDX-030 (McGovern) | ABB_SIM00527601 - ABB_SIM00527605 | 04/02/1997 | Kos Pharmaceuticals, Inc., Contract Clinical Monitor Newsletter | 402 |
| 91 | | | DDX-031 (McGovern) | ABB_SIM00527606 - ABB_SIM00527608 | 02/24/2000 | Facsimile from Deyanira Taborda to MSC, Kathy Schoff regarding ACC press related materials (with enclosure) | 402 |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 92 | | | DDX-032 (McGovern) | ABB_SIM00527609 - ABB_SIM00527623 | 04/09/2001 | Kos Pharmaceuticals, Inc., Organizational Charts | 403 (cumulative) |
| 93 | | | DDX-033 (McGovern) | ABB_SIM00527624 - ABB_SIM00527636 | 1/15/2002 | Kos Pharmaceuticals, Inc., Organizational Charts | 403 (cumulative) |
| 94 | | | DDX-034 (McGovern) | ABB_SIM00527637 - ABB_SIM00527640 | | Corporate Management Committee' minutes with handwritten notes | 901, 402 |
| 95 | | | DDX-035 (McGovern) | ABB_SIM00527641 | 11/15/1999 | Correspondence from Mark McGovern regarding Slo-Niacin information sheet | 802 |
| 96 | | | DDX-036 (Messick) | ABB_SIM00527642- ABB_SIM00527644 | 08/25/2003 | Kos v. Barr: Barr's First Amended Notice of Deposition for Karen Messick | 402 |
| 97 | | | DDX-037 (Messick) | ABB_SIM00527645 - ABB_SIM00527651 | 08/25/2003 | Kos v. Barr: Barr Laboratories, Inc.'s Second Amended Notice of Deposition Pursuant to Rule 30(b)(6) | 402 |
| 98 | | | DDX-038 (Messick) | ABB_SIM00527652 - ABB_SIM00527654 | 09/18/2002 | Correspondence from Marijke Adams to Sue Balandis enclosing Memorandum regarding Niaspan PK/metabolism manuscript preparation and publication (with enclosure) | 402 |
| 99 | | | DDX-039 (Messick) | ABB_SIM00527655 - ABB_SIM00527657 | 10/07/2002 | Correspondence from Marijke Adams regarding Niaspan PK manuscript update (with enclosure) | 402 |
| 100 | | | DDX-040 (Messick); SIM-376 (Sacks) | ABB_SIM00527658 - ABB_SIM00527690 | 10/25/1993 | Patent Application Serial No. M/124392, U.S. Department of Commerce Patent and Trademark Office, Fee Record Sheet | 106, 403 (cumulative) |
| 101 | | | DDX-041 (Messick) | ABB_SIM00527691 - ABB_SIM00527695 | 07/07/1994 | USPTO Examiner's Action regarding Serial No. 08/124,392 | 106, 403 (cumulative) |
| 102 | | | DDX-042 (Messick) | ABB_SIM00527696 | | USPTO Examiner Interview Summary Record regarding Serial No. 08/124,392 | 106, 403 (cumulative) |
| 103 | | | DDX-043 (Messick) | ABB_SIM00527697 | 01/23/1995 | USPTO Notice of Abandonment regarding Serial No. 08/124,392 | 106, 403 (cumulative) |
| 104 | | | DDX-044 (Messick) | ABB_SIM00527698 - ABB_SIM00527729 | 03/13/1995 | Patent Application Serial No. 08/368,378, U.S. Department of Commerce Patent and Trademark Office, Fee Record Sheet | 106, 403 (cumulative) |
| 105 | | | DDX-045 (Messick) | ABB_SIM00527730 - ABB_SIM00527731 | 07/30/1999 | Letter from Mukesh Patel, Vice President, Licensing, Kos Pharmaceuticals, Inc., to Barbara Saunders, Associate General Counsel, DuPont Pharmaceuticals Company | |
| 106 | | | DDX-046 (Messick) | ABB_SIM00527732 - ABB_SIM00527759 | 03/09/1990 | Protocol Number 89/04: A Single-Blind Placebo Controlled Pilot Study Comparing the Effect of Once-A-Day Versus Twice-A-Day Dosing of Sustained Release Niacin on Serum Lipids | |
| 107 | | | DDX-047 (Messick) | ABB_SIM00527760 - ABB_SIM00527767 | 04/14/1995 | USPTO Transmittal Sheet and Information Disclosure Statement regarding Serial No. 08/368,378 | 106, 403 (cumulative) |
| 108 | | | DDX-048 (Messick) | ABB_SIM00527768 - ABB_SIM00527771 | 06/30/1995 | USPTO Examiner's Action regarding Serial No. 08/368,378 | 106, 403 (cumulative) |
| 109 | | | DDX-049 (Messick) | ABB_SIM00527772 - ABB_SIM00527774 | 08/17/1995 | USPTO Declaration of David J. Bova regarding Serial No. 08/368,378 | 106, 403 (cumulative) |
| 110 | | | DDX-050 (Messick) | ABB_SIM00527775 - ABB_SIM00527780 | 08/23/1995 | USPTO Response to Examiner's Action dated 06/30/1995 regarding Serial No. 08/368,378 | 106, 403 (cumulative) |
| 111 | | | DDX-051 (Messick) | ABB_SIM00527781 - ABB_SIM00527795 | 03/27/1996 | USPTO Declaration of David J. Bova regarding Serial No. 08/368,378 | 106, 403 (cumulative) |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 112 | | | DDX-052 (Messick) | ABB_SIM00527796 | 11/22/1996 | USPTO Communication from the Examiner regarding Serial No. 08/368,378 | 106, 403 (cumulative) |
| 113 | | | DDX-053 (Messick) | ABB_SIM00527797 - ABB_SIM00528167 | 12/17/1996 | Kos Pharmaceuticals Inc - KOSP, Form S-1 | |
| 114 | | | DDX-054 (Kiritsy) | ABB_SIM00528168 - ABB_SIM00528170 | 08/25/2003 | Kos v. Barr: Barr's First Amended Notice of Deposition for Chris Kiritsy | 402 |
| 115 | | | DDX-055 (Kiritsy) | ABB_SIM00528171 - ABB_SIM00528177 | 08/25/2003 | Kos v. Barr: Barr Laboratories, Inc.'s Third Amended Notice of Deposition Pursuant to Rule 30(b)(6) | 402 |
| 116 | | | DDX-056 (Kiritsy) | ABB_SIM00528178 - ABB_SIM00528187 | 10/08/1996 | Kos Pharmaceuticals, Inc., PMSI Audited U.S. Market for Cholesterol Lowering-Prescriptions (For 12 Months Ending July 1996) | |
| 117 | | | DDX-057 (Kiritsy) | ABB_SIM00528188 - ABB_SIM00528220 | 03/06/1996 | Confidential Review of Kos Pharmaceuticals, Inc. | |
| 118 | | | DDX-058 (Kiritsy) | ABB_SIM00528221 | 02/07/1996 | Kos Pharmaceuticals, Inc., Projected Revenue for Niaspan™ | |
| 119 | | | DDX-059 (Kiritsy) | ABB_SIM00528222 - ABB_SIM00528228 | 08/30/1996 | Letter from David L. Heatherman to Daniel Bell | |
| 120 | | | DDX-060 (Kiritsy) | ABB_SIM00528229 - ABB_SIM00528234 | 01/21/1994 | Facsimile to David J. Bova regarding Kos Pharmaceuticals, Inc. Confidential Summary of Operations for 1993 (with enclosure) | |
| 121 | | | DDX-061 (Kiritsy) | ABB_SIM00528235 - ABB_SIM00528252 | 01/30/1997 | Kos Pharmaceuticals, Inc., Review for Michael Jaharis | |
| 122 | | | DDX-062 (Kiritsy) | ABB-SIM00528253 - ABB_SIM00528264 | 02/11/1997 | Sales Memorandum: Kos Pharmaceuticals, Inc., 3,500,000 Shares of Common Stock, Initial Public Offering | |
| 123 | | | DDX-063 (Kiritsy) | ABB_SIM00528265 - ABB_SIM00528271 | 09/24/1997 | Facsimile to Chris Kiritsy with enclosure | 802 |
| 124 | | | DDX-064 (Kiritsy); SUN-007 (McGovern) | ABB_SIM00528272 - ABB_SIM00528306 | 02/01/1997 | Niaspan: 1997 Marketing Plan | Lack of foundation for date description |
| 125 | | | DDX-065 (Kiritsy) | ABB_SIM00528307 | 06/01/1997 | Kos Pharmaceuticals, Inc., Bristol-Myers Squibb | 106, 402, Lack of foundation for date description |
| 126 | | | DDX-066 (Kiritsy) | ABB_SIM00528308 - ABB_SIM00528321 | 09/30/1997 | Kos Pharmaceuticals, Inc., Form 10-Q | |
| 127 | | | DDX-067 (Kiritsy) | ABB_SIM00528322 - ABB_SIM00528323 | 11/13/1997 | Press Release, Earnings report hits KOS stock, Business: The Herald (November 13,1997) (on file with Michele Chandler) | 802 |
| 128 | | | DDX-068 (Kiritsy) | ABB_SIM00528324 | 11/20/1997 | Memorandum regarding Forecast of sales volumes for Niaspan | 402 |
| 129 | | | DDX-069 (Bell) | ABB_SIM00528325 - ABB_SIM00528327 | 09/16/2003 | Kos v. Barr: Barr's First Amended Notice of Deposition for Daniel Bell | 402 |
| 130 | | | DDX-070 (Bell) | ABB_SIM00528328 - ABB_SIM00528331 | 2/2/1988 - 12/22/1990 | Dr. Theohardies' handwritten notes | 802, 901 |
| 131 | | | DDX-071 (Bell) | ABB_SIM00528332 | 3/8/1989 - 9/20/1993 | Timetable for Niaspan® Development | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 132 | | | DDX-072 (Bell); SIM-004 (Bova) | ABB_SIM00528333 - ABB_SIM00528341 | 09/06/1996 | Internal Memorandum regarding Development and Rational for Once-A-Day at Bedtime Dosing for Niaspan® | 403 (cumulative) |
| 133 | | | DDX-073 (Bell) | ABB_SIM00528342 - ABB_SIM00528350 | 03/19/1996 | Facsimile to Examiner regarding U.S. Serial No. 08/368,378 with enclosure | 106 |
| 134 | | | DDX-074 (Bell) | ABB_SIM00528351 - ABB_SIM00528356 | 11/23/1998 | Letter from Daniel M. Bell, President and CEO, Kos Pharmaceuticals, Inc., to Lutz Lingnau, President and CEO, Schering Berlin Inc. with attachments | |
| 135 | | | DDX-075 (Bell) | ABB_SIM00528357 - ABB_SIM00528364 | 05/27/1993 | Memorandum regarding Upsher-Smith Information with enclosures | 802 |
| 136 | | | DDX-076 (Bell); SIM-026 (Bova) | ABB_SIM00528365 - ABB_SIM00528368 | 07/01/1993 | Internal Memorandum regarding Niaspan™ Studies Post NDA Submission | |
| 137 | | | DDX-077 (Bell) | ABB_SIM00528369 - ABB_SIM00528389 | 02/23/1994 | Memorandum regarding Upsher-Smith Niacin Information with enclosures | 802 |
| 138 | | | DDX-078 (Bell) | ABB_SIM00528390 - ABB_SIM00528394 | 08/19/1996 | Facsimile to Daniel Bell regarding Wu and Gray article with enclosure | |
| 139 | | | DDX-079 (Bell) | ABB_SIM00528395 | 11/14/1996 | Memorandum regarding Indirect comparison of Niaspan, Slo-niacin, and Enduracin | |
| 140 | | | DDX-080 (Bell) | ABB_SIM00528396 - ABB_SIM00528399 | 12/16/1996 | Facsimile to Daniel Bell regarding Upsher-Smith | 802 |
| 141 | | | DDX-081 (Bell) | ABB_SIM00528400 - ABB_SIM00528403 | 01/27/1997 | Facsimile to Rod Bell enclosing January 27, 1997 letter from Daniel Bell (Kos Pharmaceuticals, Inc.) to Ian Troup (Upsher-Smith Laboratories, Inc.) with enclosure | 408 |
| 142 | | | DDX-082 (Bell) | ABB_SIM00528404 - ABB_SIM00528424 | 02/07/1997 | License Agreement between Upsher-Smith Laboratories, Inc. and Kos Pharmaceuticals, Inc. | 403 (cumulative) |
| 143 | | | DDX-083 (Bell) | ABB_SIM00528425 | 2/27/2001 | Kos - DuPont Intellectual Property Matters, February 27, 2001 - Miami - mid-day | 802 |
| 144 | | | DDX-084 (Toth) | ABB_SIM00528426 - ABB_SIM00528428 | 09/29/2003 | Kos v. Barr: Barr's Second Amended Notice of Deposition for George Toth | 402 |
| 145 | | | DDX-085 (Toth) | ABB_SIM00528429 - ABB_SIM00528434 | 02/26/1999 | USPTO Declaration of George M. Toth regarding Serial No. 08/368,378 | 106, 403 (cumulative) |
| 146 | | | DDX-086 (Toth); SIM-193 (Toth) | ABB_SIM00528435 - ABB_SIM00528468 | 10/16/1989 - 11/3/1989 | Laboratory Notebook Number 002; Chemist: George M. Toth | |
| 147 | | | DDX-087 (Toth); SIM-195 (Toth) | ABB_SIM00528469 - ABB_SIM00528481 | 11/01/1989 | Facsimile to David Bova regarding Niacin Profile F9303C + D with enclosure | 802 |
| 148 | | | DDX-088 (Toth) | ABB_SIM00528482 - ABB_SIM00528488 | 11/17/1989 | Facsimile to George Toth with enclosures | |
| 149 | | | DDX-089 (Toth); SIM-011 (Bova) | ABB_SIM00528489 - ABB_SIM00528504 | 11/28/1989 | Facsimile to Roger Cohn, Pat Winfield and George Toth enclosing November 28, 1989 with enclosure | |
| 150 | | | DDX-090 (Toth) | ABB_SIM00528505 - ABB_SIM00528673 | 2/15/1990 - 4/27/1990 | Laboratory Notebook Number 006; Chemist: George M. Toth | |
| 151 | | | DDX-091 (Toth) | ABB_SIM00528674 | 10/01/1992 | Kos Pharmaceuticals, Inc., Organization Chart | 403 |
| 152 | | | DDX-092 (Toth) | ABB_SIM00528675 - ABB_SIM00529070 | 4/19/1996 - 7/22/1996 | Laboratory Notebook Number 107; Chemist: George Stevens | |

**EXHIBIT N**

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 153 | | | DDX-093 (Toth) | ABB_SIM00529071 - ABB_SIM00529072 | 09/11/1995 | Internal Memorandum regarding Niaspan Project | |
| 154 | | | DDX-094 (Toth) | ABB_SIM00529073 - ABB_SIM00529076 | 07/14/1997 | Internal Memorandum regarding F2 Criteria of the Production Lots | |
| 155 | | | DDX-095 (Toth) | ABB_SIM00529077 - ABB_SIM00529082 | 10/10/1995 | Internal Memorandum regarding Minutes of Niaspan™ Project Meeting | |
| 156 | | | DDX-096 (Toth) | ABB_SIM00529083 - ABB_SIM00529088 | 10/16/1995 | Internal Memorandum regarding Minutes of Niaspan™ Project Meeting | 403 |
| 157 | | | DDX-097 (Toth) | ABB_SIM00829089 - ABB_SIM00529090 | | Handwritten notes | 402, 802, 403 (cumulative) |
| 158 | | | DDX-098 (Toth); SIM-198 (Toth) | ABB_SIM00529091 - ABB_SIM00529096 | 08/13/1994 | Internal Memorandum regarding R&D Project Update | 403 (cumulative), 802 |
| 159 | | | DDX-099 (Toth) | ABB_SIM00529097 | 02/11/1992 | Letter from George M. Toth, Manager, Quality Control, to Dr. Katsumi Shibata, Professor of Nutrition Sciences, Teikoku Women's University | |
| 160 | | | DDX-100 (O'Neill) | ABB_SIM00565121 - ABB_SIM00565173 | 07/11/2003 | Kos v. Barr: Subpoena to Victoria O'Neill (for documents and testimony) | 402 |
| 161 | | | DDX-101 (O'Neill) | ABB_SIM00565174 - ABB-SIM00565178 | 09/05/2003 | Kos v. Barr: Subpoena to Upsher-Smith Laboratories, Inc. (for testimony) | 402 |
| 162 | | | DDX-102 (O'Neill) | ABB_SIM00565179 - ABB_SIM00565189 | 12/23/1992 | Physicians' Desk Reference, 47th edition (1993): excerpts | 106 |
| 163 | | | DDX-103 (O'Neill) | ABB_SIM00565190 - ABB_SIM00565223 | 7/10/1987 - 5/19/1988 | Laboratory Notebook Number 102; Chemist: Victoria O'Neill | 802, 901 |
| 164 | | | DDX-104 (O'Neill) | ABB_SIM00565224 - ABB_SIM00565238 | | Clinical Report, Project No. 901455: Comparative, Randomized, 3-Way Crossover Study of Upsher-Smith 500mg Sustained-Release Niacin Tablets and Rhone-Poulenc Rorer (Nicolar) 500 MG Niacin Tablets in Healthy Adult Males Under Fed and Fasted Conditions | 802, 901 |
| 165 | | | DDX-105 (O'Neill) | ABB_SIM00565239 - ABB_SIM00565246 | 7/17/1992 | Protocol Synopsis, Project Number 901455: Comparative, Randomized, 3-Way Crossover Study of Upsher-Smith 500mg Sustained-Release Niacin Tablets and Rhone-Poulenc Rorer (Nicolar) 500 MG Niacin Tablets in Healthy Adult Males Under Fed and Fasted Conditions | 802, 901 |
| 166 | | | DDX-106 (O'Neill) | ABB_SIM00565247 - ABB_SIM00565250 | | Niacor-SR® (Polygel® Controlled-Release Niacin), Protocol 901455, Summary Report | 802, 901 |
| 167 | | | DDX-107 (O'Neill) | ABB_SIM00565251 - ABB_SIM00565252 | 06/01/1993 | Letter from Joseph H. Feldhouse, Director, Licensing and Acquisitions, Solvay Pharmaceuticals to Kade Kadrie, Vice President, Sales and Marketing, Upsher-Smith (June 1, 1993) | 802, 901 |
| 168 | | | DDX-108 (O'Neill) | ABB_SIM00565253 | 06/01/1993 | Letter from Joseph H. Feldhouse, Director, Licensing and Acquisitions, Solvay Pharmaceuticals to Kade Kadrie, Vice President, Sales and Marketing, Upsher-Smith (June 1, 1993) with handwritten notes | 802, 901 |

EXHIBIT N

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 169 | | | DDX-109 (O'Neill) | ABB_SIM00565254 - ABB_SIM00565261 | 07/09/1993 | Letter from Kade Kadrie, Senior Vice President, Sales and Marketing, Upsher-Smith Laboratories, Inc. to Joe Feldhouse, Director of Licensing, Solvay Pharmaceuticals regarding Niacor®-SR (July 9, 1993) | 802, 901 |
| 170 | | | DDX-111 (O'Neill) | ABB_SIM00565262 - ABB_SIM00565265 | 05/08/1991 | Neuvonen, et al., *The bioavailability of sustained release nicotinic acid formulations,* 32 Br. J. Clin. Pharmacol., pp. 473-476 (1991) | |
| 171 | | | DDX-112 (O'Neill) | ABB_SIM00565266 - ABB_SIM00565268 | 03/25/1994 | Niacor-SR® Literature Review, Teleconference with Solvay, March 25, 2994: A Comparison of the Efficacy and Toxic Effects of Sustained vs. Immediate-Release Niacin in Hypercholesterolemic Patients (JAMA 1994; 274: 672-677); | 802, 901, 1002 |
| 172 | | | DDX-114 (O'Neill) | ABB_SIM00565275 | 06/02/1994 | Project Team Update regarding Niacor SR Meeting 6/2/94 | 802, 901, 402 |
| 173 | | | DDX-115 (O'Neill) | ABB_SIM00565276 - ABB_SIM00565362 | 06/29/1992 | File History regarding Serial No. 07/905,785 (U.S. Patent No. 5,268,131) | Lack of foundation for date description, 403 (cumulative) |
| 174 | | | DDX-116 (O'Neill) | ABB_SIM00565363 - ABB_SIM00565466 | 06/11/1990 | File History regarding Serial No. 07/536,134 (U.S. Patent No. 5,126,145) | Lack of foundation for date description, 403 (cumulative) |
| 175 | | | DDX-117 (O'Neill) | ABB_SIM00565467 - ABB_SIM00565469 | 01/27/1997 | Letter from Daniel M. Bell, President and CEO, Kos Pharmaceuticals, Inc., to Ian Troup, President and COO, Upsher-Smith Laboratories, Inc. (January 27, 1997) with handwritten notes | 403 (cumulative), 408 |
| 176 | | | DDX-118 (O'Neill) | ABB_SIM00565470 - ABB_SIM00565489 | 02/07/1997 | License Agreement between Upsher-Smith Laboratories, Inc. and Kos Pharmaceuticals, Inc. | |
| 177 | | | DDX-119 (O'Neill) | ABB_SIM00565490 - ABB_SIM00565491 | 07/20/2000 | Correspondence from Mike Poirier regarding Niacin Notes with enclosure (Niacin ER Meeting Minutes, Discussion of Patent Position (July 14, 2000)) | 802, 901, 402 |
| 178 | | | DDX-120 (O'Neill) | ABB_SIM00565492 - ABB_SIM00565494 | | Summary of Meeting in Miami with Kos on March 8, 2001 | 802, 408, 901 |
| 179 | | | DDX-121 (O'Neill) | ABB_SIM00565495 - ABB_SIM00565497 | 03/22/2001 | Letter from Ian Troup, President and COO, Upsher-Smith Laboratories, Inc., to Daniel M. Bell, President and CEO, Kos Pharmaceuticals, Inc. (March 22, 2001) | 802, 408, 901 |
| 180 | | | DDX-122 (O'Neill) | ABB_SIM00565498 - ABB_SIM00565501 | 06/22/2001 | Correspondence regarding Senior management NPU meeting notes with enclosure (Sr. Management New Product Update 6/19/01) | 802, 901, 402 |
| 181 | | | DDX-123 (O'Neill) | ABB_SIM00565502 - ABB_SIM00565504 | 07/27/2000 | Meeting Minutes: Niacin ER, Team Meeting, 07/25/2000 | 802, 901, 402 |
| 182 | | | DDX-124 (O'Neill) | ABB_SIM00565505 - ABB_SIM00565511 | 10/26/2000 | Meeting Minutes: Niacin ER, Team Meeting, 10/24/2000 with handwritten notes | 802, 901, 402 |
| 183 | | | DDX-125 (O'Neill) | ABB_SIM00565512 - ABB_SIM00565513 | 08/19/1997 | Letter from Cecil Schmidt, Attorney, Merchant & Gould, to Peter Manso, Jenkens & Gilchrist (August 19, 1997) | 802, 901, 402 |
| 184 | | | DDX-126 (O'Neill) | ABB_SIM00565514 - ABB_SIM00565539 | 01/09/2002 | Patent Purchase and Assignment Agreement between Upsher-Smith Laboratories, Inc. and Kos Pharmaceuticals, Inc. | |

EXHIBIT N

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 185 | | | DDX-127 (O'Neill) | ABB_SIM00565540 - ABB_SIM00565542 | 09/07/1990 | Letter from Edwin Hedblom, Project Manager, Upsher-Smith Laboratories, Inc., to Robert Knopp, Northwest Lipid Research Clinic (September 7, 1990) | 802, 901 |
| 186 | | | DDX-128 (O'Neill) | ABB_SIM00565543 - ABB_SIM00565545 | 08/12/1997 | Memorandum regarding Niacor SR with handwritten notes | 802, 901 |
| 187 | | | DDX-129 (O'Neill); L-194 (McGovern) | ABB_SIM00565546 - ABB_SIM00565556 | 11/29/2001 | Brown, et al., *Simvastatin and Niacin, Antioxidant Vitamins, or the Combination for the Prevention of Coronary Disease,* 345 N. Engl J. Med., pp. 1583-1592 (2001) | |
| 188 | | | DDX-130 (O'Neill) | ABB_SIM00565557 - ABB_SIM00565560 | 12/16/1991 | Lavie, et al., *Marked Benefit with Sustained-Release Niacin Therapy in Patients with "Isolated" Very Low Levels of High-Density Lipoprotein Cholesterol and Coronary Artery Disease,* 69 Am. J. Cardiol., pp. 1083-1085 (1992) | 403 (cumulative) |
| 189 | | | DDX-131 (O'Neill) | ABB_SIM00565561 - ABB_SIM00565567 | 03/13/1997 | Brown, et al., *Moderate Dose, Three-Drug Therapy with Niacin, Lovastatin, and Colestipol to Reduce Low-Density Lipoprotein Cholesterol <100 mg/dl in Patients with Hyperlipidemia and Coronary Artery Disease,* 80 Am. J. Cardiol., pp. 111-115 (1997) | 403 (cumulative) |
| 190 | | | DDX-132 (O'Neill) | ABB_SIM00565568 - ABB_SIM00565573 | 09/01/1992 | Squires, et al., *Low-Dose, Time-Release Nicotinic Acid: Effects in Selected Patients with Low Concentrations of High-Density Lipoprotein Cholesterol,* 67 Mayo Clin. Proc., pp. 855-860 (1992) | 403 (cumulative), Lack of foundation for date description |
| 191 | | | DDX-133 (O'Neill) | ABB_SIM00565574 - ABB_SIM00565580 | 08/15/1994 | Gray, et al., *Efficacy and Safety of Controlled-Release Niacin in Dyslipoproteinemic Veterans,* 121 Ann. Intern. Med., pp. 252-258 (1994) | 403 (cumulative) |
| 192 | | | DDX-129 (Balandis) | ABB_SIM00529098 - ABB_SIM00529100 | 10/14/2003 | Kos v. Barr: Barr's First Amended Notice of Deposition for Suzanne Balandis | 402 |
| 193 | | | DDX-130 (Balandis) | ABB_SIM00529101 - ABB_SIM00529148 | 11/30/1999 | Correspondence from Suzanne Balandis with enclosure (Epidemiology of Low HDL, PowerPoint Presentation, David Maron, M.D.) | 802 |
| 194 | | | DDX-131 (Balandis) | ABB_SIM00529149 - ABB_SIM00529173 | | Formulation Development Report, Niaspan Tablets (DRAFT) | |
| 195 | | | DDX-132 (Balandis) | ABB_SIM00529174 - ABB_SIM00529184 | 02/08/1990 | Protocol Number 89/03: A Single Dose, Three-Way Crossover, Pilot Bioavailability Study Comparing Immediate Release Niacin and Two Sustained Release Niacin Formulations | |
| 196 | | | DDX-133 (Balandis) | ABB_SIM00529185 - ABB_SIM00529250 | 03/03/1991 | Protocol Number 91/01: A Three-Way Crossover Study of the Bioavailability of Niacin From a Sustained Release Formulation When Dosed in the Fed Versus Fasted States in Reference to an Immediate Release Formulation | |
| 197 | | | DDX-134 (Balandis) | ABB_SIM00529251 - ABB_SIM00529256 | 10/10/1995 | Internal Memorandum regarding Minutes of Niaspan™ Project Meeting | |
| 198 | | | DDX-135 (Balandis) | ABB_SIM00529257 - ABB_SIM00529259 | 03/30/1992 | Internal Memorandum regarding Minutes of Niaspan™ Update Meeting | |
| 199 | | | DDX-136 (Balandis) | ABB_SIM00529260 | 03/30/1999 | Correspondence from Mark McGovern regarding Search Request | 106, 802, 402 |

EXHIBIT N

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 200 | | | DDX-137 (Balandis) | ABB_SIM00529261 - ABB_SIM00529264 | 04/06/1999 | Correspondence from Patricia Kim regarding Information Request | 802, 402 |
| 201 | | | DDX-138 (Balandis) | ABB_SIM00529265 - ABB_SIM00529280 | | Correspondence from Marijke Adams, project director, Kos Pharmaceuticals, regarding labeling with enclosures | 802 |
| 202 | | | DDX-139 (Balandis) | ABB_SIM00529281 - ABB_SIM00529282 | | Handwritten notes | 402, 403, 802 |
| 203 | | | DDX-140 (Patel) | ABB_SIM00529283 - ABB_SIM00529292 | 06/30/1998 | U.S. Patent No. 5,773,453 | 403 (cumulative), Lack of foundation for date description |
| 204 | | | DDX-141 (Patel) | ABB_SIM00529293 | 07/16/1997 | Letter from Mukesh Patel, Director of Licensing, Kos Pharmaceuticals, Inc. to Monté Partee, Associate Director, Bristol-Myers Squibb Company (July 16, 1997) | |
| 205 | | | DDX-142 (Patel) | ABB_SIM00529294 | 08/04/1997 | Letter from Monté Partee, Associate Director, Bristol-Myers Squibb Company to Mukesh Patel, Director of Licensing, Kos Pharmaceuticals, Inc. (August 4, 1997 | 802 |
| 206 | | | DDX-143 (Patel) | ABB_SIM00529295 | 03/09/1999 | Internal Memorandum regarding Patent concerning the co-administration of 10-160mg of aspirin and niacin | |
| 207 | | | DDX-144 (Patel) | ABB_SIM00529296 - ABB_SIM00529299 | 08/11/1992 | Facsimile to David Bova with enclosure (Kos Pharmaceuticals, Inc., Summary of Development Projects) | 403 (cumulative) |
| 208 | | | DDX-145 (Patel) | ABB_SIM00529300 - ABB_SIM00529305 | 08/13/1994 | Internal Memorandum regarding R&D Project Update | 403 (cumulative) |
| 209 | | | DDX-146 (Patel) | ABB_SIM00529306 - ABB_SIM00529310 | 10/14/1994 | Correspondence from Daniel M. Bell with enclosure (Interoffice Memo regarding Kos Pharmaceuticals Niacin-Niaspan Results of Focus Group dated September 19, 1994) | |
| 210 | | | DDX-147 (Patel) | ABB-SIM00529311 | 11/06/1997 | Conference Call with SmithKline Beecham, Outstanding Technical & Commercial Review Matters with handwritten notes | |
| 211 | | | DDX-148 (Patel) | ABB_SIM00529312 | 04/08/1998 | Correspondence from Mukesh Patel regarding Astra Draft Proposal | 106, 402 |
| 212 | | | DDX-149 (Patel) | ABB_SIM00529313 | 05/18/1998 | Memorandum regarding Novartis | 802 |
| 213 | | | DDX-150 (Patel) | ABB_SIM00529314 - ABB_SIM00529316 | 09/21/1998 | Correspondence from Mukesh Patel regarding Astra with enclosures | 802 |
| 214 | | | DDX-151 (Patel) | ABB_SIM00529317 | 04/09/1999 | Correspondence from Gene Kotz regarding Teleconference with handwritten notes | 802, 901 as to handwriting |
| 215 | | | DDX-152 (Patel) | ABB_SIM00529318 - ABB_SIM00529323 | 03/15/2000 | Letter from Stephen W. Potter, Senior Vice President, DuPont Pharmaceuticals Co. to Michael Jaharis, Chairman and CEO, Mukesh Patel, Vice President - Licensing, Christopher Kiritsy, Kos Pharmaceuticals, Inc. with enclosure | 802 |
| 216 | | | DDX-153 (Patel) | ABB_SIM00529324 | 03/29/2000 | Letter from Nicole Oswald, Kos Pharmaceuticals, Inc. to Barbara Saunders, Associate General Counsel, DuPont Pharmaceuticals Company regarding Niaspan® and Nicostatin™ Alliance | 106, 402 |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 217 | | | DDX-154 (Patel) | ABB_SIM00529325 - ABB_SIM00529326 | 04/03/2000 | Letter from Peter Manso, Akerman, Senterfitt & Eidson, P.A., to Ken Rubin, DuPont Pharmaceuticals Co. regarding KOS U.S. Patent Applications: USSN 08/368,378; and USSN 08/814,974 | 402 |
| 218 | | | DDX-155 (Patel) | ABB_SIM00529327 | 08/27/1999 | Letter from Mukesh Patel, Vice President, Licensing, Kos Pharmaceuticals, Inc., to Gene Kotz, Senior Director, DuPont Pharmaceuticals Co. with handwritten notes | |
| 219 | | | DDX-156 (Bova) | ABB_SIM00529328 | 01/19/1989 | Letter to Dr. Ernst Schaefer, Tufts University | 106, 403 (cumulative) |
| 220 | | | DDX-157 (Bova); SIM-003 (Bova) | ABB_SIM00529329 - ABB_SIM00529336 | 03/08/1989 | Clinical Study Outline for Nicotinic Acid/Aspirin Study | |
| 221 | | | DDX-158 (Bova) | ABB_SIM00529337 - ABB_SIM00529340 | 03/27/1996 | USPTO Declaration of David J. Bova regarding Serial No. 08/368,378 | 403 (cumulative) |
| 222 | | | DDX-159 (Bova) | ABB_SIM00529341 - ABB_SIM00529345 | 01/06/1998 | USPTO Declaration of David J. Bova regarding Serial No. 08/814,974 | 403 (cumulative) |
| 223 | | | DDX-160 (Bova) | ABB_SIM00529346 - ABB_SIM00529363 | 08/01/1991 | Study 89/04 Final Report: A Single-Blind Placebo Controlled Pilot Study Comparing the Effect of Once-A-Day Versus Twice-A-Day Dosing of Niaspan™ on Serum Lipids | Lack of foundation for date description |
| 224 | | | DDX-161 (Bova); SIM-019 (Bova) | ABB_SIM00529364 - ABB_SIM00529537 | 04/28/1991 | Study 91/01 Final Report: A Three-Way Crossover Study of the Bioavailability of Niacin from a Sustained-Release Formulation When Dosed in the Fed Versus Fasted States in Reference to an Immediate-Release Formulation | |
| 225 | | | DDX-162 (Bova) | ABB_SIM00529538 - ABB_SIM00529700 | 03/21/1994 | Study 91/02 Final Report: A Pilot Efficacy Study of a Once-A-Day Sustained-Release Niacin Formulation (Niaspan™) in the Treatment of Primary Type IIa Hyperlipidemia | |
| 226 | | | DDX-163 (Bova) | ABB-SIM00529701 - ABB_SIM00529750 | 01/31/1991 | Protocol Number 91/02: A Pilot Efficacy Study of a Once-A-Day Sustained Release Niacin Formulation (Niaspan™) in the Treatment of Primary Type IIa Hyperlipidemia | |
| 227 | | | DDX-164 (Bova) | ABB_SIM00529751 - ABB_SIM00529790 | | Protocol Number 91/04: A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan™ (Sustained-Release Niacin) in Patients with Primary Hyperlipoproteinemia | |
| 228 | | | DDX-165 (Bova) | ABB-SIM00529791 - ABB_SIM00529850 | 08/23/1991 | Protocol Number 91/04: A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan™ (Sustained-Release Niacin) in Patients with Primary Hyperlipoproteinemia | |
| 229 | | | DDX-166 (Bova) | ABB_SIM00529851 - ABB_SIM00529861 | 12/23/1992 | Physicians' Desk Reference, 47th edition (1993): excerpts | 106, 403 (cumulative) |
| 230 | | | DDX-167 (Bova) | ABB_SIM00529862 - ABB_SIM00529868 | 11/17/1989 | Facsimile to George Toth with enclosures | |
| 231 | | | DDX-168 (Bova); SIM-022 (Bova) | ABB_SIM00529869 - ABB_SIM00530027 | 04/25/1996 | Protocol Number 91/04 Final Report (Revised): A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan™ in Patients with Primary Hyperlipoproteinemia | |
| 232 | | | DDX-169 (Bova) | ABB_SIM00530028 - ABB_SIM00530040 | 7/17/1989 - 5/19/1992 | Report/Study No.: PESR960012, Granulation Development Chart | 106 |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 233 | | | DDX-170 (Bova); SIM-353 (Williams) | ABB_SIM00530041 - ABB_SIM00530217 | 03/26/1990 | Kos Pharmaceuticals, Inc.'s IND Application regarding Niaspan™ (Sustained Release Niacin), Reduction of elevated total and LDL cholesterol levels | 403 (cumulative) |
| 234 | | | DDX-171 (Bova); SIM-051 (Cefali) | ABB_SIM00530218 - ABB_SIM00530225 | 07/01/1992 | Labeling Guidance, Revised July 1992: Niacin Tablets USP | Lack of foundation for date description |
| 235 | | | DDX-172 (Bova) | ABB_SIM00530226 - ABB_SIM00530230 | 01/21/2000 | Correspondence from Margaret Miller regarding Call bag with enclosure | 802 |
| 236 | | | DDX-173 (Bova) | ABB_SIM00530231 | | Medline Search on Niacin, 1988-Present | 802 |
| 237 | | | DDX-174 (Bova) | ABB_SIM00530232 - ABB_SIM00530250 | 12/20/1996 | Kos Pharmaceuticals, Inc. Amendment of Patent Information Claim for Exclusivity Niaspan® (controlled release niacin) tablets regarding NDA 20-381 | 402 |
| 238 | | | DDX-175 (Bova) | ABB_SIM00530251 - ABB_SIM00530254 | 12/16/1991 | Lavie, et al., Marked Benefit with Sustained-Release Naicin Therapy in Patients with "Isolated" Very Low Levels of High-Density Lipoprotein Cholesterol and Coronary Artery Disease, 69 Am. J. Cardiol., pp. 1083-1085 (1992) | |
| 239 | | | DDX-176 (Bova) | ABB_SIM00530255 - ABB_SIM00530314 | 11/20/1998 | USPTO Amendment After October 28, 1998 Interview regarding Serial No. 08/814,374 | 106 |
| 240 | | | DDX-177 (Bova) | ABB_SIM00530315 | | Handwritten notes | 802, 901 |
| 241 | | | DDX-178 (Bova); SIM-046 (Cefali) | ABB_SIM00530316 - ABB_SIM00530468 | 04/30/1996 | Protocol Number 91/15 Final Report (Revised): A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan™ - A Dose-Escalation Study | |
| 242 | | | DDX-179 (Bova); SIM-034 (Cefali); SIM-218 (Bottorff) | ABB_SIM00530469 - ABB_SIM00530774 | 10/16/1995 | Protocol Number 94/10 Final Report: The Pharmacokinetics of Niacin and its Three Major Metabolites Following Multiple-Dose Administration of Niaspan™ at 1000mg, 1500mg, 2000mg and 3000mg Doses | |
| 243 | | | DDX-180 (Bova) | ABB_SIM00530775 - ABB_SIM00530784 | 10/11/1996 | Report/Study No.: PESR960010, Title: A 500mg Niacin Comparative Dissolution Study | |
| 244 | | | DDX-181 (Bova) | ABB_SIM00530785 - ABB_SIM00530825 | 01/15/1997 | Protocol Number 96/01 Final Report: The Comparative Bioavailability of Two Sustained-Release Niacin Products Relative to Niaspan® | |
| 245 | | | DDX-182 (Ferder) | ABB_SIM00530826 - ABB_SIM00530830 | 10/10/2003 | Kos v. Barr: Subpoena to Forest Pharmaceuticals, Inc. (for testimony) | 402 |
| 246 | | | DDX-183 (Ferder) | FPI000003 | 08/17/1993 | Interoffice Memorandum regarding 510410 Niac Capsules | 802 |
| 247 | | | DDX-184 (Ferder) | FPI000002 | 07/06/1989 | Product Label | Lack of foundation for date description |
| 248 | | | DDX-185 (Ferder) | FPI000001 | 11/25/1991 | Product Label | |
| 249 | | | DDX-186 (Ferder) | FOREST0064 - FOREST0113 | N/A | Compilation of Forest Pharmaceuticals Price Lists | |
| 250 | | | DDX-187 (Ferder) | FPI000004 - FPI000008 | 11/07/2002 | Interoffice Memorandum regarding Documents Related to Niac Capsules with enclosures | 802 |
| 251 | | | DDX-188 (Ferder) | FOREST0054 - FOREST0063 | N/A | Declaration of Thomas Ferder & Attachments | 802 |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 252 | | | DDX-189 (Malhotra) | ABB_SIM00565077 - ABB_SIM00565079 | 08/28/2003 | Kos v. Barr: Notice of Deposition (Kuldip R. Malhotra) | 402 |
| 253 | | | DDX-190 (Malhotra) | ABB_SIM00565080 - ABB_SIM00565099 | 09/11/2003 | Kos v. Barr: Mr. Kuldip R. Malhotra's Objections to Barr's August 28, 2003 Subpoena | 402 |
| 254 | | | DDX-191 (Malhotra) | ABB_SIM00565100 - ABB_SIM00565103 | | Notes regarding gel formation and Slo-Niacin | 106, 802, 402 |
| 255 | | | DDX-192 (Malhotra) | ABB_SIM00565104 - ABB_SIM00565120 | 10/3/1988 - 10/27/1988 | Incomplete, half-page notebook excerpts with handwritten notes | 106, 802, 402 |
| 256 | | | DDX-307 (Kropp) | N/A | 05/19/2003 | Kos v. Barr: Subpoena to Pharmavite LLC (for documents) | 402 |
| 257 | | | DDX-308 (Kropp) | N/A | 10/10/2003 | Kos v. Barr: Subpoena to Pharmavite LLC (for testimony) | 402 |
| 258 | | | DDX-309 (Kropp) | Pharmavite000227 - Pharmavite000228 | 02/09/1990 | Thayer, Timed Release Niacin 250mg Product Label (with handwritten notes) | 802, Lack of foundation for date description |
| 259 | | | DDX-310 (Kropp) | Pharmavite000229 | 08/02/1990 | Spring Valley, Timed Release Niacin 250mg Product Label (with handwritten notes) | Lack of foundation for date description |
| 260 | | | DDX-311 (Kropp) | N/A | 10/22/2003 | Email from Steve Day regarding Response to ACR10273 for David Kropp | 802 |
| 261 | | | DDX-312 (Kropp) | Pharmavite000286 - Pharmavite000288 | 02/22/1989 | Walgreen's, Timed Release Niacin 500mg Product Label (with handwritten notes) | 802, Lack of foundation for date description |
| 262 | | | DDX-313 (Kropp) | Pharmavite000232 - Pharmavite000233 | 05/18/1989 | Good Neighbor Pharmacy, Timed Release Niacin 250mg Product Label (with handwritten notes) | Lack of foundation for date description |
| 263 | | | DDX-314 (Kropp) | Pharmavite000239 - Pharmavite000242 | 08/02/1990 | Brooks, Timed Release Niacin 500mg Product Label (with handwritten notes) | 802, Lack of foundation for date description |
| 264 | | | DDX-315 (Kropp) | Pharmavite000276 - Pharmavite000278 | 8/1/1990 | Good Neighbor Pharmacy, Timed Release Niacin 500mg Product Label (with handwritten notes) | Lack of foundation for date description |
| 265 | | | DDX-316 (Kropp) | Pharmavite000279 - Pharmavite000280 | 08/01/1990 | Health Mart, Timed Release Niacin 500mg Product Label (with handwritten notes) | Lack of foundation for date description |
| 266 | | | DDX-200 (Cefali); SIM-041 (Cefali) | ABB_SIM00530875 - ABB_SIM00530880 | 09/14/1995 | Kos Niaspan Study 94/10 - Urine % Dose Recovered Analysis | |
| 267 | | | DDX-201 (Cefali) | ABB_SIM00530881 - ABB_SIM00530882 | 02/27/1996 | Morgan, et al., *Safe and Effective Treatment of Dyslipidmia by Niaspan™*, A New Sustained-Release Niacin, 59(2) Clin. Pharm. Ther., PII-30 (1996) | |
| 268 | | | DDX-202 (Cefali) | ABB_SIM00530883 - ABB_SIM00530890 | 01/01/1996 | Morgan, et al., *Treatment Effect of Niaspan, a Controlled-release Niacin, in Patients With Hypercholesterolemia: A Placebo-controlled Trial,* 1(3) J. Cardiovasc. Pharmacol. Therapeut., pp. 195-202 (1996) | Lack of foundation for date description |
| 269 | | | DDX-203 (Cefali) | ABB_SIM00530891 - ABB_SIM00530895 | | A copy of the prosecution history leading up to the '715 patent | 106, 403 (cumulative) |
| 270 | | | DDX-204 (Cefali) | ABB_SIM00530896 - ABB_SIM00530901 | 10/21/2003 | Kos v. Barr: Barr Laboratories, Inc.'s Second Amended Notice of Deposition Pursuant to Rule 30(b)(6) | 402 |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---------|---------|---------|-----------------|------------------|------|-------------|--------------|
| 271 | | | DDX-205 (Cefali); SIM-042 (Cefali) | ABB_SIM00530902 - ABB_SIM00530903 | 03/27/1997 | Internal Memorandum regarding Report from meeting with Dr. Peter Guengerich | 802 |
| 272 | | | DDX-206 (Cefali); SIM-043 (Cefali) | ABB_SIM00530904 - ABB_SIM00530905 | 04/07/1997 | Internal Memorandum regarding Report from meeting with Dr. David Jollow | 802 |
| 273 | | | DDX-207 (Cefali); SIM-038 (Cefali) | ABB_SIM00530906 - ABB_SIM00530911 | 08/06/1997 | National Sales Meeting, August 6, 1997, Niaspan® Delivery System | |
| 274 | | | DDX-208 (Cefali) | ABB_SIM00530912 - ABB_SIM00530939 | 06/17/1997 | Protocol Number 96/08 Final Report: The Comparative Bioavailability of Three Formulations of Sustained-Release Niacin Relative to Niaspan® | |
| 275 | | | DDX-209 (Cefali) | ABB_SIM00530940 - ABB_SIM00531010 | 07/06/1995 | Protocol Number 94/07 Draft Report: Investigation of the Effect of Sustained-Release Niacin on Serum Transaminases and Phosphorus | |
| 276 | | | DDX-300 (Lanigan) | N/A | 10/10/2003 | Kos v. Barr: Subpoena to Leiner Health Products (for testimony) | 402 |
| 277 | | | DDX-301 (Lanigan) | Leiner000275 - Leiner000276 | | YourLife®, Timed Release Niatrol 500mg Product Label | |
| 278 | | | DDX-302 (Lanigan) | Leiner000262 - Leiner000274 | | Collection of Product Labels | 802 |
| 279 | | | DDX-303 (Lanigan) | Leiner000124 - Leiner000125 | 10/10/1988 | Leiner Nutritional Products Corp., Bulk Purchasing Specification for Time Release Niacin 250mg | |
| 280 | | | DDX-304 (Lanigan) | Leiner000372 - Leiner000373 | 10/28/2003 | Leiner Health Products T.R. Niacin Sales - 250mg and 500mg - FY1988 - FY1994 - Sales in $000's | Lack of foundation for date description |
| 281 | | | DDX-305 (Lanigan) | Leiner000279 | | Vons Natural, Time Release Niacin 250mg Product Label | 802 |
| 282 | | | DDX-210 (DiStefano) | ABB_SIM00531011 - ABB_SIM00531056 | 04/24/1996 | Protocol Number 89/04 Final Report (Revised): A Single-Blind Placebo-Controlled Pilot Study Comparing the Effect of Once-A-Day Versus Twice-A-Day Dosing of Niaspan™ on Serum Lipids | |
| 283 | | | DDX-211 (DiStefano) | ABB_SIM00531057 - ABB_SIM00531066 | 1/13/1992 | Final Protocol 91/04: Appendix 1, Informed Consent Form | |
| 284 | | | DDX-212 (DiStefano) | ABB_SIM00531067 - ABB_SIM00531075 | 01/13/1992 | Final Protocol 91/05: Appendix 1, Informed Consent Form | |
| 285 | | | DDX-213 (DiStefano) | ABB_SIM00531076 - ABB_SIM00531085 | | Protocol 96/05: Appendix A, Informed Consent Form | |
| 286 | | | DDX-214 (Straughn) | ABB_SIM00531086 - ABB_SIM00531112 | 05/12/2003 | Curriculum Vitae (A. B. Straughn, Pharm.D.) | 402, 802 |
| 287 | | | DDX-215 (Straughn) | ABB_SIM00531113 - ABB_SIM00531119 | 11/05/2003 | Kos v. Barr: Subpoena to Dr. Arthur B. Straughn (for documents and testimony) | 402 |
| 288 | | | DDX-216 (Straughn); SIM-010 (Bova) | ABB_SIM00531120 - ABB_SIM00531125 | 12/21/1988 | Letter from Arthur B. Straughn, Professor and Clinical Director, The University of Tennessee Memphis to David J. Bova (December 21, 1988) with enclosure | 802 |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 289 | | | DDX-217 (Straughn) | ABB_SIM00531126 | 02/28/1989 | Letter from David J. Bova. to Arthur Straughn, The University of Tennessee (February 28, 1989) with enclosure | |
| 290 | | | DDX-218 (Straughn) | ABB_SIM00531127 - ABB_SIM00531216 | 11/13/1998 | USPTO Declaration of Arthur B. Straughn, Pharm. D. regarding Serial No. 08/814,974 | 106, 403 (cumulative) |
| 291 | | | DDX-219 (Straughn); SIM-215 (Bottorff) | ABB_SIM00531217 - ABB_SIM00531258 | 01/20/1997 | Protocol Number 96/01 Final Report: The Comparative Bioavailability of Two Sustained-Release Niacin Products Relative to Niaspan® | |
| 292 | | | DDX-220 (Straughn) | ABB_SIM00531259 - ABB_SIM00531273 | | Printed statistical data from SAS | 802 |
| 293 | | | DDX-221 (Straughn) | ABB_SIM00531274 - ABB-SIM00531291 | | Printed statistical data from SAS | 802 |
| 294 | | | DDX-222 (Straughn) | ABB_SIM00531292 | 01/15/1997 | Table 5. Percent of Niacin Dose in Urin as Niacin and Metabolites | 106 |
| 295 | | | DDX-223 (McGovern) | ABB_SIM00531293 - ABB_SIM00531300 | 01/01/1990 | Issues in Cholesterol Management: Reappraisal of Niacin | Lack of foundation for date description |
| 296 | | | DDX-224 (McGovern) | ABB_SIM00531301 - ABB_SIM00531302 | 08/22/2003 | Letter from Robert Wilson, Fish & Neave, to Lynn Ulrich, Winston & Strawn (August 22, 2003) regarding Mark McGovern deposition notices (personal capacity and 30(b)(6)) | 402 |
| 297 | | | DDX-225 (McGovern) | ABB_SIM00531303 - ABB_SIM00531305 | 02/01/2002 | Van, et al., *Comparison of Extended-Release Niacin and Atorvastatin Monotherapies and Combination Treatment of the Atherogenic Lipid Profile in Diabetes Mellitus,* 89(11) Am. J. Cardiol., pp. 1306-1308 (2002) | Lack of foundation for date description |
| 298 | | | DDX-226 (McGovern) | ABB_SIM00531306 - ABB_SIM00531313 | 09/13/2000 | Elam, et al., *Effect of Niacin on Lipid and Lipoprotein Levels and Glycemic Control in Patients with Diabetes and Peripheral Arterial Disease, The ADMIT Study: A Randomized Trial,* 284 JAMA, pp. 1263-1270 (2000) | |
| 299 | | | DDX-227 (McGovern) | ABB_SIM00531314 - ABB_SIM00531317 | 09/01/1990 | Wu, et al., *Promotion of extended-release niacin tablets at a Veterans Affairs medical center,* 47 Am. J. Hosp. Pharm., pp. 2031-2034 (1990) | Lack of foundation for date description |
| 300 | | | DDX-228 (McGovern) | ABB_SIM00531318 - ABB_SIM00531324 | 12/01/1998 | Memorandum regarding Niaspan and gemfibrozil with enclosures | 802 |
| 301 | | | DDX-230 (Greathouse) | | 10/15/2003 | Kos v. Barr: Subpoena to Aventis Pharmaceuticals, Inc. (for documents and testimony) | 402 |
| 302 | | | DDX-231 (Greathouse) | AVN005547 - AVN005554 | 01/12/1982 | Inter-office correspondence regarding Nicobid Labels with attachments | 802 |
| 303 | | | DDX-232 (Greathouse) | AVN000240 - AVN000269 | 10/25/1991 | RhÔne-Poulenc Rorer, Inc., Label Specification regarding Nicobid 500mg Capsules - 500's | 802 |
| 304 | | | DDX-233 (Greathouse) | AVN000857 - AVN000858 | 01/01/1985 | Nicobid (niacin, USV) brochure | 802, Lack of foundation for date description |
| 305 | | | DDX-234 (Greathouse) | AVN000862 - AVN000871 | 07/30/1987 | Correspondence from Dave Hotchkiss regarding JAMA Article | 1002 |
| 306 | | | DDX-235 (Greathouse) | AVN006564 - AVN006689 | Undated | Protocol No.: 83,823-1A(2), Nicobid/Nicolar & Study Summary | 802 |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 307 | | | DDX-236 (Greathouse) | AVN002191 - AVN002202 | 01/27/1988 | Rorer Interoffice Correspondence regarding Revised Nicobid Forecast | 802 |
| 308 | | | DDX-237 (Greathouse) | AVN002204 - AVN002218 | 01/01/1982 | Hyperlipidemia Compendium | 802, Lack of foundation for date description |
| 309 | | | DDX-238 (Greathouse) | AVN007329 - AVN007335 | 12/28/1973 | Parsons, *Effect of Nicobid on Serum Lipid Levels in Hyperlipidemic Individuals,* Final Report of Findings and Conclusions (1973) | 802 |
| 310 | | | DDX-239 (Greathouse) | AVN007560 - AVN007563 | 11/10/1988 | Protocol RG-83624-101, Informed Consent Form | 802 |
| 311 | | | DDX-240 (Greathouse) | AVN002167 - AVN002190 | 02/01/1988 | Rorer Interoffice Correspondence regarding Lipid Reduction Market Forecast | 802 |
| 312 | | | DDX-385 (Manso) | ABB_SIM00531543 - ABB_SIM00531558 | 11/03/1997 | Letter from Peter Manso, Jenkens & Gilchrist, to Daniel Bell and Eugenio Cefali, Kos Pharmaceuticals, Inc. regarding U.S. Patent Applications relating to the biopharmaceutical characteristics of Niaspan | 106, 403 (cumulative) |
| 313 | | | DDX-386 (Manso) | ABB_SIM00531559 - ABB_SIM00531912 | 01/14/1995 | File History regarding Serial No. 08/368,378 (U.S. Patent No. 8,080,428) | 403 (cumulative), Lack of foundation for date description |
| 314 | | | DDX-387 (Manso) | ABB_SIM00531913 | 11/07/2001 | Email from Ralph Palo regarding Due Diligence | 802 |
| 315 | | | DDX-388 (Manso) | ABB_SIM00531914 - ABB_SIM00532259 | Undated | USPTO excerpts of the file history for the '974 application that issued as the '930 patent | 106, 403 (cumulative) |
| 316 | | | DDX-389 (Manso); SIM-006 (Bova); SIM-337 (Williams) | ABB_SIM00532261 - ABB_SIM00532314 | 09/20/2000 | Document Request Form for Development Report regarding PESR960012, Formulation & Process Development Report, Niaspan | |
| 317 | | | DDX-390 (Manso) | ABB_SIM00532315 - ABB_SIM00532639 | Undated | USPTO excerpts of the file history for the '974 application that issued as the '930 patent | 106, 403 (cumulative) |
| 318 | | | DDX-391 (Manso) | ABB_SIM00532640 | 03/11/2003 | USPTO Certificate regarding Patent No. 6,406,715 | 106, 403 (cumulative) |
| 319 | | | DDX-392 (Manso) | ABB_SIM00532641 - ABB_SIM00532657 | 01/20/1997 | Protocol Number 96/01 Final Report: The Comparative Bioavailability of Two Sustained-Release Niacin Products Relative to Niaspan® | 106 |
| 320 | | | DDX-393 (Manso) | ABB_SIM00532658 - ABB_SIM00532841 | 10/31/1997 | File History regarding Serial No. 08/962,423 | 403 (cumulative) |
| 321 | | | DDX-394 (Manso) | ABB_SIM00532842 - ABB_SIM00532846 | 10/19/1995 | Protocol Number 94/08 Final Report: Abstract (excerpt) | 106, 403 (cumulative) |
| 322 | | | DDX-395 (Manso) | ABB_SIM00532847 - ABB_SIM00532855 | 11/22/1995 | Protocol Number 94/09 Final Report: Abstract (excerpt) | 106, 403 (cumulative) |
| 323 | | | DDX-396 (Manso) | ABB_SIM00532856 - ABB_SIM00532860 | 11/07/1995 | Protocol Number 95/01 Final Report: Abstract (excerpt) | 106, 403 (cumulative) |
| 324 | | | DDX-397 (Manso) | ABB_SIM00532861 - ABB_SIM00532983 | 03/06/1997 | File History regarding Serial No. 08/814,974 (U.S. Patent No. 6,129,930) | 403, Lack of foundation for date description |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 325 | | | DDX-241 (Messick) | ABB_SIM00531333 - ABB_SIM00531448 | 09/10/2003 | Kos v. Barr: Deposition Transcript of Karen Messick | 802 |
| 326 | | | DDX-242 (Messick) | ABB_SIM00531449 | 02/25/2002 | Letter from Paul Busse, Faegre & Benson LLP, to Rodney Bell, Holland & Knight LLP (February 25, 2002) | 802 |
| 327 | | | DDX-243 (Messick) | ABB_SIM00531450 - ABB_SIM00531490 | 10/29/2003 | Co-Promotion Agreement between Kos Pharmaceuticals, Inc. and Takeda Pharmaceuticals North America, Inc. | |
| 328 | | | DDX-244 (Messick) | ABB_SIM00531491 - ABB_SIM00531492 | 11/03/1997 | Letter from Peter Manso, Jenkens & Gilchrist, to Daniel Bell and Eugenio Cefali, Kos Pharmaceuticals, Inc. regarding U.S. Patent Applications relating to the biopharmaceutical characteristics of Niaspan | 106, 403 (cumulative) |
| 329 | | | DDX-245 (Messick) | ABB_SIM00531493 - ABB_SIM00531494 | 10/30/2002 | Email from William Gentry regarding ACCP abstract update | 802 |
| 330 | | | DDX-246 (Messick) | ABB_SIM00531495 | 11/20/2000 | Handwritten notes | 402, 802, 901 |
| 331 | | | DDX-247 (Messick) | ABB_SIM00531496 - ABB_SIM00531499 | 11/10/2000 | Interoffice Memorandum regarding U.S. Federal Trade Commission Conference Call | 402 |
| 332 | | | DDX-248 (Messick) | ABB_SIM00531500 - ABB_SIM00531506 | 3/22/1996 - 12/19/2000 | Contact list | |
| 333 | | | DDX-249 (O'Neill) | ABB_SIM00564948 - ABB_SIM00564952 | 06/22/2004 | Kos v. Barr: Subpoena to Upsher-Smith Laboratories, Inc. (for testimony) | 402 |
| 334 | | | DDX-250 (O'Neill) | ABB_SIM00564953 | 09/15/1997 | Email from Lori Freese regarding KOS Response Meeting with handwritten notes | 802, 901 |
| 335 | | | DDX-251 (O'Neill) | ABB_SIM00564954 - ABB_SIM00564963 | | Internal Upsher-Smith Laboratories, Inc. document | 802, 901 |
| 336 | | | DDX-252 (O'Neill) | ABB_SIM00564964 | 01/01/1992 | Dear Doctor Letter from Harvey Arbit, Director of Medical Affairs, Upsher-Smith Laboratories, Inc. | 802, 901, Lack of foundation for date description |
| 337 | | | DDX-253 (O'Neill) | ABB_SIM00564965 | | Niacor-SR® Tablets (polygel™ controlled-release niacin) | 802, 901 |
| 338 | | | DDX-254 (O'Neill) | ABB_SIM00564966 - ABB_SIM00564969 | | Niacor SR Dissolution Profiles Comparison Charts | 802, 901 |
| 339 | | | DDX-255 (O'Neill) | ABB_SIM00564970 - ABB_SIM00565000 | | Internal Upsher-Smith Laboratories, Inc. document regarding Comparative Dissolutions | 802, 901 |
| 340 | | | DDX-256 (O'Neill) | ABB_SIM00565001 - ABB_SIM00565003 | | Frequency Tables of Dissolution Data, Niaspan and Niacin ER Tablets 500mg | 802, 901 |
| 341 | | | DDX-257 (O'Neill) | ABB_SIM00565004 - ABB_SIM00565016 | | Niaspan 1000mg and 750mg Tablets Data | 802, 901 |
| 342 | | | DDX-258 (O'Neill) | ABB_SIM00565017 - ABB_SIM00565020 | | Dissolution Data of Niacor SR (various strengths and shapes of tablets) | 802, 901 |
| 343 | | | DDX-259 (O'Neill) | ABB_SIM00565021 | | Niacor SR Dissolution, Lot 106.30 and Lot 106.31 | 802, 901 |
| 344 | | | DDX-260 (O'Neill) | ABB_SIM00565022 - ABB_SIM00565024 | | Representative Dissolution Profiles, Niacor-SR 250mg and 500mg Tablet Dissolution Profiles | 802, 901 |

**EXHIBIT N**

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 345 | | | DDX-261 (O'Neill) | ABB_SIM00565025 - ABB_SIM00565026 | | Handwritten notes entitled Niacin ER (Niaspan Generic) including discussion of Niaspan ER | 802, 901 |
| 346 | | | DDX-262 (O'Neill) | ABB_SIM00565027 - ABB_SIM00565037 | | Handwritten notes entitled Niacor SR | 802, 901 |
| 347 | | | DDX-263 (O'Neill) | ABB_SIM00565038 - ABB_SIM00565040 | 01/18/1990 | Upsher-Smith Interoffice Memorandum regarding Brief notes from appointments with Dr. Kottke on January 16, 1990 | 802, 901 |
| 348 | | | DDX-264 (O'Neill) | ABB_SIM00565041 - ABB_SIM00565070 | | Dissolution data with handwritten notes | 802, 901 |
| 349 | | | DDX-265 (O'Neill) | ABB_SIM00565071 - ABB_SIM00565076 | 10/24/2000 | Niacin ER, Team Meeting, 10/24/00 | 802, 901 |
| 350 | | | DDX-266 (Cefali) | ABB_SIM00534576 - ABB_SIM00534602 | 06/08/2004 | U.S. Patent No. 6,746,691 | 403 (cumulative), Lack of foundation for date description |
| 351 | | | DDX-267 (Cefali) | ABB_SIM00534603 - ABB_SIM00534610 | 08/05/1998 | 1000mg, 750mg, 500mg and 375mg Niaspan Tablets - absolute % difference | |
| 352 | | | DDX-268 (Cefali) | ABB_SIM00534611 - ABB_SIM00534613 | | Hollywood Production Lots, 12 summary | |
| 353 | | | DDX-269 (Cefali) | ABB_SIM00534614 - ABB_SIM00534625 | 09/15/1995 | Summary of Niaspan™ Tablet Strengths Used in Clinical Studies, by Lot Number (with various lab notebook excerpts) | |
| 354 | | | DDX-270 (Cefali) | ABB_SIM00534626 - ABB_SIM00534631 | 1996-1997 | 500mg, 750mg, 325mg and 1000mg Niaspan Tablets, Clinical and Production Lots | |
| 355 | | | DDX-271 (Cefali); SIM-196 (Toth) | ABB_SIM00534632 - ABB_SIM00534640 | 07/07/1997 | Internal Memorandum regarding *In Vitro - In Vivo* Correlation of Niaspan Using F2 Criteria in Lieu of Bioequivalence Studies Following Minor Changes in Formulation or Changes in Manufacturing Site | |
| 356 | | | DDX-272 (Cefali) | ABB_SIM00534641 - ABB_SIM00534651 | | Handwritten Notes and draft letter to the FDA | |
| 357 | | | DDX-273 (Cefali) | ABB_SIM00534652 - ABB_SIM00534664 | 08/18/1995 | Letter from Donald Raineri, Associate Director - Regulatory Affairs, Kos Pharmaceuticals, Inc. to Stephen Trostle, Consumer Safety Officer, FDA with related facsimile and interoffice memorandum correspondence enclosures | |
| 358 | | | DDX-275 (Cefali) | ABB_SIM00534665 - ABB_SIM00534709 | | Kos Pharmaceuticals, Niaspan F2 Report prepared by Arthur B. Straughn, Pharm. D., University of Tennessee, Memphis | |
| 359 | | | DDX-276 (Cefali) | ABB_SIM00534710 - ABB_SIM00534713 | 07/14/1997 | Internal Memorandum regarding F2 Criteria of the Production Lots | 403 (cumulative) |
| 360 | | | DDX-276 (Cefali); SIM-351 (Williams) | ABB_SIM00534714 - ABB_S3_00534717 | 07/14/1997 | Internal Memorandum regarding F2 Criteria of the Production Lots | 403 (cumulative) |
| 361 | | | DDX-277 (Cefali) | ABB_SIM00534718 - ABB_SIM00534731 | 11/20/1997 | Facsimile from Karen DiStefano regarding F2 Values and Rationale for Waiver of BE for Niaspan® Site Change | |
| 362 | | | DDX-278 (Cefali) | ABB_SIM00534732 - ABB_SIM00534734 | 05/05/1998 | Internal Memorandum regarding Conversation with Mike Fossler, Ph.D. on April 23, 1998, regarding Bioequivalence Studies Required to Qualify the Edison Site for Niaspan® | 802 |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 363 | | | L-001 (Cefali) | ABB_SIM00682572 - ABB_SIM00682574 | 11/14/2008 | Letter agreement between Abbott Laboratories and E.A. Cefali Pharmaceutical Consulting, LLC | |
| 364 | | | L-006 (Cefali) | ABB_SIM00682949 - ABB_SIM00683048 | 11/22/1995 | Protocol Number 94/09 Final Report: The Comparative Bioavailability of 500mg and 750mg Tablet Strengths of Niaspan™ | |
| 365 | | | L-007 (Cefali) | ABB_SIM00683049 - ABB_SIM00683107 | 10/25/1995 | Protocol Number 94/08 Final Report: A Three-Way Crossover Study of the Effect of Food on Niaspan™ bioavailability | |
| 366 | | | L-008 (Cefali) | ABB_SIM00037509 - ABB_SIM00037522 | 11/20/1997 | Draft document sent to FDA on November 20, 1997 | |
| 367 | | | L-009 (Cefali); SIM-200 (Toth) | N/A | 01/01/1990 | USP XXII, The United States Pharmacopeia (Twenty-Second Revision) (highlighted) | Lack of foundation for date description |
| 368 | | | L-010 (Cefali) | ABB_SIM00682575 - ABB_SIM00682577 | 11/17/1989 | Dissolution Data for Niacin | |
| 369 | | | L-011 (Cefali) | ABB_SIM00682578 - ABB_SIM00682582 | 09/14/1995 | Internal Memorandum regarding Wednesday Niaspan™ Weekly Project Meeting Minutes for September 6 and September 13 | |
| 370 | | | L-012 (Cefali) | ABB_SIM00682583 - ABB_SIM00682587 | 03/19/1991 | U.S. Patent No. 5,000,962 | 403 (cumulative), Lack of foundation for date description |
| 371 | | | L-013 (Cefali) | ABB_SIM00682588 - ABB_SIM00682589 | 03/18/1998 | USPTO Declaration for Patent Application and Power of Attorney (Eugenio Cefali) | 106, 403 (cumulative) |
| 372 | | | L-014 (Cefali) | ABB_SIM00682590 - ABB_SIM00682601 | 11/15/2006 | Cefali, et al., *Aspirin reduces cutaneous flushing after administration of an optimized extended-release niacin formulation,* 45(2) Int. J. Clin. Pharm. Ther., pp. 78-88 (2007) | |
| 373 | | | L-015 (Cefali) | ABB_SIM00682602 - ABB_SIM00682603 | | Niaspan™ Biostudy Products | |
| 374 | | | L-016 (Cefali) | ABB_SIM00682604 - ABB_SIM00682754 | 11/07/1995 | Protocol Number 95/01 Final Report: Appendix L, Analytical reports | |
| 375 | | | L-017 (Cefali) | ABB_SIM00682755 - ABB_SIM00682811 | 11/21/1995 | Protocol Number 95/02 Final Report: The Comparative Bioavailability of 500mg and 1000mg Tablet Strengths of Niaspan™ | |
| 376 | | | L-017A (Cefali) | ABB_SIM00682812 - ABB_SIM00682814 | | Niaspan 500mg, Quality Control Release/Rejected Form | |
| 377 | | | L-018 (Cefali) | ABB_SIM00682815 - ABB_SIM00682838 | | Kos Pharmaceuticals, Inc. NDA 20-381: Dropouts and Withdrawals | |
| 378 | | | L-019 (Cefali) | ABB_SIM00682839 - ABB_SIM00682845 | | PowerPoint Presentation: Flushing Episodes Per Patient | |
| 379 | | | L-020 (Bova) | ABB_SIM00682027 - ABB_SIM00682028 | 11/20/2008 | Retainer letter from Paul Yasger to David Bova | |
| 380 | | | L-021 (Bova) | ABB_SIM00682029 - ABB_SIM00682105 | | Kos Pharmaceuticals, Inc., Labeling Supplement regarding NDA 20-381 | |
| 381 | | | L-022 (Bova) | ABB_SIM00682106 - ABB_SIM00682109 | 12/03/1991 | Memorandum of meeting regarding IND 34,613 Niaspan (sustained release niacin) | |
| 382 | | | L-026 (Bova) | ABB_SIM00682150 | | Kos Pharmaceuticals, Inc, NDA 20-381 Summary Table D.2 Physical Characteristics for Niaspan™ Tablets | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 383 | | | L-027 (Bova); SIM-021 (Bova) | ABB_SIM00682151 - ABB_SIM00682180 | | Nicotinic Acid/Aspirin Combination: Project Proposal | |
| 384 | | | L-028 (Bova) | ABB_SIM00682181 - ABB_SIM00682204 | 12/03/1991 | FDA meeting handout, Once-A-Day Niaspan for the Treatment of Type II Primary Hyperlipoproteinemia | |
| 385 | | | L-029 (Bova) | ABB_SIM00682205 - ABB_SIM00682208 | 12/05/1966 | Pinter, et al., *Biphasic Nature of Blood Glucose and Free Fatty Acid Changes Following Intravenous Nicotinic Acid in Man*, Nicotinic Acid Effect on FFA (March 1967) | |
| 386 | | | L-030 (Bova) | ABB_SIM00682209 - ABB_SIM00682212 | 04/01/1977 | Schlierf & Hess, Inhibition of Carbohydrate-Induced Hypertriglyceridemia by Nicotinic Acid, 3(2) Artery, pp. 174-179 (1977) | 403 (cumulative), Lack of foundation for date description |
| 387 | | | L-031 (Bova); SIM-356 (Williams) | ABB_SIM00682213 - ABB_SIM00682224 | 08/11/1992 | Facsimile from M. Patel regarding Kos Pharmaceuticals, Inc.'s Summary of Development Projects | |
| 388 | | | L-032 (Bova) | ABB_SIM00682225 - ABB_SIM00682228 | | Kos Pharmaceuticals, Inc. Projects Under Active Development | |
| 389 | | | L-033 (Bova); SIM-344 (Williams) | ABB_SIM00682229 - ABB_SIM00682264 | 01/01/1987 | Formulating for Controlled Release with METHOCEL cellulose ethers | Lack of foundation for date description |
| 390 | | | L-034 (Bova) | ABB_SIM00682265 - ABB_SIM00682266 | | Niaspan™ Development Pharmaceutics: Relevant Studies Performed | |
| 391 | | | L-035 (Bova) | ABB_SIM00682267 - ABB_SIM00682270 | 09/13/1995 | Internal Memorandum regarding Niaspan Stability Data | |
| 392 | | | L-036 (Bova) | ABB_SIM00682271 - ABB_SIM00682278 | | Physicians' Desk Reference, 4th edition (1988): excerpts | 106 |
| 393 | | | L-037 (Tolli) | ABB_SIM00689931 - ABB_SIM00689934 | 06/24/2008 | Email correspondence regarding GPRA Organizational Announcement | 402 |
| 394 | | | L-038 (Tolli) | ABB_SIM00689935 - ABB_SIM00689942 | 01/01/2008 | Expectation Setting and Performance Assessment (Natalie Tolli) | Lack of foundation for date description, 402 |
| 395 | | | L-039 (Tolli) | ABB_SIM00689943 - ABB_SIM00689956 | 04/20/2010 | Abbott v. Lupin: Defendants' Notice of Deposition of Plaintiff Under Rule 30(b)(6) | 402 |
| 396 | | | L-040 (Tolli) | ABB_SIM00689957 - ABB_SIM22689970 | 04/04/2008 | Email correspondence regarding Niaspan NDA submission log | |
| 397 | | | L-041 (Tolli) | ABB_SIM00689971 - ABB_SIM00689972 | 03/07/2007 | Niaspan - S-023 AND S-027 - Submission Documents | |
| 398 | | | L-042 (Tolli) | ABB_SIM00689973 - ABB_SIM00689986 | 05/29/2009 | Email correspondence regarding Niaspan CCDS - Request for regulatory history | 802 |
| 399 | | | L-043A (Tolli) | ABB_SIM00690038 | | Kos Pharmaceuticals, Inc., NDA 20-381 Prior Approval Supplement, Table of Contents | |
| 400 | | | L-043B (Tolli) | ABB_SIM00689987 - ABB_SIM00690012 | | Kos Pharmaceuticals, Inc., NDA 20-381 Prior Approval Supplement, Section 3. Summary | |
| 401 | | | L-043C (Tolli) | ABB_SIM00690013 - ABB_SIM00690037 | | Kos Pharmaceuticals, Inc., NDA 20-381 Prior Approval Supplement, Section 4. CMC | |
| 402 | | | L-044A (Tolli) | ABB_SIM00690039 - ABB_SIM00690044 | | Kos Pharmaceuticals, Inc., NDA 20-381 Prior Approval Supplement, Section 3. Summary | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 403 | | | L-044B (Tolli) | ABB_SIM00690045 - ABB_SIM00690109 | | Kos Pharmaceuticals, Inc., NDA 20-381 Prior Approval Supplement, Section 4. CMC | |
| 404 | | | L-045 (Tolli) | ABB_SIM00690110 - ABB_SIM00690111 | 05/12/2009 | Email correspondence regarding email correspondence for archiving | 402 |
| 405 | | | L-046 (Tolli) | ABB_SIM00690112 - ABB_SIM00690135 | 05/01/2009 | Email correspondence regarding Niaspan Coating - Feedback required | |
| 406 | | | L-047 (Tolli) | ABB_SIM00690136 - ABB_SIM00690207 | 09/01/2006 | Letter from Kos to FDA regarding Niaspan briefing documents related to IND 34,613, Serial # 0190 | |
| 407 | | | L-048 (Tolli) | ABB_SIM00690208 - ABB_SIM00690213 | 05/20/2008 | Email correspondence regarding confirmation of plans for long term co-back | |
| 408 | | | L-049 (Tolli) | ABB_SIM00690214 - ABB_SIM00690216 | 06/13/2008 | Email correspondence regarding Niaspan LCM - Update on OTC Analysis | 802 |
| 409 | | | L-050 (Tolli) | ABB_SIM00690217 - ABB_SIM00690222 | 07/15/2008 | Email correspondence regarding 2009 Plan - FDA User Fees | 402 |
| 410 | | | L-051 (Tolli) | ABB_SIM00690223 - ABB_SIM00690250 | | Abbott Laboratories, Inc., Section 3.2.P.2 Pharmaceutical Development regarding Nicotinic Acid, 375mg, 500mg, 750mg, and 1000mg prolonged release tablet | |
| 411 | | | L-052 (Tolli) | ABB_SIM00690251 - ABB_SIM00690259 | 03/01/2010 | Niaspan™ Tablets Package Insert | Lack of foundation for date description |
| 412 | | | L-053 (Tolli) | ABB_SIM00690260 - ABB_SIM00690436 | 03/26/1990 | Kos Pharmaceuticals, Inc., IND Application regarding Niaspan™ Reduction of elevated total and LDL cholesterol levels | 106, 403 (cumulative) |
| 413 | | | L-054 (Tolli) | ABB_SIM00690437 - ABB_SIM00690439 | 08/23/1991 | Kos Pharmaceuticals, Inc. letter to FDA regarding IND application 34,613 for Niaprin™ | |
| 414 | | | L-055 (Tolli) | ABB_SIM00690440 - ABB_SIM00690456 | 11/26/1997 | Kos Pharmaceuticals, Inc. letter to FDA regarding Niaspan® IND 34,613, Submission Serial Number 127 | |
| 415 | | | L-056 (Tolli) | ABB_SIM00690457 - ABB_SIM00690459 | 06/17/1994 | Kos Pharmaceuticals, Inc. letter to FDA responding to telephone conversation of June 16, 1994 concerning Niaspan™ NDA 20-381 | |
| 416 | | | L-057 (Tolli) | ABB_SIM00690460 - ABB_SIM00690793 | 04/24/1996 | Protocol 89/04 Final Report (Revision #1): A Single-Blind Placebo-Controlled Pilot Study Comparing the Effect of Once-a-Day Versus Twice-a-Day Dosing of Niaspan™ on Serum Lipids | |
| 417 | | | L-058 (Tolli) | ABB_SIM00690794 - ABB_SIM00691209 | 04/24/1996 | Protocol 91/02 Final Report (Revision #1): A Pilot Efficacy Study of a Once-A-Day Sustained-Release Niacin Formulation (Niaspan™) in the Treatment of Primary Type IIa Hyperlipidemia | |
| 418 | | | L-059 (Tolli) | ABB_SIM00691210 - ABB_SIM00691369 | 04/25/1996 | Protocol 91/04 Final Report (Revision #2): A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan™ in Patients with Primary Hyperlipoproteinemia | |
| 419 | | | L-060 (Tolli) | ABB_SIM00691370 - ABB_SIM00691455 | 04/25/1996 | Protocol 91/04 Appendices: A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan™ in Patients with Primary Hyperlipoproteinemia | |
| 420 | | | L-061 (Tolli) | ABB_SIM00691456 - ABB_SIM00692013 | 04/25/1996 | Protocol 91/04 Laboratory Values: A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan™ in Patients with Primary Hyperlipoproteinemia | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 421 | | | L-062 (Tolli) | ABB_SIM00692014 - ABB_SIM00692159 | 04/26/1996 | Protocol 91/05 Final Report (Revision #1): A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan™ in Patients with Primary Hyperlipoproteinemia - A Dose-Ranging Study | |
| 422 | | | L-063 (Tolli) | ABB_SIM00692160 - ABB_SIM00692471 | 04/26/1996 | Protocol 91/05 Laboratory Values: A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan™ in Patients with Primary Hyperlipoproteinemia - A Dose-Ranging Study | |
| 423 | | | L-064 (Tolli) | ABB_SIM00692472 - ABB_SIM00692551 | 04/26/1996 | Protocol 91/05 Appendices: A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan™ in Patients with Primary Hyperlipoproteinemia - A Dose-Ranging Study | |
| 424 | | | L-065 (Tolli) | ABB_SIM00692552 - ABB_SIM00692574 | | Pes-Florida, Inc., Informed Consent and Terms for Research Study Forms | 106, 402 |
| 425 | | | L-066 (Tolli) | ABB_SIM00692575 - ABB_SIM00692588 | | Informed Consent Forms | 106, 402 |
| 426 | | | L-067 (Tolli) | ABB_SIM00692589 - ABB_SIM00692752 | | Clinical Investigation Consent Forms | 106, 402 |
| 427 | | | L-068 (Tolli) | ABB_SIM00692753 - ABB_SIM00692852 | | Consent for Research Forms | 106, 402 |
| 428 | | | L-069 (Tolli) | ABB_SIM00692853 - ABB_SIM00692899 | 07/06/2000 | Kos Pharmaceuticals, Inc. letter to FDA regarding submission of information regarding newly issued patent for Niaspan with enclosures | 402 |
| 429 | | | L-070 (Tolli) | ABB_SIM00692900 - ABB_SIM00693083 | 04/25/1994 | Kos Pharmaceuticals, Inc. NDA Application regarding Niacin Sustained-Release Tablets | |
| 430 | | | L-071 (Tolli) | ABB_SIM00693084 - ABB_SIM00693419 | | Kos Pharmaceuticals, Inc. NDA 20-381, Volume Number 2.3: Chemistry, Manufacturing and Controls | |
| 431 | | | L-072 (Tolli) | ABB_SIM00693420 - ABB_SIM00693643 | 08/01/1991 | Protocol 89/04 Final Report, as Presented in IND 34,613 (Amendment 008): A Single-Blind Placebo-Controlled Pilot Study Comparing the Effect of Once-a-Day Versus Twice-a-Day Dosing of Niaspan™ on Serum Lipids | Lack of foundation for date description |
| 432 | | | L-073 (Tolli) | ABB_SIM00693644 - ABB_SIM00693805 | 03/27/1994 | Protocol 91/02: A Pilot Efficacy Study of a Once-A-Day Sustained-Release Niacin Formulation (Niaspan™) in the Treatment of Primary Type IIa Hyperlipidemia | |
| 433 | | | L-074 (Tolli) | ABB_SIM00693806 - ABB_SIM00693889 | 01/13/1992 | Protocol 91/04 Appendices: A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan™ in Patients with Primary Hyperlipoproteinemia | |
| 434 | | | L-075 (Tolli) | ABB_SIM00693890 - ABB_SIM00693967 | 01/13/1992 | Protocol 91/05 Appendices: A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan™ in Patients with Primary Hyperlipoproteinemia - A Dose-Ranging Study | |
| 435 | | | L-077 (Sutcliffe) | ABB_SIM00688667 - ABB_SIM00688736 | 03/04/2008 | Dyslipidemia Franchise LRP Strategy | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 436 | | | L-078 (Sutcliffe) | ABB_SIM00688737 - ABB_SIM00688771 | 05/30/2008 | Niaspan Physician Insights & Opportunities | |
| 437 | | | L-079 (Sutcliffe) | ABB_SIM00688772 - ABB_SIM00688858 | | Niaspan-Based Franchise | |
| 438 | | | L-080 (Sutcliffe) | ABB_SIM00688859 | | Marianne Sutcliffe summary regarding Niaspan-Molecule | |
| 439 | | | L-081 (Sutcliffe) | ABB_SIM00688860 - ABB_SIM00688892 | 05/09/2007 | 2008 Plan Portfolio Optimization: Niaspan Single Brand Resource Optimization (UniBrand™) | |
| 440 | | | L-082 (Sutcliffe) | ABB_SIM00688893 - ABB_SIM00688913 | 01/30/2008 | Portfolio Positioning Strategy for Lipid Products Steering Team Meeting | |
| 441 | | | L-083 (Sutcliffe) | ABB_SIM00688914 - ABB_SIM00688943 | | Niaspan-Based Franchise | |
| 442 | | | L-084 (Sutcliffe) | ABB_SIM00688944 - ABB_SIM00689168 | 06/01/2004 | TriCor 145 Launch Update | Lack of foundation for date description |
| 443 | | | L-085 (Sutcliffe) | ABB_SIM00689169 - ABB_SIM00689205 | | Abbott Laboratories, Inc. Executive Summary | |
| 444 | | | L-086 (Sutcliffe) | ABB_SIM00689206 | | CD-Rom Image containing a number of spreadsheets | 402 |
| 445 | | | | ABB_SIM00566798 | | Sales data | |
| 446 | | | | ABB_SIM00571124 | | Sales data | |
| 447 | | | | ABB_SIM00571125 | | Sales data | |
| 448 | | | | ABB_SIM00571126 | | Sales data | |
| 449 | | | | ABB_SIM00571127 | | Sales data | |
| 450 | | | L-087 (Sutcliffe) | ABB_SIM00689207 | | Niaspan P&L 2007-2009 Actuals | |
| 451 | | | L-088 (Sutcliffe) | ABB-SIM00689208 - ABB_SIM00689209 | | Sales figures | |
| 452 | | | L-089 (Sutcliffe); SIM-126 (Williams) | ABB_SIM00689210 - ABB_SIM00689211 | | Sales figures (Advicor & Simcor: 2006-2010) | |
| 453 | | | L-090 (Sutcliffe) | ABB_SIM00689212 | | Niaspan Rebate Options | |
| 454 | | | L-091 (Sutcliffe) | ABB_SIM00689213 - ABB_SIM00689215 | 06/27/2007 | Email correspondence regarding "When are we going to see Niaspan move?" | |
| 455 | | | L-092 (Sutcliffe) | ABB_SIM00689216 - ABB_SIM00689220 | 08/10/2007 | CPRM 2008 Clinical Budget Review Summary | 402 |
| 456 | | | L-093 (Sutcliffe) | ABB_SIM00689221 - ABB_SIM00689222 | | Niaspan Price Rollforward, 2009 Update Corporate Review and Dyslipidemia Channel Summary Analysis, 2009 Update Corporate Review | |
| 457 | | | L-094 (Sutcliffe) | ABB_SIM00689223 | | Kos Price Volume vs. Plan | |
| 458 | | | L-095 (Sutcliffe) | ABB_SIM00689224 - ABB_SIM00689233 | | Niaspan Sales Figures (Actuals and History) | |
| 459 | | | L-096 (Sutcliffe) | ABB_SIM00689234 - ABB_SIM00689241 | 04/16/2007 | Memorandum regarding Dyslipidemia Portfolio Overview - Follow-up from LRP | |
| 460 | | | L-097 (Sutcliffe) | ABB_S2_02558325 | | Study Data | 402 |
| 461 | | | L-098 (Sutcliffe) | ABB_SIM00689242 - ABB_SIM00689263 | 02/01/2009 | Dyslipidemia LRP Strategic Overview | Lack of foundation for date description |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---------|---------|---------|-----------------|------------------|------|-------------|--------------|
| 462 | | | L-099 (Sutcliffe) | ABB_SIM00689264 - ABB_SIM00689296 | 10/19/2006 | Acquisition Assessment Project Parthenon | |
| 463 | | | L-100 (Sutcliffe) | ABB_SIM00688582 - ABB_SIM00688614 | 01/01/2009 | IMS Data | Lack of foundation for date description |
| 464 | | | L-101 (Sutcliffe) | ABB_SIM00688650 - ABB_SIM00688651 | 07/11/2008 | Email correspondence regarding BARR Royalty | |
| 465 | | | L-103 (Sutcliffe) | ABB_SIM00688652 - ABB_SIM00688653 | | Xience V™ Patient Care Program | 402 |
| 466 | | | L-104 (Sutcliffe) | ABB_SIM00688654 - ABB_SIM00688661 | 07/13/2001 | Warning letter from FDA to Kos Pharmaceuticals, Inc. | 802 |
| 467 | | | L-105 (Sutcliffe) | ABB_SIM00688662 - ABB_SIM00688666 | 08/26/1997 | Letter from FDA to Kos Pharmaceuticals, Inc. | 802, 403 (cumulative) |
| 468 | | | L-106 (Williams) | ABB_SIM00694197 - ABB_SIM00694241 | 05/01/2010 | 2010 Dyslipidemia Brand Planning: Market Landscape | Lack of foundation for date description |
| 469 | | | L-107 (Williams) | ABB_SIM00694242 - ABB_SIM00694246 | | Choice Summary, 1: Market Focus - Niaspan | |
| 470 | | | L-108 (Williams) | ABB_SIM00694247 - ABB_SIM00694297 | | 2010 ACE Review, Niaspan | |
| 471 | | | L-109 (Williams) | ABB_SIM00694298 - ABB_SIM00694302 | | Niaspan/SIMCOR 2010 Project Plans | |
| 472 | | | L-110 (Williams) | ABB_SIM00694303 - ABB_SIM00694314 | | Dyslipidemia TRx IMS Data | |
| 473 | | | L-111 (Williams) | ABB_SIM00694315 | | Pharmaceutical Products Division, 2009 Update | |
| 474 | | | L-112 (Williams) | ABB_SIM00694316 - ABB_SIM00694317 | | Sales Figures | |
| 475 | | | L-112A (Williams) | ABB_SIM00694318 | | Niaspan 2010 Actuals | |
| 476 | | | L-113 (Williams) | ABB_SIM00694319 - ABB_SIM00694320 | | Niaspan Flushing: ASA Tapering (G0429054) | |
| 477 | | | L-114 (Williams) | ABB_SIM00694321 - ABB_SIM00694322 | 01/01/2008 | Niacin Products - Margin Summary, 2009 LRP | Lack of foundation for date description |
| 478 | | | L-115 (Williams) | ABB_SIM00694323 | | CD-Rom Image "Monthly Highlights" | 402 |
| 479 | | | | ABB_SIM00566768 | | Niaspan Highlights | |
| 480 | | | | ABB_SIM00566773 - ABB_SIM00566775 | | Monthly Performance Update - Niaspan | |
| 481 | | | | ABB_SIM00566797 | | Niaspan Highlights | |
| 482 | | | L-116 (Poulos) | ABB_SIM00685434 - ABB_SIM00685485 | 01/28/2004 | TEC Meeting | |
| 483 | | | L-117 (Poulos) | ABB_SIM00685486 - ABB_SIM00685493 | 03/20/2006 | Email correspondence regarding Licensing Projects (Current Status) | |
| 484 | | | L-118 (Poulos) | ABB_S2_00264399 | | Sales data | |
| 485 | | | L-118 (Poulos) | ABB_S2_00276496 | | Sales data | |
| 486 | | | L-118 (Poulos) | ABB_S2_00310274 | | Sales data | |
| 487 | | | L-118 (Poulos) | ABB_S2_00310973 | | Sales data | |
| 488 | | | L-118 (Poulos) | ABB_S2_00313610 | | Sales data | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 489 | | | L-118 (Poulos) | ABB_S2_00314847 | | Sales data | |
| 490 | | | L-118 (Poulos) | ABB_S2_00314952 - ABB_S2_00314977 | | Sales data | |
| 491 | | | L-118 (Poulos) | ABB_S2_00347286 | | Sales data | |
| 492 | | | L-118 (Poulos) | ABB_S2_00891406 | | Sales data | |
| 493 | | | L-118 (Poulos) | ABB_S2_00896480 | | Sales data | |
| 494 | | | L-118 (Poulos) | ABB_S2_00890765 | | Sales data | |
| 495 | | | L-118 (Poulos) | ABB_S2_00957542 | | Sales data | |
| 496 | | | L-118 (Poulos) | ABB_S2_02349329 | | Sales data | |
| 497 | | | L-118 (Poulos) | ABB_S2_03117320 | | Sales data | |
| 498 | | | L-119 (Poulos) | ABB_SIM00685494 - ABB_SIM00685527 | 04/12/2005 | Co-Promotion Agreement between Kos Pharmaceuticals, Inc. and Barr Laboratories, Inc. | |
| 499 | | | L-120 (Poulos) | ABB_SIM00685528 - ABB_SIM00685572 | 04/12/2005 | License and Manufacturing Agreement between Kos Pharmaceuticals, Inc. and Barr Laboratories, Inc. | 403 (cumulative) |
| 500 | | | L-121 (Poulos) | ABB_SIM00685573 - ABB_SIM00685595 | 04/12/2005 | Settlement Agreement between Kos Pharmaceuticals, Inc. and Barr Laboratories, Inc. | 403 (cumulative) |
| 501 | | | L-122 (Poulos) | ABB_SIM00685596 - ABB_SIM00685704 | 11/14/2006 | Email correspondence regarding Abbott Laboratories, Tender Offer (06-23855-0) | |
| 502 | | | L-123 (Poulos) | ABB_SIM00685705 - ABB_SIM00685711 | 12/14/2006 | R&D Synergy Estimation Issue Discussion | |
| 503 | | | L-124 (Poulos) | ABB_SIM00685712 - ABB_SIM00685715 | 05/08/2006 | Abbott Laboratories, Inc. Pharmaceutical Licensing & New Business Development Memorandum regarding April 2006 Highlights | |
| 504 | | | L-125 (Poulos) | ABB_SIM00685716 - ABB_SIM00685719 | 10/20/2006 | Email correspondence regarding Parthenon Diligence Meetings - October 24 | |
| 505 | | | L-126 (Poulos) | ABB_SIM00685720 - ABB_SIM00685722 | 10/27/2006 | Email correspondence regarding IP Call | |
| 506 | | | L-127 (Poulos) | ABB_SIM00685723 - ABB_SIM00685724 | | Project Parthenon Synergy Analysis Sales Figures | |
| 507 | | | L-128 (Poulos) | ABB_SIM00685725 | | Dyslipidemia Franchise Top 5 Priorities | |
| 508 | | | L-129 (Poulos) | ABB_SIM00685726 - ABB_SIM00685728 | 01/23/2007 | Kos Update - January 23 2007 | |
| 509 | | | L-130 (Poulos) | ABB_SIM00685729 - ABB_SIM00685759 | 01/31/2007 | Kos Project Portfolio Review, Niaspan/Simcor Program | |
| 510 | | | L-131 (Poulos) | ABB_SIM00685760 - ABB_SIM00685763 | 10/02/2007 | Abbott Laboratories, Inc. Pharmaceutical Licensing & New Business Development Memorandum regarding September 2007 Highlights | |
| 511 | | | L-132 (Poulos) | ABB_SIM00685764 - ABB_SIM00685770 | 07/03/2008 | Abbott Laboratories, Inc. Pharmaceutical Licensing & New Business Development Memorandum regarding June 2008 Highlights | |
| 512 | | | L-133 (Poulos) | ABB_SIM00685771 - ABB_SIM00685808 | 06/01/2009 | Pharmaceutical Products Group, 2009 Update, TCF Review June 1st 2009 | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 513 | | | L-134 (McGovern) | ABB_SIM00684380 - ABB_SIM00684383 | 08/08/1990 | Garg & Grundy, *Nicotinic Acid as Therapy for Dyslipidemia in Non-Insulin-Dependent Diabetes Mellitus*, 264 JAMA, pp. 723-726 (1990) | 403 (cumulative) |
| 514 | | | L-135 (McGovern); SIM-158 (McGovern) | ABB_SIM00684384 - ABB_SIM00684410 | 01/19/2007 | Email correspondence regarding Coronary Drug Project - follow up to Portfolio Review | 106 |
| 515 | | | L-136 (McGovern) | ABB_SIM00684411 - ABB_SIM00684412 | 01/15/1997 | Protocol 96/01 Final Report Abstract | 106 |
| 516 | | | L-137 (McGovern) | ABB_SIM00684413 - ABB_SIM00684676 | | Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults (Adult Treatment Panel III "ATP III"), Final Report | 403 (cumulative) |
| 517 | | | L-138 (McGovern) | ABB_SIM00684677 - ABB_SIM00684710 | 09/28/1987 | DeWitt, et al., *Report of the National Cholesterol Education Program Expert Panel on Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults*, 148 Arch. Intern. Med, pp. 36-69 (1988) | 403 (cumulative) |
| 518 | | | L-139 (McGovern) | ABB_SIM00684711 - ABB_SIM00684723 | 01/01/2004 | Grundy, et al., *Implications of Recent Clinical Trials for the National Education Program Adult Treatment Panel III Guidelines*, 110 Circulation, pp. 227-239 (2004) | Lack of foundation for date description |
| 519 | | | L-140 (McGovern) | ABB_SIM00684724 - ABB_SIM00684726 | 11/03/1999 | Letter from Mark McGovern, Kos Pharmaceuticals, Inc. to Patricia O'halloran regarding Rubins, Robins, N. Engl. J. Med. 1999; 341:410-18 reference | |
| 520 | | | L-141 (McGovern); SIM-147 (McGovern) | ABB_SIM00684727 - ABB_SIM00684801 | 03/03/2007 | Launch Steering Committee Meeting - Niaspan new formulation and Simcor | |
| 521 | | | L-142 (McGovern); SIM-146 (McGovern) | ABB_SIM00684802 | 12/03/1999 | Letter to Sidney Smith, University of North Carolina regarding participation in summit on HDL cholesterol | |
| 522 | | | L-143 (McGovern) | ABB_SIM00684803 - ABB_SIM00684804 | 12/29/1997 | Letter to Ralph Slaker, Diversified Pharmaceutical Services, Inc. regarding post-marketing experience with Niaspan | |
| 523 | | | L-144 (McGovern) | ABB_SIM00684805 - ABB_SIM00684806 | 02/16/1998 | Letter to Peter McCullough, Henry Ford Health System enclosing clinical material on the Niaspan pivotal trials and hepatoxicity of slow release (SR) naicins | |
| 524 | | | L-145 (McGovern) | ABB_SIM00684807 - ABB_SIM00684812 | 09/01/1992 | Squires, et al., Low-Dose, Time-Release Nicotinic Acid: Effects in Selected Patients with Low Concentrations of High-Density Lipoprotein Cholesterol, 67 Mayo Clin. Proc., pp. 855-860 (1992) | 403 (cumulative), Lack of foundation for date description |
| 525 | | | L-146 (McGovern) | ABB_SIM00684813 - ABB_SIM00684824 | 10/01/1996 | Pasternak, et al., Effect of Combination Therapy with Lipid-Reducing Drugs in Patients with Coronary Heart Disease and "Normal" Cholesterol Levels, 125 Ann. Intern. Med., pp. 529-540 (1996) | 403 (cumulative) |
| 526 | | | L-147 (McGovern) | ABB_SIM00684825 - ABB_SIM00684830 | 3/12/2000 - 3/15/2000 | Cardiology Scientific Update, A Presentation at the 49th Annual Scientific Sessions of the American College of Cardiology | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 527 | | | L-148 (McGovern) | ABB_SIM00684831 | 05/26/1999 | Letter to Antonio Gotto, Weill Medical College of Cornell University regarding Gotto comment on Prognostic and Therapeutic Significance of Low Levels of High-Density Lipoprotein Cholesterol in the Archives of Internal Medicine | |
| 528 | | | L-148A (McGovern) | ABB_SIM00684832 | 05/27/1999 | Letter from Antonio Gotto, Weill Medical College of Cornell University regarding Gotto comment on Prognostic and Therapeutic Significance of Low Levels of High-Density Lipoprotein Cholesterol in the Archives of Internal Medicine | |
| 529 | | | L-149 (McGovern) | ABB_SIM00684833 | 10/29/1999 | Letter to Robert Superko, Berkeley Heart Lab regarding approval from FDA for the use of Niaspan to raise HDL cholesterol | |
| 530 | | | L-150 (McGovern) | ABB_SIM00684834 | 04/30/2001 | Email correspondence regarding ATP III guidelines | |
| 531 | | | L-151 (McGovern) | ABB_SIM00684835 - ABB_SIM00684840 | 08/17/1994 | Keenan, *Safety and Side Effects of Sustained-Release Niacin*, 272(7) JAMA, p. 513-516 (1994) | 403 (cumulative) |
| 532 | | | L-152 (McGovern) | ABB_SIM00684841 - ABB_SIM00684935 | 12/17/1998 | The American Journal of Cardiology, A Symposium: New Advances in Dyslipidemia | |
| 533 | | | L-153 (Liu) | ABB_SIM00683394 - ABB_SIM00683395 | 11/17/2008 | Sarah Liu 2008 Performance Assessment | 402 |
| 534 | | | L-154 (Liu) | ABB_SIM00683396 - ABB_SIM00683402 | 04/26/2007 | 2008 Strategic Planning, Niaspan | |
| 535 | | | L-155 (Liu) | ABB_SIM00683403 - ABB_SIM00683437 | 09/27/2007 | Niaspan/SIMCOR Discussion | |
| 536 | | | L-156 (Liu) | ABB_SIM00683438 | 10/23/2007 | Email correspondence regarding Takeda slides | |
| 537 | | | L-157 (Liu) | ABB_SIM00683439 - ABB_SIM00683441 | 05/23/2008 | Email correspondence regarding Discussion with Dr. Roizen -- Summary Notes | 802 |
| 538 | | | L-158 (Liu) | ABB_SIM00683442 - ABB_SIM00683444 | 10/09/2008 | Email correspondence regarding Meeting 10/9/08 on Jupiter Trial results | |
| 539 | | | L-159 (Liu) | ABB_SIM00683445 - ABB_SIM00683447 | 11/19/2008 | Email correspondence regarding DSN Research Results Summary and Niaspan Response | |
| 540 | | | L-160 (Liu); SIM-306 (Smith) | ABB_SIM00683448 - ABB_SIM00683624 | 10/01/2003 | Kos Pharmaceuticals, Inc., Advicor®/Niaspan® Awareness, Attitude, Usage, and Positioning Study | Lack of foundation for date description |
| 541 | | | L-161 (Liu) | ABB_SIM00683625 - ABB_SIM00683626 | 02/06/2007 | Email correspondence regarding Kos SMAC Panel Overview | |
| 542 | | | L-162 (Liu) | ABB_SIM00683627 - ABB_SIM00683631 | 03/16/2007 | Email correspondence regarding FDA letter on VAS for flushing - FDA response - did not approve the flushing tool | |
| 543 | | | L-163 (Liu) | ABB_SIM00683632 - ABB_SIM00683659 | | Maximizing Abbott's Dyslipidemia Portfolio Through Effective Positioning of Each Product | |
| 544 | | | L-164 (Liu) | ABB_SIM00683660 - ABB_SIM00683663 | 03/26/2007 | Email correspondence regarding JLT UPD Slides | |
| 545 | | | L-165 (Liu) | ABB_SIM00683664 - ABB_SIM00683666 | 03/19/2007 | Email correspondence regarding Niaspan Summaries | |
| 546 | | | L-166 (Liu) | ABB_SIM00683667 | | Voicecom for Primary Care Sales Force | |
| 547 | | | L-167 (Liu) | ABB_SIM00683668 - ABB_SIM00683673 | 05/08/2007 | Memorandum regarding Recommendations from the 2007 AACE Diabetes Guidelines | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 548 | | | L-168 (Liu) | ABB_SIM00683674 - ABB_SIM00683676 | 05/10/2007 | Email correspondence regarding Niaspan UniBrand: 60 MAX Calls Scenario | |
| 549 | | | L-169 (Liu) | ABB_SIM00683677 - ABB_SIM00683684 | 06/13/2007 | Dietary Supplement Niacin Impact Research, Kick-off Meeting | |
| 550 | | | L-170 (Liu) | ABB_SIM00683685 - ABB_SIM00683692 | 07/20/2007 | Email correspondence regarding Update - Niaspan Qual Study with Flushing Focus | |
| 551 | | | L-171 (Liu) | ABB_SIM00683693 - ABB_SIM00683694 | 07/26/2007 | Email correspondence regarding Niaspan persistency | |
| 552 | | | L-172 (Liu) | ABB_SIM00683695 - ABB_SIM00683698 | 08/05/2007 | Email correspondence regarding Flushing | |
| 553 | | | L-173 (Liu) | ABB_SIM00683699 - ABB_SIM00683700 | 09/03/2007 | Memorandum regarding Cordaptive Launch Preparedness Initiatives | |
| 554 | | | L-174 (Liu) | ABB_SIM00683701 - ABB_SIM00683705 | 09/05/2007 | Email correspondence regarding Merck Session Notes | 802 |
| 555 | | | L-175 (Liu) | ABB_SIM00683706 - ABB_SIM00683719 | 09/24/2007 | Niaspan RMDM Update | |
| 556 | | | L-176 (Liu) | ABB-SIM00683720 - ABB_SIM00683752 | 04/22/2009 | Niaspan/SIMCOR Data for the Data Gaps for ACE | |
| 557 | | | L-177 (Liu) | ABB_SIM00683753 - ABB_SIM00683754 | 10/15/2007 | Email correspondence regarding persistency & compliance data provided to Michael | 1002 |
| 558 | | | L-178 (Liu) | ABB_SIM00683755 - ABB_SIM00683757 | 12/04/2007 | Email correspondence regarding CSM Feedback - Niaspan Flushing | |
| 559 | | | L-179 (Liu) | ABB_SIM00683758 - ABB_SIM00683761 | 12/11/2007 | Email correspondence regarding Niaspan Rapid Recall Study Results | 1002 |
| 560 | | | L-180 (Liu) | ABB_SIM00683762 - ABB_SIM00683763 | 01/17/2008 | Email correspondence regarding LRP wording | |
| 561 | | | L-181 (Liu) | ABB_SIM00683764 - ABB_SIM00683766 | 01/17/2008 | Email correspondence regarding T2 Call Plan Development | |
| 562 | | | L-182 (Liu) | ABB_SIM00683767 - ABB_SIM00683768 | 02/19/2008 | Niaspan Co-Pack with ASA, LTSS meeting | |
| 563 | | | L-183 (Liu) | ABB_SIM00683769 - ABB_SIM00683771 | 06/17/2008 | Email correspondence regarding GMA - Dr. Oz discusses DSN | 802 |
| 564 | | | L-184 (Liu) | ABB_SIM00683772 - ABB_SIM00683778 | 05/23/2008 | Email correspondence regarding MM grid for Marketing Mix Inputs | |
| 565 | | | L-185 (Liu) | ABB_SIM00683779 - ABB_SIM00683785 | 07/30/2008 | Email correspondence regarding Dyslipidemia News 7.29.08 | |
| 566 | | | L-186 (Liu) | ABB_SIM00683786 - ABB_SIM00683794 | 10/14/2008 | Email correspondence regarding JUPITER Talking Points - RESENDING | 802 |
| 567 | | | L-187 (Liu) | ABB_SIM00683795 - ABB_SIM00683796 | 12/08/2008 | Memorandum regarding Request for Proposal, Niaspan Contingency Planning Project | |
| 568 | | | L-188 (Liu) | ABB_SIM00683797 - ABB_SIM00684046 | 11/17/2008 | Abbott Laboratories, Q4 2008 Dyslipidemia AAU | |
| 569 | | | L-189 (Liu) | ABB_SIM00684047 - ABB_SIM00684050 | 02/04/2009 | Email correspondence regarding Material Remediation Review - Prioritized however not reviewed with broader team yet | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---------|---------|---------|-----------------|------------------|------|-------------|--------------|
| 570 | | | L-190 (Liu) | ABB_SIM00684051 - ABB_SIM00684072 | 02/19/2009 | Dyslipidemia Franchise Team Meeting | |
| 571 | | | L-191 (Liu) | ABB_SIM00684073 - ABB_SIM00684079 | 03/01/2009 | Niaspan Patient Type Identification Strategy | Lack of foundation for date description |
| 572 | | | L-192 (Liu) | ABB_SIM00684080 - ABB_SIM00684082 | 04/20/2009 | Email correspondence regarding Arthur Agaston, MD - Niacin "Prevention Magazine" article, May 2009 issue | 802, 1002 |
| 573 | | | L-193 (Liu) | ABB_SIM00684083 - ABB_SIM00684095 | 05/06/2009 | Niaspan Franchise Staff | |
| 574 | | | L-195 (McGovern) | ABB_SIM00684986 - ABB_SIM00684992 | 7/23/20010 | Plaintiffs' Second Supplemental Objections and Responses to Lupin Pharma's First Set of Interrogatories (Nos. 1-10) | |
| 575 | | | L-196 (McGovern) | ABB_SIM00684993 - ABB_SIM00684997 | 12/01/1988 | Figge, et al., Comparison of Excretion of Nicotinuric Acid After Ingestion of Two Controlled Release Nicotinic Acid Preparations in Man, 28 J. Clin. Pharmacol., pp. 1136-1140 (1988) | 403 (cumulative), Lack of foundation for date description |
| 576 | | | L-197 (McGovern) | ABB_SIM00684998 - ABB_SIM00685000 | 12/02/1997 | Tato, et al., *Effects of Crystalline Nicotinic Acid-Induced Hepatic Dysfunction on Serum Low-Density Lipoprotein Cholesterol and Lecithin Cholesteryl Acyl Transferase,* 81 Am. J. Cardiol., pp. 805-807 (1998) | 403 |
| 577 | | | L-198 (McGovern) | ABB_SIM00685001 - ABB_SIM00685006 | 08/24/2001 | Kane, et al., Cholesterol and Glycemic Effects of Niaspan in Patients with Type 2 Diabetes, 21(12) Pharmacotherapy, pp. 1473-1478 (2001) | |
| 578 | | | | ABB_SIM00533178 - ABB_SIM00533279 | 08/12/2003 | Kos v. Barr: Deposition Transcript of Marvin Blanford | 802 |
| 579 | | | | ABB_SIM00534009 - ABB_SIM00534131 | 08/27/2003 | Kos v. Barr: Deposition Transcript of Mark McGovern | 802 |
| 580 | | | | ABB_SIM00534201 - ABB_SIM00534316 | 09/10/2003 | Kos v. Barr: Deposition Transcript of Karen Messick | 802 |
| 581 | | | | ABB_SIM00533731 - ABB_SIM00533846 | 09/18/2003 | Kos v. Barr: Deposition Transcript of Christopher Kiritsy | 802 |
| 582 | | | | ABB_SIM00533072 - ABB_SIM00533177 | 09/24/2003 | Kos v. Barr: Deposition Transcript of Daniel Bell | 802 |
| 583 | | | | ABB_SIM00534470 - ABB_SIM00534575 | 10/7/2003 | Kos v. Barr: Deposition Transcript of George Toth | 802 |
| 584 | | | | ABB_SIM00564795 - ABB_SIM00564935 | 10/15/2003 | Kos v. Barr: Deposition Transcript of Victoria O'Neill | 802 |
| 585 | | | | ABB_SIM00532984 - ABB_SIM00533071 | 10/17/2003 | Kos v. Barr: Deposition Transcript of Suzanne Balandis | 802 |
| 586 | | | | ABB_SIM00540764 - ABB_SIM00540857 | 10/21/2003 | Kos v. Barr: Deposition Transcript of Mukesh Patel | 802 |
| 587 | | | SIM-354 (Williams) | ABB_SIM00533280 - ABB-SIM00533376 | 10/22/2003 | Kos v. Barr: Deposition Transcript of David Bova | 802 |
| 588 | | | | ABB_SIM00533377 - ABB_SIM00533470 | 10/23/2003 | Kos v. Barr: Deposition Transcript of David Bova | 802 |
| 589 | | | | | 10/28/2003 | Kos v. Barr: Deposition Transcript of Thomas Ferder | 802 |

EXHIBIT N                                                                                                      .

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 590 | | | | ABB_SIM00565621 - ABB_SIM00565708 | 10/29/2003 | Kos v. Barr: Deposition Transcript of Kuldip Raj Malhotra | 802 |
| 591 | | | | | 10/30/2003 | Kos v. Barr: Deposition Transcript of David Kropp | 802 |
| 592 | | | | ABB_SIM00533561 - ABB_SIM00533682 | 10/30/2003 | Kos v. Barr: Deposition Transcript of Eugenio Cefali | 802 |
| 593 | | | | | 10/30/2003 | Kos v. Barr: Deposition Transcript of Kevin Lanigan | 802 |
| 594 | | | | ABB_SIM00533683 - ABB_SIM00533730 | 11/19/2003 | Kos v. Barr: Deposition Transcript of Karen DiStefano | 802 |
| 595 | | | | ABB_SIM00534378 - ABB_SIM00534469 | 11/25/2003 | Kos v. Barr: Deposition Transcript of Arthur Straughn | 802 |
| 596 | | | | ABB_SIM00534132 - ABB_SIM00534200 | 12/03/2003 | Kos v. Barr: Deposition Transcript of Mark McGovern | 802 |
| 597 | | | | | 12/11/2003 | Kos v. Barr: Deposition of Keith Greathouse | 802 |
| 598 | | | | ABB_SIM00533904 - ABB_SIM00534008 | 12/12/2003 | Kos v. Barr: Deposition Transcript of Peter Manso | 802 |
| 599 | | | | ABB_SIM00534317 - ABB_SIM00534377 | 12/18/2003 | Kos v. Barr: Deposition Transcript of Karen Messick | 802 |
| 600 | | | | ABB_SIM00565581 - ABB_SIM00565620 | 07/13/2004 | Kos v. Barr: Deposition Transcript of Victoria O'Neill | 802 |
| 601 | | | | ABB_SIM00533471 - ABB_SIM00533560 | 03/24/2005 | Kos v. Barr: Deposition Transcript of Eugenio Cefali | 802 |
| 602 | | | | ABB_SIM00682305 - ABB_SIM00682571 | 12/10/2009 | Abbott v. Lupin: Deposition Transcript of Eugenio Cefali | 802 |
| 603 | | | | ABB_SIM00681653 - ABB_SIM00681998 | 12/17/2009 | Abbott v. Lupin: Deposition Transcript of David Bova | 802 |
| 604 | | | | ABB_SIM00689819 - ABB_SIM00689930 | 06/10/2010 | Abbott v. Lupin: Deposition Transcript of Natalie Tolli | 802 |
| 605 | | | | ABB_SIM00688231 - ABB_SIM00688581 | 06/11/2010 | Abbott v. Lupin: Deposition Transcript of Marianne Sutcliffe | 802 |
| 606 | | | | ABB_SIM00693968 - ABB_SIM00694196 | 06/17/2010 | Abbott v. Lupin: Deposition Transcript of Medgar Williams | 802 |
| 607 | | | | ABB_SIM00685186 - ABB_SIM00685433 | 06/25/2010 | Abbott v. Lupin: Deposition Transcript of John Poulos | 802 |
| 608 | | | | ABB_SIM00684096 - ABB_SIM00684379 | 07/15/2010 | Abbott v. Lupin: Deposition Transcript of Mark McGovern | 802 |
| 609 | | | | ABB-SIM00683129 - ABB_SIM00683393 | 07/23/2010 | Abbott v. Lupin: Deposition Transcript of Sarah Liu | 802 |
| 610 | | | | ABB_SIM00684936 - ABB_SIM00684974 | 08/19/2010 | Abbott v. Teva: Deposition Transcript of Mark McGovern | 802 |
| 611 | | | | | 06/20/2011 | Abbott v. Teva: Deposition Transcript of David Bova | 802 |
| 612 | | | SIM-001 (Bova) | ABB_S2_00192028 - ABB_S2_00192029 | 12/07/1988 | Letter from David Bova to Dr. Ernst Schaefer, Head, Lipid Metabolism Laboratory, USDA Laboratory at Tufts University | |
| 613 | | | SIM-002 (Bova) | ABB_S2_00044517 - ABB_S2_00044518 | 01/19/1989 | Letter from David Bova to Dr. Ernst Schaefer, Head, Lipid Metabolism Laboratory, USDA Laboratory at Tufts University | 403 (cumulative) |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 614 | | | SIM-005 (Bova) | ABB_S2_00199167 - ABB_S2_00199169 | Undated | Letter from David Bova, Kos Pharmaceuticals, Inc. to Dr. Schaefer | |
| 615 | | | SIM-009 (Bova) | ABB_S2_00068626 - ABB_S2_00068628 | 8/22/1989 | Report on Formulation Development for NASA at MPT | 802 |
| 616 | | | SIM-012  (Bova) | ABB_S2_00044815 - ABB_S2_00044816 | 11/28/1989 | Letter to Roger Cohn, Pat Winfield and George Toth from David Bova | |
| 617 | | | SIM-017 (Bova) | ABB_S3_01772869 - ABB_S3_01772887 | 12/03/1996 | Facsimile from Valerie Ahmuty to Mike Fossler regarding Minutes of April 08, 1996 Meeting with FDA | |
| 618 | | | SIM-018 (Bova) | ABB_SIM00037472 - ABB_SIM00037474 | 04/25/1994 | Letter to the FDA from David Bova regarding Original NDA Submission 20-381 for Niaspan™ (niacin) Sustained-Release Tablets for the Treatment of Primary Hyperlipoproteinemia | |
| 619 | | | SIM-020 (Bova) | ABB_SIM00037336 - ABB_SIM00037341 | 06/12/1995 | Memorandum from Donald Raineri regarding Minutes of Conference Call with FDA on June 09, 1995 | |
| 620 | | | SIM-023 (Bova) | ABB_S2_00068534 - ABB_S2_00068535 | 09/26/1991 | Letter to Thomas Garvey from David Bova | 802 |
| 621 | | | SIM-024 (Bova) | ABB_S2_00074648 - ABB_S2_00074653 | 12/03/1991 | Memorandum of Meeting regarding IND 34,613 NIASPAN™ (sustained release niacin) | |
| 622 | | | SIM-025 (Bova) | ABB_S2_00076201 - ABB_S2_00076204 | 08/12/1994 | Memorandum to Michael Jaharis and Daniel Bell from David Bova regarding Sales of Niaspan™ | |
| 623 | | | | | 06/21/2011 | Abbott v. Teva: Deposition Transcript of David Bova | 802 |
| 624 | | | SIM-029 (Bova) | ABB_S2_00199566 - ABB_S2_00199603 | Undated | Project Proposal for Nicotinic Acid SR/Aspirin and/or Nicotinyl Alcohol Tartrate SR/Aspirin Combination | |
| 625 | | | SIM-030 (Bova) | ABB_S2_00044516 | 03/15/1989 | Letter to Dr. Schaefer from David Bova | 802 |
| 626 | | | SIM-031 (Bova); SIM-355 (Williams) | ABB_SIM00677921 - ABB_SIM00677933 | 01/01/1988 | Pharmaceutics: The Science of Dosage Form Design, Michael E. Aulton Ed. (1988) | Lack of foundation for date description |
| 627 | | | SIM-032 (Bova) | ABB_S2_00069519 - ABB_S2_00069523 | 07/03/1989 | Letter to Norman Alworth from David Bova | |
| 628 | | | | | 06/23/2011 | Abbott v. Teva: Deposition Transcript of Eugenio Cefali | 802 |
| 629 | | | SIM-033 (Cefali) | ABB_SIM00552464 - ABB_SIM00552470 | 03/21/1996 | Memorandum from Eugenio Cefali regarding Hypotheses concerning the relationship of niacin pharmacokinetics and clinical safety and efficacy | |
| 630 | | | SIM-035 (Cefali) | ABB_S2_00148933 - ABB_S2_00149008 | 10/15/2002 | Protocol Number 94/07 Draft Report: Investigation of the Effect of Sustained-Release Niacin on Serum Transaminases and Phosphorus | |
| 631 | | | SIM-036 (Cefali) | ABB_SIM00566750 - ABB_SIM00566754 | 04/18/1996 | Invention Disclosure: A controlled-release niacin input rate which manifests selected characteristics of immediate-release and sustained-release niacin | |
| 632 | | | SIM-037 (Cefali) | ABB_SIM00566755 - ABB_SIM00566760 | 04/18/1996 | Invention Disclosure: Hypotheses concerning possible niacin metabolites responsible for the toxicity observed with oral niacin formulations | |
| 633 | | | SIM-039 (Cefali) | ABB_S2_00069736 - ABB_S2_00069737 | 05/30/1997 | Memorandum from Eugenio Cefali regarding Why is Niaspan a better product than the sustained-release niacin products on the market? | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---------|---------|---------|-----------------|------------------|------|-------------|--------------|
| 634 | | | SIM-040 (Cefali) | ABB_SIM00552452 - ABB_SIM00552453 | 10/22/1999 | Memorandum from Eugenio Cefali regarding Slo-Niacin Competition | |
| 635 | | | | | 06/24/2011 | Abbott v. Teva: Deposition Transcript of Eugenio Cefali | 802 |
| 636 | | | SIM-044 (Cefali) | ABB_SIM00020228 - ABB_SIM00020287 | 03/29/1994 | Protocol Number 91/09 Amendment Number 4: A Multi-Center, Open-Label Trial of the Long-Term Safety and Efficacy of Niaspan™ in Patients with Primary Hyperlipoproteinemia | |
| 637 | | | SIM-045 (Cefali) | ABB_SIM00014202 - ABB_SIM00014349 | 04/26/1996 | Protocol Number 91/05 Final Report: A Double-Blind Placebo-Controlled Multi-Center Trial of the Safety and Efficacy of Niaspan in Patients with Primary Hyperlipoproteinemia - A Dose Ranging Study | |
| 638 | | | SIM-047 (Cefali) | ABB_S2_00141440 - ABB_S2_00141443 | 09/16/1996 | Internal Memorandum from Eugenio Cefali regarding The Use of Aspirin and Nonsteroidal Anti-inflammatory Drugs (NSAIDs) to reduce niacin-induced flush | |
| 639 | | | SIM-048 (Cefali) | ABB_S2_00196592 - ABB_S2_00196596 | 11/25/1981 | Wilkin, et al., *Aspirin blocks nicotinic acid-induced flushing*, 31(4) Clin. Pharmacol. Ther., pp. 478-482 (1982) | 403 (cumulative) |
| 640 | | | SIM-049 (Cefali) | | 09/28/1987 | DeWitt, et al., *Report of the National Cholesterol Education Program Expert Panel on Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults*, 148 Arch. Intern. Med, pp. 36-69 (1988) | 403 (cumulative) |
| 641 | | | SIM-050 (Cefali) | | 08/16/1996 | Davignon, et al., *Comparative Efficacy and Safety of Pravastatin, Nicotinic Acid and the Two Combined in Patients with Hypercholesterolemia*, 73 Am. J. Cardiol., pp. 339-345 (1994) | 403 (cumulative) |
| 642 | | | | | 07/08/2011 | Abbott v. Teva: Deposition Transcript of Joseph Errigo | 802 |
| 643 | | | SIM-052 (Errigo) | | 06/28/2011 | Abbott v. Teva: Subpoena to Time-Cap Labs, Inc. (for testimony) | 402 |
| 644 | | | SIM-053 (Errigo) | | 06/02/2011 | Abbott v. Teva: Subpoena to Time-Cap Labs, Inc. (for documents) | 402 |
| 645 | | | SIM-054 (Errigo) | TC0025 | 09/16/1987 | Department of Health and Human Services, Drug Product Listing for Sustained Release Niacin 125mg | Lack of foundation for date description |
| 646 | | | SIM-055 (Errigo) | TC0028 | 02/24/1987 | Department of Health and Human Services, Drug Product Listing for Sustained Release Niacin 125mg | 802, Lack of foundation for date description |
| 647 | | | SIM-056 (Errigo) | TC0146 | 04/14/2005 | Time-Cap Labs, Inc., Ingredient List for Niacin Sustained Release 125mg Capsules | 802 |
| 648 | | | SIM-057 (Errigo) | TC0148 | 10/30/1994 | Stability Data for Niacin 125mg Capsules, 100's | 802, Lack of foundation for date description |
| 649 | | | SIM-058 (Errigo) | TC0149 | 10/30/1994 | Stability Data for Niacin 125mg Capsules, 1000's | 802, Lack of foundation for date description |
| 650 | | | SIM-059 (Errigo) | TC0150 | 04/22/2005 | Stability Data for Niacin 125mg S.R. Capsules 100'S | 802, Lack of foundation for date description |
| 651 | | | SIM-060 (Errigo) | TC0151 | 04/22/2005 | Stability Data for Niacin 125mg S.R. Capsules 1000'S | 802, Lack of foundation for date description |
| 652 | | | SIM-061 (Errigo) | TC0166 | 06/16/1988 | Time-Cap Labs, Inc., Master Formula for Niacin 125mg S.R. Capsules | 802 |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 653 | | | SIM-062 (Errigo) | TC0167 | 09/25/1986 | Time-Cap Labs, Inc., Capsule Fill Record for Niacin 125mg S.R. Capsules | 802 |
| 654 | | | SIM-063 (Errigo) | TC0031 | 06/09/1988 | Department of Health and Human Services, Drug Product Listing for Sustained Release Niacin 500mg | 802, Lack of foundation for date description |
| 655 | | | SIM-064 (Errigo) | TC0145 | 07/02/2008 | Time-Cap Labs, Inc., Ingredient List for Niacin Sustained Release Capsules, 500mg | 802 |
| 656 | | | SIM-065 (Errigo) | TC0074 | 03/12/2007 | Time-Cap Labs, Inc., Product Specification for Niacin Extended Release Capsules, 500mg | 802 |
| 657 | | | SIM-066 (Errigo) | TC0076 | 08/19/2008 | Time-Cap Labs, Inc., Certificate of Analysis for Niacin Extended Release Capsules, 500mg | 802 |
| 658 | | | SIM-067 (Errigo) | TC0158 | 07/05/1988 | Stability Data for Niacin 500mg S.R. Capsules, 100's | 802, Lack of foundation for date description |
| 659 | | | SIM-068 (Errigo) | TC0159 | 07/05/1988 | Stability Data for Niacin 500mg S.R. Capsules, 1000's | 802, Lack of foundation for date description |
| 660 | | | SIM-069 (Errigo) | TC0175 | 06/16/1988 | Time-Cap Labs, Inc., Master Formula for Niacin 500mg S.R. Capsules | 802 |
| 661 | | | SIM-070 (Errigo) | TC0157 | 10/18/2004 | Stability Data for Niacin 400mg S.R. Capsules, 1000's | 802, Lack of foundation for date description |
| 662 | | | SIM-071 (Errigo) | TC0156 | 10/18/2004 | Stability Data for Niacin 400mg S.R. Capsules, 100's | 802, Lack of foundation for date description |
| 663 | | | SIM-072 (Errigo) | TC0077 | 01/22/2008 | Stability Data for Niacin 250mg Extended Release Capsules, 100's | 802, Lack of foundation for date description |
| 664 | | | SIM-073 (Errigo) | TC0078 | 01/22/2008 | Stability Data for Niacin 250mg Extended Release Capsules, 1000's | 802, Lack of foundation for date description |
| 665 | | | SIM-074 (Errigo) | TC0153 | 08/09/2010 | Stability Data for Niacin 250mg Extended Release Capsules, 100's | 802, Lack of foundation for date description |
| 666 | | | SIM-075 (Errigo) | TC0154 | 08/09/2010 | Stability Data for Niacin 250mg Extended Release Capsules, 1000's | 802, Lack of foundation for date description |
| 667 | | | SIM-076 (Errigo) | TC0030 | 02/24/1987 | Department of Health and Human Services, Drug Product Listing for Sustained Release Niacin 400mg, 1000's | Lack of foundation for date description |
| 668 | | | SIM-077 (Errigo) | TC0027 | 09/16/1987 | Department of Health and Human Services, Drug Product Listing for Sustained Release Niacin 400mg, 100's | 802, Lack of foundation for date description |
| 669 | | | SIM-078 (Errigo) | TC0029 | 02/24/1987 | Department of Health and Human Services, Drug Product Listing for Sustained Release Niacin 250mg, 1000's | 802,Lack of foundation for date description |
| 670 | | | SIM-079 (Errigo) | TC0147 | 09/02/2005 | Time-Cap Labs, Inc., Ingredient List for Niacin Sustained Release Capsules, 400mg | 802 |
| 671 | | | SIM-080 (Errigo) | TC0152 | 01/25/1987 | Stability Data for Niacin 250mg Capsules, 100's | 802, Lack of foundation for date description |
| 672 | | | SIM-081 (Errigo) | TC0155 | 03/31/1987 | Stability Data for Niacin 400mg S.R. Capsules, 1000's | 802, Lack of foundation for date description |
| 673 | | | SIM-082 (Errigo) | TC0162 - TC0163 | 06/16/1988 | Time-Cap Labs, Inc., Master Formula for Niacin Stock Pellets | 802 |
| 674 | | | SIM-083 (Errigo) | TC0043 - TC0044 | 06/23/2010 | Time-Cap Labs, Inc., Master Label Forms for Niacin Extended-Release Capsules, 250mg and 500mg | 802 |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 675 | | | SIM-084 (Errigo) | TC0045 - TC0046 | 06/11/1999 | Time-Cap Labs, Inc., Master Label Forms for Niacin Extended-Release Capsules, 250mg and 500mg, 100 Capsules | 802, Lack of foundation for date description |
| 676 | | | SIM-085 (Errigo) | TC0047 - TC0048 | 06/21/1999 | Time-Cap Labs, Inc., Labels for Niacin | 802, Lack of foundation for date description |
| 677 | | | SIM-086 (Errigo) | TC0052 - TC0053 | 03/03/2009 | Time-Cap Labs, Inc., Master Label Forms for Niacin 250mg and 500mg | 802 |
| 678 | | | SIM-087 (Errigo) | TC0054 - TC0055 | 08/16/2005 | Time-Cap Labs, Inc., Voided Labels (Revised)  for Niacin 250mg and 500mg, 100 Capsules | 802, Lack of foundation for date description |
| 679 | | | SIM-088 (Errigo) | TC0057 | 11/13/2009 | Time-Cap Labs, Inc., Master Label Form for Niacin-SR 250mg, 100 Capsules | 802, Lack of foundation for date description |
| 680 | | | SIM-089 (Errigo) | TC0059 - TC0062 | | Time-Cap Labs, Inc., Labels for Niacin S.R. | 802, Lack of foundation for date description |
| 681 | | | SIM-090 (Errigo) | TC0063 - TC0065 | | Time-Cap Labs, Inc., Labels for Niacin | 802 |
| 682 | | | SIM-091 (Errigo) | TC0066 - TC0068 | | Time-Cap Labs, Inc., Voided Labels (Revised) for Niacin | 802, Lack of foundation for date description |
| 683 | | | SIM-092 (Errigo) | | 10/05/2004 | Magnified image of Time-Cap Labs, Inc., Voided Labels (Revised) for Niacin  250mg Dietary Supplement, 100 Capsules | 901, 802, 403 (cumulative) |
| 684 | | | | | 07/12/2011 | Abbott v. Teva: Deposition Transcript of Medgar Williams | 802 |
| 685 | | | SIM-092 (Williams) | | 05/27/2011 | Defendants' Notice of Deposition of Medgar Williams | 402 |
| 686 | | | SIM-093 (Williams) | | 06/01/2011 | Defendants' Notice of the Rule 30(b)(6) Deposition of Abbott Laboratories and Abbot Respiratory LLC | 402 |
| 687 | | | SIM-094 (Williams) | ABB_S3_01210438 - ABB_S3_01210570 | 02/09/2010 | Email from Medgar E. Williams to Jay Carter and Nancy Drescher regarding Flushing Decks with attachments: Niaspan/SIMCOR Consumer Flushing Insights, and NIASPAN Consumer Flushing Message Research, January 2010 | |
| 688 | | | SIM-095 (Williams) | | 12/01/2010 | Niaspan® Tablets Package Insert | Lack of foundation for date description |
| 689 | | | SIM-096 (Williams) | ABB_S3_01349510 - ABB_S3_01349586 | Undated | Document production family including PowerPoint presentations and brochures | 403 (cumulative) |
| 690 | | | SIM-097 (Williams) | ABB_S3_01326661 - ABB_S3_01326662 | 11/17/2009 | Email from Medgar E. Williams regarding Press release: Comparative Effect of Statins vs Niacin on MRI Measured Regression of Carotid Athersclerosis in a Randomized Clinical Trial: The NIA Plaque Study | 802, 1002 |
| 691 | | | SIM-098 (Williams) | ABB_S3_01347055 - ABB_S3_01347058 | 06/08/2010 | Email from Medgar E. Williams regarding VA Slo Niacin Study Abstract Information | 802 |
| 692 | | | SIM-099 (Williams) | | 12/01/2010 | Byrd, et al., *Lipid and Transaminase concentrations after formulary conversion of Niaspan to Slo-Niacin*, 67 Am. J. Health-Syst. Pharm., pp. 2038-2042 (2010) | |
| 693 | | | SIM-100 (Williams) | ABB_S3_01347429 - ABB_S3_01347463 | 06/14/2010 | Email from Medgar Williams regarding action items for VA Niaspan Discussion (including attachments) | |
| 694 | | | SIM-101 (Williams) | ABB_S3_01939344 - ABB_S3_01939346 | 09/27/2010 | Email from Ketki P. Cabbil regarding Kaiser Risk-share opportunity | |

EXHIBIT N

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 695 | | | SIM-102 (Williams) | | 06/19/1987 | Blankenhorn, et al., *Beneficial Effects of Combined Colestipol-Niacin Therapy on Coronary Atherosclerosis and Coronary Venous Bypass Grafts,* 257(23) JAMA, pp. 3233-3240 (1987) | |
| 696 | | | SIM-103 (Williams) | ABB_S3_00551112 | 03/23/2010 | Email from Sarah L. Bose regarding Slo-Niacin | 802 |
| 697 | | | SIM-104 (Williams) | ABB_S3_01757784 - ABB_S3_01757789 | 10/28/2009 | Email from Joshua Baldwin regarding Dyslipidemia News articles (with attachments) | 802, 1002 |
| 698 | | | SIM-105 (Williams) | ABB_S3_01344614 - ABB_S3_01344625 | 04/22/2010 | Email from Medgar Williams regarding DSN Flashcard (including family attachments) | |
| 699 | | | SIM-106 (Williams) | ABB_S3_00809612 - ABB_S3_00809614 | 03/23/2010 | Email from Jonathan Silver with attachment | |
| 700 | | | SIM-107 (Williams) | ABB_S3_00404054 - ABB_S3_00404057 | 02/23/2010 | Email from Lance Schoff regarding, Director of Marketing Insights, Pharmaceutical Products Division Abbott | 802, 1002 |
| 701 | | | SIM-108 (Williams) | | 05/26/2011 | Press Release, ProQuest, Abbott Dealt Blow in Cholesterol Drug Trial (May 26, 2011) (on file with Ron Winslow) | 802 |
| 702 | | | SIM-109 (Williams) | ABB_S3_00140741 - ABB_S3_00140748 | 10/01/2009 | PowerPoint Presentation, Leading SIMCOR | Lack of foundation for date description |
| 703 | | | SIM-110 (Williams) | ABB_S3_01937704 - ABB_S3_01937706 | 08/23/2010 | Email from Stephen Hough regarding Niaspan Insights | |
| 704 | | | SIM-111 (Williams) | ABB_S3_00599562 - ABB_S3_00599641 | 06/22/2010 | Email from Diane Mielnikowski regarding Response to outstanding SIMCOR MMix questions including family attachments | 106 |
| 705 | | | SIM-112 (Williams) | ABB_S3_00817850 - ABB_S3_00817851 | 06/06/2010 | Email from Medgar Williams regarding SIMCOR Contingency Plan | |
| 706 | | | SIM-113 (Williams) | ABB_S3_00825415 - ABB_S3_00825417 | 08/26/2010 | Email from Medgar Williams regarding Simcor Launch: The Good, The Bad, and The Ugly! | 802 |
| 707 | | | SIM-114 (Williams) | ABB_S3_01908623 - ABB_S3_01908624 | 08/21/2009 | Email from Edward Bryden attaching slide entitled Niaspan Share Has Declined Since Nov '08 Due To Many Market Factors | |
| 708 | | | SIM-115 (Williams) | ABB_S3_01753284 - ABB_S3_01753293.012 | 08/05/2009 | Email from Kristin Elvekrog regarding 2010 Niaspan/SIMCOR Needs by Thursday (including family attachments) | |
| 709 | | | SIM-116 (Williams) | ABB_S3_00795318 - ABB_S3_00795348 | 04/10/2009 | Email from Frederick Mischler III regarding Messages for Review at 1:30 EST (12:30 CST) (including family attachments) | |
| 710 | | | SIM-117 (Williams) | ABB_S3_01928500 - ABB_S3_01928502 | 03/10/2010 | Email from Lance Schoff regarding Golds my man? | |
| 711 | | | SIM-118 (Williams) | ABB_S3_00762808 - ABB_S3_00762827 | 09/07/2010 | Email from Chad Bernstein regarding Niaspan DTC Evolution Concepts - Formal Feedback with family attachments | 802 |
| 712 | | | SIM-119 (Williams) | | 12/06/2010 | Settlement Agreement - Kos Pharmaceuticals, Inc. | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 713 | | | SIM-120 (Williams) | ABB_S2_00247188 - ABB_S2_00247198 | Undated | PowerPoint Presentation, Niacin Extended Release Product Family, Niaspan®, Advicor® and Simcor™ | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 714 | | | SIM-121 (Williams) | ABB_S2_00394610 - ABB_S2_00394633 | 09/01/2008 | PowerPoint Presentation, Primary Care Commercial Execution | Lack of foundation for date description |
| 715 | | | SIM-122 (Williams) | ABB_S2_01583137 - ABB_S2_01583148 | 12/31/2009 | 2010 Niaspan Brand Plan | 403 (cumulative) |
| 716 | | | SIM-123 (Williams) | ABB_S2_02096023 - ABB_S2_02096045 | 03/19/2009 | PowerPoint Presentation, Niaspan/SIMCOR 2009 Trends/Actions to Close the Gap | |
| 717 | | | SIM-124 (Williams) | ABB_S3_01674343 - ABB_S3_01674387 | 05/01/2010 | PowerPoint Presentation, 2010 Dyslipidemia Brand Planning, Market Landscape | Lack of foundation for date description |
| 718 | | | SIM-125 (Williams) | ABB_S2_01960446 - ABB_S2_01960480 | 02/15/2008 | Letter from Mary H. Parks, MD, Director, Food and Drug Administration, to David Ross, Director, Abbott Pharmaceuticals (February 15, 2008) with enclosure | |
| 719 | | | SIM-127 (Williams) | ABB_S3_01347192 - ABB_S3_01347198 | 06/09/2010 | Email from Medgar Williams regarding VA Slo Niacin Study Abstract Information | 802 |
| 720 | | | | | 07/15/2011 | Abbott v. Teva: Deposition Transcript of Marianne Sutcliffe | 802 |
| 721 | | | SIM-128 (Sutcliffe) | | 07/11/2011 | Defendants' Amended Notice of Deposition of Marianne Sutcliffe with Certificate of Service | 402 |
| 722 | | | SIM-129 (Sutcliffe) | | 06/01/2011 | Defendants' Notice of the Rule 30(b)(6) Deposition of Abbott Laboratories and Abbot Respiratory LLC | 402 |
| 723 | | | SIM-130 (Sutcliffe) | ABB_SIM00949882 - ABB_SIM00949904 | Undated | Proprietary Pharmaceuticals Division, 2011 Update Reference Package | |
| 724 | | | SIM-131 (Sutcliffe) | ABB_S2_00681040 - ABB_S2_00681063 | Undated | Raise Regress Reduce, New Niaspan Caplets | |
| 725 | | | SIM-132 (Sutcliffe) | ABB_S3_01269024 - ABB_S3_01269027 | 06/03/2008 | Email from Michael Gautsch regarding Best Practice Document (with attachment) | 403 (cumulative) |
| 726 | | | SIM-133 (Sutcliffe) | ABB_S3_01730405 - ABB_S3_01730406 | 12/21/2007 | Email from Sarah Liu regarding Advicor Talking Points | |
| 727 | | | SIM-134 (Sutcliffe) | ABB_S3_00618273 - ABB_S3_00618278 | 06/30/2007 | Email from Marianne Sutcliffe regarding T3 Call Plan Follow-up | |
| 728 | | | SIM-135 (Sutcliffe) | ABB_S3_00610266 - ABB_S3_00610270 | 06/29/2007 | Email from Lisa Castaneda regarding T3 Call Plan Follow-up | |
| 729 | | | SIM-136 (Sutcliffe) | ABB_S2_02606031 - ABB_S2_02606391 | 09/05/2007 | Email from Sara Liu regarding Niaspan and Advicor 2008 Plan (with attachment) | |
| 730 | | | SIM-137 (Sutcliffe) | ABB_S3_01905852 - ABB_S3_01905855 | 02/12/2008 | FDA Contact Report | 802 |
| 731 | | | SIM-138 (Sutcliffe) | ABB_S2_00255624 - ABB_S2_00255628 | 05/31/2007 | Email from Marianne Sutcliffe regarding Niaspan ASA Co-Pack | |
| 732 | | | SIM-139 (Sutcliffe) | ABB_S2_00321844 - ABB_S2_00321856 | 10/07/2008 | Marianne Sutcliffe Working Draft Niaspan/SIMCOR Presentation | |
| 733 | | | SIM-140 (Sutcliffe) | ABB_S2_00299825 - ABB_S2_00299826 | Undated | Simcor® and Niaspan® Now on Pennsylvania State Medicaid Preferred Drug List (PDL) | |
| 734 | | | SIM-141 (Sutcliffe) | ABB_S2_02639278 - ABB_S2_02639293 | 12/04/2007 | Email from Sarah Liu regarding AI Launce Meeting Presentation (with attachment) | |
| 735 | | | SIM-142 (Sutcliffe) | ABB_S3_01297334 - ABB_S3_01297367 | 07/10/2009 | Email from Beth Nelles regarding SIMCOR ACE Document - DRAFT (with attachment) | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 736 | | | | | 07/19/2011 | Abbott v. Teva: Deposition Transcript of Mark McGovern | 802 |
| 739 | | | SIM-145 (McGovern) | ABB_S2_01747244 - ABB_S2_01747276 | 06/08/2007 | Email from Bruce Brown regarding Slide files 4-6 For Chicago Investigator meeting, June 13 (with attachments) | |
| 740 | | | SIM-148 (McGovern) | | 12/30/2008 | Press Release, BioSpace, AAIPharma, Inc. and Cortria Corporation Sign Drug Delivery Deal (December 30, 2008) (on file with BioSpace.com) | 402, 802 |
| 741 | | | SIM-149 (McGovern) | | 08/11/2008 | Press Release, Cortria, Cortria Appoints Gene Cefali, Pharm.D., Ph.D. as SVP Clinical Pharmacology & Formulation Development (August 11, 2008) (on file with Dan Grau) | 402, 802 |
| 742 | | | SIM-150 (McGovern) | ABB_S3_01347285 - ABB_S3_01347292 | 07/13/2001 | Letter from Thomas Abrams, Director, Food and Drug Administration, to Adrain Adams, President, Kos Pharmaceuticals, Inc. (July 13, 2001) | 802, 403 (cumulative) |
| 743 | | | SIM-151 (McGovern) | ABB_S2_01068733 - ABB_S2_01068738 | 10/31/2001 | Fax from Andrew Haffer, Regulatory Review Officer, Food and Drug Administration, to Adrain Adams, President, Kos Pharmaceuticals, Inc. (October 31, 2001) with attachments | 802 |
| 744 | | | SIM-152 (McGovern) | ABB_S2_01068739 - ABB_S2_01068749 | 09/27/2001 | Draft: Meeting Summary Points with attachments | 802 |
| 745 | | | SIM-153 (McGovern) | ABB_S2_00071063 - ABB_S2_00071066 | Undated | Step up to proven Tolerability, Kos Pharmaceuticals, Inc., | |
| 746 | | | SIM-154 (McGovern) | ABB_S2_00227053 | Undated | Email from Aaron Berg regarding non-prescription niacin | 802 |
| 747 | | | SIM-155 (McGovern) | ABB_S2_00227313 | 01/22/2002 | Letter from Marvin Blanford, Vice President, Kos Pharmaceuticals, Inc., to Robert Temple, Food and Drug Administration (January 22, 2002) | |
| 748 | | | SIM-156 (McGovern) | ABB_S2_00227308 - ABB_S2_00227309 | 04/05/2002 | Letter from Marvin Blanford, Vice President, Kos Pharmaceuticals, Inc., to Robert Temple, Food and Drug Administration (April 5, 2002) | |
| 749 | | | SIM-157 (McGovern) | ABB_S3_01939036 - ABB_S3_01939037 | Undated | Niaspan Key Market Statistics | |
| 750 | | | SIM-159 (McGovern) | ABB_SIM00717915 - ABB_SIM00717916 | Undated | MedWatch: The FDA Medical Products Reporting Program, NIASPAN | 802 |
| 751 | | | SIM-160 (McGovern) | ABB_SIM00715337 | 01/05/1995 | MedWatch: The FDA Medical Products Reporting Program, Niaspan® 500mg tablet - Kos Pharmaceuticals, Inc. | 802 |
| 752 | | | SIM-161 (McGovern) | ABB_SIM00715420 | 01/05/1995 | MedWatch: The FDA Medical Products Reporting Program, Niaspan® 500mg tablet - Kos Pharmaceuticals, Inc. | 802 |
| 753 | | | SIM-162 (McGovern) | ABB_SIM00715513 - ABB_SIM00715514 | 01/05/1995 | MedWatch: The FDA Medical Products Reporting Program, Niaspan® 500mg tablet - Kos Pharmaceuticals, Inc. | 802 |
| 754 | | | SIM-163 (McGovern) | ABB_SIM00715545 | 01/05/1995 | MedWatch: The FDA Medical Products Reporting Program, Niaspan® tablet - Kos Pharmaceuticals, Inc. | 802 |
| 755 | | | SIM-164 (McGovern) | ABB_SIM00715561 | 01/05/1995 | MedWatch: The FDA Medical Products Reporting Program, Niaspan® tablet - Kos Pharmaceuticals, Inc. | 802 |
| 756 | | | SIM-165 (McGovern) | ABB_S3_01720732 - ABB_S3_01720733 | 02/15/2007 | Email from Daiva Bajorunas regarding Simcor | 402 |
| 757 | | | | | 08/23/2011 | Abbott v. Teva: Deposition Transcript of Robert Padley | 802 |

EXHIBIT N

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---------|---------|---------|-----------------|------------------|------|-------------|--------------|
| 758 | | | SIM-166 (Padley) | | 08/05/2010 | Application No. 10/444,145: Interview Summary | 106, 402 |
| 759 | | | SIM-167 (Padley) | | 08/30/2010 | Application No. 10/444,145: Interview Summary | 106, 402 |
| 760 | | | SIM-168 (Padley) | | 11/24/2009 | Application No. 10/444, 145: Response to June 24, 2009 Office Action | 106, 402 |
| 761 | | | SIM-169 (Padley) | ABB_S3_00356068 - ABB_S3_00356089 | Undated | Niacin ER/Simvastatin Tablets, 3.2.P.1 Description and Composition of Niacin ER/Simvastatin Tablet, 1000mg DC/20mg | |
| 762 | | | SIM-170 (Padley) | ABB_S2_00938651 - ABB_S2_00938653 | 07/31/2008 | Email from Robert Padley regarding Thanks for yesterday and a question for next week | |
| 763 | | | SIM-171 (Padley) | ABB_S2_00945297 - ABB_S2_00945298 | 09/21/2007 | Email from Robert Padley regarding Niaspan PK | |
| 764 | | | SIM-172 (Padley) | ABB_S2_00947151 - ABB_S2_00947154 | 03/16/2009 | Email from Robert Padley regarding M10-592 (Simcor NS 1000DC/20 vs 1000WG/20): Preliminary Results | |
| 765 | | | SIM-173 (Padley) | ABB_S2_01253102 - ABB_S2_01253114 | 11/01/2007 | Draft letter from Natalie Tolli, Associate Director, Abbott Pharmaceuticals, Inc., to Dr. Mary Parks, Division Director, Food and Drug Administration (November 1, 2007) | |
| 766 | | | SIM-174 (Padley) | ABB_S2_03294546 - ABB_S2_03294548 | 08/05/2008 | Eagle/Sirius JDC Meeting Minutes | |
| 767 | | | SIM-175 (Padley) | ABB_S2_00251747 - ABB_S2_00251779 | 08/17/2007 | Niaspan-based LCM | |
| 768 | | | SIM-176 (Padley) | ABB_S3_00822501 - ABB_S3_00822502 | 08/01/2010 | FDA Approves New Simcor 40-mg Strengths | Lack of foundation for date description |
| 769 | | | SIM-177 (Padley) | ABB_S3_00551101 - ABB_S3_00551107 | 03/19/2010 | Email from Thao Doan regarding Niaspan question - Endur-acin | |
| 770 | | | SIM-178 (Padley) | ABB_S3_01552058 - ABB_S3_01552066 | 03/08/2010 | Email from Robert Padley regarding Niaspan question | 802 |
| 771 | | | SIM-179 (Padley) | ABB_S3_01581035 - ABB_S3_01581041 | 06/09/2010 | Email from Robert Padley regarding VA Slo Niacin Study Abstract Information | 802, 403 (cumulative) |
| 772 | | | SIM-180 (Padley) | ABB_S3_01934461 - ABB_S3_01934462 | 06/10/2010 | Email from Robert Padley regarding USA TODAY article on supplements | 403 |
| 773 | | | SIM-181 (Padley) | ABB_S3_01934503 - ABB_S3_01934507 | 06/11/2010 | Email from Sarah Bose regarding USA TODAY article on supplements | |
| 774 | | | SIM-182 (Padley) | ABB_S3_01938600 - ABB_S3_01938603 | 09/10/2010 | Email from Jeffrey Cercy regarding Update VISN List where Niaspan Switching is occurring | 802 |
| 775 | | | SIM-183 (Padley) | ABB_S3_00762312 - ABB_S3_00762321 | 03/01/2010 | SLO-NIACIN® Frequently Asked Questions, VHA Pharmacy Benefits Management Services, the Medical Advisory Panel and the VISN Pharmacist Executives | 802, Lack of foundation for date description |
| 776 | | | SIM-184 (Padley) | ABB_S3_00090161 - ABB_S3_00090186 | 07/11/2008 | Cumulative Review of Niaspan and Hepatobiliary Disorders, Review Period: 28 July 1997 through 08 April 2008, Postmarketing Safety Evaluation, 11 July 2008 | |
| 777 | | | SIM-185 (Padley) | ABB_S3_01896877 - ABB_S3_01896880 | 09/24/2009 | Average Value of a Niaspan Patient | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 778 | | | SIM-186 (Padley) | ABB_S3_01949027 - ABB_S3_01949031 | 02/18/2009 | Niaspan Simcor CPT Meeting Minutes, Final | |
| 779 | | | SIM-187 (Padley) | | 06/02/2005 | United states Patent Application Publication, US 2005/0118257 A1 | 402 |
| 780 | | | SIM-188 (Padley) | | 03/01/2010 | Declaration of Frank Sacks in Support of Plaintiffs' Opening Claim Construction Brief, Abbott Laboratories, et al., v. Lupin Limited, et al., C.A. No. 09-152-JJF | 802, 403 (cumulative) |
| 781 | | | SIM-189 (Padley) | ABB_S2_00353444 - ABB_S2_00353454 | 01/01/2009 | Thakkar, et al., *Acetylsalicylic Acid Reduces Niacin Extended-Release-Induced Flushing in Patients with Dyslipidemia,* 9(2) Am. J. Cardiovasc Drugs, pp. 69-79 (2009) | Lack of foundation for date description |
| 782 | | | SIM-190 (Padley) | ABB_S3_00762425 - ABB_S3_00762430 | 06/21/2005 | VA initiative to switch Niaspan to Slo-Niacin (a dietary supplement) | 802 |
| 783 | | | SIM-191 (Padley) | ABB_SIM01259595 - ABB_SIM01259599 | Undated | Sales Force Frequently Asked Questions | |
| 784 | | | | | 08/25/2011 | Abbott v. Teva: Deposition Transcript of George Toth | 802 |
| 785 | | | SIM-192 | N/A | 08/15/2011 | Defendants' Notice of Deposition of George Toth | 402 |
| 786 | | | SIM-194 | ABB_SIM00562135 - ABB_SIM00562148 | 04/08/1998 | Fax from Roger Cohn to George Toth regarding Early Niaspan | |
| 787 | | | SIM-197 | ABB_SIM00551705 - ABB_SIM00551708 | 07/14/1997 | Internal memorandum regarding F2 Criteria of the Production Lots | 403 (cumulative) |
| 788 | | | SIM-199 | ABB-S 00041953 - ABB-S 00041972 | 01/25/2000 | Kos Report No.: PESR000001-1, the Effects of pH on the In-Vitro Dissolution of Niaspan® 500 and 1000-mg Tablets - SUPAC Level 2 Support for Implementation of the Littleford FM 300 High Shear Granulator | |
| 789 | | | SIM-201 | ABB_SIM00952120 - ABB_SIM00952218 | 02/13/1991 - 08/20/1991 | Kos Pharmaceuticals, Inc. Laboratory Notebook No. 010, Chemist: George M. Toth | |
| 790 | | | | | 06/21/2011 | Abbott v. Sun: Deposition Transcript of David Bova | 802 |
| 791 | | | SUN-001 (Bova) | | 06/17/2011 | Plaintiffs Abbott Laboratories and Abbott Respiratory LLC's Responses and Objections to Defendants Sun Pharmaceutical Industries, Ltd. and Sun Pharma Global FZE's Rule 30(b)(6) Notice of Deposition | 402 |
| 792 | | | SUN-002 (Bova) | | 06/27/2000 | U.S. Patent No. 6,080,428 | 403 (cumulative), Lack of foundation for date description |
| 793 | | | SUN-003 (Bova) | | 01/19/1989 | Letter to Dr. Schaefer from David Bova | 403 (cumulative) |
| 794 | | | | | 06/24/2011 | Abbott v. Sun: Deposition Transcript of Eugenio Cefali | 802 |
| 795 | | | SUN-004 (Cefali) | | 10/22/2002 | U.S. Patent No. 6,469,035 | 403 (cumulative), Lack of foundation for date description |
| 796 | | | | | 07/19/2011 | Abbott v. Sun: Deposition Transcript of Mark McGovern | 802 |
| 797 | | | SUN-005 (McGovern) | | 06/17/2011 | Plaintiffs Abbott Laboratories and Abbott Respiratory LLC's Responses and Objections to Defendants Sun Pharmaceutical Industries, Ltd. and Sun Pharma Global FZE's Rule 30(b)(6) Notice of Deposition | 402 |

EXHIBIT N

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 798 | | | SUN-006 (McGovern) | | Undated | Kos Pharmaceuticals, Inc., Projected Revenue for Niaspan™ | |
| 799 | | | | | 08/01/2011 | Curriculum Vitae, William Frederick Elmquist | Lack of foundation for date description |
| 800 | | | | | 08/19/2011 | Attachment A to Dr. Elmquist's Opening Expert Report | 802, 901, 1002, D |
| 801 | | | | | 08/19/2011 | Attachment B to Dr. Elmquist's Opening Expert Report | 802, 901, 1002, D |
| 802 | | | SIM-216 (Bottorff) | | 08/19/2011 | Attachment C to Dr. Elmquist's Opening Expert Report | 802, 901, 1002, D |
| 803 | | | SIM-217 (Bottorff) | | 08/19/2011 | Attachment D to Dr. Elmquist's Opening Expert Report | 802, 901, 1002, D |
| 804 | | | | | 08/19/2011 | Attachment E-1 to Dr. Elmquist's Opening Expert Report | 802, 901, 1002, D |
| 805 | | | | | 08/19/2011 | Attachment E-2 to Dr. Elmquist's Opening Expert Report | 802, 901, 1002, D |
| 806 | | | | | 08/19/2011 | Attachment F to Dr. Elmquist's Opening Expert Report | 802, 901, 1002, D |
| 807 | | | | | 08/19/2011 | Attachment G to Dr. Elmquist's Opening Expert Report | 802, 901, 1002, D |
| 808 | | | | | 08/19/2011 | Attachment H to Dr. Elmquist's Opening Expert Report | 802, 901, 1002, D |
| 809 | | | | | 08/19/2011 | Attachment I to Dr. Elmquist's Opening Expert Report | 802, 901, 1002, D |
| 810 | | | | | 08/19/2011 | Attachment J to Dr. Elmquist's Opening Expert Report | 802, 901, 1002, D |
| 811 | | | | | 08/19/2011 | Attachment K to Dr. Elmquist's Opening Expert Report | 802, 901, 1002, D |
| 812 | | | | | 08/19/2011 | Attachment L to Dr. Elmquist's Opening Expert Report | 802, 901, 1002, D |
| 813 | | | SIM-341 (Williams) | TV0044369 - TV0044377 | 06/30/1992 | U.S. Patent No. 5,126,145 (Evenstad Patent) | Lack of foundation for date description |
| 814 | | | | TV0044378 - TV0044385 | 12/07/1993 | U.S. Patent No. 5,268,181 (O'Neill Patent) | Lack of foundation for date description |
| 815 | | | | | 12/04/1992 | Physicians' Desk Reference, 47th edition (1993): excerpts for Slo-Niacin | |
| 816 | | | | USLT000075 | 03/30/1992 | Label Copy Information regarding Slo-Niacin 500mg Tablet | 802, 106 |
| 817 | | | | USLT000081 | 04/08/1992 | Carton Copy Information regarding Slo-Niacin 500mg Tablet | 802 |
| 818 | | | | USLT000084 | 04/08/1992 | Insert Copy Information regarding Slo-Niacin 500mg Tablet | 802 |
| 819 | | | SIM-371 (Sacks) | USLT000093 | 07/10/1992 | Carton Copy Information regarding Slo-Niacin 500mg Tablet | 802 |
| 820 | | | | USLT000179 | 04/07/1992 | Insert Copy Information regarding Slo-Niacin 750mg Tablet | 802 |
| 821 | | | | USLT000266 | 04/14/1992 | Insert Copy Information regarding Slo-Niacin 250mg Tablet | 802 |
| 822 | | | | USLT000172 | 04/08/1992 | Label Copy Information regarding Slo-Niacin 750mg Tablet | 802 |
| 823 | | | | USLT000174 | 04/10/1992 | Carton Copy Information regarding Slo-Niacin 750mg Tablet | 802 |
| 824 | | | | TV0044351 - TV0044368 | 03/22/1995 | EP 0 643 965 A1 | Lack of foundation for date description |
| 825 | | | SIM-335 (Williams) | | 12/12/1991 | Physicians' Desk Reference, 46th edition (1992): excerpts for Nicobid, Rebound on January 8, 1993 | 106 |
| 826 | | | | ABB_SIM00009066 - ABB_SIM00009400 | 12/01/1995 | Protocol Number 91/19 Final Report Addendum: A Multiple-Dose, Cross-Over Study of the Steady-State Pharmacokinetics and Urinary Excretion of Niacin and its Major Metabolites from Niaspan™ in Reference to an Immediate-Release Formulation | Lack of foundation for date description |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 827 | | | | ABB_S2_00789385 - ABB_S2_00789460 | 01/15/1997 | Protocol Number 96/01 Final Report: The Comparative Bioavailability of Two Sustained-Release Niacin Products Relative to Niaspan® | |
| 828 | | | SIM-211 (Bottorff) | | 04/15/2007 | Stern, *The role of nicotinic acid metabolites in flushing and hepatotoxicity*, 1 J. Clin. Lipidology, pp. 191-193 (2007) | |
| 829 | | | | | 08/11/2010 | Belo, et al., *Hepatoprotective treatment attenuates oxidative damages induced by carbon tetrachloride in rats*, Experimental and Toxicologic Pathology (2010) | |
| 830 | | | | | 05/04/2010 | Sternak, et al., *Nicotinamide N-methyltransferase (NNMT) and 1-methylnicotinamide (MNA) in experimental hepatitis induced by concanavalin A in the mouse*, 62 Pharm. Reports., pp. 482-493 (2010) | |
| 831 | | | | | 01/10/2010 | Damian, *Photoprotective effects of nicotinamide*, 9 Photochem. Photobiol. Sci., pp. 578-585 (2010) | |
| 832 | | | SIM-210 (Bottorff) | | 03/20/2004 | Gale, *European Nicotinamide Diabetes Intervention Trial (ENDIT): A randomised controlled trial of intervention before the onset of type 1 diabetes*, 363 The Lancet, pp. 925-931 (2004) | |
| 833 | | | | TV0000342 - TV0000428 | Undated | Teva Pharmaceuticals USA, 1000/20mg ANDA Section 2.7, Clinical Summary | |
| 834 | | | SIM-352 (Williams) | USLT000689 - USLT000710 | 01/04/1995 | Butler Pharmapac Formula Master, Slo-Niacin Granulation | 802 |
| 835 | | | | | 01/01/2006 | Vita, Joseph Michael Keenan M.D. | Lack of foundation for date description |
| 836 | | | | TV0044185 - TV0044194 | 11/14/1990 | Keenan, et al., *A Randomized, Controlled Trial of Wax-Matrix Sustained-Release Niacin in Hypercholesterolemia*, 151 Arch. Intern. Med., pp. 1424-1432 (1991) | |
| 837 | | | | | 06/06/1986 | Canner, et al., *Fifteen Year Mortality in Coronary Drug Project Patients: Long-Term Benefit with Niacin*, 8(6) JACC, pp. 1245-1255 (1986) | |
| 838 | | | | TV0044281 - TV0044315 | 09/28/1987 | DeWitt, et al., *Report of the National Cholesterol Education Program Expert Panel on Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults*, 148 Arch. Intern. Med, pp. 36-69 (1988) | 403 (cumulative) |
| 839 | | | | | 11/25/1981 | Wilkin, et al., *Aspirin blocks nicotinic acid-induced flushing*, 31(4) Clin. Pharmacol. Ther., pp. 478-482 (1982) | 403 (cumulative) |
| 840 | | | | TV0044205 - TV0044209 | 12/16/1991 | Lavie, et al., *Marked Benefit with Sustained-Release Niacin Therapy in Patients with "Isolated" Very Low Levels of High-Density Lipoprotein Cholesterol and Coronary Artery Disease*, 69 Am. J. Cardiol., pp. 1083-1085 (1992) | 403 (cumulative) |
| 841 | | | | TV0044157 - TV0044164 | 08/16/1996 | Davignon, et al., *Comparative Efficacy and Safety of Pravastatin, Nicotinic Acid and the Two Combined in Patients with Hypercholesterolemia*, 73 Am. J. Cardiol., pp. 339-345 (1994) | 403 (cumulative) |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 842 | | | | TV0044232 - TV0044244 | 10/01/1996 | Pasternak, et al., *Effect of Combination Therapy with Lipid-Reducing Drugs in Patients with Coronary Heart Disease and "Normal" Cholesterol Levels,* 125 Ann. Intern. Med., pp. 529-540 (1996) | 403 (cumulative) |
| 843 | | | SIM-227 (Bottorff) | TV0145096 - TV0145110 | 04/26/2006 | Knopp, et al., *The SLIM study: Slo-Niacin® and Atorvastatin Treatment of Lipoproteins and Inflammatory Markers in Combined Hyperlipidemia,* 3 J. Clin. Lipid., pp. 167-178 (2009) | |
| 844 | | | | TV0044171 - TV0044176 | 05/28/1996 | Gardner, et al., *Combination Therapy with Low-Dose Lovastatin and Niacin Is as Effective as Higher-Dose Lovastatin,* 16(3) Pharmacotherapy, pp. 419-423 (1996) | |
| 845 | | | SIM-370 (Sacks) | TV0145088 - TV0145095 | 11/14/1991 | Keenan, et al., *A Clinical Trial of Oat Bran and Niacin in the Treatment of Hyperlipidemia,* 34(3) J. Fam. Pract., pp. 313-319 (1992) | |
| 846 | | | | | 12/04/1992 | Physicians' Desk Reference, 47th edition (1993): excerpts for Nicobid | 106, 403 (cumulative) |
| 847 | | | | | 08/08/2011 | Abbott v. Teva: Declaration of Terry Hammerschmidt with exhibits | 802 |
| 848 | | | | | 08/18/2011 | Vitamin and Mineral Recommendations, Council for Responsible Nutrition http://www.crnusa.org/about_recs.html | 802 |
| 849 | | | SIM-225 (Bottorff) | TV0044177 - TV0044184 | 08/15/1994 | Gray, et al., Efficacy and Safety of Controlled-Release Niacin in Dyslipoproteinemic Veterans, 121 Ann. Intern. Med., pp. 252-258 (1994) | 403 |
| 850 | | | | TV0145128 - TV0145134 | 09/01/1992 | Squires, et al., Low-Dose, Time-Release Nicotinic Acid: Effects in Selected Patients with Low Concentrations of High-Density Lipoprotein Cholesterol, 67 Mayo Clin. Proc., pp. 855-860 (1992) | 403 (cumulative), Lack of foundation for date description |
| 851 | | | | TV0145074 - TV0145080 | 06/26/1989 | Alderman, et al., *Effect of a Modified, Well-Tolerated Niacin Regimen on Serum Total Cholesterol, High Density Lipoprotein Cholesterol and the Cholesterol to High Density Lipoprotein Ration,* 64 Am. J. Cardiol., pp. 725-729 (1989) | |
| 852 | | | | TV0044210 - TV0044213 | 06/30/1988 | Luria, *Effect of Low-Dose Niacin on High-Density Lipoprotein Cholesterol and Total Cholesterol/High-Density Lipoprotein Cholesterol Ratio,* 148 Arch. Intern. Med., pp. 2493-2495 (1988) | |
| 853 | | | | | 01/01/1988 | Physicians' Desk Reference (42nd ed. 1988): Niaplus™, p. 2107 | 106, Lack of foundation for date description |
| 854 | | | | | 01/01/1989 | Physicians' Desk Reference (43rd ed. 1989): Niaplus™, p. 2146 | 106, Lack of foundation for date description |
| 855 | | | | | 01/01/1989 | Physicians' Desk Reference (44th ed. 1990): Niaplus™, p. 2207 | 106, Lack of foundation for date description |
| 856 | | | SIM-0375 (Sacks) | ABB_SIM01233743 - ABB_SIM01233751 | 04/22/1991 | Dalton, et al., *Hepatotoxicity Associated with Sustained-Release Niacin,* 93 Am. J. Med., pp. 102-104 (1992) | |
| 857 | | | | | 08/26/1961 | Christensen, et al., *Nicotinic Acid Treatment of Hypercholesteremia,* 177(8) JAMA, PP. 546-550 (1961) | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 858 | | | | TV0044316 - TV0044325 | 08/04/1972 | Schlierf & Dorow, *Diurnal Patters of Triglycerides, Free Fatty Acids, Blood Sugar, and Insulin during Carbohydrate-Induction in Man and Their Modification by Nocturnal Suppression of Lipolysis,* 52 J. Clin. Invest., pp. 732-740 (1973) | |
| 859 | | | | TV0145120 - TV0145127 | 04/01/1977 | Schlierf & Hess, *Inhibition of Carbohydrate-Induced Hypertriglyceridemia by Nicotinic Acid,* 3(2) Artery, pp. 174-179 (1977) | 403 (cumulative), Lack of foundation for date description |
| 860 | | | | TV0145111 - TV0145119 | 03/01/1982 | Miettinen, *Diurnal variation of cholesterol precursors squalene and methyl sterols in human plasma lipoproteins,* 23 J. Lipid. Res., pp. 466-473 (1982) | Lack of foundation for date description |
| 861 | | | | | 09/20/1993 | 08/124,392 Patent Application | |
| 862 | | | | ABB_SIM00025287 - ABB_SIM00025705 | 04/24/1996 | Protocol Number 91/02 Final Report: A Pilot Efficacy Study of a Once-A-Day Sustained-Release Niacin Formulation (Niaspan™) in the Treatment of Primary Type IIa Hyperlipidemia | |
| 863 | | | | | 06/08/2011 | Simcor Package Insert | 403 (cumulative) |
| 864 | | | | | 01/24/2011 | Advicor Package Insert | |
| 865 | | | | ABB_S2_00043357 - ABB_S2_00043802 | 02/14/2000 | Protocol Number 91/09 Annual Report: A Multi-Center Open-Label Trial of the Long-Term Safety and Efficacy of Niaspan in Patients with Primary Hyperlipidemia | |
| 866 | | | | | 08/17/1994 | Keenan, *Safety and Side Effects of Sustained-Release Niacin,* 272(7) JAMA, p. 513 (1994) | 403 (cumulative) |
| 867 | | | | | 03/01/2010 | Abbott v. Lupin: Declaration of Frank Sacks in Support of Plaintiffs' Opening Claim Construction Brief | 403 (cumulative), 802 |
| 868 | | | | | 04/27/1998 | Guyton, et al., *Effectiveness of Once-Nightly Dosing of Extended-Release Niacin Alone and in Combination for Hypercholeseterolemia,* 82 Am. J. Cardiol., pp. 737-743 (1998) | |
| 869 | | | | | 05/09/1989 | Carlson, et al., *Pronounced lowering of serum levels on lipoprotein Lp(a) in hyperlipidaemic subjects treated with nicotinic acid,* 226 J. Int. Med., pp. 271-276 (1989) | |
| 870 | | | | | 07/25/1994 | Illingworth, et al., *Comparative Effects of Lovastatin and Niacin in Primary Hypercholeseterolemia,* 154 Arch. Intern. Med., pp. 1586-1595 (1994) | |
| 871 | | | | | 03/13/1997 | Brown, et al., *Moderate Dose, Three-Drug Therapy with Niacin, Lovastatin, and Colestipol to Reduce Low-Density Lipoprotein Cholesterol <100 mg/dl in Patients with Hyperlipidemia and Coronary Artery Disease,* 80 Am. J. Cardio., pp. 111-115 (1997) | 403 (cumulative) |
| 872 | | | | | 08/30/1988 | Gordon, et al., *High-Density Lipoprotein Cholesterol and Cardiovascular Disease, Four Prospective American Studies,* 79 Circulation, pp. 8-15 (1989) | |
| 873 | | | | TV0044214 - TV0044223 | 01/01/1996 | Morgan, et al., Treatment Effect of Niaspan, a Controlled-release Niacin, in Patients With Hypercholesterolemia: A Placebo-controlled Trial, 1(3) J. Cardiovasc. Pharmacol. Therapeut., pp. 195-202 (1996) | 403 (cumulative), Lack of foundation for date description |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 874 | | | | | 01/21/2011 | Abbott v. Teva: Plaintiffs' Proposed Claim Terms for Construction and Proposed Constructions | |
| 875 | | | | TV0044165 - TV0044170 | 12/01/1988 | Figge, et al., *Comparison of Excretion of Nicotinuric Acid After Ingestion of Two Controlled Release Nicotinic Acid Preparations in Man,* 28 J. Clin. Pharmacol., pp. 1136-1140 (1988) | 403 (cumulative), Lack of foundation for date description |
| 876 | | | | TV0044326 - TV0044337 | 01/01/1996 | Stein, et al., *Efficacy and Tolerability of Low-dose Simvastatin and Niacin, Alone and in Combination, in Patients With Combined Hyperlipidemia: A Prospective Trial,* 1(2) J. Cardiovasc. Pharmacol. Therapeut., pp. 107-116 (1996) | Lack of foundation for date description |
| 877 | | | | TV0044346 - TV0044350 | 09/24/1991 | Whelan, et al., *The Effect of Aspirin on Niacin-Induced Cutaneous Reactions,* 34(2) J. Fam. Pract., pp. 165-168 (1992) | |
| 878 | | | | TV0044386 - TV0044394 | 06/30/1998 | U.S. Patent No. 5,773,453 | 403 (cumulative), Lack of foundation for date description |
| 879 | | | | TV0044226 - TV0044231 | 09/01/1995 | O'Keefe, et al., *Effects of Pravastatin With Niacin or Magnesium on Lipid Levels and Postprandial Lipemia,* 76 Am. J. Cardiol., pp. 480-484 (1995) | |
| 880 | | | | TV0044395 - TV0044399 | 11/09/1993 | U.S. Patent No. 5,260,305 | Lack of foundation for date description |
| 881 | | | | | 04/19/1995 | Simvastatin Package Insert | |
| 882 | | | | | 12/19/1991 | Lovastatin Package Insert | |
| 883 | | | | | 02/01/1991 | Saito, et al., *Comparison Between Morning and Evening Doses of Simvastatin in Hyperlipidemic Subjects, A Double Blind Comparative Study,* 11 Arteriosclerosis and Thrombosis, pp. 816-826 (1991) | Lack of foundation for date description |
| 884 | | | | | 06/08/2011 | FDA Drug Safety Communication: New restrictions, contraindications, and dose limitations for Zocor (simvastatin) to reduce the risk of muscle injury http://www.fda.gov/Drugs/DrugSafety/ucm256581.htm | |
| 885 | | | | | 06/08/2011 | Simvastatin Package Insert | |
| 886 | | | | | 08/19/2011 | Curriculum Vita, Michael B. Maurin, R.Ph., Ph.D. | |
| 887 | | | | | 08/19/2011 | Chart A to Dr. Maurin's Opening Expert Report | 802, 901, 1002, D |
| 888 | | | SIM-360 (Williams) | | 08/19/2011 | Chart B to Dr. Maurin's Opening Expert Report | 802, 901, 1002, D |
| 889 | | | SIM-345 (Williams) | | 08/19/2011 | Chart C to Dr. Maurin's Opening Expert Report | 802, 901, 1002, D |
| 890 | | | SIM-346 (Williams) | | 08/19/2011 | Chart D to Dr. Maurin's Opening Expert Report | 802, 901, 1002, D |
| 891 | | | SIM-213 (Bottorff) | | 08/19/2011 | Chart E to Dr. Maurin's Opening Expert Report | 802, 901, 1002, D |
| 892 | | | SIM-348 (Williams) | | 08/19/2011 | Chart F to Dr. Maurin's Opening Expert Report | 802, 901, 1002, D |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 893 | | | SIM-347 (Williams) | | 08/19/2011 | Chart G to Dr. Maurin's Opening Expert Report | 802, 901, 1002, D |
| 894 | | | SIM-349 (Williams) | | 08/19/2011 | Chart G to Dr. Maurin's Opening Expert Report | 802, 901, 1002, D |
| 895 | | | | | 11/01/1963 | Swintosky, *Development and Design of Oral Sustained Release Dosage Forms,* Indian J. Pharm., pp. 360-367 (1963) | Lack of foundation for date description |
| 896 | | | | TV0145047 - TV0145054 | 01/18/1983 | U.S. Patent No. 4,369,172 | Lack of foundation for date description |
| 897 | | | | TV0145055 - TV0145066 | 06/21/1983 | U.S. Patent No. 4,389,393 | Lack of foundation for date description |
| 898 | | | | | 01/01/1985 | Joseph P. Remington's Pharmaceutical Sciences, pp. 1015-1016 (1985) | Lack of foundation for date description |
| 899 | | | | | 01/01/1989 | The Merck Index, Eleventh Edition, pp. 1030-1031 (1989) | Lack of foundation for date description |
| 900 | | | | | 03/19/1992 | U.S. Patent No. 5,000,962 | 403 (cumulative), Lack of foundation for date description |
| 901 | | | | | 01/01/1985 | Joseph P. Remington's Pharmaceutical Sciences, p. 862 (1985) | Lack of foundation for date description |
| 902 | | | | TV0008975 - TV0008989 | 02/26/1999 | USPTO Response After Final regarding Serial No. 08/368,378 | 106 |
| 903 | | | | | 01/01/1989 | The Merck Index, Eleventh Edition, pp. 1461-1462 (1989) | Lack of foundation for date description |
| 904 | | | | | 01/01/1986 | Handbook of Pharmaceutical Excipients: Povidone (1986) | Lack of foundation for date description |
| 905 | | | | | 01/01/1986 | Handbook of Pharmaceutical Excipients: Magnesium Stearate (1986) | Lack of foundation for date description |
| 906 | | | | | 01/01/1986 | Handbook of Pharmaceutical Excipients: Stearic Acid (1986) | Lack of foundation for date description |
| 907 | | | | ABB_S2_00073594 - ABB_S2_00073595 | 12/11/1997 | Meeting Minutes | 802 |
| 908 | | | | ABB_S3_01880899 - ABB_S3_ 1880906 | 03/31/2006 | Protocol Number 016-03-05-CP Final Report: The Comparative Bioequivalence of Reformulated 1000mg Extended-Release Niacin™ Tablets versus 1000mg Niaspan Tablets Administered as a Single 2000mg Dose to Healthy Volunteers | 106 |
| 909 | | | | ABB_S3_01882022 - ABB_S3_01882029 | | Protocol Number 016-03-05-CP Final Report: Appendix L (excerpt) | 106 |
| 910 | | | | | 09/19/2011 | Attachment M-1 to Dr. Elmquist's Rebuttal Expert Report | 802, 901, 1002, D |
| 911 | | | | | 09/19/2011 | Attachment M-2 to Dr. Elmquist's Rebuttal Expert Report | 802, 901, 1002, D |
| 912 | | | | | 09/19/2011 | Attachment M-3 to Dr. Elmquist's Rebuttal Expert Report | 802, 901, 1002, D |
| 913 | | | | | 09/19/2011 | Attachment N to Dr. Elmquist's Rebuttal Expert Report | 802, 901, 1002, D |
| 914 | | | | | 09/19/2011 | Attachment O-1 to Dr. Elmquist's Rebuttal Expert Report | 802, 901, 1002, D |
| 915 | | | | | 09/19/2011 | Attachment O-2 to Dr. Elmquist's Rebuttal Expert Report | 802, 901, 1002, D |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---------|---------|---------|-----------------|------------------|------|-------------|--------------|
| 916 | | | | TV0145422 - TV0145445 | | Teva Pharmaceuticals USA, 1000/40mg ANDA Section 2.7, Clinical Summary | |
| 917 | | | | ABB_SIM00296265 - ABB_SIM00296339 | | Kos Pharmaceuticals, Inc., NDA Section 2.7.1, Summary of Biopharmaceutic Studies and Associated Analytical Methods | |
| 918 | | | | TV0023302 - TV0023341 | | Teva Pharmaceuticals USA, 500/20mg ANDA Section 2.7, Clinical Summary | |
| 919 | | | | ABB_SIM00077051 - ABB_SIM00077077 | | Kos Pharmaceuticals, Inc., NDA Section 2.7.1, Summary of Biopharmaceutic Studies and Associated Analytical Methods | |
| 920 | | | | TV0004575 - TV0004593 | | Teva Pharmaceuticals USA, 750/20mg ANDA Section 2.7, Clinical Summary | |
| 921 | | | | WT0000416 - WT0000417 | | Watson Laboratories, Inc. - Florida, 1000/20mg ANDA Section 2.7.1.3, Comparison and Analysis of Results Across Studies Tables 3.3 and 3.4 | |
| 922 | | | | WT0000335 - WT0000348 | | Watson Laboratories, Inc. - Florida, 1000/20mg ANDA Section 2.7.1.1, Background and Overview | |
| 923 | | | | OCA000440 | | Watson Laboratories, Inc. - Florida, 1000/80mg (2 x500/40mg) ANDA Section 2.7.1.3, Comparison and Analysis of Results Across Studies Table 3.1.1 | |
| 924 | | | | OCA000385 - OCA000394 | | Watson Laboratories, Inc. - Florida, 500/40mg ANDA Section 2.7.1.1, Background and Overview | |
| 925 | | | | WT0000398 | | Watson Laboratories, Inc. - Florida, ANDA Section 2.7.1.3, Comparison and Analysis of Results Across Studies Table 2 | |
| 926 | | | | WT0000402 | | Watson Laboratories, Inc. - Florida, ANDA Section 2.7.1.3, Comparison and Analysis of Results Across Studies Table 2.2.1 | |
| 927 | | | | ABB_SIM00004694 - ABB_SIM00005044 | 12/01/1995 | Protocol Number 91/18 Final Report Addendum: A Single-Dose, Crossover Study of the Pharmacokinetics and Urinary Excretion of Niacin and its Major Metabolites from Niaspan in Reference to an Immediate-Release Formulation | Lack of foundation for date description |
| 928 | | SIM-220 (Bottorff) | | ABB_SIM00005045 - ABB_SIM00005420 | 11/27/1995 | Protocol Number 94/09 Final Report: The Comparative Bioavailability of 500mg and 750mg Tablet Strengths of Niaspan™ | |
| 929 | | | | ABB_SIM00007030 - ABB_SIM00007413 | 04/10/1996 | Protocol Number 95/06 Final Report Addendum: The Comparative Bioavailability of Niaspan™ Tablets from Three Manufacturing Lots | |
| 930 | | | | ABB_S2_03450300 | | M10-414 Clinical Study Report | |
| 931 | | | | ABB_SIM00008489 - ABB_SIM00008814 | 10/25/1995 | Protocol Number 94/08 Final Report: A Three-Way Crossover Study of the Effect of Food on Niaspan™ Bioavailability | |
| 932 | | | | ABB_SIM00081555 - ABB_SIM00081613 | 11/14/2006 | Clinical Study Report: 019-03-04-CP | |
| 933 | | | | ABB_S3_00714776 - ABB_S3_00714853 | 01/30/2007 | Final Clinical Study Report: 019-02-03-CR | |
| 934 | | | | ABB_S3_00203800 - ABB_S3_00203911 | | M10-592 Clinical Study Report | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 935 | | | | TV0212076 - TV0212107 | 06/01/2011 | Simcor® Package Insert | 403 (cumulative), Lack of foundation for date description |
| 936 | | | | OCA000146 | | Watson Laboratories, Inc. - Florida, ANDA Section 1.14.1.3, Draft Labeling Text | |
| 937 | | | | ABB_SIM00324835 - ABB_SIM00324887 | 11/24/2009 | Periodic Report | |
| 938 | | | | ABB_SIM00733963 - ABB_SIM00734030 | 11/16/2010 | Periodic Report | |
| 939 | | | | ABB_S2_00535914 | 01/18/2007 | Kos Life Sciences, Seacoast Study | 106 |
| 940 | | | | | 06/01/2011 | FDA: Limit use of 80mg Simvastatin | Lack of foundation for date description |
| 941 | | | | ABB_SIM00270119 - ABB_SIM00270199 | 05/27/2009 | Periodic Report | |
| 942 | | | | ABB_S3_01568653 - ABB_S3_01568709 | 05/17/2010 | Periodic Report | |
| 943 | | | | ABB_S3_00089818 - ABB_S3_00089880 | 08/16/2010 | Periodic Report | |
| 944 | | | | | | METHOCEL™ Premium Cellulos Ethers (Low Viscosity) http://www.colorcon.com/products/core-excipients/immediate-release/methocel-low-viscosity | 802 |
| 945 | | | | TV0023453 - TV0023458 | | Teva Pharmaceuticals USA, 500/20mg ANDA Section 3.2.P, Drug Product | |
| 946 | | | | TV0004694 - TV0004698 | | Teva Pharmaceuticals USA, 750/20mg ANDA Section 3.2.P, Drug Product | |
| 947 | | | | TV0000570 - TV0000575 | | Teva Pharmaceuticals USA, 1000/20mg ANDA Section 3.2.P, Drug Product | |
| 948 | | | | TV0145624 - TV0145629 | | Teva Pharmaceuticals USA, 1000/40mg ANDA Section 3.2.P, Drug Product | |
| 949 | | | | WT0000568 - WT0000569 | | Watson Laboratories, Inc. - Florida, ANDA Section 3.2.P.1.2, Draft Labeling Text | |
| 950 | | | | | 10/19/2011 | Curriculum Vitae, Stephen W. Schondelmeyer | |
| 951 | | | | | 11/01/2000 | Ernst, et al., *Prescription Medication Costs, A Study of Physician Familiarity,* 9 Arch. Fam. Med., pp. 1002-1007 (2000) | Lack of foundation for date description |
| 952 | | | | | 09/12/2011 | Schwartz, et al., *Communicating Uncertainties About Prescription Drugs to the Public,* 171(16) Arch. Intern. Med., pp. 1463-1468 (2011) | |
| 953 | | | | | 04/03/2008 | Kastelein, et al., *Simvastatin with or without Ezetimibe in Familial Hypercholesterolemia,* 358(14) N. Engl. J. Med., pp. 1431-1443 (2008) | |
| 954 | | | | | | Baycol Recall Information | 402, 802 |
| 955 | | | | | | Baycol Lawsuits | 402, 802 |
| 956 | | | | | | Definition: Hyperlipidemia | 802 |
| 957 | | | | | | Definition: Dyslipidemia | 802 |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---------|---------|---------|-----------------|------------------|------|-------------|--------------|
| 958 | | | | | | Centers for Disease control and Prevention, Facts About Cholesterol | |
| 959 | | | | | | High Blood Choleseterol, What you need to know | |
| 960 | | | | | 01/01/2010 | Table 95, Selected prescription drug classes used in the past month, by sex and age: United States, selected years 1988-1994 through 2005-2008 (Health United States 2010) | 106, Lack of foundation for date description |
| 961 | | | | ABB_S3_00597858 - ABB_S3_00598047 | 01/01/2010 | Abbott Laboratories, Inc., Pharmaceutical Products Division, 2010 Update PPG Review | Lack of foundation for date description |
| 962 | | | | ABB_SIM00696200 - ABB_SIM00696203 | 1/1/2005 - 12/1/2010 | IMS Data | Lack of foundation for date description |
| 963 | | | SIM-312 (Smith) | ABB_SIM00949898 - ABB_SIM00949904 | 6/1/2005 - 5/1/2011 | IMS Data | Lack of foundation for date description |
| 964 | | | | | | Kos Pharmaceuticals, Inc. - Company History | 802 |
| 965 | | | | | 11/01/2009 | Drug Class Review, HMG-CoA Reductase Inhibitors (statins) and Fixed-dose Combination Products Containing a Statin, Final Report, Update 5 (Oregon Health & Science University) | Lack of foundation for date description |
| 966 | | | | ABB_SIM00577568 - ABB_SIM00577573 | 01/01/2008 | Pharmaceutical Products Division, 2008 Plan - Key Product P&L, Dyslipidemia Franchise | Lack of foundation for date description |
| 967 | | | | ABB_S3_01490358 | 12/21/2007 | Talking Points re: Advicor | |
| 968 | | | | ABB_S2_02812954 - ABB_S2_02812955 | 01/01/2009 | 2009 Update, Pharmaceutical Products Division, Simcor Summary | Lack of foundation for date description |
| 969 | | | | ABB_S3_01906468 - ABB_S3_01906475 | 08/07/2009 | Email correspondence regarding SIMCOR Gaiting and attempt to "Break Even" | |
| 970 | | | SIM-321 (Smith) | ABB_S3_00318525 - ABB_S3_00318537 | 06/01/2009 | ROI Assessment, Simcor Satellite Program (Sep-08) | Lack of foundation for date description |
| 971 | | | | ABB_S3_00706213 - ABB_S3_00706223 | 12/01/2009 | 2010 Brand Plan, Simcor, niacin Extended-Release/simvastatin Tablets | Lack of foundation for date description |
| 972 | | | | ABB_S2_02813095 - ABB_S2_02813103 | 04/13/2009 | Email correspondence regarding Update questions | |
| 973 | | | SIM-303 (Smith) | ABB_S3_01813704 - ABB_S3_01813708 | 08/26/1997 | FDA Letter to Kos Pharmaceuticals, Inc. | 802, 403 |
| 974 | | | SIM-323 (Smith) | ABB_S2_00662817 - ABB_S2_00662824 | 01/01/2004 | Low HDL-C is Like an Accident Waiting to Happen | Lack of foundation for date description |
| 975 | | | SIM-326 (Smith) | ABB_S2_00246872 - ABB_S2_00246890 | 07/01/2007 | Niaspan, Annotated Sales Aid | Lack of foundation for date description |
| 976 | | | SIM-325 (Smith) | ABB_S2_00566646 - ABB_S2_00566650 | 11/01/2005 | Think Higher…Think Niaspan® | Lack of foundation for date description |
| 977 | | | | ABB_S3_01209208 - ABB_S3_01209211 | 04/27/2007 | Email correspondence regarding Follow Up Items from Tuesday meeting with Sudler | |
| 978 | | | | ABB_S2_00070906 - ABB_S2_00070910 | | HDL-Challenge, Raise Good Cholesterol in CHD Patients | |
| 979 | | | | ABB_S2_00185255 | 07/07/2000 | Memorandum regarding Heart Alliance - Managed Care (HAMCO) | |

EXHIBIT N

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 980 | | | | ABB_S2_00242238 - ABB_S2_00242266 | 04/01/2007 | NEW Niaspan Tablet Formulation Tactical Thrusts to Support Launch | Lack of foundation for date description |
| 981 | | | SIM-320 (Smith) | ABB_S2_00144587 - ABB_S2_00144590 | 04/26/2000 | Memorandum regarding Heart Alliance Incentive Program | |
| 981 | | | | ABB_S3_00588378 - ABB_S3_00588387 | 06/08/2009 | 2009 Niaspin Key Contributors to Drive Share Momentum | |
| 983 | | | | ABB_S2_00242714 - ABB_S2_00242750 | 12/01/2007 | Niaspan/SIMCOR Flushing and Cordaptive Preparedness Strategy | Lack of foundation for date description |
| 984 | | | | ABB_S2_00247374 - ABB_S2_00247388 | 12/05/2007 | PPD Launch of Niaspan | |
| 985 | | | | ABB_SIM00568778 - ABB_SIM00568876 | 04/22/2008 | 2008 Situation Analysis, Niaspan and SIMCOR | 403 (cumulative) |
| 986 | | | | ABB_S2_00246476 - ABB_S2_00246494 | | Strategic Plan, 2007-2009, Product | |
| 987 | | | | ABB_S3_00084328 - ABB_S3_00084329 | | SIMCOR 2010 Update Pharmaceutical Products Division Franchise Summary | |
| 988 | | | | ABB_S3_00059856 - ABB_S3_00059859 | | Fall 2010 Regional Meetings, SIMCOR/NIASPAN Video Outline, Version 2 | |
| 989 | | | SIM-328 (Smith); SIM-229 (Bottorff) | | 11/01/2010 | Pharmacy Benefits Management - Medical Advisory Panel-VISN Pharmacist Executives Ez-Minutes | 802, Lack of foundation for date description |
| 990 | | | | | 09/01/2008 | SLO-NIACIN®: Lower Your Cholesterol | 802, Lack of foundation for date description |
| 991 | | | SIM-305 (Smith) | ABB_S3_01348927 - ABB_S3_01348932 | 01/11/2002 | FDA Letter to Kos Pharmaceuticals, Inc. | 802 |
| 992 | | | | ABB_S2_00072742 - ABB_S2_00072745 | 07/02/1997 | FDA Letter to Kos Pharmaceuticals, Inc. | 802 |
| 993 | | | | ABB_S3_01349517 - ABB_S3_01349527 | 07/22/2010 | Physician Interactive Overview | 403 (cumulative) |
| 994 | | | | | 10/04/2011 | Abbott v. Teva: Stipulation | 402 |
| 995 | | | | ABB_SIM00695532 - ABB_SIM00695625 | 12/31/2001 | Kos Pharmaceuticals, Inc. Form 10-K | Lack of foundation for date description |
| 996 | | | | ABB_S3_01297325 - ABB_S3_01297367 | 01/01/2009 | 2010 Brand Plan, Simcor, niacin Extended-Release/simvastatin Tablets | Lack of foundation for date description |
| 997 | | | | ABB_S2_00180465 - ABB_S2_00180466 | 10/23/2001 | Memorandum regarding 2002 Budget Rationale | |
| 998 | | | | ABB_S2_00071708 - ABB_S2_00071716 | | Kos Pharmaceuticals, Inc. 2001 Operating and Financial Review | |
| 999 | | | SIM-322 (Smith) | ABB_S2_00070889 - ABB_S2_00070890 | | 35 niacin brands all lack one key ingredient: FDA Scrutiny | |
| 1000 | | | | ABB_S3_00467622 - ABB_S3_00467623 | 07/25/2008 | Email correspondence regarding Florida - Veterans Admin VISN 8 switching Niaspan to Niacin | |
| 1001 | | | | ABB_S2_02385790 - ABB_S2_02385797 | | Why your doctor has prescribed Niaspan® (niacin extended-release tablets) | |

**EXHIBIT N**

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 1002 | | | | ABB_S3_00599609 - ABB_S3_00599641 | 06/01/2010 | Dyslipidemia Marketing Mix Data Review (Simcor) | Lack of foundation for date description |
| 1003 | | | | ABB_S3_01215820 - ABB_S3_01215822 | 03/30/2010 | Email correspondence regarding Heart Alliance and CSM Flushing Education | |
| 1004 | | | | ABB_S2_00251655 - ABB_S2_00251744 | 06/04/2008 | Dyslipidemia Long-term Strategy Review | |
| 1005 | | | SIM-324 (Smith) | ABB_S2_00876044 - ABB_S2_00876065 | | Get regressive with NIASPAN® | |
| 1006 | | | | ABB_S3_01269026 - ABB_S3_01269027 | | Simcor Best Practices | 403 (cumulative) |
| 1007 | | | | ABB_S3_00637897 | 08/21/2008 | Email correspondence regarding Niaspan or N on the side of the Bulldozer - Roizen Request and Med/Reg Feedback | |
| 1008 | | | | ABB_S2_00253515 - ABB_S2_00253536 | | 2008 Plan, Pharmaceutical Products Division, Niaspan Summary | |
| 1009 | | | | ABB_S3_00073340 - ABB_S3_00073388 | 10/01/2006 | Niaspan CF Opportunity Exploration, Prepared for Kos Pharmaceuticals by PharmaSight Research LLC | Lack of foundation for date description |
| 1010 | | | | ABB_S2_00149168 - ABB_S2_00149188 | 02/07/1997 | License Agreement between Upsher-Smith Laboratories and Kos Pharmaceuticals, Inc. with exhibits | 403 (cumulative) |
| 1011 | | | | ABB_S2_00149335 - ABB_S2_00149372 | 01/09/2002 | Patent Purchase and Assignment Agreement between Upsher-Smith Laboratories, Inc. and Kos Pharmaceuticals, Inc. | 403 (cumulative) |
| 1012 | | | | ABB_SIM00520457 - ABB_SIM00520458 | 03/04/2002 | Kos Pharmaceuticals Files Patent Infringement Lawsuit Against Barr Laboratories | 402, 802 |
| 1013 | | | | ABB_SIM00552721 - ABB_SIM00552751 | 02/28/2003 | Kos v. Barr: Reply to Counterclaims and Counterclaims for Declaratory Judgment | 402 |
| 1014 | | | SIM-313 (Smith) | ABB_S2_00157311 | 02/24/1998 | Letter from B. Jordan, Synthélabo to Mukesh Patel, Kos Pharmaceuticals, Inc. | 402, 802 |
| 1015 | | | SIM-314 (Smith) | ABB_S2_00176174 - ABB_S2_00176175 | 08/29/2001 | Letter from Mark Lee, Wyeth-Ayerst Pharmaceuticals to Christopher Kiritsy, Kos Pharmaceuticals, Inc. | 402, 802 |
| 1016 | | | SIM-316 (Smith) | ABB_S2_00310465 | | Merck KGaA Niaspan Deal Summary | |
| 1017 | | | | ABB_S2_00948605 - ABB_S2_00948613 | | 2009 Niaspan Strategic Plan | |
| 1018 | | | | ABB_S3_01740877 - ABB_S3_01740878 | 04/14/2008 | Email correspondence regarding Simcor Objections | |
| 1019 | | | | ABB_SIM01259606 | | Video file | 403 (cumulative) |
| 1020 | | | | ABB_SIM00949892 - ABB_SIM00949897 | | Niaspan Sales Projections | |
| 1021 | | | | ABB_SIM00024891 - ABB_SIM00025286 | 04/24/1996 | Protocol 89/04 Final Report (Revision #1): A Single-Blind Placebo-Controlled Pilot Study Comparing the Effect of Once-a-Day Versus Twice-a-Day Dosing of Niaspan™ on Serum Lipids | |
| 1022 | | | | ABB_S2_00154772 - ABB_S2_00154774 | 08/01/1989 | Mullin, et al., *Fulminant Hepatic Failure after Ingestion of Sustained-Release Nicotinic Acid,* 111 Ann. Intern. Med., pp. 253-255 (1989) | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 1023 | | | | ABB_SIM00566550 - ABB_SIM00566552 | 07/11/1990 | Henkin, et al., *Rechallenge With Crystalline Niacin After Drug-Induced Hepatitis From Sustained-Release Niacin,* 264(2) JAMA, pp. 241-243 (1990) | |
| 1024 | | | | ABB_SIM00883470 - ABB_SIM00883475 | 01/01/1991 | Etchason, et al., *Niacin-Induced Hepatitis: A Potential Side Effect With Low-Dose Time-Release Niacin,* 66 Mayo Clin. Proc., pp. 23-28 (1991) | Lack of foundation for date description |
| 1025 | | | SIM-228 (Bottorff) | ABB_S2_00154784 - ABB_S2_00154788 | 06/27/1991 | Rader, et al., *Hepatic Toxicity of Unmodified and Time-Release Preparations of Niacin,* 92 Am. J. Med., pp. 77-81 (1992) | |
| 1026 | | | | | 07/11/1990 | Hodis, *Acute Hepatic Failure Associated with the Use of Low-Dose Sustained-Release Niacin,* 264(2) JAMA, p. 181 (1990) | |
| 1027 | | | | | 11/01/1989 | Knopp, *Niacin and Hepatic Failure,* 111(9) Ann. Intern. Med., p. 769 (1989) | Lack of foundation for date description |
| 1028 | | | SIM-223 (Bottorff) | ABB_SIM00566553 - ABB_SIM00566560 | 05/21/1991 | Henkin, et al., *Niacin Revisited: Clinical Observations on an Important but Underutilized Drug,* 91 Am. J. Med., pp. 239-246 (1991) | |
| 1029 | | | | ABB_SIM00025143 | | NIASPAN Protocol 89/04 Excerpt, Appendix D.9, Lipids | 106, 403 (cumulative) |
| 1030 | | | | ABB_S2_00014977 - ABB_S2_00014993 | | NIASPAN Protocol 91/15 Excerpt, Laboratory Values, Lipids | 106, 403 (cumulative) |
| 1031 | | | | ABB_S2_00011346 | | NIASPAN Protocol 91/05 Excerpt, Patient Baseline Lipid Values | 106, 403 (cumulative) |
| 1032 | | | | ABB_S2_00013877 | | NIASPAN Protocol 91/15 Excerpt, Patient Baseline Lipid Values | 106, 403 (cumulative) |
| 1033 | | | | ABB_SIM00019325 | | NIASPAN Protocol 91/09 Excerpt, Patient Baseline Lipid Values | 106, 403 (cumulative) |
| 1034 | | | | ABB_S2_00221540 | | NIASPAN Protocol 96/05 Excerpt, Triglycerides | 106, 403 (cumulative) |
| 1035 | | | | ABB_S2_00008764 - ABB_S2_00008766 | 01/13/1992 | Protocol Number 91/04, Section 9: Exclusion Criteria | 106, 403 (cumulative) |
| 1036 | | | | ABB_S2_00012118 - ABB_S2_00012119 | 01/13/1992 | Protocol Number 91/05, Section 9: Exclusion Criteria | 106, 403 (cumulative) |
| 1037 | | | | ABB_S2_00014322 - ABB_S2_00014323 | 11/08/1993 | Protocol Number 91/15 Amendment #2, Section 9: Exclusion Criteria | 106, 403 (cumulative) |
| 1038 | | | | ABB_SIM00025745 - ABB_SIM00025746 | 03/28/1994 | Protocol Number 94/01, Section 9: Exclusion Criteria | 106 |
| 1039 | | | | ABB_SIM00566568 - ABB_SIM00566573 | 08/24/2001 | Kane, et al., *Cholesterol and Glycemic Effects of Niaspan in Patients with Type 2 Diabetes,* 21(12) Pharmacotherapy, pp. 1473-1478 (2001) | |
| 1040 | | | | ABB_SIM00566527 - ABB_SIM00566535 | 07/22/2002 | Grundy, et al., *Efficacy, Safety, and Tolerability of Once-Daily Niacin for the Treatment of Dyslipidemia Associated With Type 2 Diabetes,* 162 Arch. Intern. Med., pp. 1568-1576 (2002) | |
| 1041 | | | | ABB_S3_01348900 - ABB_S3_01348902 | 05/12/2003 | FDA Letter to Kos Pharmaceuticals, Inc. regarding Advent rejection | 802 |
| 1042 | | | | ABB_S3_00714547 - ABB_S3_00714652 | 03/12/2007 | Final Clinical Study Report: 019-01-03-CR | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 1043 | | | | ABB_S3_00007663 - ABB_S3_00007673 | | M10-013 Clinical Study Report - SUPREME | 106 |
| 1044 | | | SIM-372 (Sacks) | ABB_S2_00106170 - ABB_S2_00106173 | 08/08/1990 | Garg & Grundy, *Nicotinic Acid as Therapy for Dyslipidemia in Non-Insulin-Dependent Diabetes Mellitus,* 264 JAMA, pp. 723-726 (1990) | 403 (cumulative) |
| 1045 | | | SIM-364 (Sacks) | ABB_SIM00566188 - ABB_SIM00566450 | | Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults (Adult Treatment Panel III "ATP III"), Final Report | |
| 1046 | | | | | 12/21/1964 | Parsons, *The Effect of Nicotinic Acid on the Liver,* Niacin in Vascular Disorders and Hyperlipidemia (1964) | |
| 1047 | | | | | 11/01/1996 | Aronov, et al., *Clinical Trial of Wax-Matrix Sustained-Release Niacin in a Russian Population With Hypercholesterolemia,* 5 Arch. Fam. Med., pp. 567-575 (1996) | Lack of foundation for date description |
| 1048 | | | | ABB_SIM01198925 - ABB_SIM01198998 | 12/31/1998 | Kos Pharmaceuticals, Inc. 10-K Report | Lack of foundation for date description |
| 1049 | | | SIM-367 (Sacks) | ABB_SIM00566005 - ABB_SIM00566187 | 09/01/1993 | Detection, Evaluation, and Treatment of High Blood Cholesterol in Adults (Adult Treatment Panel II "ATP II"), Final Report | Lack of foundation for date description |
| 1050 | | | | | | World Health Organization "WHO" Geneva Consultation: Definition, Diagnosis and Classification of Diabetes Mellitus and its Complications | |
| 1051 | | | | ABB_S2_00221449 - ABB_S2_00221450 | | Protocol 96/05 Final Report, Section 3.3.2 Exclusion Criteria | |
| 1052 | | | | | 1/1/1961 - 6/1/1961 | Parsons, *Studies of Nicotinic Acide Use in Hypercholesteremia,* Archives of Internal Medicine (1961) | Lack of foundation for date description |
| 1053 | | | | ABB_SIM00566582 - ABB_SIM00566589 | 09/01/1998 | Knopp, et al., *Equivalent Efficacy of a Time-Release Form of Niacin (Niaspan) Given Once-a-Night Versus Plain Niacin in the Management of Hyperlipidemia,* 47(9) Metabolism, pp. 1097-1104 (1998) | Lack of foundation for date description |
| 1054 | | | | ABB_SIM00566456 - ABB_SIM00566460 | 07/01/2001 | Birjmohun, et al., *Increasing HDL cholesterol with extended-release nicotinic acid: from promise to practice,* 62 Netherlands J. Med., pp. 229-233 (2004) | Lack of foundation for date description |
| 1055 | | | | | 11/08/2011 | Abbott v. Teva: Deposition Transcript of Daniel C. Smith, Ph.D. | 802 |
| 1056 | | | SIM-301 (Smith) | | 06/01/2011 | Simcor® Package Insert | 403 (cumulative), Lack of foundation for date description |
| 1057 | | | SIM-302 (Smith) | ABB_SIM01259709 - ABB_SIM01259746 | 02/01/2011 | Supplement Approval letter from the FDA regarding Advicor Tablets | |
| 1058 | | | SIM-304 (Smith) | ABB_S3_01347285 - ABB_S3_01347291 | 07/13/2001 | Letter from Thomas Abrams, Director, Food and Drug Administration, to Adrain Adams, President, Kos Pharmaceuticals, Inc. (July 13, 2001) | 802, 403 (cumulative) |
| 1059 | | | SIM-307 (Smith) | ABB_SIM00572395 - ABB_SIM00572527 | 05/01/2004 | Advicor®/Niaspan® Phase II: Awareness, Attitude, and Usage Study | Lack of foundation for date description |
| 1060 | | | SIM-308 (Smith) | ABB_S2_00269771 - ABB_S2_00269988 | 05/28/2008 | Dyslipidemia Q1 2008 Attitudes, Awareness, and Usage Report: Niaspan and Simcor, *March Major AAU with April Awareness Tracker Results* | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 1061 | | | SIM-309 (Smith) | ABB_SIM01153515 - ABB_SIM01153574 | 06/11/2010 | Dyslipidemia Market AAU 1st Quarter 2010 (M10) | |
| 1062 | | | SIM-310 (Smith) | ABB_S2_02639279 - ABB_S2_02639293 | 12/05/2007 | PPD Launch of Niaspan | 403 (cumulative) |
| 1063 | | | SIM-315 (Smith) | ABB_S2_00213119 - ABB_S2_00213188 | 10/23/2002 | Distribution, Patent & Trademark License, Marketing and Supply Agreement between Kos Pharmaceuticals, Inc. and Merck KGaA | 403 (cumulative) |
| 1064 | | | SIM-317 (Smith) | ABB_S2_01113821 - ABB_S2_01113865 | 04/12/2005 | License and Manufacturing Agreement between Barr Laboratories, Inc., and Kos Life Sciences, Inc. | 403 (cumulative) |
| 1065 | | | SIM-318 (Smith) | ABB_S2_01113798 - ABB_S2_01113820 | 04/12/2005 | Settlement and License Agreement between Kos Pharmaceuticals, Inc. and Barr Laboratories, Inc. | 403 (cumulative) |
| 1066 | | | SIM-319 (Smith) | ABB_SIM00523007 - ABB_SIM00523044 | 01/09/2002 | Patent Purchase and Assignment Agreement between Upsher-Smith Laboratories, Inc. and Kos Pharmaceuticals, Inc. | 403 (cumulative) |
| 1067 | | | SIM-327 (Smith) | ABB_S2_00660641 - ABB_S2_00660648 | | Think Higher, HDL-C, Think Niaspan (niacin extended-release tablets) | |
| 1068 | | | | | 11/15/2011 | Abbott v. Teva: Deposition Transcript of Michael B. Bottorff, Pharm. D. | 802 |
| 1069 | | | | | 11/16/2011 | Abbott v. Teva: Deposition Transcript of Michael B. Bottorff, Pharm. D. | 802 |
| 1070 | | | SIM-202 (Bottorff) | | | Curriculum Vitae: Michael B. Bottorff, Pharm.D., FCCP, CLS | |
| 1071 | | | SIM-207 (Bottorff) | ABB_SIM01154524 - ABB_SIM01154529 | 12/21/2000 | Piepho, *The Pharmacokinetics and Pharmacodynamics of Agents Proven to Raise High-Density Lipoprotein Cholesterol,* 86(suppl.) Am. J. Cardiol., pp. 35L-40L (2000) | |
| 1072 | | | SIM-208 (Bottorff) | ABB_SIM01263130 - ABB_SIM01263149 | 08/11/2010 | Mullangi, et al., *Niacin and its metabolites: role of LC-MS/MS bioanalytical methods and update on clinical pharmcology. An overview,* 25 Biomed. Chromatogr., pp. 218-237 (2011) | |
| 1073 | | | SIM-212 (Bottorff) | | 06/17/2010 | Reiche, et al., *Pharmacokinetics and dose recommendations of Niaspan in chronic kidney disease and dialysis patients,* 26 Nephrol. Dial. Transplant, pp. 276-282 (2011) | |
| 1074 | | | SIM-214 (Bottorff) | ABB_SIM00573340 - ABB_SIM00573365 | 03/01/2003 | Guidance for Industry, Bioavailability and Bioequivalence Studies for Orally Administered Drug Products - General Considerations (CDER Revision 1) | Lack of foundation for date description |
| 1075 | | | SIM-219 (Bottorff) | ABB_SIM00255097 - ABB_SIM00255529 | 11/30/1995 | Protocol Number 91/19, Final Report Addendum: A Multiple-Dose, Cross-Over Study of the Steady-State Pharmacokinetics and Urinary Excretion of Niacin and its Major Metabolites from Niaspan in Reference to an Immediate-Release Formulation | |
| 1076 | | | SIM-221 (Bottorff) | | | Handwritten Notes | 802, 106, 901, 402 |
| 1077 | | | SIM-222 (Bottorff) | ABB_SIM00566590 - ABB_SIM00566595 | 12/21/2000 | Knopp, *Evaluating Niacin in its Various Forms,* 86(suppl) Am. J. Cardiol., pp. 51L-56L (2000) | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---------|---------|---------|-----------------|------------------|------|-------------|--------------|
| 1078 | | | SIM-224 (Bottorff) | ABB_SIM00539229 - ABB_SIM00539237 | 07/01/1985 | Knopp, et al., *Contrasting Effects of Unmodified and Time-Release Forms of Niacin on Lipoproteins in Hyperlipidemic Subjects: Clues to Mechanism of Action of Niacin*, 34(7) Metabolism, pp. 642-650 (1985) | Lack of foundation for date description |
| 1079 | | | SIM-230 (Bottorff) | | | Worz, et al., *Treating Dyslipidemic Patients with Lipid-Modifying and Combination Therapies*, 23(5) Pharmacother., pp. 625-637 (2003) | |
| 1080 | | | | | 11/15/2011 | Abbott v. Teva: Deposition Transcript of Robert O. Williams, Ph.D. | 802 |
| 1081 | | | | | 11/16/2011 | Abbott v. Teva: Deposition Transcript of Robert O. Williams, Ph.D. | 802 |
| 1082 | | | SIM-330 (Williams) | | | Curriculum Vitae, Robert O. (Bill) Williams III | |
| 1083 | | | SIM-331 (Williams) | | 06/30/2003 | Mahaguna, et al., *Influence of hydroxypropyl methylcellulose polymer on in vitro and in vivo performance of controlled release tablets containing alprazolam*, 16 Eur. J. Pharm. Biopharm., pp. 461-468 (2003) | |
| 1084 | | | SIM-332 (Williams) | | | Williams, et al., *Investigation of Excipient Type and Level on Drug Release from Controlled Release Tablets Containing HPMC*, 7(2) Pharm. Dev. Tech., pp. 181-193 (2002) | |
| 1085 | | | SIM-336 (Williams) | ABB_S2_01939657 - ABB_S2_01939759 | | Kos Pharmaceuticals, Inc. NDA 20-381, Human Pharmacokinetics and Bioavailability | |
| 1086 | | | SIM-357 (Williams) | | 01/01/1990 | USP XXII, The United States Pharmacopeia (Twenty-Second Revision) | Lack of foundation for date description |
| 1087 | | | SIM-359 (Williams) | | 04/08/2010 | Abbott v. Lupin: Supplemental Declaration of Thomas S. Foster, Pharm.D. in Support of Plaintiffs' Responsive Claim Construction Brief | 802 |
| 1088 | | | | ABB_S2_00031178 - ABB_S2_00031206 | 05/24/1996 | The Comparative Bioavailability of Two Sustained-Release Niacin Products Relative to Niaspan® | |
| 1089 | | | | ABB_S2_00031174 | 07/10/1996 | Letter from David Bova, Vice President, Research and Development, to Solomon Sobel, Director, Division of Metabolism and Endocrine Drug Products (July 10, 1996) | |
| 1090 | | | | ABB_S2_00032022- ABB_S2_00032332 | 05/28/1997 | Department of Health and Human Services: Public Health Services, Food and Drug Administration.  Investigational New Drug Application (IND) Report re: IND No. 34,613 | |
| 1091 | | | | | 01/01/2004 | Kos Pharmaceuticals, Inc., International Directory of Company Histories, Vol. 63, pp. 232-235 (2004) | 403 (cumulative), 802, Lack of foundation for date description |
| 1092 | | | SIM-329 (Smith) | ABB_S2_00224771 | 11/13/2001 | Internal Memorandum regarding Record of conversation with Andy Bodnar, MD of Bristol-Myers Squibb | 802 |
| 1093 | | | | ABB_SIM00521514 - ABB_SIM00521544 | 02/28/2003 | Kos v. Barr: Reply to Counterclaims and Counterclaims for Declaratory Judgment | 403 (cumulative), 402 |
| 1094 | | | | ABB_S2_00197930 - ABB_S2_00198273 | 01/09/1997 | Letter from Albert Infranco, DesignWrite Incorporated, to David Bova, Kos Pharmaceuticals with attachments | 403 (cumulative) |

EXHIBIT N                                                                                          .

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 1095 | | | | ABB_S2_00153150 | 02/22/1999 | Letter from Deyamira Taborda, Kos Pharmaceuticals, Inc., to Robert Knopp, Northwest Lipid Research Clinic | 402 |
| 1096 | | | | ABB_S2_00176945 | 08/02/1996 | Letter from Roger Pelletier, Kos Pharmaceuticals, Inc., to Robert Knopp, Northwest Lipid Research Clinic | 402 |
| 1097 | | | | ABB_S2_00176957 | 09/15/1993 | Letter from Sue Balandis, Kos Pharmaceuticals, Inc., to Robert Knopp, Northwest Lipid Research Clinic | |
| 1098 | | | | ABB_S2_00176977 - ABB_S2_00176978 | 05/18/1993 | Letter from David Bova, Kos Pharmaceuticals, Inc., to Robert Knopp, Northwest Lipid Research Clinic | |
| 1099 | | | | ABB_S3_01605875 - ABB_S3_01605881 | 06/14/2007 | Birjmohun, et al., *Safety and tolerability of prolonged-release niacinic acid in statin-treated patients* , 23(7) Curr. Med. Res. Opin., pp. 1707-1713 (2007) | |
| 1100 | | | | ABB_S2_00125592 - ABB_S2_00125593 | 06/13/1994 | Letter from David Bova, Kos Pharmaceuticals, Inc., to Lars Carlson, King Gustav V Research Institute | |
| 1101 | | | | ABB_S2_00125583 | 09/06/1994 | Letter from David Bova, Kos Pharmaceuticals, Inc., to Lars Carlson, King Gustav V Research Institute | |
| 1102 | | | | ABB_S2_00125584 | 06/21/1994 | Letter from David Bova, Kos Pharmaceuticals, Inc., to Lars Carlson, King Gustav V Research Institute | 402 |
| 1103 | | | | ABB_S2_02363237 - ABB_S2_02363240 | 04/09/2008 | Email correspondence regarding Potential Investigator: James McKenney | |
| 1104 | | | | ABB_S2_00261017 - ABB_S2_00261022 | | Manuscript Status, Clinical Applied Sciences | |
| 1105 | | | | ABB_S2_00769606 - ABB_S2_00769607 | 10/17/2007 | Correspondence regarding New Publications and News Articles in OLMS | |
| 1106 | | | | ABB_S3_00904987 - ABB_S3_00905002 | | 2008 SIMCOR Bibliography, Abbott Publications | |
| 1107 | | | | ABB_S3_00444088 - ABB_S3_00444159 | 04/17/2008 | The American Journal of Cardiology VOL. 101 Niacin Therapy:  An Evolving Paradigm for the Management of Mixed Dyslipidemia and Low High-Density Lipoprotein Choloesterol | |
| 1108 | | | | ABB_S3_01331114 - ABB_S3_01331147 | 06/30/1905 | Fruchart, et al., *The Residual Risk Reduction Initiative:  A Call to Action to Reduce Residual Vascular Risk in Patients with Dyslipidemia,* 102[suppl.] Am. J. Cardiol., pp. 1K-34K (2008) | |
| 1109 | | | | ABB_S2_00152429 - ABB_S2_00152432 | 05/01/2000 | Email correspondence regarding AHA 2000 abstract | 802 |
| 1110 | | | SIM-369 (Sacks) | | 1/1/1989 | U.S. Pharmacopeia drug information for the health professional. Rockville, Maryland: United States Pharmacopeia Convention, 1989: 1739-40 | 106, 403, 802, Lack of foundation for date description |
| 1111 | | | | ABB_S2_00149213 | 7/24/1997 | Letter from Dan Bell of KOS to Ian Troup at Upsher-Smith Laboratories | 408 |
| 1112 | | | | ABB_S2_00149270- ABB_S2_00149307 | 1/9/2002 | Patent Purchase and Assignment Agreement between Upsher-Smith Laboratories, Inc. and Kos Pharmaceuticals, Inc. | 403 (cumulative) |
| 1113 | | | | ABB_S2_00149308 - ABB_S2_00149319 | 1/9/2002 | Security Agreement between Kos Pharmaceuticals and Upsher-Smith Laboratories | |
| 1114 | | | | ABB_S2_00149320 - ABB_S2_00149322 | 1/9/2002 | Assignment between Upsher-Smith Laboratories and Kos Pharmaceuticals, Inc. | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 1115 | | | | ABB_S2_00149323 - ABB_S2_00149324 | 1/9/2002 | Letter from Upsher-Smith to Kos Pharmaceuticals regarding amendment to agreement | |
| 1116 | | | | ABB_S2_00149327 - ABB_S2_00149329 | 1/9/2002 | United States Patent Assignment by Upsher-Smith Laboratories and Kos Pharmaceuticals regarding '145 and '181 patents | |
| 1117 | | | | ABB_S2_00245848 - ABB_S2_00245856 | 00/00/2008 | Presentation, dyslipidemia franchise product profiles and competitive product profiles | |
| 1118 | | | | ABB_S2_00251293 - ABB_S2_00251314 | 10/28/2008 | Presentation, Marianne Sutcliffe, General Manager, Niaspan, SIMCOR and Advicor | |
| 1119 | | | | ABB_S2_00347166 - ABB_S2_00347168 | | Commercial Synergies for Niaspan and SIMCOR with sales forecasts for 2006-2008 | |
| 1120 | | | | ABB_S2_00577043 - ABB_S2_00577060 | 06/00/2007 | Marketing brochure, Niaspan - Raise. Regress. Reduce. | |
| 1121 | | | | ABB_S2_00988140 - ABB_S2_00988167 | 03/00/2009 | Marketing brochure, Get Regressive with Niaspan. | |
| 1122 | | | | | | Withdrawn, refer to DTX-540 | 802 |
| 1123 | | | | ABB_SIM_00573323 | 05/00/2010 | Niaspan advertisement, Sis, you wrote your doctor | |
| 1124 | | | | ABB_SIM_00573335 | 05/00/2010 | Niaspan advertisement, Hey, big brother | |
| 1125 | | | | ABB_SIM_00575938 | 3/24/2010 | Movie file, Niaspan advertisement, Bonnie's Sister | 403 (cumulative) |
| 1126 | | | | ABB_SIM_00575939 | 3/24/2010 | Movie file, Niaspan advertisement, Pete's Brother | |
| 1127 | | | | ABB_SIM_00577606 - ABB_SIM_00577623 | | Simcor marketing materials, One treatment, Two Targets, powerful dual-lipid management | |
| 1128 | | | | ABB_SIM_00577642 - ABB_SIM_00577655 | | Simcor marketing materials, In Simvastatin Patients, Drive HDL-C Higher | |
| 1129 | | | | ABB_SIM_00577656 - ABB_SIM_00577676 | | Simcor marketing materials, Aggressive targets demand comprehensive lipid management | |
| 1130 | | | | ABB_SIM_00577705 - ABB_SIM_00577720 | | Simcor marketing materials, One treatment, Two Targets, Powerful dual-lipid management, Aim for both | |
| 1131 | | | | ABB_SIM_00577721 - ABB_SIM_00577746 | | Simcor marketing materials, SIMCOR - aggressive targets demand comprehensive lipid management - all at once | |
| 1132 | | | | ABB_SIM_00579092 - ABB_SIM_00579112 | | Simcor marketing materials, in Simvastatin Patients, Drive HDL-C Higher, new 40 mg strengths | |
| 1133 | | | | ABB_SIM_00886716 - ABB_SIM_00886747 | 12/7/2010 | USA v. Kos Pharmaceuticals, Middle District of Louisiana, Deferred Prosecution Agreement | 402, 403, 802 (subject to the parties' 9/29/11 stipulation) |
| 1134 | | | | ABB_SIM_00886802 - ABB_SIM_00886813 | 00/00/2009 | 2010 Niaspan Brand Plan | 403 (cumulative) |
| 1135 | | | | ABB_SIM_00946002 - ABB_SIM_00946690 | | IMS data | |
| 1136 | | | | ABB_SIM_01152091 - ABB_SIM_01152097 | | Presentation, Project P:  Niaspan Franchise | |
| 1137 | | | | ABB_SIM_01159779 - ABB_SIM_01159782 | | IMS data | 403 (cumulative) |

**EXHIBIT N**                                                                                                      .

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 1138 | | | | | 5/4/2010 | "Complaint," *Abbott Laboratories and Abbott Respiratory LLC, v. Watson Pharmaceuticals, Inc., Watson Laboratories, Inc. – Florida and Watson Pharma, Inc.,* United States District Court for the District of Delaware | |
| 1139 | | | | | 3/25/2011 | "Complaint," *Abbott Laboratories and Abbott Respiratory LLC, v. Watson Pharmaceuticals, Inc., Watson Laboratories, Inc. – Florida and Watson Pharma, Inc.,* United States District Court for the District of Delaware | |
| 1140 | | | | | 9/12/2011 | Letter to Kevin S. Prussia (William Cutler Pickering Hale and Dorr LLP) from Thomas R. Johnson (Carlson, Caspers, Vanderburgh & Lindquist). | 402, 802 |
| 1141 | | | | | 4/1/2011 | "Plaintiff's Second Supplemental Response to Defendants' Joint Interrogatory No. 6" | |
| 1142 | | | | | 12/31/2006 | Abbott Laboratories, Form 10-K for the fiscal year ended December 31, 2006. | Lack of foundation for date description |
| 1143 | | | | | 4/16/2008 | "Abbott Laboratories 1st Quarter Results," Regulatory News Service, April 16, 2008. | |
| 1144 | | | | | 10/3/2002 | "Answering Brief of Upsher-Smith Laboratories, Inc.," *In the Matter of Schering-Plough Corporation, Upsher-Smith Laboratories, Inc. and American Homes Products Corporation,* United States Federal Trade Commission, Docket No. 9297, October 3, 2002 [Public Record Version]. | 402, 802 |
| 1145 | | | | | 7/2/1905 | Aventis Pharma S.A. v. Hospira, Inc., 743 F. Supp. 2d 305, 348 (D. Dela. 2010). | 402, 802 |
| 1146 | | | | | 10/12/2011 | "Changing from Niaspan to Slo-Niacin Tablets, Information for Patients" available at www.permanente.net/kaiser/pdf/62664.pdf accessed October 12, 2011. | 901, 403, 802 |
| 1147 | | | | | 10/2006 | Congressional Budget Office, "A CBO Study: Research and Development in the Pharmaceutical Industry," October 2006. | |
| 1148 | | | | | 06/2003 | Ernst R. Berndt et al., "Consumption Externalities and Diffusion in Pharmaceutical Markets: Antiulcer Drugs," The Journal of Industrial Economics, Vol. LI, No. 2, June 2003. | |
| 1149 | | | | | 03/1999 | Ernst R. Berndt et al., "Network Effects and Diffusion in Pharmaceutical Markets: Antiulcer Drugs," NBER Working Paper No. 7024, March 1999. | |
| 1150 | | | | | 01/2011 | "Guidance for Industry, Process Validation: General Principles and Practices," January 2011 available at http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/UCM070336.pdf accessed October 6, 2011. | |
| 1151 | | | | | 09/22/2011 | http://www.fda.gov/AboutFDA/WhatWeDo/WhatFDARegulates/default.htm accessed September 22, 2011. | |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 1152 | | | | | 09/22/2011 | http://www.fda.gov/Drugs/DevelopmentApprovalProcess/HowDrugs areDevelopedandApproved/ApprovalApplications/NewDrugApplicati onNDA/default.htm accessed September 22, 2011. | |
| 1153 | | | | | 09/30/2011 | http://www.fda.gov/Drugs/DevelopmentApprovalProcess/Manufactur ing/ucm169105.htm accessed September 30, 2011. | |
| 1154 | | | | | 09/30/2011 | http://www.fda.gov/Drugs/DevelopmentApprovalProcess/Manufactur ing/default.htm accessed September 30, 2011. | |
| 1155 | | | | | 09/22/2011 | http://www.fda.gov/Drugs/GuidanceComplianceRegulatoryInformatio n/Surveillance/DrugMarketingAdvertisingandCommunications/defaul t.htm accessed September 22, 2011. | |
| 1156 | | | | | 09/22/2011 | http://www.fda.gov/Drugs/ResourcesForYou/Consumers/ucm14353 4.htm accessed September 22, 2011. | |
| 1157 | | | | | 09/30/2011 | http://www.fda.gov/Food/DietarySupplements/ConsumerInformation/ ucm110417.htm accessed September 30, 2011. | |
| 1158 | | | | | 7/3/1905 | In re Huai-Hung Kao, 639 F.3d 1057, 1069-70 (Fed. Cir. 2011). | 402, 802 |
| 1159 | | | | | 06/27/2002 | "Initial Decision," *In the Matter of Schering-Plough Corporation, Upsher-Smith Laboratories, and* American Home Products Corporation, United States Federal Trade Commission, Docket No. 9297, June 27, 2002 [Public Record Version]. | 402, 802 |
| 1160 | | | | | 02/21/2002 | "Kos Announces Record Fourth Quarter and Year-End Results," *PR Newswire*, February 21, 2002. | |
| 1161 | | | | | 11/12/1997 | "Kos Pharmaceuticals Announces Quarterly Results," *PR Newswire*, November 12, 1997. | |
| 1162 | | | | | 12/31/1998 | Kos Pharmaceuticals, Inc., Form 10-K for the fiscal years ended December 31, 1998. | Lack of foundation for date description |
| 1163 | | | | | 12/31/2001 | Kos Pharmaceuticals, Inc., Form 10-K for the fiscal years ended December 31, 2001. | Lack of foundation for date description |
| 1164 | | | | | 12/31/2004 | Kos Pharmaceuticals, Inc., Form 10-K for the fiscal years ended December 31, 2004. | Lack of foundation for date description |
| 1165 | | | | | 2005 | Schering-Plough Corporation v. Federal Trade Commission, 402 F.3d 1056 (11th Cir. 2005). | 402, 802 |
| 1166 | | | | | 10/10/2011 | "Truthful Prescription Drug Advertising and Promotion: The Prescriber's Role" available at http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulato ryInformation/Surveillance/PrescriptionDrug AdvertisingandPromotionalLabeling/UCM209847.pdf accessed October 10, 2011. | |
| 1167 | | | | | 07/2008 | United States Government Accountability Office, "Prescription Drugs, FDA's Oversight of the Promotion of Drugs for Off-Label Uses," July 2008. | |
| 1168 | | | | | 09/23/2011 | FDA Orange Book data for Simcor available at http://www.accessdata.fda.gov/scripts/cder/ob/default.cfm accessed September 23, 2011. | |

**EXHIBIT N**

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---------|---------|---------|-----------------|------------------|------|-------------|--------------|
| 1169 | | | | | 09/23/2011 | FDA Orange Book data for Niaspan available at http://www.accessdata.fda.gov/scripts/cder/ob/docs/temptn.cfm accessed September 23, 2011. | |
| 1170 | | | | | 09/23/2011 | FDA Orange Book data for Advicor available at http://www.accessdata.fda.gov/scripts/cder/ob/docs/temptn.cfm accessed September 23, 2011. | |
| 1171 | | | | | 9/29/2011 | FDA Orange Book data for Niacin available at http://www.accessdata.fda.gov/scripts/cder/ob/docs/tempai.cfm accessed September 29, 2011. | |
| 1172 | | | | TV0044195 - TV0044204 | 07/01/1985 | Knopp, et al., *Contrasting Effects of Unmodified and Time-Release Forms of Niacin on Lipoproteins in Hyperlipidemic Subjects: Clues to Mechanism of Action of Niacin*, 34(7) Metabolism, pp. 642-650 (1985) | 403 (cumulative), Lack of foundation for date description |
| 1173 | | | | ABB_SIM00525983 - ABB_SIM00526159 | 10/27/2003 | Kos v. Barr: Kos' Responses to Barr's Interrogatory Nos. 11-23 | 402 |
| 1174 | | | | | 12/7/2010 | Kos Pharmaceuticals to Pay More Than $41 Million to Resolve Kickback and Off-Label Promotion Allegations | 802, 403, 402 |
| 1175 | | | | | 9/24/2010 | Missouri to get $226,000 in Kos drug suit settlement | 802, 403, 402 |
| 1176 | | | | ABB_TEVA001038 - ABB_TEVA001052 | 12/7/2010 | State Settlement Agreement and Release (Alaska) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1177 | | | | ABB_TEVA001053 - ABB_TEVA001067 | 12/7/2010 | State Settlement Agreement and Release (Alabama) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1178 | | | | ABB_TEVA001068 - ABB_TEVA001082 | 12/7/2010 | State Settlement Agreement and Release (Arkansas) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1179 | | | | ABB_TEVA001083 - ABB_TEVA001098 | 12/7/2010 | State Settlement Agreement and Release (California) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1180 | | | | ABB_TEVA001099 - ABB_TEVA001113 | 12/7/2010 | State Settlement Agreement and Release (Colorado) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1181 | | | | ABB_TEVA001114 - ABB_TEVA001128 | 12/7/2010 | State Settlement Agreement and Release (Connecticut) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1182 | | | | ABB_TEVA001129 - ABB_TEVA001145 | 12/7/2010 | State Settlement Agreement and Release (Delaware) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1183 | | | | ABB_TEVA001146 - ABB_TEVA001160 | 12/7/2010 | State Settlement Agreement and Release (District of Columbia) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |

**EXHIBIT N**

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---------|---------|---------|------------------|------------------|------|-------------|--------------|
| 1184 | | | | ABB_TEVA001161 - ABB_TEVA001175 | 12/7/2010 | State Settlement Agreement and Release (Florida) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1185 | | | | ABB_TEVA001176 - ABB_TEVA001190 | 12/7/2010 | State Settlement Agreement and Release (Georgia) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1186 | | | | ABB_TEVA001191 - ABB_TEVA001205 | 12/7/2010 | State Settlement Agreement and Release (Hawaii) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1187 | | | | ABB_TEVA001206 - ABB_TEVA001220 | 12/7/2010 | State Settlement Agreement and Release (Idaho) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1188 | | | | ABB_TEVA001221 - ABB_TEVA001235 | 12/7/2010 | State Settlement Agreement and Release (Illinois) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1189 | | | | ABB_TEVA001236 - ABB_TEVA001250 | 12/7/2010 | State Settlement Agreement and Release (Indiana) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1190 | | | | ABB_TEVA001251 - ABB_TEVA001266 | 12/7/2010 | State Settlement Agreement and Release (Iowa) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1191 | | | | ABB_TEVA001267 - ABB_TEVA001281 | 12/7/2010 | State Settlement Agreement and Release (Kansas) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1192 | | | | ABB_TEVA001282 - ABB_TEVA002196 | 12/7/2010 | State Settlement Agreement and Release (Kentucky) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1193 | | | | ABB_TEVA001297 - ABB_TEVA001311 | 12/7/2010 | State Settlement Agreement and Release (Louisiana) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1194 | | | | ABB_TEVA001312 - ABB_TEVA001326 | 12/7/2010 | State Settlement Agreement and Release (Maine) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1195 | | | | ABB_TEVA001327 - ABB_TEVA001341 | 12/7/2010 | State Settlement Agreement and Release (Maryland) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1196 | | | | ABB_TEVA001342 - ABB_TEVA001356 | 12/7/2010 | State Settlement Agreement and Release (Massachusetts) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1197 | | | | ABB_TEVA001357 - ABB_TEVA001371 | 12/7/2010 | State Settlement Agreement and Release (Michigan) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---------|---------|---------|-----------------|------------------|------|-------------|--------------|
| 1198 | | | | ABB_TEVA001372 - ABB_TEVA001386 | 12/7/2010 | State Settlement Agreement and Release (Minnesota) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1199 | | | | ABB_TEVA001387 - ABB_TEVA001401 | 12/7/2010 | State Settlement Agreement and Release (Mississippi) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1200 | | | | ABB_TEVA001402 - ABB_TEVA001416 | 12/7/2010 | State Settlement Agreement and Release (Missouri) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1201 | | | | ABB_TEVA001417 - ABB_TEVA001431 | 12/7/2010 | State Settlement Agreement and Release (Montana) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1202 | | | | ABB_TEVA001432 - ABB_TEVA001446 | 12/7/2010 | State Settlement Agreement and Release (Nebraska) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1203 | | | | ABB_TEVA001447 - ABB_TEVA001461 | 12/7/2010 | State Settlement Agreement and Release (Nevada) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1204 | | | | ABB_TEVA001462 - ABB_TEVA001476 | 12/7/2010 | State Settlement Agreement and Release (New Hampshire) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1205 | | | | ABB_TEVA001477 - ABB_TEVA001491 | 12/7/2010 | State Settlement Agreement and Release (New Jersey) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1206 | | | | ABB_TEVA001492 - ABB_TEVA001506 | 12/7/2010 | State Settlement Agreement and Release (New Mexico) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1207 | | | | ABB_TEVA001507 - ABB_TEVA001521 | 12/7/2010 | State Settlement Agreement and Release (New York) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1208 | | | | ABB_TEVA001522 - ABB_TEVA001536 | 12/7/2010 | State Settlement Agreement and Release (North Carolina) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1209 | | | | ABB_TEVA001536 - ABB_TEVA001551 | 12/7/2010 | State Settlement Agreement and Release (North Dakota) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1210 | | | | ABB_TEVA001552 - ABB_TEVA001567 | 12/7/2010 | State Settlement Agreement and Release (Ohio) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1211 | | | | ABB_TEVA001568 - ABB_TEVA001584 | 12/7/2010 | State Settlement Agreement and Release (Oklahoma) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |

**EXHIBIT N**

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 1212 | | | | ABB_TEVA001585 - ABB_TEVA001600 | 12/7/2010 | State Settlement Agreement and Release (Oregon) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1213 | | | | ABB_TEVA001601 - ABB_TEVA001615 | 12/7/2010 | State Settlement Agreement and Release (Pennsylvania) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1214 | | | | ABB_TEVA001616 - ABB_TEVA001630 | 12/7/2010 | State Settlement Agreement and Release (Rhode Island) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1215 | | | | ABB_TEVA001631 - ABB_TEVA001645 | 12/7/2010 | State Settlement Agreement and Release (South Carolina) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1216 | | | | ABB_TEVA001646 - ABB_TEVA001660 | 12/7/2010 | State Settlement Agreement and Release (South Dakota) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1217 | | | | ABB_TEVA001661 - ABB_TEVA001675 | 12/7/2010 | State Settlement Agreement and Release (Tennessee) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1218 | | | | ABB_TEVA001676 - ABB_TEVA001690 | 12/7/2010 | State Settlement Agreement and Release (Texas) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1219 | | | | ABB_TEVA001691 - ABB_TEVA001705 | 12/7/2010 | State Settlement Agreement and Release (Utah) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1220 | | | | ABB_TEVA001706 - ABB_TEVA001720 | 12/7/2010 | State Settlement Agreement and Release (Vermont) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1221 | | | | ABB_TEVA001721 - ABB_TEVA001736 | 12/7/2010 | State Settlement Agreement and Release (Virginia) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1222 | | | | ABB_TEVA001737 - ABB_TEVA001751 | 12/7/2010 | State Settlement Agreement and Release (Washington) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1223 | | | | ABB_TEVA001752 - ABB_TEVA001766 | 12/7/2010 | State Settlement Agreement and Release (West Virginia) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1224 | | | | ABB_TEVA001767 - ABB_TEVA001781 | 12/7/2010 | State Settlement Agreement and Release (Wisconsin) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |
| 1225 | | | | ABB_TEVA001782 - ABB_TEVA001796 | 12/7/2010 | State Settlement Agreement and Release (Wyoming) | 802, 403, 402 (subject to the parties' 9/29/11 stipulation) |

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---|---|---|---|---|---|---|---|
| 1226 | | | SIM-366 (Sacks) | ABB_SIM00566451 - ABB_SIM00566455 | 6/26/1989 | Alderman, et al., *Effect of a Modified, Well-Tolerated Niacin Regimen on Serum Total Cholesterol, High Density Lipoprotein Cholesterol and the Cholesterol to High Density Lipoprotein Ration*, 64 Am. J. Cardiol., pp. 725-729 (1989) | 403 (cumulative), Lack of foundation for date description |
| 1227 | | | SIM-368 (Sacks) | ABB_S2_00023217 - ABB_S2_00023395 | 4/29/1996 | Kos Pharmaceuticals, Inc. NDA 20-381, Integrated Summary of Efficacy (Revision 1) | 403 (cumulative), Lack of foundation for date description |
| 1228 | | | SIM-373 (Sacks) | ABB_SIM00550560 - ABB_SIM00550566 | 08/15/1994 | Gray, et al., *Efficacy and Safety of Controlled-Release Niacin in Dyslipoproteinemic Veterans*, 121 Ann. Intern. Med., pp. 252-258 (1994) | 403 (cumulative) |
| 1229 | | | SIM-374 (Sacks) | TV0145096 - TV0145110 | 04/26/2006 | Knopp, et al., *The SLIM study: Slo-Niacin® and Atorvastatin Treatment of Lipoproteins and Inflammatory Markers in Combined Hyperlipidemia*, 3 J. Clin. Lipid., pp. 167-178 (2009) | 403 (cumulative), Lack of foundation for date description |
| 1230 | | | SIM-377 (Sacks) | ABB_S2_00000037 - ABB_S2_00000245 | 05/03/1996 | Kos Pharmaceuticals, Inc. NDA 20-381, Niacin Sustained-Release Tablets | 106 |
| 1231 | | | SIM-378 (Sacks) | TV0005560 - TV005586 | 01/04/1995 | File History for U.S. Patent Number 6,080,428 Excerpt: Continuation-In-Part Patent Application | 403 (cumulative), Lack of foundation for date description |
| 1232 | | | SIM-379 (Sacks) | ABB_S2_00113611 - ABB_S2_00113775 | | Protocol No. 91/09, Interim Report: A Multi-Center, Open-Label Trial of the Long-Term Safety and Efficacy of Niaspan™ in Patients with Primary Hyperlipoproteinemia | 106, 403 (cumulative) |
| 1233 | | | | | | Curriculum Vitae, Phillip A. Beutel | |
| 1234 | | | | | 01/01/1989 | Pharmaceutical Dosage Forms: Tablets Vol. 1, 2 ed., Lieberman et al. eds, Marcel Denker Inc., 179-98 (1988) | 106, Lack of foundation for date description |
| 1235 | | | | WT0176219 - WT0176235 | 01/01/1988 | Pharmaceutics: The Science of Dosage Form Design, Michael E. Aulton Ed. (1988) | 403 (cumulative), Lack of foundation for date description |
| 1236 | | | SIM-352 (partial) | USLT000689 | 12/20/1994 | Butler Pharmapac Formula Master product description for Slo-Niacin granulation (1st page of DTX 834) | 802 |
| 1237 | | | SIM-352 (partial) | USLT000708 | 12/6/1989 | Memo from Tom G. to Ed. H and Vickie O. re sustained release niacin production dissolution results (selected page from DTX 834) | 802 |

**EXHIBIT N**                                                                                                                    .

| DTX No. | PTX No. | JTX No. | Depo Exh No(s). | Production Range | Date | Description | Objection(s) |
|---------|---------|---------|-----------------|-----------------|------|-------------|--------------|

Defendants reserve the right to offer into evidence duplicate copies and/or original versions of any of the documents listed on the exhibit list.

Defendants reserve the right to use, or mark for identification, the reports and documents relied upon by Plaintiffs' experts as well as Plaintiffs' discovery responses, disclosures, contentions, and declarations filed by or on behalf of Plaintiff or its predecessors.

Defendants reserve the right to use and/or introduce at trial any trial exhibit identified by Plaintiffs on their exhibit list.

By listing documents on the attached exhibit list, Defendants do not concede the relevance, foundation, and/or admissibility of any of those documents.  Further, Defendants have listed certain documents produced by Plaintiffs for purposes of rebutting arguments that Plaintiffs may raise.  By listing those rebuttal documents, Defendants do not concede the admissibility or relevance of these exhibits at trial.

# EXHIBIT O

# FILED SEPARATELY UNDER SEAL

# EXHIBIT P

## EXHIBIT P – WATSON'S STATEMENT OF ADDITIONAL MATTERS

Watson objects to Abbott's Statement of Additional Matters points 2 through 5 because those matters were first added on December 21 and 29, 2011, which is well after the parties' agreed upon November 21, 2011 pretrial order exchange.   Watson also disputes the merits of Abbott's Additional Matters.

Moreover, Abbott has not yet disclosed which fact witnesses it will call live at trial.   Because of this, Watson has not yet designated the deposition testimony of witnesses that Abbott indicated that it may call live.   The Court should require Abbott identify those witnesses it will call live witnesses within one week so that Watson can prepare for cross-examination of Abbott's live trial witnesses or designate the deposition testimony of those it will not be calling live at trial.